IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RICARDO R. GARCIA, et al.,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　　　Civil Action No. 1:19cv331-LO-MSN
　　　　　　　　　　　　　　　　　)
VOLKSWAGEN GROUP OF AMERICA,　)
INC., et al.,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　)
　　　　　　　　　　　　　　　　　)

**VOLKSWAGEN GROUP OF AMERICA, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

MCGUIRE WOODS LLP

Terrence M. Bagley (VSB No. 22081)
Kenneth W. Abrams (VSB No. 78216)
Frank Talbott V (VSB No. 86396)
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Tel:  804-775-4773
Fax:  804-698-2323
tbagley@mcguirewoods.com
kabrams@mcguirewoods.com
ftalbott@mcguirewoods.com

SULLIVAN & CROMWELL LLP

Robert J. Giuffra Jr. (*pro hac vice*)
Suhana S. Han (*pro hac vice*)
Adam R. Brebner (*pro hac vice*)
125 Broad Street
New York, NY 10004
Tel:  212-558-4000
Fax:  212-558-3558
giuffrar@sullcrom.com
hans@sullcrom.com
brebnera@sullcrom.com

Judson O. Littleton (*pro hac vice*)
1700 New York Ave, NW
Washington, D.C. 20006
Tel:  202-956-7500
Fax:  202-293-6330
littletonj@sullcrom.com

*Counsel for Volkswagen Group of America, Inc.*

## PRELIMINARY STATEMENT

Recognizing their claims require far-fetched inferences and leaps of logic, Plaintiffs' Opposition tellingly relies on the "no set of facts" pleading standard from *Conley* v. *Gibson* that was "explicitly overruled" by the Supreme Court. *McCleary-Evans* v. *Md. Dep't of Transp.*, 780 F.3d 582, 587 (4th Cir. 2015) (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 561 (2007)).  Under the *now*-governing standard, the Opposition confirms that the Complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

***Federal Odometer Act Claim.***  To try to evade the plain language of the Act, Plaintiffs argue that its "remedial" purpose justifies a broad reading.  Not so.  "[G]eneralized references to the 'remedial purposes' . . . will not justify reading a provision more broadly than its language and the statutory scheme reasonably permit." *Touche Ross & Co.* v. *Redington*, 442 U.S. 560, 578 (1979).  The Odometer Act prohibits a "person transferring ownership of a motor vehicle" from making "a false statement to the transferee" about the vehicle's "cumulative mileage registered on the odometer" in the "written disclosure" required by the Act, with the "intent to defraud." 49 U.S.C. §§ 32705(a)(1)-(2); 32710(a).  Thus, the only disclosure required by the Act is "cumulative mileage" at the time of transfer, if known.  *Id.* § 32705(a)(1).  Plaintiffs do not dispute that, at the time dealers "transferr[ed] ownership" of the relevant vehicles to them, Plaintiffs received a fully accurate "written disclosure" of their vehicles' cumulative mileage.  Nor do Plaintiffs dispute that they have failed to allege specific intent to defraud as to cumulative mileage.  Their Odometer Act claims should therefore be dismissed.

***State Law Fraud Claims.***  Setting aside their conclusory allegations, Plaintiffs allege no actual defect or noncompliance in their vehicles and instead rely on statements—most made by third parties—that Plaintiffs cannot show are materially false or misleading.  Regarding

the ownership history of the vehicles, Plaintiffs do not dispute that Carfax created the definition of "owner" and designated the cars as "1-Owner" vehicles. Although Plaintiffs conclusorily claim that Volkswagen Group of America ("VWGoA") "maintained direct involvement in disseminating the at-issue false information" (Opp. 16-17), they point to no factual allegations other than that VWGoA agreed to distribute Carfax reports to potential purchasers. Regarding their claim that their vehicles did not comply with federal motor vehicles standards, Plaintiffs merely restate bare legal conclusions from the Complaint. Tellingly, they claim that the "Class Vehicles' status as Pre-Production cars . . . *strongly suggest[s]* that those cars do not comply with Federal Safety Standards." (Opp. 19 (emphasis added).) Plaintiffs thus cannot meet their Rule 9(b) burden to plead with particularity that VWGoA made allegedly fraudulent misstatements.

Plaintiffs' fraud claims fail for the additional reason that they do not plead reliance. They do not dispute that the Complaint fails even to allege that Plaintiffs read a Carfax report before deciding to purchase their vehicles. To try to overcome this fatal deficiency, Plaintiffs resort to an erroneous choice-of-law analysis, claiming, without citing any case law, that Virginia courts would apply a "rebuttable presumption of reliance in Plaintiffs' favor" as a "procedural" rule. (Opp. 23-24.) But Virginia courts recognize that a "rebuttable presumption of law . . . *is prescribed by a rule of the substantive law.*" *Simpson* v. *Simpson*, 175 S.E. 320, 329 (Va. 1934); *accord Henrico Cty. Div. of Fire* v. *Woody*, 572 S.E.2d 526, 529 (Va. Ct. App. 2002). Plaintiffs agree that the substantive law of the states where Plaintiffs purchased their vehicles applies to their fraud claims. Because Plaintiffs have failed to plead reliance—an essential element of fraud in each of these states (and under Virginia law)—their fraud claims must be dismissed.

***Remaining Claims.*** Given these deficiencies and others identified in VWGoA's Motion, none of Plaintiffs' various other claims are viable. Plaintiffs' arguments in defense of

-2-

those claims are likewise flawed, relying on misinterpretations of various state laws and pointing only to conclusory allegations that the Court need not—and should not—accept as true.  In short, nothing in the Opposition warrants allowing Plaintiffs' sprawling, speculative Complaint concocting an entirely implausible fraudulent scheme to proceed to discovery.  The Complaint should be dismissed.

