IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| RICARDO R. GARCIA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19cv331-LO-MSN |
| | ) | |
| VOLKSWAGEN GROUP OF AMERICA, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**VOLKSWAGEN AKTIENGESELLSCHAFT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(6)**

MCGUIREWOODS LLP

Terrence M. Bagley (VSB No. 22081)
Kenneth W. Abrams (VSB No. 78216)
Frank Talbott V (VSB No. 86396)
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: 804-775-4773
Fax: 804-698-2323
tbagley@mcguirewoods.com
kabrams@mcguirewoods.com
ftalbott@mcguirewoods.com

SULLIVAN & CROMWELL LLP

Robert J. Giuffra Jr. (*pro hac vice*)
Suhana S. Han (*pro hac vice*)
Adam R. Brebner (*pro hac vice*)
125 Broad Street
New York, NY 10004
Tel: 212-558-4000
Fax: 212-558-3558
giuffrar@sullcrom.com
hans@sullcrom.com
brebnera@sullcrom.com

Judson O. Littleton (*pro hac vice*)
1700 New York Avenue, NW
Washington, DC 20006
Tel: 202-956-7500
Fax: 202-293-6330
littletonj@sullcrom.com

*Counsel for Volkswagen Group of America, Inc.,
and Volkswagen Aktiengesellschaft*

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** .................................................................................................1

**BACKGROUND** ...................................................................................................................4

**ARGUMENT** .......................................................................................................................5

**I.    PLAINTIFFS FAIL TO ALLEGE ANY FACTS SPECIFIC TO VW GERMANY SUFFICIENT TO STATE A CLAIM AGAINST IT** ......................................................7

      A.    Plaintiffs Impermissibly Engage in Group Pleading ...............................7

      B.    VW Germany Is Not Liable for the Alleged Actions of VWGoA .......................10

**II.   THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER VW GERMANY**...................................................................................................14

      A.    Plaintiffs Do Not Adequately Allege that their Claims Arise Out of VW Germany's Alleged Contacts in Virginia, and the Contacts Alleged Do Not Satisfy the Constitutionally Minimum Requirement for Due Process..................15

      B.    It Would Be Unreasonable To Exercise Personal Jurisdiction Over VW Germany ...........................................................................................19

**III.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST VW GERMANY** ...............20

      A.    Plaintiffs' Odometer Act Claim Does Not Implicate VW Germany ...................20

      B.    Plaintiffs' Unjust Enrichment Claims in Florida, New Jersey, and Washington Are Not Properly Pleaded Against VW Germany ................................................21

      C.    Plaintiffs' Consumer Protection Act Claims Should Be Dismissed ....................22

      D.    Plaintiffs' Breach of Warranty Claims Should Be Dismissed ..............................23

**CONCLUSION** .................................................................................................................24

Defendant Volkswagen Aktiengesellschaft ("VW Germany") respectfully submits this memorandum of law in support of its motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(6) to dismiss the amended putative class action complaint (the "Complaint" or "Compl.").

## PRELIMINARY STATEMENT

Plaintiffs' putative class action complaint against VW Germany is a textbook example of impermissible group pleading.  Plaintiffs seek to lump together various legally distinct entities without regard to what each of them did or where they operate.  VW Germany is a German company (an Aktiengesellschaft) that conducts its operations in Germany, and does not exercise day-to-day control over Volkswagen Group of America, Inc. ("VWGoA") or its operations in the United States.  VW Germany is not alleged to have sold the vehicles at issue to Plaintiffs or to have otherwise been a party to the alleged misconduct.  Instead, the Complaint focuses almost entirely on alleged acts of VWGoA, VW Germany's U.S. subsidiary, or a nebulous "Volkswagen," *not* VW Germany in particular.  Plaintiffs allege that VWGoA—not VW Germany—misled consumers about the prior use and mileage of the alleged Class Vehicles or simply lump all the Defendants together.  Settled law does not permit such a blatant disregard of the corporate form.  Because the claims against VW Germany fail as a matter of law and this Court lacks personal jurisdiction over VW Germany, the Complaint should be dismissed.

**Failure To State a Claim Against VW Germany.**  Although Plaintiffs must allege the elements of their claims against *each* individual defendant, the Complaint fails to do that.  Instead, Plaintiffs simply lump together VW Germany with VWGoA (and Audi Aktiengesellschaft ("Audi Germany"))[1] as "Volkswagen" and "Defendants," without identifying what actions or role

---

[1] Audi Germany has not yet been served, and this motion is solely on behalf of VW Germany.

VW Germany played in the alleged scheme.  (Compl. ¶ 1.)  Both Rule 8 and Rule 9(b) require more than that.  Plaintiffs cannot disregard the separate corporate forms of VW Germany and VWGoA to impute VWGoA's alleged knowledge, intent, and actions to VW Germany.

Likewise, Plaintiffs' conclusory allegations of a joint venture or partnership among VWGoA, VW Germany, and Audi Germany do not save the Complaint from dismissal as to VW Germany.  The Complaint contains no factual allegations supporting the existence of a joint venture or partnership agreement among VWGoA, VW Germany, and Audi Germany to defraud consumers in the sale of certified pre-owned vehicles.  Joint venture and partnership law is simply inapplicable—VW Germany was the corporate parent of VWGoA, not a joint venturer or partner.

**Personal Jurisdiction.**  The Court lacks personal jurisdiction over VW Germany, a non-resident German corporation with its headquarters and principal place of business in Wolfsburg, Germany.  (Compl. ¶ 18.)  Virginia's long-arm statute extends personal jurisdiction to the extent permissible under the Due Process Clause of the U.S. Constitution.  But the exercise of personal jurisdiction here over VW Germany would not comport with due process.  Plaintiffs do not allege that VW Germany is subject to general jurisdiction in Virginia—it is not.  And Plaintiffs likewise fail to point to any contacts VW Germany had with Virginia related to Plaintiffs' claims sufficient to satisfy the minimum contacts standard for the exercise of specific personal jurisdiction over VW Germany in Virginia in accordance with due process.

