IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| RICARDO R. GARCIA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19cv331-LO-MSN |
| | ) | |
| VOLKSWAGEN GROUP OF AMERICA, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**VOLKSWAGEN AKTIENGESELLSCHAFT'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2)
AND 12(B)(6)**

MCGUIREWOODS LLP

Terrence M. Bagley (VSB No. 22081)
Kenneth W. Abrams (VSB No. 78216)
Frank Talbott V (VSB No. 86396)
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Tel:  804-775-4773
Fax:  804-698-2323
tbagley@mcguirewoods.com
kabrams@mcguirewoods.com
ftalbott@mcguirewoods.com

SULLIVAN & CROMWELL LLP

Robert J. Giuffra Jr. (*pro hac vice*)
Suhana S. Han (*pro hac vice*)
Adam R. Brebner (*pro hac vice*)
125 Broad Street
New York, NY  10004
Tel:  212-558-4000
Fax:  212-558-3558
giuffrar@sullcrom.com
hans@sullcrom.com
brebnera@sullcrom.com

Judson O. Littleton (*pro hac vice*)
1700 New York Avenue, NW
Washington, DC  20006
Tel:  202-956-7500
Fax:  202-293-6330
littletonj@sullcrom.com

*Counsel for Volkswagen Group of America, Inc.,
and Volkswagen Aktiengesellschaft*

## TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ...........................................................................................1

**I.   PLAINTIFFS HAVE FAILED TO SUPPORT THEIR CLAIMS AGAINST VW GERMANY.** ................................................................................................................4

      A.     Plaintiffs Do Not Justify Their Use of Impermissible Group Pleading. ..................4

      B.     Plaintiffs Fail to Rehabilitate Their Joint Venture and Agency Theories...............5

**II.   PLAINTIFFS HAVE NOT PLEADED FACTS SUPPORTING THE EXERCISE OF PERSONAL JURISDICTION OVER VW GERMANY.** .......................................9

      A.     Plaintiffs Cannot Impute VWGoA's Conduct to VW Germany. ............................9

      B.     VW Germany's Alleged Contacts in Virginia Do Not Form the Basis of Plaintiffs' Causes of Action. ..................................................................................11

      C.     The Exercise of Personal Jurisdiction Over VW Germany Would Be Constitutionally Unreasonable.................................................................................12

**III.   PLAINTIFFS' OPPOSITION CONFIRMS THAT THEIR SUBSTANTIVE CLAIMS AGAINST VW GERMANY ARE DEFICIENT AS A MATTER OF LAW.** ...............................................................................................................................14

      A.     Plaintiffs Cannot Bring an Odometer Act Claim Against VW Germany...............14

      B.     Plaintiffs' Unjust Enrichment Claims in Florida, New Jersey, and Washington Are Not Properly Pleaded Against VW Germany. .......................................................15

      C.     Plaintiffs' Consumer Protection Act Claims Are Legally Deficient. ....................16

      D.     Plaintiffs' Breach of Warranty Claims Must Be Dismissed. .................................16

**CONCLUSION** ...........................................................................................................................18

## PRELIMINARY STATEMENT

Ignoring the requirements of Federal Rules of Civil Procedure 8 and 9(b), Plaintiffs continue to lump together different legal entities without regard to what each of them did or where they operate.  Rather than properly pleading what each separate defendant is alleged to have done, Plaintiffs rely on "undifferentiated allegations against 'the . . . defendants' as a group" and do not plead with particularity VW Germany's involvement in the purported misrepresentations.  *United States ex rel. Ahumada* v. *NISH*, 756 F.3d 268, 281 n.9 (4th Cir. 2014).  Plaintiffs cannot rely on vague generalities and conclusory assertions that all Defendants participated in a joint venture or are otherwise agents of one another to prop up their deficient allegations.  Plaintiffs fail to state a claim against VW Germany, and there is no basis for this Court to exercise personal jurisdiction over VW Germany in this case.

The Court should dismiss Plaintiffs' claims against VW Germany notwithstanding its denial of Volkswagen Group of America's ("VWGoA") motion to dismiss.  (*See* Doc. 49.)  The Court's decision with respect to VWGoA does not bear on the imputation of liability to VW Germany based on VWGoA's conduct, the exercise of personal jurisdiction over VW Germany, or the legal sufficiency of Plaintiffs' allegations against VW Germany.

***Failure To Allege Facts Specific to VW Germany.***  To justify their nebulous allegations against "Defendants" or "Volkswagen" in general, Plaintiffs argue that VW Germany entered into a joint venture or agency relationship with VWGoA.  But Plaintiffs' argument is based entirely on labels and legal conclusions.  Without any facts showing that such a joint venture exists, much less how VW Germany participated in and directed it, the claims cannot be sustained.  Plaintiffs do not and cannot point to a joint venture contract or agency agreement between VW Germany and VWGoA.  Instead, Plaintiffs rely solely on the truism that VW Germany is the parent company of VWGoA and turn black-letter corporate law on its head by arguing that a parent

company becomes liable for its subsidiary's alleged actions whenever there is general interaction or sharing of profits between the parent and subsidiary. Plaintiffs' allegations are insufficient as a matter of law, and this Court should reject Plaintiffs' attempted end-run around Virginia's "stringent" standards for piercing the corporate veil. *C.F. Tr., Inc.* v. *First Flight Ltd. P'ship*, 580 S.E.2d 806, 811 (Va. 2003).