## ARGUMENT

I.   **PLAINTIFFS' OPPOSITION CONFIRMS THAT THEY FAIL TO STATE AN ODOMETER ACT CLAIM.**

As an initial matter, Plaintiffs incorrectly invoke Rule 8's pleading standard for their Odometer Act claim.  (Opp. 2-3.)  Because this Act requires "intent to defraud," 49 U.S.C. § 32710(a), courts across the country, including in the Fourth Circuit, require plaintiffs to satisfy Rule 9(b)'s particularity requirement.[1]  *See, e.g.*, *Longo* v. *Glime*, 928 F.2d 405 (6th Cir. 1991) (per curiam) (affirming dismissal of Odometer Act claims for failure to comply with Rule 9(b)); *McGinty* v. *Beranger Volkswagen, Inc.*, 633 F.2d 226 (1st Cir. 1980) (applying Rule 9(b) to Odometer Act predecessor), *superseded by statute on other grounds*, Pub. L. No. 104-67, 109 Stat. 737; *Robinette* v. *Griffith*, 483 F. Supp. 28, 31 (W.D. Va. 1979) (dismissing claim under Odometer Act predecessor for failure to comply with Rule 9(b)).  Plaintiffs come nowhere close to meeting their burden under Rule 9(b), and their Odometer Act claims should therefore be dismissed.

---

[1] None of the cases Plaintiffs cite supports their claim that Rule 9(b) does not apply to Odometer Act claims.  *Ryan* v. *Edwards* was an appeal from a judgment NOV, not a motion to dismiss, and thus did not apply either Rule 8 or Rule 9(b).  592 F.2d 756, 759 (4th Cir. 1979).  *Irby-Greene* v. *M.O.R., Inc.* did not even consider whether Rule 9(b) should apply.  79 F. Supp. 2d 630, 636 (E.D. Va. 2000).  And *Blount* v. *Greenbrier Pontiac Oldsmobile-GMC Trucks Kia, Inc.* held that the plaintiffs alleged "intent to defraud with specific particularity."  2009 WL 2431587, at *4 (E.D. Va. Aug. 7, 2009).

A.     **Under the Plain Language of the Odometer Act, Plaintiffs Have Failed To State a Claim.**

As purported support for interpreting the Odometer Act beyond its plain terms, Plaintiffs argue that it is "remedial legislation."  (Opp. 2-3, 9.)  But the Supreme Court has expressly held that "generalized references to the 'remedial purposes' . . . do not justify reading a provision 'more broadly than its language and the statutory scheme reasonably permit.'"  *Redington*, 442 U.S. at 578; *see also Bodine* v. *Graco, Inc.*, 533 F.3d 1145, 1153 (9th Cir. 2008) ("[W]e should not construe § 32710(a) [of the Odometer Act] so as to create as much liability as possible.  Rather, we must faithfully apply the section's limit on liability, even if it undermines the statute's remedial purposes.").

The Odometer Act prohibits "a person transferring ownership of a motor vehicle" from making "a false statement to the transferee" about the vehicle's "cumulative mileage registered on the odometer" in the "written disclosure" required by the Act, with the "intent to defraud."  49 U.S.C. § 32705(a)(1)-(2).  Thus, the only disclosure required by the Act is "cumulative mileage," if known.  *Id.* § 32705(a)(1).  Plaintiffs do not dispute that, at the time dealers "transferr[ed] ownership" of the relevant vehicles to them, Plaintiffs received a fully accurate "written disclosure" of their vehicles' cumulative mileage—and that is all the Odometer Act requires.  Plaintiffs' arguments seeking to impose Odometer Act liability—based on an original title application submitted to state authorities long before any sale of the vehicle—are baseless and cannot rescue Plaintiffs' claims from dismissal.

1.     **The Odometer Act Applies Only to Transfers.**

Ignoring the text of the Odometer Act, Plaintiffs argue that there is no requirement that the alleged "false statement" be made at the time of "transfer [of] ownership of a motor vehicle," so it does not matter that the alleged misstatement here—a statement in an original title

application—happened long before the vehicles were sold to Plaintiffs.  (Opp. 5-6.)  The Act, however, requires "a person *transferring ownership* of a motor vehicle [to] give *the transferee* the [required] written disclosure," and prohibits making a "false statement to the transferee *in making the disclosure required*."  49 U.S.C. § 32705(a)(1)-(2) (emphasis added).  In other words, the statute requires a disclosure at the time of transfer and prohibits making misstatements in that disclosure.  That is why the statute itself specifies that it "shall apply *to all transfers* of motor vehicles."  *Id.* § 32705(a)(4)(A) (emphasis added); *see also id.* § 32705 ("Disclosure requirements *on transfer* of motor vehicles") (emphasis added).[2]

        Under Plaintiffs' theory, the Act would impose liability for a "false statement" made *before* any mileage "disclosure" is required.  Plaintiffs cite no authority supporting that senseless reading.  Plaintiffs point to NHTSA's regulation specifying the required disclosures "'*in connection with*' the transfer of ownership of a motor vehicle" (Opp. 5-6) (emphasis added), but nothing in that regulation purports to impose any requirements before a vehicle is transferred; to the contrary, that regulation requires disclosure of the "odometer reading *at the time of transfer*."  49 C.F.R. § 580.5(c)(1) (emphasis added).  Nor do any of the cases Plaintiffs cite help them:  they involved a misrepresentation of mileage *at the time of sale*, when the Odometer Act's disclosure requirement was triggered.[3]

---

[2] Plaintiffs wrongly claim that VWGoA "misleadingly quotes" the Odometer Act by "substituting the word 'when' for '[a] person.'"  (Opp. 5.)  VWGoA correctly quoted the Act: "when" appears *outside* of the quotation.  (Mot. 13.)  VWGoA's description of the Act is not "misleading[]"—as the heading of § 32705 makes clear, the Act imposes "[d]isclosure requirements *on transfer* of motor vehicles."  § 32705 (emphasis added).