**Odometer Act Claim.**  Separate from and in addition to the reasons set forth in VWGoA's memorandum of law in support of its motion to dismiss Plaintiffs' claims ("VWGoA Mot."),[2] Plaintiffs fail to state an Odometer Act claim against VW Germany because VW Germany

---

[2] VW Germany joins and incorporates by reference the arguments set forth in VWGoA's memoranda of law in support of its motion to dismiss.  (ECF Nos. 37 ("VWGoA Mot.") & 48 ("VWGoA Reply").)  While VW Germany recognizes that the Court denied VWGoA's motion,

was never "a person transferring ownership of a motor vehicle" under the Odometer Act, 49 U.S.C. § 32705 (a)(1), and is therefore not a proper defendant for Plaintiffs' Odometer Act claims. Plaintiffs implicitly recognize this deficiency, by asserting that VW Germany is "jointly and severally liable" with VWGoA.  (Compl. ¶ 131.)  That is incorrect as a matter of law.  The "common law principle of joint and several liability" cannot "be imported" into the Odometer Act. *Ferris* v. *Haymore*, 967 F.2d 946, 956-57 (4th Cir. 1992).  Plaintiffs have thus not stated a claim against VW Germany under the Odometer Act.

**Unjust Enrichment Claims.**  The laws of Florida, New Jersey, and Washington require Plaintiffs to show that they had a direct relationship with VW Germany in order to state a claim.  But Plaintiffs claim they purchased their vehicles from non-party dealerships and do not even allege any interaction between those dealerships and VW Germany.  Thus, Plaintiffs' unjust enrichment claims against VW Germany under Florida, New Jersey, and Washington law must be dismissed.

**State Consumer Protection Act Claims.**  Similarly, the Court should dismiss the state consumer protection act claims against VW Germany because none of the alleged misrepresentations are claimed to have been made by VW Germany.  Nor do Plaintiffs allege that VW Germany played any role in the sale of the vehicles at issue to Plaintiffs.

**Breach of Warranty Claims.**  The Washington, Illinois, Florida, and California claims for breach of the implied warranty of merchantability should be dismissed because Plaintiffs fail to plead privity with VW Germany.  Nor do Plaintiffs allege that VW Germany

---

VW Germany also joins and incorporates by reference the arguments set forth in VWGoA's motion for reconsideration.  (ECF No. 53.)  VW Germany respectfully submits that the Court should reconsider its ruling and dismiss the Complaint for the reasons set forth in VWGoA's motion to dismiss, in addition to the reasons set forth herein.

participated in any of the transactions at issue directly or indirectly or provided any of the warranties at issue.  Thus, as a matter of law, VW Germany could not have breached warranties it did not make.

## BACKGROUND

As Plaintiffs concede, VW Germany is a German corporation with its principal place of business in Wolfsburg, Germany.  (Compl. ¶ 18.)  VW Germany is a distinct and separate entity from VWGoA, a New Jersey corporation operating in the United States.  (Compl. ¶ 17.)  Although Plaintiffs acknowledge that VW Germany and VWGoA are separate legal entities, the Complaint lumps them together (along with Audi Germany) as, "collectively, 'Volkswagen' or 'Defendants,'" and alleges that they together illegally marketed and sold certain certified pre-owned ("CPO") Volkswagen-branded vehicles in the United States, including to Plaintiffs.[3] Plaintiffs allege that they were misled in the purchase of their vehicles in three respects.  *First*, Plaintiffs claim that the third-party Carfax reports they allegedly received when they purchased their vehicles from non-party dealers represented their vehicles to be "CARFAX 1-Owner" vehicles, despite the fact that they were allegedly used internally by VWGoA as pool vehicles for employees or press vehicles for marketing purposes before being sold by non-party dealerships in the United States as used vehicles.  (*See*, *e.g.*, Compl. ¶ 196.)  Nowhere in the Complaint do Plaintiffs allege that VW Germany had any role in the creation, content, or dissemination of Carfax reports to the Plaintiffs.

*Second*, Plaintiffs claim that Defendants misrepresented that Plaintiffs' vehicles complied with applicable Federal Motor Vehicle Safety Standards ("FMVSS").  (*See*, *e.g.*, Compl. ¶¶ 95-103.)    Although  Plaintiffs  allege  that  VW  Germany  represented  on  the  vehicles'

---

[3] None of the Plaintiffs is alleged to have purchased an Audi vehicle.

manufacturer certificates of origin that the cars complied with FMVSS, they claim that it was VWGoA, not VW Germany, who actually made those representations to Plaintiffs "when it offered the Class Vehicles for sale." (*See*, *e.g.*, Compl. ¶ 195.)  Plaintiffs do not  allege that their vehicles were non-compliant and thus do not allege that the challenged representations were false.  Instead, Plaintiffs merely speculate that these warranties were breached because "the build of the Pre-Production Cars differs materially from the build of the Series-Productions Cars." (*See*, *e.g.*, Compl. ¶¶ 191-92.)

*Third*, Plaintiffs allege that Defendants committed "Odometer Fraud" (Compl. ¶ 60) by "falsely claim[ing] that only 10 miles had been driven on [certain] cars as of the time of initial titling and registration," rather than "disclosing that most of the miles driven" on the vehicles "occurred before the initial titling and registration." (Compl. ¶ 59.)  Here again, however, Plaintiffs allege that it was VWGoA, not VW Germany, that performed the initial titling of the cars and provided the mileage disclosures that form the basis of Plaintiffs' claims.  As with the rest of their allegations, Plaintiffs do not allege that VW Germany itself committed the alleged fraud.

## ARGUMENT

A court should dismiss a complaint pursuant to Rule 12(b)(6) where, as here, the complaint fails to state a legal claim or does not contain sufficient well-pled facts to entitle the plaintiff to relief.  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555-56 (2007).  "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd.* v. *Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  A court should not accept "unwarranted deductions of fact" or "unreasonable inferences." *Evans* v. *Napolitano*, 466 F. App'x 190, 191 (4th Cir. 2012) (citation omitted).  Before allowing a complaint to survive

a motion to dismiss, a court must conclude that the factual allegations against the named defendant "possess enough heft" to set forth "a plausible entitlement to relief." *Twombly*, 550 U.S. at 557, 559.