      ***Personal Jurisdiction.*** Plaintiffs also seek to impute VWGoA's activity in Virginia to VW Germany by arguing that a foreign manufacturer is subject to personal jurisdiction based largely on the presence of its domestic subsidiary. Although Plaintiffs disclaim reliance on general personal jurisdiction, Plaintiffs' logic would impose general personal jurisdiction over VW Germany in Virginia based on its relationship with VWGoA. This is incorrect. *See Daimler AG* v. *Bauman*, 571 U.S. 117, 136 (2014) (finding "no basis to subject [a foreign parent manufacturer] to general jurisdiction" in a state merely because its domestic subsidiary distributor is "at home" in that state). Likewise, Plaintiffs' assertion of personal jurisdiction based on their joint venture theory fails because "there is nothing to suggest that [the defendants] were part of a joint venture," as opposed to a commonplace corporate parent-subsidiary relationship. *See Saudi* v. *Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). Simply put, "the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity" absent a "significant degree of control" by the parent. *Id.* at 276-77. Without their untenable joint venture theory, Plaintiffs' sparse allegations against VW Germany come nowhere close to meeting the standard for specific jurisdiction.

      ***Failure To State Claims Against VW Germany.*** Plaintiffs' claims against VW Germany suffer from additional shortcomings.

For their Odometer Act claim, Plaintiffs are unable to cite a single case that recognizes joint and several liability under the Odometer Act.  This is unsurprising, because the Odometer Act "imposes separate and individual liability" only.  *Ferris* v. *Haymore*, 967 F.2d 946, 956-57 (4th Cir. 1992).  That alone is fatal to Plaintiffs' Odometer Act claim against VW Germany as there are no allegations in the Complaint that VW Germany itself did anything to violate the Odometer Act.  As a fallback, Plaintiffs argue that VW Germany was somehow part of a "conspiracy" to violate the Odometer Act (Opp. 25-26), but are unable to cite any allegations in the Complaint that could support a conspiracy theory.

For the Florida, New Jersey, and Washington unjust enrichment claims, Plaintiffs fail to point to any authority that relieves them of the requirement to state a direct relationship with VW Germany—and any "indirect" enrichment, which would not be legally sufficient in any case, is far too attenuated to support these claims.  Likewise, Plaintiffs' state consumer protection act claims concede that it was VWGoA, not VW Germany, that made virtually all the representations at issue to consumers, and that any representation through the manufacturer's certificates of origin ("MCOs") was made to the consumers by VWGoA, not by VW Germany.

Finally, for their warranty claims, Plaintiffs appropriately withdraw their Illinois and Washington implied warranty claims, but unsuccessfully seek to prop up their other state claims.  California's Song-Beverly Act does not allow purchasers of used vehicles to bring claims against original manufacturers, and "the overwhelming weight of Florida authority" requires privity of contract with the defendant for implied breach of warranty claims.  *Padilla* v. *Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019).  Likewise, because Plaintiffs allege that VWGoA—*not* VW Germany—made and breached the alleged express warranty of

Carfax "1-Owner" status, their claims for breach of express warranty regarding Carfax 1-Owner status must be dismissed as to VW Germany.

## ARGUMENT

I.   **PLAINTIFFS HAVE FAILED TO SUPPORT THEIR CLAIMS AGAINST VW GERMANY.**

    A.   **Plaintiffs Do Not Justify Their Use of Impermissible Group Pleading.**

Fourth Circuit law precludes grouping defendants "together without specif[ication of] which defendant committed which wrong." *David F. Apple, MD, Prof'l Corp. Pension Plan* v. *Prudential-Bache Secs., Inc.*, 820 F. Supp. 984, 987 (W.D.N.C. 1992), *aff'd sub nom. Juntti* v. *Prudential-Bache Secs., Inc.*, 1993 WL 138523 (4th Cir. 1993) (per curiam). Plaintiffs seek to justify their pervasive use of group pleading by citing *Dunn* v. *Borta*, 369 F.3d 421 (4th Cir. 2004). But *Dunn* addressed an entirely different issue—the "group-published information presumption" under the Virginia Securities Act, *id.* at 434—and fails to offer any support for Plaintiffs' position that they can state a claim against VW Germany via collective allegations against "Volkswagen" or "Defendants."[1]

---

[1] In the context of a Virginia Securities Act claim against three individual defendants, the court in *Dunn* noted that certain other courts recognized a "group-published information presumption" in securities cases, which "allows a plaintiff to rely on a presumption that statements in company generated documents represent the collective work of those *individuals* directly involved in the company's daily management." 369 F.3d at 434 (emphasis added) (quotation omitted). Not only is that presumption factually and legally inapposite here, but the court in *Dunn* explicitly declined even to decide whether that presumption was applicable. *Id.* The other cases cited by Plaintiffs to support their use of group-pleading are also inapposite or irrelevant. *Engel* v. *Buchan*, 710 F.3d 698, 710 (7th Cir. 2013), a *Bivens* case, does not endorse or approve of group-pleading, because it found that the plaintiff had sufficiently identified which officer was responsible for the alleged misconduct. *DiVittorio* v. *Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2nd Cir. 1987), another securities case, stated unremarkably that a plaintiff need not specify which statement in a securities offering document was attributable to a particular defendant when the defendants were "insiders or affiliates participating in the offer." *Id.* Indeed, *DiVittorio* affirms the general principle that "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* at 1247 (quotation omitted). Lastly, *Ciuffitelli* v. *Deloitte & Touche LLP*, 2017 WL 2927481 (D. Or. Apr. 10, 2017),