[3] *See Blount*, 2009 WL 2431587, at *1 ("Plaintiff alleges that the odometer on the vehicle did not accurately reflect the actual miles of the vehicle at the time of sale"); *Ryan*, 592 F.2d at 759-60 (seller provided false odometer disclosure statement and made false oral statement as to cumulative mileage "[o]n the date of the sale"); *Aldridge* v. *Billips*, 656 F. Supp. 975, 977 (W.D. Va. 1987) (seller provided false statements as to cumulative mileage "[a]t the time of sale").

Plaintiffs argue in the alternative that the initial titling of their vehicles was a "transfer" within the meaning of the Odometer Act.  (Opp. 6-8.)  But the applicable regulations also reject this theory, expressly stating that a "transferor of a new vehicle prior to its first transfer for purposes other than resale need not disclose the vehicle's odometer mileage."  49 C.F.R § 580.17(b); *see Baker* v. *Cawthon Motor Co.*, 629 F.2d 410, 412 (5th Cir. 1980) ("transfers, from distributor to retailers, for example, that occur prior to the first sale of an automobile to a consumer" are not subject to the Act's disclosure requirements); *Baxter* v. *Kawasaki Motors Corp., U.S.A.*, 2008 WL 8901361, at *6 (N.D. Ill. July 17, 2008) ("regulations contain no requirement that an odometer disclosure accompany the transfer of a new vehicle that occurs prior to the first sale by a dealership").  The purported application for title attached to the Opposition as "evidence" further refutes this argument: the application is for "Original Title Only" and the only parties involved are Volkswagen entities, not consumers.  (Melkersen Decl. Ex. 1.)

## 2.     Plaintiffs Do Not Allege a Misrepresentation of Cumulative Mileage.

Because Plaintiffs do not dispute that they received accurate Odometer Disclosure Statements when they purchased their vehicles, Plaintiffs concede, as they must, that their claims cannot survive a "strict" interpretation of the Act's "cumulative mileage" disclosure requirement. Plaintiffs instead press for a "liberal" interpretation of the Act that would cover any statement "about mileage"  (Opp. 8-9)—but no amount of "liberal" construction can change the plain text of the statute, which requires only "[d]isclosure of the *cumulative mileage registered on the odometer*," if known.  49 U.S.C. § 32705(a)(1) (emphasis added).

Once again, the cases cited by Plaintiffs merely serve to highlight the deficiency of their claims.  As Plaintiffs' summary of *Ryan* makes clear, the court there simply held that "false oral statements . . . . *contradicting [the odometer mileage] statement*" could give rise to liability. (Opp. 10 (quoting *Ryan*, 592 F.2d at 761) (emphasis added).)  Other cases Plaintiffs cite predicate

liability on a classic misrepresentation of cumulative mileage to the consumer,[4] or the failure to provide the consumer with "Transfer Forms . . . required by the Odometer Act [and] certain mandatory disclosures," which the defendant conceded was a violation of the Act. *Owens* v. *Samkle Automotive Inc.*, 425 F.3d 1318, 1320 (11th Cir. 2005).[5]  Similarly, in *Yazzie* v. *Amigo Chevrolet, Inc.*, the defendant did not "comply with the Odometer Act's requirements directing how an odometer reading is to be provided." 189 F. Supp. 2d 1245, 1247 (D.N.M. 2001).[6]

### B.   Plaintiffs Have Failed To Allege Intent To Defraud.

As Plaintiffs concede, they have failed to allege specific intent to defraud as to cumulative mileage, which is required to bring a private claim under the Odometer Act.[7]  For this

---

[4] *Hughes* v. *Box*, 814 F.2d 498 (8th Cir. 1987) (altered title misrepresented cumulative mileage); *Vieczorek* v. *Khorrami*, 2019 WL 1082431 (M.D. Fla. Mar. 7, 2019) (dealer misrepresented cumulative mileage); *Tirtel* v. *Sunset Auto & Truck, LLC*, 2019 WL 186650, at *1 (M.D. Fla. Jan. 14, 2019) (odometer reading misrepresented cumulative mileage).

[5] Plaintiffs seize upon language from *Owens* indicating that the Act is implicated "not only with respect to the actual number of miles driven, but where those miles were driven and by whom'" (Opp. 11), but that language was describing the requisite *intent to defraud* that *Owens* concluded was sufficient under the Act—not what kind of *statements* can give rise to liability.  And as explained below (*infra* n.7), the majority of courts disagree with *Owens* even on its own terms.

[6] Plaintiffs' last-ditch effort to save their Odometer Act claim by asserting a "conspiracy" to violate the Act—a cause of action not pleaded in the Complaint—fails for the simple reason that there can be no "conspiracy" without an actionable misrepresentation.  *See, e.g.*, *Bertolotti* v. *A&I Int'l Motor Corp.*, 2016 WL 6804624, at *2-3 (S.D. Fla. Nov. 17, 2016) (dismissing claim for "conspiracy to violate the Federal Odometer Act" because the alleged misrepresentations were "not required disclosures").

[7] Plaintiffs acknowledge a "split of authority" as to whether the Act's "intent to defraud" element requires intent to defraud *with respect to mileage*, but ignore that the "vast majority" of courts have held that "a specific intent to defraud as to mileage" is required.  *Nabors* v. *Auto Sports Unlimited, Inc.*, 475 F. Supp. 2d 646, 649-54 (E.D. Mich. 2007) (collecting cases).  This issue has not yet been addressed by the Fourth Circuit, but the Seventh and Ninth Circuits have held that the Act "extends only to cases where the transferor intended to defraud a transferee about the vehicle's mileage."  *Ioffe* v. *Skokie Motor Sales, Inc.*, 414 F.3d 708, 714 (7th Cir. 2005); *Bodine*, 533 F.3d 1145.  The majority of district and state courts to consider the issue agree.  *See, e.g.*, *Tripp* v. *Charlie Falk Auto.*, 2001 WL 1105132, at *5 (E.D. Va. Aug. 22, 2001), *aff'd*, 290 F. App'x 622 (4th Cir. 2008); *Compton* v. *Altavista Motors, Inc.*, 121 F. Supp. 2d 932, 941-42 (W.D. Va. 2000);

reason alone, their claims should be dismissed.  But Plaintiffs argue that VWGoA's requisite intent may be inferred so long as it "knew" about or was "grossly negligent" regarding alleged Odometer Act violations arising from its statements in the original title applications.  (Opp. 13.)  This argument thus rises and falls with Plaintiffs' misunderstanding of the Odometer Act's requirements.   Because Plaintiffs fail to allege an underlying violation, they cannot even meet their own manufactured lower standard for intent.