Because Plaintiffs' claims here sound in fraud or are based on fraud, they must also comply with Federal Rule of Civil Procedure 9(b), which mandates that they "state with particularity the circumstances constituting fraud." *See also Harrison* v. *Westinghouse Savannah River Co.*, 176 F.3d 776, 784 n.5 (4th Cir. 1999) ("[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)."). To satisfy Rule 9(b), a plaintiff "must *at a minimum*, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Murphy* v. *Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014) (quotation omitted). Rule 9(b)'s requirements apply to fraud-based state law claims asserted in federal court. *Balt. Cty.* v. *Cigna Healthcare*, 238 F. App'x 914, 921 (4th Cir. 2007) (In case involving state law claim, "[i]n evaluating whether a cause of action must be pled with particularity, a court should examine whether the claim requires an essential showing of fraud."). Rule 9(b) requires that a plaintiff plead "claims with *particularity*—including by identifying the 'who' . . . of the alleged fraud," and thus "defendants cannot be grouped together without specification of which defendant committed which wrong." *United States ex rel. Ahumada* v. *NISH*, 756 F.3d 268, 281 n.9 (4th Cir. 2014) (internal quotation marks and brackets omitted). The Fourth Circuit thus declines to consider "undifferentiated allegations against 'the . . . defendants' as a group." *Id.*

A party asserting personal jurisdiction "has the burden of establishing a *prima facie* case of jurisdiction" in order to survive a motion to dismiss under Rule 12(b)(2). *Hawkins* v. *i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). This "resembles the plausibility

inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* "That is, the district court must determine whether the facts proffered by the party asserting jurisdiction— assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Id.* The Fourth Circuit rejects a "conclusory and speculative" basis for personal jurisdiction. *Unspam Techs., Inc.* v. *Chernuk*, 716 F.3d 322, 330 (4th Cir. 2013); *accord Masselli & Lane, PC* v. *Miller & Schuh, PA*, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (stating that a court "need not credit conclusory allegations" in deciding a motion to dismiss for lack of personal jurisdiction (quotation mark omitted)); *Foster Made, LLC* v. *Foster*, 2018 WL 4693810, at *8 (E.D. Va. Sept. 28, 2018) ("Plaintiff's conclusory allegation cannot suffice to subject Defendant to personal jurisdiction in Virginia."). Likewise, given that Fourth Circuit law treats Rule 12(b)(2) motions "in conceptually the same manner as . . . the disposition of motions to dismiss under Rule 12(b)(6)," *Sneha Media & Entm't, LLC* v. *Associated Broad. Co.*, 911 F.3d 192, 196 (4th Cir. 2018), this Court should reject Plaintiffs' "formulaic recitation[s]" and "conclusory allegation[s]" of personal jurisdiction. *See Twombly*, 550 U.S. at 555, 557.

## I.     PLAINTIFFS FAIL TO ALLEGE ANY FACTS SPECIFIC TO VW GERMANY SUFFICIENT TO STATE A CLAIM AGAINST IT.

### A.     Plaintiffs Impermissibly Engage in Group Pleading.

Plaintiffs must establish the elements of their claims against *each* individual defendant. Defendants cannot be grouped "together without specif[ication of] which defendant committed which wrong." *David F. Apple, MD, Prof'l Corp. Pension Plan* v. *Prudential-Bache Secs., Inc.*, 820 F. Supp. 984, 987 (W.D.N.C. 1992), *aff'd sub. nom. Juntti* v. *Prudential-Bache Secs., Inc.*, 1993 WL 138523 (4th Cir. 1993) (per curiam)). Plaintiffs' allegations here fail under the pleading standards of both Rule 8 and Rule 9(b) because Plaintiffs impermissibly group together VW Germany with VWGoA and Audi Germany as "Volkswagen" and "Defendants."

(Compl. ¶ 1; *see, e.g.*, Compl. ¶¶ 122, 157, 164, 181, 188, 204, 226, 233, 249, 266, 273, 289, 306, 313, 329, 346, 353, 369, 386, 393.)[4]  "[G]rouping multiple defendants who are affiliated together with a single name . . . for pleading purposes" is not adequate; rather, "[p]laintiffs must be able to separately state a claim against each and every defendant joined in this lawsuit." *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016).

In particular, Rule 8 requires that the Complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson* v. *Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).  Individualized pleading is essential under the Rule "to ensure that the serious burdens of defending against this sort of lawsuit are visited upon" a defendant "only when the complaint 'plausibly suggest[s]'" that the defendant "engaged in 'his or her *own* misconduct.'"  *Evans* v. *Chalmers*, 703 F.3d 636, 661 (4th Cir. 2012) (Wilkinson, J., concurring) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 681, 677 (2009)); *Joseph* v. *Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015) (dismissing a complaint that fails to satisfy Rule 8 because the complaint "indiscriminately lump[s] all . . . Defendants together, without articulating the factual basis for each Defendant's liability" (quotation omitted)); *Atuahene* v. *City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (affirming dismissal because "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy th[e] minimum standard" of Rule 8).

Plaintiffs' impermissible use of group pleading also runs counter to the essential purposes of the heightened pleading standard of Rule 9(b).  Accordingly, courts in the Fourth Circuit routinely reject group pleading of claims sounding in fraud.  *See Juntti*, 1993 WL 138523,

---

[4] Not all claims brought against VWGoA are brought against VW Germany.  The common law fraud and breach of contract claims are only brought against VWGoA.  *See* Compl. ¶¶ 133, 145.

at *2 ("[I]ndicative of the insufficiently particular character of the complaint is its impermissible aggregation of defendants without specifically alleging which defendant was responsible for which act."); *Feeley* v. *Total Realty Mgmt.*, 660 F. Supp. 2d 700, 705 (E.D. Va. 2009) ("The Complaint while long, is replete with broad brush general group allegations, group pleading which is not sufficient in fraud claims.").[5]

Plaintiffs have failed to identify the specific role VW Germany played in the allegedly fraudulent scheme, or to plead any facts showing that VW Germany knowingly participated in such scheme. Instead, Plaintiffs refer to VW Germany collectively with VWGoA and Audi Germany as "Volkswagen" and attempt to attribute alleged conduct by VWGoA to VW Germany. At most, Plaintiffs allege that VW Germany made certain representations on the manufacturer certifications (*see*, *e.g.*, Compl. ¶¶ 191-92), but fail to show how those representations were false when made. Plaintiffs make no other allegations that VW Germany represented anything to Plaintiffs, or that VW Germany was responsible for any alleged misrepresentations in the Carfax reports.