**B.      Plaintiffs Fail to Rehabilitate Their Joint Venture and Agency Theories.**

*Joint Venture.* Plaintiffs' argument that two related business entities are *able* to enter into a joint venture (*see* Opp. 16) simply misses the point. Plaintiffs do not plead facts sufficient to show that VW Germany and VWGoA *actually did* enter into a joint venture, beyond simply having a parent-subsidiary corporate relationship.[2] *See Whalen* v. *Rutherford*, 2011 WL 11721084, at *5 (Va. Cir. Ct. Nov. 16, 2011) (finding that there is no joint venture when "only a partnership [was] alleged" because "there is no special combination"). Plaintiffs do not allege an agreement or separate business venture between VW Germany and VWGoA to support their joint venture theory. Vague allegations that VW Germany communicated "directives," "instruct[ions]" and "approval[s]" to VWGoA (*e.g.*, Compl. ¶¶ 27, 104) allege nothing atypical of a corporate parent-subsidiary relationship and do not support Plaintiffs' joint venture theory because they do not allege that VW Germany and VWGoA entered into a "special combination" outside of their normal parent-subsidiary corporate relationship. *See PGI, Inc.* v. *Rathe Prods., Inc.*, 576 S.E.2d 438, 441 (Va. 2003).[3]

---

is another securities case that undercuts Plaintiffs' argument. There, the court held that "plaintiffs fail[ed] to satisfy the requirements of either Rule 9(b) or Rule 8" because they referred to multiple entities together generally as "'Aequitas' instead of a specific Aequitas entity"—exactly the same improper pleading technique Plaintiffs use here in referring to "Volkswagen." *Id.* at *14.

[2] *Doar* v. *Volkswagen Group of America, Inc.*, No. CL-2017-229 (Va. Cir. Ct., Feb. 9, 2018) is not to the contrary. In that case, plaintiffs pleaded a joint venture by naming about "30 different individuals," and alleging "which employees from each company had what aspect of control, independent control, in connection with how the joint venture operated." (Opp. Ex. A 65:17-21.)

[3] Plaintiffs' citation of *Smith* v. *Grenadier* (Opp. 9, 11) cannot save their claims, because that case applied the same definition of joint venture as *PGI*: "a special combination of two or more persons . . . without any actual partnership or corporate designation." 127 S.E.2d 107, 110 (Va. 1962) (quoting *Wiley N. Jackson Co.* v. *City of Norfolk*, 87 S.E.2d 781 (Va. 1955)). *Smith* simply holds that neither a formal contract nor an "express agreement as to profits and losses" is required. *Id.* But here, Plaintiffs fail to plead *any* facts establishing a joint venture agreement between VW Germany and VWGoA beyond a normal corporate relationship among affiliated companies.

Similarly, Plaintiffs' conclusory allegation that VW Germany and VWGoA "shared in the profits and losses" of the venture (Opp. 10)—without any factual allegations as to the nature and existence of this alleged profit-sharing agreement—is not sufficient.  *A.G. Van Metre Constr., Inc.* v. *NVKettler L.P.*, 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992).  Plaintiffs' argument that any sort of profit-sharing suffices because "[a] person who receives a share of the profits of a business is presumed to be a partner in the business" (Opp. 10 (quoting Va. Code Ann. § 50-73.88(C)(3))) proves too much.  Under Plaintiffs' theory, all corporate parents and subsidiaries would automatically be partnerships and joint ventures, because the parent company, in some manner, "shares" in its subsidiaries' profits and losses.  The very statute Plaintiffs cite refutes this absurd result:  "An association formed under a statute other than this chapter . . . or a comparable statute of another jurisdiction is not a partnership under this chapter."  Va. Code Ann. § 50-73.88(B).  The same rule applies to joint ventures.[4]  *See Whalen*, 2011 WL 11721084, at *5.  Here, VWGoA "is a corporation organized under the laws of the State of New Jersey" (Compl. ¶ 17), and VW Germany "is a German corporation" and "the parent company of VWGOA" (Compl. ¶ 18).  As such, despite Plaintiffs' conclusory allegations of profit-sharing, Virginia joint venture and partnership law does not apply.

Plaintiffs' other allegations in support of their joint venture theory are similarly deficient.  Neither the allegation that VW Germany "exercised control by directing and/or approving VW-America . . . to sell Zero-Series Cars" nor the allegation that VW Germany "manufactur[ed]" and "shipp[ed]" the purported class vehicles (Opp. 10) indicates that VW

---

[4] As Plaintiffs recognize, generally, "[p]artnership law applies to joint ventures formed in Virginia."  (Opp. 9); *see also Burruss* v. *Green Auction & Realty Co.*, 319 S.E.2d 725, 727 (Va. 1984) ("[T]he relationships and duties of joint venturers and partners, toward one another, are essentially the same.").

Germany and VWGoA "reached an agreement to operate the [alleged venture] together." *Bocek*

v. *JGA Assocs., LLC*, 537 F. App'x 169, 179 (4th Cir. 2013) (applying Virginia law and ruling that

there was no joint venture when there was "no evidence showing that [the parties] ever reached an

agreement").