## II.   PLAINTIFFS' OPPOSITION CONFIRMS THAT THEIR COMMON LAW FRAUD AND UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED.

### A.   Plaintiffs Have Failed To State Any Fraud Claims.

*No Material Misrepresentation*.   For all three categories of fraud Plaintiffs allege—the vehicles' ownership history, compliance with FMVSS, and mileage at the time of original titling—the Opposition merely repeats the speculative and conclusory allegations of the Complaint, which is not enough to survive a motion to dismiss consistent with Rule 9(b).  *See United States ex rel. Nathan* v. *Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013) ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in [] conclusory fashion.").

*First*, regarding the ownership history of the vehicles, Plaintiffs do not dispute that *Carfax* (i) created the definition of "owner," (ii) determined that the cars should be designated as "1-Owner" vehicles, and (iii) then published general statements explaining why consumers supposedly should consider "1-Owner"-designated vehicles as valuable.  Plaintiffs conclusorily claim that VWGoA "controlled," "facilitated," or "maintained direct involvement in disseminating the at-issue false information" (Opp. 16-17), but point to no *factual* allegations other than

---

*Austin* v. *Stokes-Craven Holding Corp.*, 691 S.E.2d 135, 147-49 (S.C. 2010); *Locascio* v. *Imports Unlimited, Inc.*, 309 F. Supp. 2d 267, 270-71 (D. Conn. 2004).

VWGoA's agreement to distribute Carfax reports to potential purchasers.  This is insufficient for Plaintiffs to meet their heightened Rule 9(b) burden to plead that *VWGoA* made fraudulent misstatements.  Although Plaintiffs invoke the principle that the "maker of a fraudulent representation" to Person A may be liable if that "misrepresentation" was made with the expectation that Person A would repeat it to Person B (Opp. 16), Plaintiffs never allege what "fraudulent representation" *VWGoA supposedly made to Carfax*.  Without *any* allegation of whether or how VWGoA misrepresented the vehicles' ownership history to Carfax, much less factual allegations that satisfy Rule 9(b), Plaintiffs plainly cannot state a fraud claim against VWGoA based on the theory that Carfax repeated alleged misrepresentations to Plaintiffs in the Carfax reports.

In any event, the Opposition all but concedes that the "1-Owner" designation was not materially false.  Directly contrary to their Complaint—which alleged that it was fraudulent to market these vehicles as "1-Owner" "even though Volkswagen knew that multiple individuals . . . possessed and used" them (Compl. ¶ 134)—Plaintiffs now contend that the "1-Owner Vehicle" designation is misleading because VWGoA "knew its prospective buyers would believe that the car was driven primarily by the same person *or limited group of persons* in a consistent manner." (Opp. 17.)  Plaintiffs do not explain the difference between the "limited group of persons" that any reasonable person would understand might have driven a "1-Owner" vehicle and the "many different individuals" (Opp. 18 n.6) that supposedly were concealed by the "1-Owner" label on these vehicles.  Without any such particularized allegations, such hair-splitting plainly does not suffice to state a claim of fraud.

*Second*, Plaintiffs have failed to allege any *facts* supporting their claim that their vehicles did not comply with FMVSS and instead restate the same bare legal conclusions from the

Complaint.   (*See, e.g.*, Opp. 18 ("[T]hese Pre-Production Cars violated Federal Safety Standards.") (quoting Compl. ¶ 2).)   But "statements of bare legal conclusions . . . are insufficient to state a claim."  *Aziz* v. *Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011).[8]  Plaintiffs virtually concede this point when they argue that the "Class Vehicles' status as Pre-Production cars . . . *strongly suggest[s]* that those cars do not comply with Federal Safety Standards."  (Opp. 19.) Plaintiffs point to the May 2018 Recall Notice, but it explicitly states that VWGoA did not identify any non-conformance or safety issue (Mot. 21), and courts in any event have recognized that the "taking of precautions against the future, such as issuance of recall letters, cannot be construed as an admission of responsibility for the past."  *Perona* v. *Volkswagen of Am., Inc.*, 684 N.E. 2d 859, 863 (Ill. App. Ct. 1997).  Plaintiffs also point to purported communications involving employees of VWGoA and VWGoA's Chattanooga facility to try to support their speculative claim of non-compliance with FMVSS.  (Opp. 19.)  Again, nothing in these exchanges shows any actual non-compliance with safety standards or illegality.[9]

> *Finally*, Plaintiffs argue that "VWGOA intended for its misrepresentations [of mileage at titling] to be repeated to Plaintiffs" and that "VWGOA republished this false mileage information."   (Opp. 21.)   But Plaintiffs do not, and cannot, dispute that any alleged

---

[8] Plaintiffs also claim that VWGoA "attempt[ed] to cover up the fraud" by failing to notify NHTSA and that this "covering up the truth" is also "classed as misrepresentation." (Opp. 20.) This makes no sense because the alleged "cover up" occurred *after* Plaintiffs' purchase of the vehicles. Nor have Plaintiffs alleged that there was any illegality or violation of FMVSS to "cover up."

[9] Plaintiffs claim that VWGoA was required to issue an "alterer's certificate" with any vehicles that were retrofitted before being sold because such requirement applies to "the sale of new vehicles for the purpose of resale." (Opp. 19 & n.7.) But under Plaintiffs' own allegations, VWGoA supposedly retrofitted cars not when they were "new vehicles," but "after what typically amounts to a year of use" by VWGoA. (Compl. ¶ 92.) Nor do Plaintiffs allege any facts suggesting that the purported alterations might have "affect[ed] the conformity of the vehicles with one or more [FMVSS]." 49 C.F.R. § 567.3 (definition of "Altered vehicle").

misrepresentations by VWGoA were made to state titling officials—*not* Plaintiffs—and that any alleged misrepresentations Plaintiffs received were from Carfax—*not* VWGoA.