Plaintiffs cannot simply assert that VW Germany and VWGoA have a parent/subsidiary relationship or rely on conclusory allegations that VWGoA was acting "at the direction of" VW Germany. (Compl. ¶¶ 17-18, 28, 104.) "'The fact that two separate legal entities may have a corporate affiliation does not alter [the] pleading requirement' to separately identify

---

[5] *See also Iron Workers Local 16 Pension Fund* v. *Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 579 (E.D. Va. 2006) ("Grouping defendants together in a pleading fails to satisfy the requirement that the who, what, when, where, why, and how, be pled with specificity."); *Rich Food Servs.* v. *Rich Plan Corp.*, 2001 WL 36210598, at *10 (E.D.N.C. May 12, 2001) (dismissing fraud claim because it provides "no individual identification, differentiation or explanation of [the defendants'] personal actions"); *David F. Apple, MD Prof'l Corp. Pension Plan*, 820 F. Supp. at 987 ("By using common allegations to imply that each defendant is responsible for the statements and actions of the others, plaintiffs are not in compliance with Rule 9(b), which requires that a complaint set forth with particularity each defendant's culpable conduct.").

each defendant's involvement in the conspiracy." *SD3, LLC* v. *Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015), *as amended on reh'g in part* (Oct. 29, 2015) (quoting *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 1344429, at *2 (S.D.N.Y. Mar. 23, 2015)). Plaintiffs' impermissible group pleading underscores why VW Germany is not a proper defendant in this action.  Accordingly, the Complaint should be dismissed as to VW Germany.

**B.    VW Germany Is Not Liable for the Alleged Actions of VWGoA.**

As a backstop for their impermissible group pleading, Plaintiffs allege that VW Germany should be liable for the alleged actions of VWGoA because the two companies, along with Audi Germany, "operate a joint venture," or otherwise "acted as the agents of each other" such that "all misrepresentations at-issue in this lawsuit . . . were made with knowledge and intent by VWGOA, VWAG, and Audi AG."  (Compl. ¶¶ 20, 22.)  But Plaintiffs' allegations about VW Germany's supposed joint venture or agency relationship with VWGoA and Audi Germany are entirely conclusory and insufficient to survive a motion to dismiss.

Under Virginia law,[6] the "mere showing that one corporation is owned by another or that they share common officers is not a sufficient justification for a court to disregard their separate corporate structure." *Richfood, Inc.* v. *Jennings*, 499 S.E.2d 272, 276 (Va. 1998) (citation omitted).  A "joint venture exists where two or more parties enter into a special combination . . . *without* any actual partnership or corporate designation." *PGI, Inc.* v. *Rathe Prods., Inc.*, 576 S.E.2d 438, 441 (Va. 2003) (emphasis added) (citation omitted); *see also* 46 Am. Jur. 2d Joint

---

[6] Plaintiffs assert that Virginia law should govern the fictitious joint venture and partnership because they "arose in Virginia and [are] centered in Virginia."  (Compl. ¶ 20.)  Virginia choice-of-law principles dictate that the law of the forum where an "agreement took place" governs issues surrounding that joint venture or partnership agreement.  *Sahraeyan* v. *Shahkarami*, 2014 WL 8239953, at *3 (Va. Cir. Ct. July 15, 2014).  Here, there is no joint venture or partnership agreement, but VW Germany assumes the application of Virginia law for purposes of addressing the joint venture and partnership allegations of the Complaint.

Ventures § 37 (Courts apply the joint venture doctrine to entities that "*otherwise have no legal relationship*." (emphasis added)).  Here, a corporate relationship *does exist* between VW Germany and VWGoA—that of parent and subsidiary—but the Complaint offers no legally adequate basis for a claim that VW Germany and VWGoA were in a joint venture relationship, as opposed to a normal corporate relationship among affiliated companies.

Notably, "[i]n Virginia, unlike in some states, the standards for veil piercing are very stringent and piercing is an extraordinary measure that is permitted only in the most egregious circumstances." *C.F. Tr., Inc.* v. *First Flight Ltd. P'ship*, 580 S.E.2d 806, 811 (Va. 2003); *see also Eure* v. *Norfolk Shipbuilding & Drydock Corp.*, 561 S.E.2d 663, 669 (Va. 2002) (ruling that the parent company was not responsible for providing plaintiff health insurance even though the subsidiary did not have a board of directors, and the parent company was the applicant for a letter of credit on plaintiff's behalf to help her secure health care).  Plaintiffs cannot sidestep this blackletter law with conclusory allegations of a joint venture or partnership.  Otherwise, a plaintiff could always use a joint venture or partnership allegation to dodge Virginia's stringent standards for veil piercing (where Virginia law applies to that issue) and thus join a parent corporation in any litigation with a subsidiary corporation, without any particular allegations of wrongdoing by the parent corporation.

Here, Plaintiffs have not alleged that VW Germany had "a voice in the control and management" of how VWGoA titled, registered, internally used, marketed, and/or sold CPO vehicles in the United States, or that both VW Germany and VWGoA had an "equal right to direct and govern the movements and conduct of each other in respect thereto" in the supposed joint venture.  *Flip Mortg. Corp.* v. *McElhone*, 841 F.2d 531, 539 (4th Cir. 1988) (citations omitted) (applying Virginia law); *see also Bocek* v. *JGA Assocs., LLC*, 537 F. App'x 169, 179 (4th Cir.

2013) (applying Virginia law and ruling that there was no joint venture where the parties did not "each shar[e] in the profits and hav[e] a say in management and control of the business").  To the contrary, Plaintiffs allege that VWGoA—*not* VW Germany—was in a *separate* joint venture or agency relationship with non-party VW Credit, Inc., "with respect to the specific management and sale of CPO Cars" and "in performing acts relating to the management, titling, marketing, and sale of" putative Class Vehicles.  (Compl. ¶¶ 21, 23.)