> *Agency.*  Plaintiffs also appeal to agency law to try to salvage their claims against

VW Germany.  This too fails.  Notably, in *Omega Homes, Inc.* v. *Citicorp Acceptance Co.*, 656 F.

Supp. 393 (W.D. Va. 1987), cited by Plaintiffs (Opp. 12-13), the court found that a parent

company's "subsidiaries are not its agents and their actions should not be imputed" to the parent,

even when the parent "supervised the creation of its subsidiaries, undertook to finance them and

even contributed management skills and resources," because "[t]his type of participation . . . is the

minimum to be expected from any parent corporation."  656 F. Supp. at 400.[5]  Plaintiffs'

allegations are similarly lacking.  That VW Germany "instruct[ed]" or "approv[ed]" VWGoA's

actions (Opp. 13) is "to be expected" of a parent corporation and cannot alone support an agency

theory.[6] *Omega Homes*, 656 F. Supp. at 400.

> Under Plaintiffs' theory, the corporate form would be disregarded any time a

corporate parent "directs" its subsidiary, and both entities would be held liable for each other's

conduct.  That is not the law in Virginia.  *See Beale* v. *Kappa Alpha Order*, 64 S.E.2d 789, 797

(Va. 1951).  Rather, to hold a parent liable for the acts of its subsidiary, "a plaintiff must show that

undue domination and control was exercised by the parent corporation over the subsidiary, and

that such control was used to evade a personal obligation, to perpetrate fraud or a crime, to commit

---

[5] The language Plaintiffs cite from *Omega Homes* (*see* Opp. 12-13) is not the court's holding. Rather, the court was simply describing the cases cited by the *Omega Homes* plaintiffs.

[6] Because Plaintiffs' two other allegations—that VW Germany certified that the vehicles satisfied FMVSS and failed to disclose the alleged defects to NHTSA (Opp. 13)—do not demonstrate VW Germany's relationship with VWGoA, they are not relevant to the agency analysis.

an injustice, or to gain an unfair advantage."[7]   *Bennett* v. *OmniSource Corp.*, 2015 WL 6743866, at \*2-4 (W.D. Va. Nov. 4, 2015) (quotation marks and citations omitted); *see also C.F. Tr., Inc.*, 580 S.E.2d at 811 ("[P]iercing is an extraordinary measure that is permitted only in the most egregious circumstances.").  Here, Plaintiffs' vague allegations of "directives" come nowhere near the *Bennett* standard.

Plaintiffs cite a Georgia state case to argue that this Court can impute liability under an agency theory without piercing the corporate veil.  (*See* Opp. 11 (citing *Kissun* v. *Humana, Inc.*, 479 S.E.2d 751, 754 (Ga. 1997)).)[8]   But under Virginia law, "[g]enerally, courts will observe the separate corporate entity, even though one corporation 'may dominate or control another, or may treat it as a mere department [or] instrumentality . . . .'"   *Eure* v. *Norfolk Shipbuilding & Drydock Corp.*, 561 S.E.2d 663, 669 (Va. 2002) (alteration in original) (quoting *Beale*, 64 S.E.2d at 798).  In *Eure*, the Virginia Supreme Court affirmed dismissal of a parent corporation, holding that evidence showing that the subsidiary did "not have a board of directors" and the parent submitted a letter of credit on the subsidiary's behalf "was not sufficient to allow the trial court to disregard

---

[7] Plaintiffs argue that this Court should take judicial notice of a Plea Agreement entered into by VW Germany relating to the diesel emissions issue in support of their theory that VW Germany and VWGoA "carr[ied] out [a] coordinated fraudulent sales scheme."  (Opp. 13 & n.3); *see also United States* v. *Volkswagen AG*, Case No. 16-CR-20394, https://www.justice.gov/usao-edmi/page/file/930026/download.  But the Plea Agreement has no relevance to this case.  It concerns the sale of *new* vehicles that did not meet "U.S. *emissions* standards;" the Agreement does not mention used or certified pre-owned vehicles, FMVSS, odometer fraud, or pre-production and fleet vehicles.  And VWGoA, VW Germany's alleged joint venture partner in this case, did *not* enter into the Plea Agreement.

[8] *Thompson* v. *Air Power, Inc.*, 448 S.E.2d 598 (Va. 1994), is similarly inapposite.  The court addressed imputation of only "knowledge," *id.* at 603, not, as Plaintiffs argue, "*all* conduct" (Opp. 11).  *See In re Mercedes-Benz*, 2006 WL 2129100, at \*17 (D.N.J. July 26, 2006) (quoting *Thompson* and noting that "the question of knowledge is somewhat different from that of liability").  Furthermore, the *Thompson* court did *not* impute knowledge between a corporation and its alleged subsidiary, but instead followed the "general rule . . . that the knowledge of the parent corporation is not imputed to its subsidiary."  248 Va. at 371.

the corporate form." *Id.* Here, Plaintiffs' allegations that VW Germany "provided . . . directives" to VWGoA and that VW Germany's name appeared on a Manufacturer's Certificate of Origin (Opp. 12) are much weaker and clearly insufficient.