*No Reliance*.   There is no dispute that the Complaint fails to allege that Plaintiffs received and read a Carfax report before deciding to purchase their vehicles.  To try to overcome this fatal deficiency, Plaintiffs ask this Court to relieve them of their pleading burden and instead apply an "inference of reliance . . . under Virginia law" to their fraud claims arising under other states' laws.  (Opp. 21-22 (quoting *Wilson* v. *Carpenter's Adm'r*, 21 S.E. 243, 245 (Va. 1895)).) Plaintiffs cite no Virginia case applying such an "inference" to a fraud claim under another state's law, but rely solely on a Restatement for the principle that Virginia courts would apply such a "rebuttable presumption of reliance in Plaintiffs' favor" as a "procedural" rule.  (Opp. 23-24.)  To the contrary, Virginia courts recognize that a "rebuttable presumption of law . . . *is prescribed by a rule of the substantive law.*"  *Simpson*, 175 S.E. at 329; *accord Woody*, 572 S.E.2d at 529.  Thus, in a recent case similar to this one, a Virginia court explained that a Tennessee plaintiff was required to plead with "specificity" all the elements of "the substantive law of Tennessee" to state a fraud claim, including the element that "the plaintiff reasonably relied on" the alleged misrepresentation.  *In re Volkswagen "Clean Diesel" Litig.*, 2016 WL 10880209, at *9 (Va. Cir. Ct. Aug. 30, 2016).  Here too, as Plaintiffs do not dispute that the substantive law of the states where Plaintiffs purchased their vehicles applies to their fraud claims, Plaintiffs must plead *all* of the elements of their fraud claims notwithstanding any "presumption" under Virginia law.

In any event, Plaintiffs' reliance on the so-called "*Wilson* Inference" to avoid their pleading burden is wrong even as a matter of Virginia law.  As the Virginia Supreme Court has made clear, "allegations of fraud in a complaint must show, specifically and in detail, *all* elements of the cause of action at a level which, if believed, would qualify as clear and convincing proof"—

and "[o]ne element of fraud . . . is that the victim reasonably relied upon the misrepresentations." *Sweely Holdings, LLC* v. *SunTrust Bank*, 820 S.E.2d 596, 606-07 (Va. 2018); *see also Zawhorodny* v. *Va. Distillery Co., LLC*, 2019 WL 4170175, at *3 (Va. Cir. Ct. Mar. 21, 2019) (a plaintiff must "allege[] reasonable reliance on the misrepresentation"); *Livermon* v. *Didlake, Inc.*, 2019 WL 4259666, at *1 (Va. Cir. Ct. Jan. 25, 2019) (same).   By contrast, to the extent that courts have applied the *Wilson* Inference, it has been largely limited to the real property context and for the purpose of weighing *evidence* in adjudicating fraud claims—not to relieve plaintiffs of their pleading burden.   *See, e.g.*, *Strickland* v. *Cantonwine*, 124 S.E. 292, 298 (Va. 1924) (using the inference to assess the "*evidence* of the seller that the purchaser did not rely upon such representations") (emphasis added); *Wilson*, 21 S.E. at 245 (using the inference to assess "the tendency of all the *evidence*") (emphasis added).

## B.   Plaintiffs Have Failed To State Unjust Enrichment Claims.

Nothing in the Opposition can salvage Plaintiffs' unjust enrichment claims.

**California.**   Although Plaintiffs cite isolated California cases, "the majority rule in California is that there is no standalone cause of action for 'unjust enrichment'."   *Goldman* v. *Bayer AG*, 2017 WL 3168525, at *8 (N.D. Cal. July 26, 2017).[10]

**Illinois.**   Even the cases Plaintiffs cite recognize that "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related

---

[10] The California Supreme Court in *Hartford Casualty Insurance Co.* v. *J.R. Marketing, L.L.C.* expressly limited its holding to the facts and procedural history before it.   353 P.3d 319, 326-27 (Cal. 2015).   As a result, California appellate decisions since *Hartford* have continued to apply the general rule that "[u]njust enrichment is not a cause of action."   *See, e.g.*, *De Havilland* v. *FX Networks, LLC*, 230 Cal. Rptr. 3d 625, 646 (Ct. App. 2018); *Daniel* v. *Wayans*, 213 Cal. Rptr. 3d 865, 891-92 (Ct. App. 2017).

claim." *Cleary* v. *Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).   Thus, even if an independent unjust enrichment cause of action could exist under Illinois law, that claim would not survive the dismissal of Plaintiff Calise's fraud and breach of contract claims.

   **Colorado, Florida, and Washington.**   Plaintiffs' claims for breach of contract, breach of warranty, fraud, and violation of state consumer protection laws—all based on the same allegations supporting their unjust enrichment claims—demonstrate that an adequate remedy at law is available, which requires dismissal under Colorado, Florida, and Washington law.[11]

   **Florida, New Jersey, and Washington.**   The Opposition confirms that Plaintiffs have failed to allege any direct relationship with VWGoA, as they must to state a claim.   As the Florida Supreme Court has made clear, "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant." *Kopel* v. *Kopel*, 229 So. 3d 812, 818 (Fla. 2017). In New Jersey, it is well established that consumers "confer a benefit" on the party from whom they purchase a product—here, nonparty dealerships—"not on the manufacturer." *Snyder* v. *Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011).[12]   As for Washington, Plaintiffs rely solely on a purported "exception" to the direct relationship requirement (Opp. 30), but the case they cite, *Farwest Steel Corp.* v. *Mainline Metal Works, Inc.*, 741 P.2d 58, 64-65 (Wash. Ct. App. 1987), says no such thing and instead found no unjust enrichment.