Although Plaintiffs plead that there were unspecified "directives" from VW Germany occurring at some indeterminate time (Compl. ¶ 27), this vague allegation is insufficient to disregard VWGoA's corporate form and hold VW Germany liable for VWGoA's alleged acts. Under Virginia law, to hold a parent liable for the acts of its subsidiary, "a plaintiff must show that undue domination and control was exercised by the parent corporation over the subsidiary, and that such control was used to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage."  *Bennett* v. *OmniSource Corp.*, 2015 WL 6743866, at *2-4 (W.D. Va. Nov. 4, 2015) (quotations omitted) (granting a motion to dismiss for lack of personal jurisdiction where the parent company had a financial interest in the subsidiary, provided guarantees to vendors on behalf of the subsidiary, loaned the subsidiary capital, and shared space with the subsidiary in buildings outside of Virginia).  Merely stating that VW Germany gave VWGoA "directives"—without alleging when, what, where, and by whom in particular—is insufficient to allege a joint venture under Virginia law (or to overcome its stringent bar for piercing the corporate veil).  *See Federico* v. *Lincoln Military Hous., LLC*, 127 F. Supp. 3d 623, 648 (E.D. Va. 2015) (dismissing claims against parent corporations where plaintiffs alleged that the entities "are all fruit from the same organizational tree and all control stems from" the parent companies); *William* v. *AES Corp.*, 28 F. Supp. 3d 553, 563, 574-75 (E.D. Va. 2014) (granting

motion to dismiss and rejecting plaintiffs' efforts to hold a parent company liable under conspiracy and alter ego theories where there were "only vague, conclusory allegations of conspiracy" and few "details of time and place and the alleged effect of the conspiracy" (citations omitted)).

Nor can Plaintiffs survive dismissal by alleging that certain VWGoA employees "had been instructed to sell Zero-Series Cars by VWAG executives." (Compl. ¶ 104.) Aside from the fact that selling zero-series vehicles is not unlawful, this allegation does not "show[] that [the parties] ever reached an agreement to operate the [alleged venture] together, with each sharing in the profits and having a say in management and control of the business." *Bocek*, 537 F. App'x at 179; *see also A.G. Van Metre Constr., Inc.* v. *NVKettler L.P.*, 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992) ("A conclusory allegation that Kettler and Chevy Chase were partners, or that they intended to be partners and share the profit and loss, is not sufficient. . . . Absent an alleged partnership agreement between the two, it becomes incumbent on the Complainants to allege facts which establish a partnership.").

In sum, Plaintiffs have not plausibly alleged that VW Germany was a joint participant with VWGoA in the alleged non-compliance with FMVSS and/or the three alleged misrepresentations outlined in Section II.A—the alleged conduct that forms the basis of Plaintiffs' claims. This is evident for each of Plaintiffs' claims against VW Germany. Plaintiffs do not mention a single act of VW Germany in their Odometer Act allegations. For example, they allege that "VWGOA made application for the original title" (Compl. ¶ 127) and that "VWGOA (either directly or by and through VW Credit as part of the CPO Joint Venture)"—which Plaintiffs do *not* allege VW Germany was a part of—"falsified the mileage of the Class vehicles." (Compl. ¶ 128.) But Plaintiffs do not mention VW Germany except to say that VW Germany should be "jointly and severally liable." (Compl. ¶ 131.) Nor do Plaintiffs allege that VW Germany made

representations to Plaintiffs themselves or gave Plaintiffs warranties—express or implied—for their vehicles.  Plaintiffs' unjust enrichment and consumer protection act claims are likewise fatally flawed.  (*See*, *e.g.*, *infra* Sections III.B-C.)

## II.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER VW GERMANY.

A court "has personal jurisdiction over a non-resident defendant only if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Perdue Foods LLC* v. *BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (quoting *Nichols* v. *G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993)). "Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp.* v. *Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

The exercise of personal jurisdiction comports with due process if there is either general jurisdiction or specific jurisdiction. *See Bristol-Myers Squibb Co.* v. *Super. Ct.*, 137 S. Ct. 1773, 1779-80 (2017) (citing *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011)).  It is well settled that general jurisdiction exists only when the defendant is "essentially at home in the forum State," which for a corporation means its "place of incorporation and principal place of business." *Daimler AG* v. *Bauman*, 571 U.S. 117, 137, 139 (2014) (quoting *Goodyear*, 564 U.S. at 919).  Plaintiffs have not alleged that general jurisdiction over VW Germany is proper, nor could they, because Virginia is not VW Germany's place of incorporation or principal place of business.  Rather, as Plaintiffs admit, VW Germany is incorporated in Germany and has its principal place of business there. (Compl. ¶ 18.)  The Court thus lacks general jurisdiction over VW Germany.

With respect to specific jurisdiction, the Fourth Circuit "has synthesized the due process requirements for asserting specific personal jurisdiction in a three part test in which '[it] consider[s] (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Consulting Eng'rs*, 561 F.3d at 278 (quoting *ALS Scan, Inc.* v. *Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). Although Plaintiffs "must prevail on each prong," *Perdue Foods*, 814 F.3d at 189, they do so for none.

### A. Plaintiffs Do Not Adequately Allege that their Claims Arise Out of VW Germany's Alleged Contacts in Virginia, and the Contacts Alleged Do Not Satisfy the Constitutionally Minimum Requirement for Due Process.

The Fourth Circuit's test for specific jurisdiction "requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs*, 561 F.3d at 278-79. That is, specific jurisdiction is "case-linked" jurisdiction, *Goodyear*, 564 U.S. at 919, and due process requires that a plaintiff's "claims arise out of" the defendant's alleged contacts with the forum state. *Consulting Eng'rs*, 561 F.3d at 278. Plaintiffs here must show that VW Germany's alleged contacts in Virginia gave rise to each of Plaintiffs' legal claims against VW Germany— not just that VW Germany's alleged contacts in Virginia generally relate to Plaintiffs' factual allegations. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 ("For specific jurisdiction, a defendant's general connections with the forum are not enough.").