## II. PLAINTIFFS HAVE NOT PLEADED FACTS SUPPORTING THE EXERCISE OF PERSONAL JURISDICTION OVER VW GERMANY.

### A. Plaintiffs Cannot Impute VWGoA's Conduct to VW Germany.

Plaintiffs offer two primary arguments for imputing VWGoA's conduct in Virginia to VW Germany. First, Plaintiffs argue that a foreign manufacturer, VW Germany, can be subject to personal jurisdiction based on the presence of its domestic subsidiary distributor, VWGoA. Second, Plaintiffs argue that VW Germany, a foreign participant in an alleged domestic joint venture, can be subject to personal jurisdiction based on the conduct of that alleged joint venture.[9] Both arguments fail.

*First*, whether "specific personal jurisdiction may be exercised over a foreign manufacturer for claims arising from in-state sales activity of a wholly-owned distributor" (Opp. 18) is irrelevant. Plaintiffs' legal argument does not fit the facts they allege because Plaintiffs do not allege that their causes of action arose out of any "in-state *sales* activity." Instead, Plaintiffs purchased their vehicles in states other than Virginia—Washington, New Jersey, Colorado, Illinois, Florida, and California. (Compl. ¶¶ 9-16.) The cases Plaintiffs cite are inapposite because they involve individuals purchasing products in Virginia, the forum state.[10] Similarly, Plaintiffs cannot argue that VW Germany should be subject to personal jurisdiction merely based on

---

[9] As shown above, Plaintiffs fail to plead facts supporting a joint venture. *See supra* Section I.B.

[10] *Omega Homes* involved impermissible mobile home mortgages offered to residents in Virginia. 656 F. Supp. at 395-96. Similarly, in *Weight* v. *Kawasaki Motors Corp., U.S.A.*, the plaintiff purchased the defective motorcycle in Virginia. 604 F. Supp. 968, 970 (E.D. Va. 1985). Finally, in *Stokes* v. *L. Geismer, S.A.*, the defective rail cutting saw was received by the plaintiff in Virginia. 815 F. Supp. 904, 907 (E.D. Va. 1993).

*VWGoA's* presence and conduct in Virginia.  (*See* Opp. 18 (arguing that "specific personal jurisdiction may be exercised over a foreign manufacturer for claims arising from in-state sales activity of a wholly-owned distributor").)  As noted above, this argument is a thinly disguised form of general jurisdiction that the Supreme Court has explicitly rejected.  *See Daimler AG*, 571 U.S. at 136 ("no basis to subject [a foreign parent manufacturer] to general jurisdiction" in a state merely because its domestic subsidiary distributor is "at home" in that state).

       *Second*, Plaintiffs' joint venture argument also fails.  In the Fourth Circuit, when "there is nothing to suggest that [the defendants] were part of a joint venture," as is the case here (*see supra* at 4-6), personal jurisdiction over a member of that alleged joint venture is improper, *Saudi*, 427 F.3d at 276.  Moreover, "it is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity."  *Id.*  Although imputation *may* be appropriate where there is a "significant degree of control" by one entity, *id.* at 277 (citation omitted), Plaintiffs have failed to allege that level of control.

       Without specific allegations to support their theory, Plaintiffs again cite irrelevant authorities.  For example, *Hartz & Co.* v. *Production Control Information (PCI) Ltd.*, Plaintiffs' only Fourth Circuit case on this point, concerns jurisdictional discovery, not whether personal jurisdiction over a foreign defendant was proper.  1995 WL 678484, at *6 (4th Cir. 1995).  Similarly, in *Bensmiller* v. *E.I. Dupont de Nemours & Co.*, the Second Circuit held that a Texas joint venture could not be subject to personal jurisdiction under Connecticut's long arm-statute in Connecticut and expressly held that it "need not resolve [the due process] issue."  47 F.3d 79, 84-

85 (2d Cir. 1995). The other cases Plaintiffs cite merely confirm that the foreign entity must exert a high degree of control over the domestic subsidiary,[11] a requirement not met here.

### B. VW Germany's Alleged Contacts in Virginia Do Not Form the Basis of Plaintiffs' Causes of Action.

Fourth Circuit law is clear that constitutional due process requires that each claim arise directly from a defendant's contact in the forum state. In other words, even if VW Germany's alleged connection to the forum state somehow related to Plaintiffs' claims, that is insufficient if those activities do not form an element of Plaintiffs' causes of action. Other contacts with the state that are not elements of the cause of action are "irrelevant in any consideration of *specific* personal jurisdiction." *CEM Corp.* v. *Personal Chemistry, AB*, 55 F. App'x 621, 624 (4th Cir. 2003).[12]

Plaintiffs argue that they meet this standard because their claims "arise from fraudulent sales of VW-Germany's vehicles imported to the U.S. through Virginia" (Opp. 21), and that "it is illegal for VW-Germany or any manufacturer to import or sell a vehicle that does not comply with Federal Safety Standards" (Opp. 22). But these conclusory statements do not explain

---

[11] In *Noble Sec., Inc.* v. *MIZ Eng'g, Ltd.*, the court noted that the "critical test is the nature and extent of control exercised by the purported principal over the agent." 611 F. Supp. 2d 513, 534 (E.D. Va. 2009) (citation omitted). And in *Design88 Ltd*. v. *Power Uptik Prods., LLC*, the defendants had "conducted themselves and referred to themselves . . . as partners to a joint venture," 133 F. Supp. 2d 873, 876 (W.D. Va. 2001), which Plaintiffs plainly have not alleged here.