---

[11] *See Harris Grp., Inc.* v. *Robinson* 209 P.3d 1188, 1207 (Colo. App. 2009) (reversing an unjust enrichment award because "the company had an adequate remedy at law"); *Zarrella* v. *Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) (unjust enrichment is "not available [in Florida] where there is an adequate legal remedy"); *Orwick* v. *City of Seattle*, 692 P.2d 793, 796 (Wash. 1984) ("Equitable relief is available only if there is no adequate legal remedy."). *Auburn Mechanical, Inc.* v. *Lydig Construction, Inc.* is inapposite because the plaintiff there sought money damages as its *sole* remedy.   89 Wash. App. 893, 901-02 (1998), but Plaintiffs here seek various equitable and legal remedies.

[12] The only New Jersey case Plaintiffs cite in their favor acknowledged that "the weight of th[e] authority is certainly" that a direct relationship or benefit is required.   *Stewart* v. *Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 197 (D.N.J. 2012).

### III.     PLAINTIFFS' OPPOSITION CONFIRMS THAT THEY ARE NOT THIRD-PARTY BENEFICIARIES UNDER VIRGINIA CONTRACT LAW.

Based on their conclusory allegation that "[t]he Carfax Contract was made for the benefit of purchasers and prospective purchasers of VWGOA Certified Pre-Owned Vehicles, which includes the Plaintiffs as well as all Class members" (Opp. 31), Plaintiffs argue that they are third-party beneficiaries of a contract between VWGoA and Carfax.  But the Virginia Supreme Court has recognized third-party beneficiary status only where "the contracting parties *intended* to confer a benefit upon [a] *particular claimant*."  *Ward* v. *Ernst & Young*, 435 S.E.2d 628, 635 (Va. 1993) (emphasis added).  Here, Plaintiffs at best allege that they were part of a group of incidental beneficiaries: "purchasers and prospective purchasers" of VWGoA CPO vehicles.  (Compl. ¶ 150.) This allegation is insufficient because "it is not enough that the third-party is only one member of a large class of possible beneficiaries under the contract."  *William* v. *AES Corp.*, 28 F. Supp. 3d 553, 569 (E.D. Va. 2014) (citing *Kelly Health Care, Inc.* v. *Prudential Ins. Co. of Am., Inc.*, 309 S.E.2d 305, 307 (Va. 1983)).

Nor can Plaintiffs salvage their claim by arguing that "[n]o other provision of the Carfax Contract contradicts the claim that Plaintiffs and Class members were intended beneficiaries of the Carfax Contract."  (Opp. 32.)  This argument misunderstands the standard: it is *Plaintiffs'* burden to "show that the parties to the contract clearly and definitely intended it to confer a benefit upon [them]."  *Prof'l Realty Corp.* v. *Bender*, 222 S.E.2d 810, 812 (Va. 1976). The cases Plaintiffs cite (Opp. 32-33) confirm this principle of Virginia law:  unlike here, the contracts in those cases *specifically* intended to confer a benefit on the third party.  *See Ogunde* v. *Prison Health Servs., Inc.*, 645 S.E.2d 520, 525 (Va. 2007) (contract provided express benefit to "approximately 6,000 inmates" identified in the contract, including the plaintiff); *Rauchfuss* v. *Peninsula Radiological Assocs., Ltd.*, 2016 WL 10879726, at *1 (Va. Cir. Ct. Apr. 28, 2016)

("whole intent" of contract was to confer benefit on patients of two healthcare providers).[13] Plaintiffs' breach of contract claim must fail because their conclusory allegations show only that they may have been part of a large group of incidental beneficiaries to the Carfax Contract, not that VWGoA and Carfax had a clear and definite intent to benefit Plaintiffs specifically.

## IV.    PLAINTIFFS' OPPOSITION CONFIRMS THAT THEIR CONSUMER PROTECTION ACT CLAIMS SHOULD BE DISMISSED.

Aside from being based on the same deficient allegations as their common law fraud clams, Plaintiffs' state consumer protection claims should also be dismissed for failure to plead damages.  In claiming that they need not plead damages "with particularity" to survive a motion to dismiss (Opp. 33-34), Plaintiffs miss the point.  The critical defect in Plaintiffs' claims is not their failure to plead the *amount* of their damages, but rather their failure to plead with particularity that they have been actually damaged by VWGoA's conduct *at all*.  Plaintiffs argue that, but for the alleged misrepresentations, they "would have either avoided purchasing those Vehicles or would have paid less." (Opp. 33.)  But the mere claim that Plaintiffs paid "a higher price . . . than the market would have born if not for" the advertised benefits is "too speculative" for recovery.  *Prohias* v. *Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336-37 (S.D. Fla. 2007).[14]  Without any allegation that Plaintiffs' vehicles are *actually* defective or non-compliant—or in other words,

---

[13] Plaintiffs' reliance on *Thorsen* v. *Richmond SPCA*, 786 S.E.2d 453 (Va. 2016), is misplaced. That case stands for the unremarkable proposition that contingent beneficiaries to wills—on whom wills clearly intend to confer a benefit *if* the contingencies arise—need not be identifiable when a will is drafted because "the testator cannot know . . . whether any particular contingency will be removed such that a [particular] contingent beneficiary will in fact take." *Id*. at 464.

[14] Unlike in the cases Plaintiffs cite, here, Plaintiffs fail to allege that their vehicles were anything other than advertised or operated differently than expected.  *See Marty* v. *Anheuser-Busch Cos.*, 43 F. Supp. 3d 1333, 1348 (S.D. Fla. 2014) (plaintiffs alleged that they paid more for beer because it was falsely advertised as being brewed in Germany); *Gamboa* v. *Ford Motor Co.*, 381 F. Supp. 3d 853, 886 (E.D. Mich. 2019) (plaintiffs "paid for a product that did not operate in the way they believed it did").