In *CEM Corp.* v. *Personal Chemistry, AB*, the Fourth Circuit considered whether the district court had personal jurisdiction over a foreign defendant that allegedly breached an agreement to settle a patent infringement claim. 55 F. App'x 621, 622-23 (4th Cir. 2003). The Fourth Circuit held that the court lacked personal jurisdiction—notwithstanding a number of the defendant's contacts in the forum state relating to the patent infringement—because "it is the

contacts surrounding the proposed settlement and agreement-in-principle, not contacts involving the sale or advertising of a product, which may be tangentially related to one of the patents at issue in the Swedish patent infringement action, that must be the basis for specific personal jurisdiction." *Id.* at 624-25.   Therefore, to support specific jurisdiction in the present case, VW Germany's alleged contacts in Virginia must have given rise to each of Plaintiffs' legal claims against VW Germany.   Any other allegations of VW Germany's contacts in Virginia—even those that are factually related and the but-for cause of the claims, as in *CEM*—are "irrelevant in any consideration of *specific* personal jurisdiction." *Id.* at 624.

Applying this standard, Plaintiffs' alleged bases for personal jurisdiction (Compl. ¶¶ 26-29), all share a common fatal flaw:  Plaintiffs fail to satisfy their burden of alleging that VW Germany's alleged contacts in Virginia gave rise to any of their legal claims against VW Germany related to vehicle purchases that occurred outside of the Commonwealth.  All of Plaintiffs' claims are ultimately based on alleged non-compliance with FMVSS and/or three alleged misrepresentations: (1) that the Class Vehicles "conformed to all Federal Motor Vehicle Safety Standards"; (2) the "1-Owner" designation in the Carfax reports; and (3) "the mileage of the Class Vehicles as of . . . the original title."  (*See* Compl. ¶¶ 1-6.)  But Plaintiffs fail to allege that VW Germany made the vehicles non-compliant in Virginia, or that it was VW Germany that made these misrepresentations, let alone that VW Germany made these misrepresentations in or directed these misrepresentations to Virginia.[7]  Nor do Plaintiffs allege that they became aware of or relied

---

[7] Although Plaintiffs allege that VW Germany made representations on the Manufacturer Certificate of Origin (or "Manufacturer's Certification") for their express warranty claims (*see, e.g.*, Compl. ¶¶ 191-92), they do not allege that these representations were made in or directed to Virginia, and thus such allegations cannot serve as a basis for specific jurisdiction for Plaintiffs' express warranty claims in Virginia.  Moreover, Plaintiffs allege only that VWGoA, not VW Germany, made these representations to Plaintiffs when VWGoA allegedly "offered the Class Vehicles for sale."  (*See, e.g.*, Compl. ¶ 195.)

upon the alleged misrepresentations in Virginia.  Without such allegations, Plaintiffs have not met

their burden of showing that their claims arise out of VW Germany's alleged contacts in Virginia.

To the contrary, Plaintiffs' own allegations regarding VW Germany's purported

contacts with Virginia show that such contacts did not directly give rise to Plaintiffs' claims against

VW Germany.  Plaintiffs make only the following allegations against VW Germany with respect

to personal jurisdiction: (1) VW Germany allegedly transferred title of the supposed "Class

Vehicles" to VWGoA in Virginia (Compl. ¶ 26); (2) VW Germany allegedly made "directives to

VWGOA to retrofit Pre-Production and Press-Series Cars that VW Germany knew could not be

legally sold in the United States and to integrate those illegal cars into the marketplace" and

"provided oversight, strategy and financial support for the marketing and sales of those illegal

vehicles" (Compl. ¶ 27); (3) VW Germany allegedly assisted VWGoA with "formulat[ing] [the

Recall Report] in Virginia" (Compl. ¶ 28); and (4) VW Germany allegedly had an agency,

conspiracy, and/or joint venture relationship with VWGoA and Audi Germany (Compl. ¶ 29).

Regarding Plaintiffs' first allegation, Plaintiffs' claims do not directly arise out of

VW Germany's alleged title transfers to VWGoA in Virginia, as Plaintiffs never allege that it is

somehow illegal for VW Germany to transfer ownership of a vehicle to VWGoA.  (Compl. ¶ 26.)[8]

Instead, Plaintiffs' claims arise out of the states where either the vehicles were made allegedly

non-compliant with FMVSS or the alleged misrepresentations were made—neither of which

Plaintiffs allege occurred in Virginia.  Second, Plaintiffs' claims against VW Germany are not

based on VW Germany's alleged directives to and general oversight of VWGoA in the marketing

and sales of CPO vehicles.  (Compl. ¶ 27.)  Instead, they are based on conduct, such as alleged

---

[8] VWGoA purchases its vehicles from VW Germany in Germany, not in the United States.  Thus, the title transfer between VWGoA and VW Germany occurred in Germany and not in Virginia.

misrepresentations, by VWGoA or in states other than Virginia.  For example, Plaintiffs' consumer protection claims arise from allegedly false representations made to Plaintiffs in the states where they purchased their vehicles, which Plaintiffs do not allege include Virginia.  Third, any alleged input VW Germany had in the Recall Report is irrelevant because the Recall Report did not give rise to any of Plaintiffs' claims—indeed, the Recall Report was issued long after Plaintiffs purchased the Class Vehicles.  (Compl. ¶ 28.)  Fourth, regarding the allegations of agency, conspiracy, and joint venture relationships (Compl. ¶ 29), Plaintiffs do not detail which contacts in Virginia by VWGoA and Audi Germany—which cannot be imputed to VW Germany under an agency or conspiracy theory of personal jurisdiction in any event—gave rise to their claims.