[12] This is consistent with how courts have interpreted the "arising from" language of Virginia's long-arm statute. *See, e.g.*, *Pearson* v. *White Ski Co.*, 228 F. Supp. 2d 705, 708 (E.D. Va. 2002) ("This causation element [of Virginia's long-arm statute] is more than a mere 'but, for' causation; this element requires causation that is more akin to proximate cause."). "Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause," *Consulting Eng'rs Corp.* v. *Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009), *Pearson* confirms *CEM Corp.*'s stringent limit on when a claim arises out of a defendant's contact in the forum state under constitutional due process. Moreover, the Fourth Circuit is not alone in this approach. *See Nowak* v. *Tak How Invs., Ltd.*, 94 F.3d 708, 715 (1st Cir. 1996) (The relatedness prong of the due process inquiry requires "a contact that is a legal cause of the injury underlying the controversy—*i.e.*, that form[s] an important, or [at least] material, *element* of proof in the plaintiff's case." (emphasis added) (citation and internal quotation marks omitted)).

how the purported importation of vehicles into Virginia—before Plaintiffs purchased their vehicles in other states—gives rise to any elements of any of Plaintiffs' causes of action.  Rather, the alleged misrepresentations about the ownership history and safety compliance of the vehicles underlying Plaintiffs' claims do not involve the conduct of VW Germany at all, let alone the conduct of VW Germany in Virginia.

Plaintiffs also argue that personal jurisdiction over VW Germany is proper because VW Germany allegedly made misrepresentations on the MCOs, and because the vehicles' "title was transferred to [VWGoA] in Virginia by virtue of a manufacturer's certificate of origin issued by [VW Germany]."  (Opp. 21 (citing Compl. ¶¶ 26, 191-92) (emphasis omitted).)  But Plaintiffs cannot allege that any warranties based on the MCOs were made by *VW Germany*, or made to Plaintiffs in *Virginia*.  Instead, Plaintiffs at most allege that warranties were made by *VWGoA* to Plaintiffs in *states other than Virginia* where they purchased their vehicles.  (*E.g.*, Compl. ¶ 195.)  Although Plaintiffs allege that the MCOs were transferred by VW Germany to VWGoA in Virginia, such transfer of an MCO is not an element of any of Plaintiffs' claims.  Because any representation to Plaintiffs made through the MCOs is alleged to have been made by VWGoA—not VW Germany—and because these alleged representations were not made in Virginia, this conduct cannot support jurisdiction over VW Germany in Virginia.

**C.    The Exercise of Personal Jurisdiction Over VW Germany Would Be Constitutionally Unreasonable.**

Plaintiffs fail to refute that the exercise of personal jurisdiction over VW Germany would be constitutionally unreasonable.  Instead, Plaintiffs merely argue that personal jurisdiction is reasonable because VW Germany (i) allegedly "purposefully avail[ed] itself of the Virginia forum" in this case; (ii) engaged in an alleged joint venture; and (iii) "litigates [other] cases" in the Eastern District of Virginia.  (Opp. 23-25.)  Notably, these three considerations do not implicate

any of the five reasonableness factors that the Supreme Court has identified. *See Asahi Metal Indus. Co.* v. *Super. Ct.*, 480 U.S. 102, 113 (1987) ("A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," as well as "the interstate judicial system's interest in obtaining the most efficient resolution of controversies[] and the shared interest of the several States in furthering fundamental substantive social policies." (quoting *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 292 (1980))).

Moreover, the cases Plaintiffs cite for their reasonableness arguments are inapposite. *In re Volkswagen "Clean Diesel" Litigation* discusses the contacts VW Germany had with the forum in that particular case, which is *not* a reasonableness factor; it said nothing about the *reasonableness* of exercising jurisdiction in future cases based on different allegations. *See* 2018 WL 9393018, at *4 (Va. Cir. Ct. Oct. 4, 2018). Although *Stokes*, the other case Plaintiffs cite, briefly mentions reasonableness, the court found that personal jurisdiction was proper there for several reasons that are not present here, such as that "the president of the foreign corporation is also president of its American subsidiary." 815 F. Supp. at 907.[13]

Finally, that VW Germany has previously been party to litigations in the Eastern District of Virginia (*see* Opp. 24-25) does not mean the exercise of personal jurisdiction is constitutionally reasonable in any subsequent case. Whether or not the exercise of personal jurisdiction is constitutional is a case-by-case determination that rests on the allegations of the

---

[13] Plaintiffs also improperly conflate general and specific personal jurisdiction. For example, Plaintiffs allege "extensive contacts by VW-Germany with Virginia" and that VWGoA "serves as the operational headquarters for [VW-Germany's] presence in North America," without explaining how their legal claims arise directly out of those general contacts. (Opp. 23.) As noted in VW Germany's opening brief (Mot. 14), there is no general jurisdiction over VW Germany, and Plaintiffs do not argue otherwise. It is well settled that general jurisdiction exists only when the defendant is "essentially at home in the forum State," which for a corporation means its "place of incorporation and principal place of business." *Daimler AG*, 571 U.S. at 137, 139.