*actually* worth less than what they had paid for them—Plaintiffs have not sufficiently "alleged how the purchase of [the vehicle] constituted a specific loss." *Franulovic* v. *Coca-Cola Co.*, 2007 WL 3166953, at *9 (D.N.J. Oct. 25, 2007) (dismissing New Jersey Consumer Fraud Act claim and rejecting plaintiff's "conclusory statement" that she suffered an ascertainable loss).[15]  Plaintiffs also point to their bare assertion that their vehicles "are now known to be essentially worthless given that those cars are not properly certified to federal safety standards, cannot be legally driven and cannot be legally sold."  (Opp. 34.)  Aside from being entirely conclusory, the claim that their vehicles are "essentially worthless" is contradicted by VWGoA's offer to repurchase the vehicles covered by the May 2018 recall.[16]   NHTSA, Part 573 Safety Recall Report, 18V-329, https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18V329-3476.pdf (last visited Oct. 4, 2019).

## V.   PLAINTIFFS' OPPOSITION DOES NOT SAVE THEIR WARRANTY CLAIMS.

   **No Defect.**   Plaintiffs' Opposition does not—and cannot—point to any non-conclusory allegations in their Complaint identifying any actual defect.  Instead, Plaintiffs  wildly speculate that law enforcement may initiate forfeiture actions or insurance companies may void coverage, based on Plaintiffs' bare assertions that the manufacturer's certifications affixed to the vehicles are supposedly not "truthful" and the supposedly required alterer's certifications are

---

[15] *See also Gorran* v. *Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 329 (S.D.N.Y. 2006) (dismissing FDUTPA claim because Plaintiff failed to allege "facts sufficient to show that defendants' alleged unfair or deceptive practices caused a diminution in the value of the products that he purchased"), *aff'd*, 279 F. App'x 40 (2d Cir. 2008); *Jamison* v. *Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911 (N.D. Ill. 2011) ("To state a claim under ICFA, a plaintiff must allege that he or she has suffer[ed] actual damage as a result of a violation of th[e] Act. . . . Theoretical harm is insufficient.").

[16] Moreover, nowhere in the Opposition do Plaintiffs attempt to identify an applicable ground for tolling under Florida's equitable tolling statute, and "the legislature has made clear its intent to exclude all tolling exceptions not listed in the statute." *HCA Health Servs. of Fla., Inc.* v. *Hillman*, 906 So. 2d 1094, 1098 (Fla. Dist. Ct. App. 2004).  Plaintiff Holovatyuk's untimely claim is therefore barred.

"missing."  (Opp. 35.)  But speculation about a potential defect is not sufficient to state a claim for breach of implied warranty of merchantability.  *See, e.g.*, *Yost* v. *Gen. Motors Corp.*, 651 F. Supp. 656, 657 (D.N.J. 1986) (dismissing warranty claim because "[a]ll [plaintiff] is able to allege is that the potential leak is 'likely' to cause damage and 'may' create potential safety hazards"); *Scott* v. *Honeywell Int'l, Inc.*, 2016 WL 1077264, at *5 (D. Colo. Mar. 18, 2016) (dismissing warranty claim because "[w]hile plaintiff alleges a litany of problems that Honeywell humidifiers are prone to have, he fails to allege that his humidifiers experienced any of those alleged problems or that they failed as a result of them").

Plaintiffs' reliance on *In re General Motors LLC Ignition Switch Litigation*, 339 F. Supp. 3d 262 (S.D.N.Y. 2018), is misplaced.  The plaintiffs there alleged a specific, identifiable defect—a faulty ignition switch in their vehicles—and the only issue was whether plaintiffs were also required to allege that the defect had already caused damage or injury, or whether they could proceed solely on an economic loss theory even if the defect had not manifested.  *Id.* at 274-75. In contrast, Plaintiffs here do not specifically allege even an unmanifested defect, but rely instead on bald claims that their vehicles may be seized or insurance may be declined because of unfounded legal conclusions regarding the vehicles' certifications.  (Opp. 35-36.)

**Florida and California—No Privity.**  Plaintiffs concede that they cannot demonstrate privity with VWGoA.  Thus, Plaintiffs have agreed to withdraw their claims for breach of implied warranty under Illinois and Washington law.  (*See* Mot. 32, Opp. 37.)

But Plaintiffs mistakenly argue that Florida and California law do not require privity for implied warranty claims.  (Opp. 37.)  Florida law is clear that "the plaintiff must be in privity of contract with the defendant" to recover.  *T.W.M.* v. *Am. Med. Sys.*, 886 F. Supp. 842,

844 (N.D. Fla. 1995).[17]   Because the Florida Supreme Court long ago "str[uck] the fatal blow to all previous exceptions to the privity requirement in implied warranty actions," *Kramer* v. *Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988), Plaintiffs' Florida implied warranty claim must be dismissed.  With respect to California, Plaintiffs assert that privity is not required under the Song-Beverly Warranty Act (Opp. 37), but ignore that it covers only "consumer goods" defined as a "*new* product."  Cal. Civ. Code § 1791(a) (emphasis added).[18]   Courts routinely dismiss Song-Beverly claims brought by purchasers of used cars because the Song-Beverly obligation is on "the distributor or retail seller and 'not the original manufacturer, distributor, or retail seller.'" *Victorino* v. *FCA US LLC*, 326 F.R.D. 282, 301 (S.D. Cal. 2018) (rejecting "Plaintiff's argument that the Song-Beverly Act applies to used vehicles purchased by class members from FCA's authorized dealerships.").  Because the Song-Beverly Act does not apply here and there is no privity with VWGoA, Plaintiffs' California implied warranty claims must be dismissed.[19]

**No Breach of Express Warranty.**  Plaintiffs claim that VWGoA "failed to adhere to its representations regarding the Class Vehicles' prior use, history, condition, mileage, and compliance with FMVSS" (Opp. 38), but fail to point to any non-conclusory allegations in the Complaint showing that VWGoA breached any express warranties regarding the vehicles'

---

[17] To try to avoid the privity requirement (Opp. 37), Plaintiffs rely on *Sanchez-Knutson* v. *Ford Motor Co.*, 52 F. Supp. 3d 1223, 1234 (S.D. Fla. 2014), which courts have repeatedly declined to follow because it runs contrary to Florida law.  *See, e.g.*, *Johnson* v. *Nissan N. Am., Inc.*, 2018 WL 905850, at *5 (N.D. Cal. Feb. 15, 2018) ("Because the weight of the authority from modern Florida courts is consistent . . . I decline to follow *Sanchez-Knutson*, and instead follow the Florida courts' clear guidance that Florida law does not recognize this [third-party beneficiary] exception.").