Likewise, none of Plaintiffs' allegations against VW Germany with respect to minimum contacts (*see* Compl. ¶¶ 26-29) supports Plaintiffs' burden of showing that VW Germany "purposefully avail[ed]" itself of Virginia.  *See Consulting Eng'rs*, 561 F.3d at 278.  First, a "formulaic recitation" of the Virginia long-arm statute and the "legal conclusion[]" that a title transfer is sufficient to trigger Virginia's long-arm statute, is inadequate.  *Twombly*, 550 U.S. at 555, 564.  Second and third, Plaintiffs' allegations that VW Germany issued "directives" to and "oversight" of VWGoA and that VW Germany helped "formulate[]" the Recall Report (Compl. ¶¶ 27, 28) are "conclusory allegations" without any details—such as their frequency or contents— which are necessary to show that VW Germany purposefully availed itself of Virginia.  Without these details, this Court should reject these "conclusory allegations" of minimum contacts. *Masselli & Lane, PC*, 2000 WL 691100, at *1 (quotation omitted).  Finally, Plaintiffs' brief allegations of agency, conspiracy, and joint venture relationships between VW Germany, VWGoA, and Audi Germany (Compl. ¶ 29) are insufficient to support personal jurisdiction over VW Germany consistent with due process for the same reason—they are wholly conclusory and

thus do not show purposeful availment.  "Neither blanket conclusory allegations as to multiple defendants, nor simply showing a parent-subsidiary relationship, can support jurisdiction." *PBM Prods.* v. *Mead Johnson Nutrition Co.*, 2009 WL 3175665, at *2 (E.D. Va. Sept. 29, 2009) (citation omitted); *accord Unspam Techs.*, 716 F.3d at 330 ("In short, the plaintiffs' allegations of conspiracy are conclusory and speculative and do not satisfy the requirements for establishing a conspiracy theory of personal jurisdiction.").  Moreover, "it is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity."  *Saudi* v. *Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005); *see also Gatekeeper Inc.* v. *Stratech Sys., Ltd.*, 718 F. Supp. 2d 664, 668 (E.D. Va. 2010) ("[T]he activities of Stratech's Virginia subsidiary should not be imputed to [Singapore-based] Stratech for personal jurisdiction purposes.").

**B.    It Would Be Unreasonable To Exercise Personal Jurisdiction Over VW Germany.**

The final prong of the Fourth Circuit's test for specific jurisdiction requires that "the exercise of personal jurisdiction be constitutionally reasonable." *Consulting Eng'rs*, 561 F.3d at 279.  The Court need only consider this prong if "it has determined that a defendant has purposefully availed itself of the privilege of doing business" in the forum. *Id.*  Because VW Germany does not have the constitutionally required minimum contacts with Virginia, and because any alleged contacts VW Germany had with Virginia do not form the basis of Plaintiffs' claims against VW Germany, the Court need not reach this prong.  But to the extent the Court considers this prong, it would be unreasonable to exercise personal jurisdiction in Virginia over VW Germany—a nonresident German corporation operating in Germany.

The Supreme Court has counseled that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*

*Metal Indus. Co.* v. *Super. Ct.*, 480 U.S. 102, 114 (1987). Moreover, Virginia's "legitimate interests in the dispute have considerably diminished" because Plaintiffs are not Virginia residents. *Id.* Similar to *Asahi*, the exercise of personal jurisdiction over VW Germany "would be unreasonable and unfair" because of "the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum state." *Id.* at 116.

## III.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST VW GERMANY.

VW Germany respectfully submits that Plaintiffs' claims should be dismissed as to VW Germany for the same reasons articulated in VWGoA's motion to dismiss, which is joined and incorporated herein by reference. In addition, and independently, the Complaint should be dismissed as to VW Germany for the reasons stated below.

### A.  Plaintiffs' Odometer Act Claim Does Not Implicate VW Germany.

Plaintiffs fail to state an Odometer Act claim against VW Germany because (i) Plaintiffs do not allege that VW Germany was a "person transferring ownership of a motor vehicle" under the Odometer Act; (ii) Plaintiffs do not allege that VW Germany was responsible for any of the alleged misrepresentations of mileage; and (iii) the Odometer Act does not allow for joint and several liability.

*First*, the Odometer Act applies only to "a person transferring ownership of a motor vehicle." 49 U.S.C. § 32705 (a)(1); *see Ryan* v. *Edwards*, 592 F.2d 756, 762 (4th Cir. 1979) ("[O]nly a 'transferor' can be held liable for a violation of the [Act's] disclosure requirements."). Although Plaintiffs allege that "VWGOA qualifies as a 'person transferring ownership of a motor vehicle,'"[9] the Complaint makes no similar allegation as to VW Germany. (Compl. ¶ 125.)

---

[9] In any event, under the clear language of the Odometer Act, VWGoA's application for title was not a "transfer" under the meaning of the Odometer Act. (*See* VWGoA Mot. 13-14; VWGoA Reply 4-6.)

Because Plaintiffs do not allege facts showing that VW Germany qualified as a "person transferring ownership of a motor vehicle," Plaintiffs' Odometer Act claim should be dismissed as to VW Germany.

*Second*, Plaintiffs' Odometer Act claim is based on alleged misrepresentations regarding mileage at the time of original titling, made to state titling authorities, and allegedly repeated in Carfax reports provided by dealerships to Plaintiffs. But nowhere in the Complaint do Plaintiffs allege that VW Germany made or was responsible for making these alleged misrepresentations. To the contrary, Plaintiffs again allege that VWGoA—*not* VW Germany— "applied for the original title to the Class Vehicles," and allege that VWGoA—*not* VW Germany—entered into a contract with Carfax. (Compl. ¶¶ 128, 146.)

*Third*, Plaintiffs attempt to assert a claim against VW Germany under a theory of joint and several liability. (Compl. ¶ 131.) But the Fourth Circuit does not allow joint and several liability under the Odometer Act. Rather, the Odometer Act "imposes separate and individual liability" only, and the "common law principle of joint and several liability" cannot "be imported" into the Odometer Act. *Ferris*, 967 F.2d at 956-57; *see Glover* v. *Gen. Motors Corp.*, 959 F. Supp. 332, 334 (W.D. Va. 1997). Because Plaintiffs do not allege that VW Germany is individually liable for any Odometer Act violation, their Odometer Act claim against VW Germany must be dismissed.