13

complaint.  *See Abel* v. *Montgomery Ward Co.*, 798 F. Supp. 322, 329 (E.D. Va. 1992) (treating reasonableness factors "as separate considerations to be weighed by the Court in determining if the assertion of personal jurisdiction over a particular foreign corporation is reasonable under the overall circumstances of a particular case").

## III.   PLAINTIFFS' OPPOSITION CONFIRMS THAT THEIR SUBSTANTIVE CLAIMS AGAINST VW GERMANY ARE DEFICIENT AS A MATTER OF LAW.

### A.   Plaintiffs Cannot Bring an Odometer Act Claim Against VW Germany.

All of Plaintiffs' Odometer Act allegations are attributed to VWGoA.  (*See* Compl. ¶¶ 121-31.)[14]  The *only* mention of VW Germany in the Complaint's Odometer Act allegations is the legal assertion that it is "jointly and severally liable" for the acts of VWGoA.  (Compl. ¶ 131.) This is plainly wrong as a matter of Fourth Circuit law because there is no joint and several liability under the Odometer Act.  *Ferris*, 967 F.2d at 956-57.[15]

Plaintiffs raise for the first time in their Opposition a new theory, not pleaded in the Complaint, that VW Germany "conspire[d]" with VWGoA to violate the Act.  (*See* Opp. 25-26 (quoting 49 U.S.C. § 32703(4)).)  This theory is deficient both because Plaintiffs cannot amend their Complaint through their brief, *see Katz* v. *Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) ("[I]t is . . . 'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'"), and also because Plaintiffs fail to plead any factual

---

[14] Plaintiffs allege that VWGoA—*not* VW Germany—"qualifies as a 'person transferring ownership of a motor vehicle'" and "falsified the mileage of the Class Vehicles" and that "[t]he conduct described herein by *VWGOA* constitutes violations of the Odometer Act *committed by VWGOA* with the intent to defraud."  (Compl. ¶¶ 125, 128, 131 (emphasis added).)

[15] Plaintiffs argue that *Ferris* somehow does not apply, but do not cite a single case that recognizes joint and several liability under the Odometer Act.  (*See* Opp. 25-26.)

support for such a conspiracy.  Plaintiffs do not allege that VW Germany participated in, communicated with VWGoA about, or even had knowledge of the alleged mileage misstatements.

Additionally, to bring a private claim under the Odometer Act, Plaintiffs must allege "intent to defraud."  49 U.S.C. § 32710(a).  This requirement also applies to conspiracy claims under the Act.  *See Blount* v. *Greenbrier Pontiac Oldsmobile-GMC Trucks Kia, Inc.*, 2009 WL 2431587, at *3-4 (E.D. Va. Aug. 7, 2009) (applying intent to defraud element on motion to dismiss an Odometer Act conspiracy claim).  Plaintiffs fail to allege that a conspiracy to violate the Odometer Act existed at all, much less allege the requisite intent under Rule 9(b)'s heightened pleading standard.

**B.  Plaintiffs' Unjust Enrichment Claims in Florida, New Jersey, and Washington Are Not Properly Pleaded Against VW Germany.**

Plaintiffs have failed to allege any direct relationship with VW Germany, as they must to state an unjust enrichment claim.  Plaintiffs argue that courts in Florida and New Jersey "have split" over whether a direct relationship is required to make out an unjust enrichment claim. (Opp. 26.)  But the Florida Supreme Court has made clear that "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant."  *Kopel* v. *Kopel*, 229 So. 3d 812, 818 (Fla. 2017).  Similarly, in New Jersey, it is well established that consumers "confer a benefit" on the party from whom they purchase a product—here, nonparty dealerships—"not on the manufacturer."  *Snyder* v. *Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011).  In fact, the only New Jersey case Plaintiffs cite in their favor acknowledged that "the weight of th[e] authority is certainly" that a direct relationship or benefit is required.  *Stewart* v. *Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 197 (D.N.J. 2012).  As for Washington, Plaintiffs rely solely on a purported "exception" to the direct relationship requirement (Opp. 27), but the case they cite, *Farwest Steel Corp.* v. *Mainline Metal Works, Inc.*, 741 P.2d 58, 64-65 (Wash. Ct. App. 1987),

contains no such "exception."  In fact, the court in *Farwest* affirmed the dismissal of an unjust enrichment claim because the party at issue did not mislead the plaintiff or contribute to the plaintiff's losses.  *Id.*

Further, Plaintiffs argue that even if Florida, New Jersey and Washington require a direct relationship, Plaintiffs' claims are viable by virtue of the Carfax contract entered into between VWGoA and non-party Carfax.  (Opp. 27.)  But Plaintiffs do not explain how a contract between VWGoA and Carfax establishes any relationship between the Plaintiffs themselves and VW Germany, the latter of which is not alleged to have been a party to the Carfax contract.  Thus, irrespective of the viability of Plaintiffs' claims against VWGoA, Plaintiffs' far more attenuated unjust enrichment claims against VW Germany must be dismissed.