[18] Purchasers of used goods may only bring Song-Beverly claims against the used-goods retailer or distributor, not the "original manufacturer, distributor, or retail seller . . . with respect to such goods when new." *Id.* at § 1795.5.

[19] Even if they ever existed, any Song-Beverly claims would have expired.  For used cars, the implied warranty under the Act "extends only up to three months after purchase." *Mui Ho* v. *Toyota Motor Corp.*, 931 F. Supp. 2d 987, 993 (N.D. Cal. 2013); *see* Cal. Civ. Code § 1795.5(c).

characteristics.[20]  With respect to FMVSS compliance, the Complaint merely alleges the *possibility* that certain Pre-Production vehicles do not comply with FMVSS.  (*See* Compl. ¶¶ 40, 43, 135.) With respect to "1-Owner" status, Plaintiffs do not allege that the Press- and Pool-Fleet vehicles had more than one owner, but only that they may have been *used* by more than one person.  (*See* Opp. 17 n.6; Compl. ¶ 134.)  Nor do Plaintiffs point to any express warranty regarding the number of previous *users*, and instead concede that it is typical for multiple people to use a "1-Owner" vehicle.  (Opp. 17 n.6.)  Even at the motion to dismiss stage, such vague allegations are insufficient to state a breach of express warranty claim.

      **Colorado, Florida, and New Jersey—No Tolling.**  Plaintiffs argue that their warranty claims should be tolled under a theory of "fraudulent concealment" (Opp. 38),  but mere non-disclosure of information is insufficient for equitable tolling without additional wrongdoing by the defendant.  *See, e.g.*, *Licul* v. *Volkswagen Grp. of Am.*, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013) ("[A]llegations of . . . inaction and non-disclosure are wholly insufficient to supply the affirmative steps taken to prevent Plaintiffs from discovering the basis of their claims that would be necessary before tolling based on fraudulent concealment becomes appropriate."); *Klingemann* v. *Breg, Inc.*, 2012 WL 1378640, at *2 (D. Colo. Apr. 20, 2012) ("[T]he Court is not compelled to toll Plaintiff's limitations period simply because the Defendant withheld information from Plaintiff."); *David* v. *Volkswagen Grp. of Am.*, 2018 WL 1960447, at *4-5 (D.N.J. Apr. 26,

---

[20] The Opposition fails to address that (i) Plaintiff Thompson does not allege that he purchased a Pre-Production vehicle and has no basis for breach of express warranty for alleged non-compliance with FMVSS (*see* Mot. 33 n.25; Opp. 38 n.10); and (ii) Plaintiff Calise alleges that he purchased his non-CPO vehicle from a private individual and has no basis for breach of express warranty of one previous owner.  (*See* Mot. 33 n.26.)  Because Plaintiffs have offered no response to these arguments, Plaintiffs Thompson and Calise's express warranty claims should be dismissed as to FMVSS and Carfax "1-Owner," respectively.

2018) (declining tolling "simply because Defendant withheld information from Plaintiff"). Because the Complaint merely alleges that VWGoA withheld information, equitable tolling does not apply, and the Colorado, Florida and New Jersey warranty claims are time-barred.[21]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Dated:  October 4, 2019                                    Respectfully submitted,

**MCGUIRE WOODS LLP**                          **SULLIVAN & CROMWELL LLP**

/s/ Frank Talbott V                                        Robert J. Giuffra Jr. (*pro hac vice*)
Terrence M. Bagley (VSB No. 22081)             Suhana S. Han (*pro hac vice*)
Kenneth W. Abrams (VSB No. 78216)            Adam R. Brebner (*pro hac vice*)
Frank Talbott V (VSB No. 86396)                  125 Broad Street
Gateway Plaza                                              New York, NY 10004
800 East Canal Street                                     Tel:  212-558-4000
Richmond, Virginia 23219                             giuffrar@sullcrom.com
Tel:  804-775-4773                                        hans@sullcrom.com
tbagley@mcguirewoods.com                         brebnera@sullcrom.com
kabrams@mcguirewoods.com
ftalbott@mcguirewoods.com                          Judson O. Littleton (*pro hac vice*)
                                                                  1700 New York Ave, NW
                                                                  Washington, D.C. 20006
                                                                  Tel:  202-956-7500
                                                                  littletonj@sullcrom.com

                                                                  *Counsel for Volkswagen Group of America, Inc.*

---

[21] Finally, in attempting to avoid preemption of their request for a recall, Plaintiffs rely only on cases outside of the Fourth Circuit (Opp. 39)—completely disregarding authority from this Circuit correctly holding that the National Traffic and Motor Vehicle Safety Act ("Safety Act") preempts court-ordered vehicle recalls.  (*See* Mot. 35.)  Nor do Plaintiffs even attempt to rebut the reasoning of these decisions, which recognize that the Safety Act evinces a "clear congressional intent to limit encroachment on the agency's work" and so "conflict preemption applies to prevent the judiciary from ordering vehicle recalls as a remedy in a court action."  *Cox House Moving, Inc.* v. *Ford Motor Co.*, 2006 WL 2303182, at *8-9 (D.S.C. Aug. 8, 2006).

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2019, I electronically filed the foregoing with

the Clerk of Court using the Court's CM/ECF filing system which will send notification of

electronic filing (NEF) to all counsel of record.

*/s/ Frank Talbott V*
Frank Talbott V (VSB No. 86396)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: (804) 775-4773
Fax: (804) 698-2313
ftalbott@mcguirewoods.com

*Counsel for Volkswagen Group of America, Inc.*