**B.    Plaintiffs' Unjust Enrichment Claims in Florida, New Jersey, and Washington Are Not Properly Pleaded Against VW Germany.**

Under the laws of Florida, New Jersey, and Washington, Plaintiffs must show that they had a direct relationship with VW Germany to make an unjust enrichment claim against it. *Kopel* v. *Kopel*, 229 So. 3d 812, 818 (Fla. 2017) ("[T]o prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant."); *Stewart* v. *Beam Global Spirits & Wine,*

*Inc.*, 877 F. Supp. 2d 192, 197 (D.N.J. 2012) ("[T]he weight of th[e] authority is certainly" that a direct relationship or benefit is required.); *CitiMortgage, Inc.* v. *Estate of Geddes*, 2015 WL 6550737, at *3 (W.D. Wash. Oct. 28, 2015) (dismissing Washington unjust enrichment claim because plaintiff did "not allege a contractual or quasi-contractual relationship between [the parties]").  Here, Plaintiffs do not allege that they had any direct relationship with VW Germany.  In fact, Plaintiffs allege that they purchased their vehicles from non-party dealerships, with whom VW Germany is not alleged to have had any interaction at all.  Consequently, Plaintiffs fail to allege any relationship with VW Germany, much less a direct relationship, and this is fatal to their unjust enrichment claims under Florida, New Jersey, and Washington law.[10]

### C.   Plaintiffs' Consumer Protection Act Claims Should Be Dismissed.

Plaintiffs' state consumer protection act claims should be dismissed because they do not allege that *VW Germany* made any misrepresentations to Plaintiffs.  Instead, all of the alleged misrepresentations were allegedly made by VWGoA or Carfax.  These allegations are insufficient to state a claim against VW Germany.  *Wilson* v. *Hewlett-Packard Co.*, 668 F.3d 1136, 1148 (9th Cir. 2012) (affirming dismissal of CLRA claim where plaintiff failed to "sufficiently allege that [defendant] knew of the alleged defect at the time of sale"); *Camasta* v. *Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) ("When the plaintiff is a private party . . . , an action brought under the [Illinois] CFA requires the plaintiff to show he suffered 'actual damage' as a result of the defendant's violation of the act.").

---

[10] Plaintiffs' unjust enrichment claims against VW Germany under California, Colorado, and Illinois law should be dismissed for the reasons stated in Sections I and II, above, and in VWGoA's motion to dismiss.  (*See* VWGoA Mot. 23-26; VWGoA Reply 12-13.)

**D.**    **Plaintiffs' Breach of Warranty Claims Should Be Dismissed.**

Independently of the reasons stated above, the Washington, Illinois, Florida, and California claims for breach of the implied warranty of merchantability should be dismissed because Plaintiffs fail to plead privity with VW Germany.  Moreover, in all states, the claims for breach of express warranty with regard to Carfax's "1-Owner" designation should be dismissed because Plaintiffs do not plead this claim against VW Germany.

*Implied Warranty—No Privity.*    Under Washington, Illinois, Florida, and California law, a plaintiff must show contractual privity with the defendant to sufficiently plead an implied warranty claim, and there is no privity when plaintiffs purchase their vehicles from dealerships rather than from automobile manufacturers.  (*See* VWGoA Mot. 32 & n.23.)  Plaintiffs' Complaint does not include allegations of privity.  Indeed, Plaintiffs withdrew their breach of warranty claims against VWGoA under Illinois and Washington law.[11]  (Pls.' Opp'n to VWGoA Mot. 37.)  The lack of privity is even more pronounced for VW Germany because there is no allegation that VW Germany sold the vehicles to the third-party dealerships.  (Compl. ¶ 109.)  Therefore, the Washington, Illinois, Florida, and California claims for breach of implied warranty against VW Germany should be dismissed.

*Express Warranty—Carfax "1-Owner."*  Plaintiffs' allegations with respect to the alleged express warranty of Carfax "1-Owner" status are pleaded only against VWGoA.  The Complaint asserts that VWGoA—*not* VW Germany—allegedly made and breached this warranty. (Compl. ¶¶ 196, 241, 281, 321, 361, 401.)  Because Plaintiffs make no allegations against VW

---

[11] Plaintiffs argue that there is no privity requirement under California's Song-Beverly Act, and that Florida has a third-party beneficiary exception to its privity requirement.  (*See* Pls.' Opp'n to VWGoA Mot. 37.)  But the Song-Beverly Act does not apply to used vehicles, and there is no such exception under Florida law.  (*See* VWGoA Reply 17-18.)

Germany, their claim for breach of express warranty regarding Carfax "1-Owner" status must be dismissed as against VW Germany.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against VW Germany with prejudice.


Dated:  November 14, 2019

MCGUIREWOODS LLP

*/s/ Frank Talbott V*
Terrence M. Bagley (VSB No. 22081)
Kenneth W. Abrams (VSB No. 78216)
Frank Talbott V (VSB No. 86396)
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Tel:  804-775-4773
Fax:  804-698-2323
tbagley@mcguirewoods.com
kabrams@mcguirewoods.com
ftalbott@mcguirewoods.com

Respectfully submitted,

SULLIVAN & CROMWELL LLP

Robert J. Giuffra Jr. (*pro hac vice*)
Suhana S. Han (*pro hac vice*)
Adam R. Brebner (*pro hac vice*)
125 Broad Street
New York, NY  10004
Tel:  212-558-4000
Fax:  212-558-3558
giuffrar@sullcrom.com
hans@sullcrom.com
brebnera@sullcrom.com

Judson O. Littleton (*pro hac vice*)
1700 New York Avenue, NW
Washington, DC  20006
Tel:  202-956-7500
Fax:  202-293-6330
littletonj@sullcrom.com

*Counsel for Volkswagen Group of America, Inc., and Volkswagen Aktiengesellschaft*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2019, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF filing system which will send notification of electronic filing (NEF) to all counsel of record.

/s/ *Frank Talbott V*
Frank Talbott V (VSB No. 86396)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Telephone:  804-775-4773
Fax:  804-698-2313
ftalbott@mcguirewoods.com

*Counsel for Volkswagen Group of America, Inc.,
and Volkswagen Aktiengesellschaft*