**C.    Plaintiffs' Consumer Protection Act Claims Are Legally Deficient.**

Plaintiffs' state consumer protection act claims should be dismissed because Plaintiffs do not allege that VW Germany made any misrepresentations to them.  (Mot. at 22.)  Plaintiffs instead argue that VW Germany was "aware of the sale of Zero-Series Cars in the U.S." and that the vehicles were affixed with VW Germany's MCOs, which allegedly stated that the vehicle complied with FMVSS.  (Opp. 22, 28.)  But the Complaint expressly states that it was *VWGoA* that made representations to consumers—not VW Germany.  (*See* Compl. ¶ 195.)  Because any representations through the MCOs is alleged to have been made to consumers by VWGoA, not by VW Germany, there is simply no basis for Plaintiffs' claim that VW Germany engaged in conduct prohibited by state consumer protection statutes.

**D.    Plaintiffs' Breach of Warranty Claims Must Be Dismissed.**

***Implied Warranty—No Privity.***  Plaintiffs withdrew their Illinois and Washington implied warranty claims (Opp. 29), and therefore those claims need not be addressed.  (*See* Doc. 74 ("[B]ecause Plaintiffs withdrew the Illinois and Washington implied warranty claims, those

16

claims need not be addressed.").) Their California and Florida implied warranty claims should likewise be dismissed for lack of privity. Under California's Song-Beverly Act, purchasers of used goods may only bring claims against the used-good retailer or distributor, not the "original manufacturer, distributor, or retail seller . . . with respect to such goods when new." Cal. Civ. Code § 1795.5.[16] Accordingly, courts routinely find that the Song-Beverly Act does not impose liability on the manufacturer for purchases of used vehicles. *See, e.g.*, *Victorino* v. *FCA US LLC*, 326 F.R.D. 282, 301 (S.D. Cal. 2018). VW Germany was the original manufacturer of the purported class vehicles when they were *new*. Plaintiffs, who purchased the vehicles as *used*, cannot bring a Song-Beverly claim against VW Germany. Therefore, Plaintiffs' California implied warranty claims must be dismissed as to VW Germany.

Likewise, under Florida law, "the plaintiff must be in privity of contract with the defendant" to recover for breach of an implied warranty. *T.W.M.* v. *Am. Med. Sys.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995); *see Kramer* v. *Piper Aircraft Corp.*, 520 So. 2d 37, 39 & n.4 (Fla. 1988). To try to avoid this privity requirement, Plaintiffs rely on *Sanchez-Knutson* v. *Ford Motor Co.*, 52 F. Supp. 3d 1223, 1234 (S.D. Fla. 2014), but courts have repeatedly declined to follow this case which runs contrary to "the overwhelming weight of Florida authority." *Padilla*, 391 F. Supp. 3d at 1116-17; *see also, e.g.*, *Johnson* v. *Nissan N. Am., Inc.*, 2018 WL 905850, at *5 (N.D. Cal. Feb. 15, 2018). Because Plaintiffs do not allege the required privity, their Florida implied warranty claims must be dismissed as to VW Germany.

**Express Warranty—Carfax "1-Owner."** Plaintiffs' allegations with respect to the alleged express warranty of Carfax "1-Owner" status are pleaded only against VWGoA. (*See* Mot.

---

[16] Furthermore, even this limited Song-Beverly warranty has long expired. For used cars, the implied warranty under the Act "extends only up to three months after purchase." *Mui Ho* v. *Toyota Motor Corp.*, 931 F. Supp. 2d 987, 993 (N.D. Cal. 2013); *see* Cal. Civ. Code § 1795.5(c).

23.)  Plaintiffs point to allegations relating to FMVSS compliance (*see* Opp. 29), but this is a separate alleged warranty that is irrelevant to their Carfax 1-Owner claims.  Plaintiffs do not allege that VW Germany was a party to the Carfax contract, nor do they allege that VW Germany provided Plaintiffs with the Carfax reports.  Because Plaintiffs allege that VWGoA—*not* VW Germany—made and breached this warranty, their claims for breach of express warranty regarding Carfax 1-Owner status must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against VW Germany with prejudice.


Dated:  December 10, 2019

MCGUIREWOODS LLP

*/s/ Frank Talbott V*
Terrence M. Bagley (VSB No. 22081)
Kenneth W. Abrams (VSB No. 78216)
Frank Talbott V (VSB No. 86396)
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Tel:  804-775-4773
Fax:  804-698-2323
tbagley@mcguirewoods.com
kabrams@mcguirewoods.com
ftalbott@mcguirewoods.com

Respectfully submitted,

SULLIVAN & CROMWELL LLP

Robert J. Giuffra Jr. (*pro hac vice*)
Suhana S. Han (*pro hac vice*)
Adam R. Brebner (*pro hac vice*)
125 Broad Street
New York, NY  10004
Tel:  212-558-4000
Fax:  212-558-3558
giuffrar@sullcrom.com
hans@sullcrom.com
brebnera@sullcrom.com

Judson O. Littleton (*pro hac vice*)
1700 New York Avenue, NW
Washington, DC  20006
Tel:  202-956-7500
Fax:  202-293-6330
littletonj@sullcrom.com

*Counsel for Volkswagen Group of America, Inc.,
and Volkswagen Aktiengesellschaft*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2019, I electronically filed the foregoing with the

Clerk of Court using the Court's CM/ECF filing system which will send notification of electronic

filing (NEF) to all counsel of record.

*/s/ Frank Talbott V*
Frank Talbott V (VSB No. 86396)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Telephone:  804-775-4773
Fax:  804-698-2313
ftalbott@mcguirewoods.com

*Counsel for Volkswagen Group of America, Inc.,*
*and Volkswagen Aktiengesellschaft*