IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| RICARDO R. GARCIA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19cv331-LO-MSN |
| | ) | |
| VOLKSWAGEN GROUP OF AMERICA, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**AUDI AKTIENGESELLSCHAFT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(2), AND 12(B)(6)**

MCGUIREWOODS LLP

Terrence M. Bagley (VSB No. 22081)
Kenneth W. Abrams (VSB No. 78216)
Frank Talbott V (VSB No. 86396)
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Tel:  804-775-4773
Fax:  804-698-2323
tbagley@mcguirewoods.com
kabrams@mcguirewoods.com
ftalbott@mcguirewoods.com

SULLIVAN & CROMWELL LLP

Robert J. Giuffra Jr. (*pro hac vice*)
Suhana S. Han (*pro hac vice*)
Adam R. Brebner (*pro hac vice*)
125 Broad Street
New York, NY  10004
Tel:  212-558-4000
Fax:  212-558-3558
giuffrar@sullcrom.com
hans@sullcrom.com
brebnera@sullcrom.com

Judson O. Littleton (*pro hac vice*)
1700 New York Avenue, NW
Washington, DC  20006
Tel:  202-956-7500
Fax:  202-293-6330
littletonj@sullcrom.com

*Counsel for Audi Aktiengesellschaft*

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ...............................................................................5

ARGUMENT ..................................................................................6

I.   PLAINTIFFS HAVE NO STANDING TO BRING CLAIMS AGAINST AUDI AG 6

II.  THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER AUDI AG ..................................................................................9

III. PLAINTIFFS FAIL TO ALLEGE ANY FACTS SPECIFIC TO AUDI AG SUFFICIENT TO STATE A CLAIM AGAINST IT ...................................14

   A.   Plaintiffs' Claims Against Audi AG Rest on Impermissible Group Pleading ......15

   B.   Audi AG Is Not Liable for the Alleged Actions of VWGoA ..............................18

   C.   Plaintiffs' Allegations Are Insufficient To Plead Their Various Claims Against Audi AG ........................................................................................22

CONCLUSION ................................................................................25

Defendant Audi Aktiengesellschaft ("Audi AG") respectfully submits this memorandum of law in support of its motion pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) to dismiss the amended putative class action complaint (the "Complaint" or "Compl.").

## PRELIMINARY STATEMENT

Plaintiffs make no allegations in the Complaint supporting the inclusion of Audi AG as a defendant in this case. Audi AG manufactures Audi-branded vehicles, yet not one of the Plaintiffs purchased an Audi. Nor does the Complaint contain any other factual allegation of wrongdoing by Audi AG. As Plaintiffs themselves acknowledge (Compl. ¶ 99), the May 2018 recall at the heart of the Complaint did not involve a *single* Audi—all of the recalled vehicles were Volkswagen vehicles. And this Court too has recognized that "the pleaded facts indicate that VW-G[ermany] manufactured and shipped the vehicles subject to this suit to VWGoA." (ECF No. 79 at 1.) Regardless of the sufficiency of Plaintiffs' allegations against the other two named defendants—Volkswagen Group of America, Inc. ("VWGoA") and its parent company Volkswagen Aktiengesellschaft ("VW AG")—Plaintiffs have no legal basis to assert claims against Audi AG.

Audi AG is a German company that manufactures and sells Audi-branded vehicles in Germany. Audi AG is a subsidiary of VW AG, but there is no dispute that Audi AG is a separate legal entity with its own business and vehicle brand. (*See* Compl. ¶ 19.) The Complaint does not allege that Audi AG had *any* involvement in manufacturing or selling the Volkswagen vehicles Plaintiffs purchased. (*See* Compl. ¶¶ 9-16.)

The factual allegations in the Complaint specific to Audi AG are limited to the following: (i) Audi AG manufactured vehicles in Germany, some of which were then transferred to VWGoA in Virginia, but *none* of which were purchased by Plaintiffs or subject to the recall at

issue, (ii) Audi AG made certain representations on Audi-branded vehicles' manufacturer certificates of origin and manufacturer's certifications, and (iii) two Audi AG employees visited VWGoA's headquarters for meetings about the sale of certified pre-owned ("CPO") vehicles, including, allegedly, vehicles falling within Plaintiffs' putative class definitions, but which, again, were not vehicles purchased by any Plaintiff.  (Compl. ¶¶ 19, 30-31, 193-94.)  These allegations are woefully insufficient to justify maintaining this action against Audi AG.  Because the Complaint lacks a single non-conclusory factual allegation of wrongdoing with respect to a vehicle manufactured or sold by Audi AG that Plaintiffs purchased, Plaintiffs lack standing to bring claims against Audi AG, Audi AG is not subject to personal jurisdiction in this case, and the Complaint fails to state a cognizable claim against Audi AG.

**No Standing.**  The Complaint should be dismissed under Rule 12(b)(1) as against Audi AG because no Plaintiff has Article III standing to pursue any claim against Audi AG. Plaintiffs "bear[] the burden of establishing" standing and must "clearly" allege that they have suffered an injury "that is fairly traceable" to Audi AG's conduct.  *Spokeo, Inc.* v. *Robins*, 136 S. Ct. 1540, 1547 (2016).  But under any reading of the Complaint, Plaintiffs fail to meet that pleading burden, because none of Plaintiffs' claims has any connection to Audi AG.  Plaintiffs do not allege that Audi AG manufactured the Volkswagen-branded vehicles they purchased, made any representation about those vehicles, or provided warranties for any of those vehicles.  Plaintiffs cannot sidestep the standing requirement by styling their claims as a putative class action purportedly on behalf of unnamed Audi vehicle owners.  *Simon* v. *E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a class action . . . adds nothing to the question of standing.").  Bringing a class action does not relieve Plaintiffs of the constitutional burden of pleading that Audi AG caused injury to at least one named Plaintiff in order to allow this action to

proceed against Audi AG.  *Faircloth* v. *Fin. Asset Sec. Corp. Mego Mortg. Homeowner Loan Tr.*, 87 F. App'x 314, 317 (4th Cir. 2004) (rejecting argument that putative class action plaintiff "has standing to assert claims on behalf of [absent] class members against parties who have caused [named plaintiff] no cognizable injury").

**No Personal Jurisdiction.**  The Complaint should also be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over Audi AG in this action.  There is no general personal jurisdiction over Audi AG, a non-resident German corporation with its headquarters and principal place of business in Ingolstadt, Germany.  (Compl. ¶ 19.)  With respect to specific personal jurisdiction, Plaintiffs allege only that Audi vehicles were manufactured by Audi AG and shipped to the United States, that two Audi AG employees "visited" VWGoA's headquarters in Virginia for "meetings," and that the Virginia contacts of VWGoA and VW AG should be imputed to Audi AG.  (Compl. ¶¶ 30-32.)  Aside from failing to amount to purposeful availment, these alleged contacts do not form the basis of Plaintiffs' claims because Plaintiffs do not allege that they purchased Audi vehicles.  Moreover, given that Audi AG is a foreign corporation and that both Virginia and even Plaintiffs lack an interest in adjudicating the suit in Virginia, the exercise of personal jurisdiction would be constitutionally unreasonable.

**Failure To State a Claim Against Audi AG.**  Finally, the Complaint is subject to dismissal under Rule 12(b)(6) because Plaintiffs fail to meet their obligation to sufficiently allege the elements of their claims against *each* defendant.  Plaintiffs do not make *any* allegation suggesting that Audi AG engaged in any of the conduct challenged in the Complaint.  Instead, Plaintiffs' allegations largely lump Audi AG together with VW AG and VWGoA under the terms "Volkswagen" and "Defendants," without attempting to specify what role Audi AG is alleged to

have played in the supposed scheme.  (Compl. ¶ 1.)  Both Rule 8 and Rule 9(b) require more than that.

Plaintiffs' conclusory allegations of a joint venture or agency relationship among VWGoA, VW AG, and Audi AG do not save the Complaint from dismissal as to Audi AG. Although the Court previously held that Plaintiffs adequately pleaded a joint venture between VW AG and VWGoA, it only did so after finding that "the pleaded facts indicate that [VW AG] manufactured and shipped the vehicles subject to this suit to VWGoA through Virginia, maintained at least one record of preproduction series vehicles within the United States, directed VWGoA to perform allegedly unlawful actions, and unlawfully made material misrepresentations about the vehicles."  (ECF No. 79 at 1.)  Plaintiffs make no such allegations against Audi AG, which is a separate company from VW AG and VWGoA—not a joint venturer or partner in the sale of the Volkswagen-branded vehicles Plaintiffs purchased.  Plaintiffs do not, and cannot, allege that Audi AG manufactures or sells Volkswagen-branded vehicles.

Given the lack of any allegations about Audi AG's conduct, each of Plaintiffs' claims against Audi AG is clearly deficient.[1]  Plaintiffs fail to state an Odometer Act claim against Audi AG because they make no factual allegations remotely suggesting that Audi AG was "a person transferring ownership of [any] motor vehicle" identified in the Complaint, as required under the Odometer Act, 49 U.S.C. § 32705(a)(1).  Likewise, Plaintiffs cannot state unjust enrichment, state consumer protection act, or breach of warranty claims against Audi AG because Audi AG was not enriched by the sale of the Volkswagen vehicles described in the Complaint, Audi AG made no representations to any consumers alleged in the Complaint, nor did it offer any

---

[1] Not all claims brought against VWGoA are brought against Audi AG.  The common law fraud and breach of contract claims are only brought against VWGoA.  (*See* Compl. ¶¶133, 145.)

warranties, express or implied, about any of Plaintiffs' Volkswagen vehicles.  Nor do Plaintiffs allege that they purchased any vehicles manufactured or sold by Audi AG.  Given the complete lack of factual allegations supporting Plaintiffs' claims against Audi AG, those claims must be dismissed for failure to state a claim.

## BACKGROUND

Audi AG is a German corporation with its headquarters and principal place of business in Ingolstadt, Germany.  (Compl. ¶ 19.)  Audi AG is a separate legal entity from the other two defendants, (i) VW AG, a "German corporation with its principal place of business in Wolfsburg, Germany" (Compl. ¶ 18), and (ii) VWGoA, an American "corporation organized under the laws of the State of New Jersey, with its principal place of business [in] . . . Herndon, Virginia." (Compl. ¶ 17.)  Audi AG is a subsidiary of VW AG, but with its own separate place of business and vehicle brand.  (Compl. ¶ 19.)

No Plaintiff alleges that they purchased any vehicle manufactured or sold by Audi AG.  (*See* Compl. ¶¶ 9-16 (Plaintiffs allege purchases of Volkswagen CC, Volkswagen Golf, Volkswagen GTI, Volkswagen Tiguan, and Volkswagen Touareg vehicles).)  Nor do Plaintiffs allege any actions that Audi AG took, or representations Audi AG made, that allegedly resulted in an injury to any of the Plaintiffs.  Instead, the factual allegations in the entire Complaint specific to Audi AG are limited to the following:  (i) Audi AG manufactures vehicles, some of which are then transferred to VWGoA for sale in the United States (Compl. ¶¶ 19, 30); (ii) Audi AG made certain representations on those Audi-branded vehicles' manufacturer certificates of origin and manufacturer's certifications (Compl. ¶¶ 193-94); and (iii) two Audi AG employees visited VWGoA's headquarters for "meetings" and "interact[ions]" regarding the sale of CPO vehicles, including Audi-branded vehicles supposedly included within the proposed class.  (Compl. ¶ 31.)

Based on these paper-thin allegations, Plaintiffs nonetheless allege that they were misled by "Volkswagen"—a term Plaintiffs have defined to include Audi AG—in the purchase of their vehicles in the same three ways at issue in their claims against VW AG and VWGoA.  First, they allege that "Volkswagen" "falsely represent[ed] to consumers that such vehicles conformed to all Federal Motor Vehicle Safety Standards . . . when in fact, Volkswagen knew that these Pre-Production Cars violated Federal Safety Standards."  (Compl. ¶ 2.)  Second, Plaintiffs  allege that "Volkswagen" "misleadingly marketed" and "sold" press- and pool-fleet vehicles as "CARFAX 1-Owner" vehicles.  (Compl. ¶¶ 3-4.)  Finally, they allege that "Volkswagen" "falsely represented to unsuspecting consumers that the Class Vehicles had only been driven 10 miles at the time those cars were originally titled."  (Compl. ¶ 5.)

## ARGUMENT

## I.   PLAINTIFFS HAVE NO STANDING TO BRING CLAIMS AGAINST AUDI AG.

Article III standing is a threshold requirement in all cases, including class actions. *See Lewis* v. *Casey*, 518 U.S. 343, 357 (1996).  A complaint must be dismissed under Rule 12(b)(1) if the court lacks subject matter jurisdiction, one component of which is Article III standing.  Fed. R. Civ. P. 12(b)(1); *Williams* v. *United States*, 50 F.3d 299, 304 (4th Cir. 1995).  "If the plaintiff does not have standing, [the] Court lacks subject matter jurisdiction and can go no further in evaluating th[e] case, and it must be dismissed."  *Ryals* v. *Strategic Screening Sols., Inc.*, 117 F. Supp. 3d 746, 749 (E.D. Va. 2015).  "[T]he irreducible constitutional minimum of standing" requires plaintiffs to demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo*, 136 S. Ct. at 1547 (quotations omitted); *see also Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Plaintiffs have the burden to show standing, and

at the pleading stage must "clearly" allege the requisite constitutional elements of standing. *Spokeo*, 136 S. Ct. at 1547.  Here, Plaintiffs have failed to satisfy their burden.

Named plaintiffs representing a purported class are required to allege facts showing *individual* standing.  *Lewis*, 518 U.S. at 357.  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"  *Simon*, 426 U.S. at 40 n.20 (quoting *Warth* v. *Seldin*, 422 U.S. 490, 502 (1975)).  Accordingly, "[i]n a class action, [courts] analyze standing based on the allegations of personal injury made by the named plaintiffs." *Beck* v. *McDonald*, 848 F.3d 262, 269 (4th Cir. 2017).

Because the standing inquiry focuses on the named plaintiffs' claimed injuries, "[i]n multidefendant class actions, the named plaintiffs must show that each defendant has harmed at least one of them."  1 William B. Rubenstein, *Newberg on Class Actions* § 2.5 (5th ed. 2015); *see Faircloth*, 87 F. App'x at 317.  Styling a complaint as a class action does not relieve plaintiffs of their constitutional burden to demonstrate standing as to *each* defendant:  "Plaintiffs may not use the procedural device of a class action to bootstrap themselves into standing they lack."  *Miller* v. *Pac. Shore Funding*, 224 F. Supp. 2d 977, 996 (D. Md. 2002) (internal quotations and alterations omitted).  Where, as here, plaintiffs fail to "establish[] an actual case or controversy between themselves" and a defendant, "class allegations do not and cannot conjure" standing.  *Id.*  In *Faircloth*, the Fourth Circuit rejected the notion that "[a plaintiff] has standing to assert claims on behalf of her class members against parties who have caused [the plaintiff] no cognizable injury," noting that to hold otherwise would violate "our rules of standing[, which] prohibit plaintiffs from asserting claims of third parties."  87 F. App'x at 317.  Because no Plaintiff has standing to bring

a claim against Audi AG, Audi AG must be dismissed from the entire case.  *See Ryals*, 117 F. Supp. 3d at 749 ("If a named plaintiff in a putative class action cannot establish that he has standing to pursue a claim or claims, then the entire action must be dismissed as to the claim or claims as to which standing is lacking.").

Plaintiffs have not suffered an injury that is "fairly traceable" to Audi AG because no Plaintiff is alleged to have purchased an Audi vehicle (*see* Compl. ¶¶ 9-16).  *See Haney* v. *USAA Cas. Ins. Co.*, 331 F. App'x 223, 227 (4th Cir. 2009) (holding that putative class plaintiff lacked standing to sue defendant because plaintiff's injury was traceable only to the defendant's sister company); *Wenzel* v. *Knight*, 2015 WL 222182, at *1 (E.D. Va. Jan. 14, 2015) ("[Plaintiff] lacks standing to sue on behalf of A7 shareholders.  Her injury, though similar to the alleged injury of an A7 shareholder, arises from the operation of A8.  Accordingly, her injury is not fairly traceable to A7, and the Court's decision on A7's liability would have no effect on [plaintiff].").  Indeed, Plaintiffs do not even attempt to plead how Audi AG purportedly harmed Plaintiffs, but instead complain only of the purportedly misleading descriptions of their *Volkswagen* vehicles. (*See, e.g.*, Compl. ¶¶ 9-16, 60-66.)  *See In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1125-27 (S.D. Fla. 2019) (dismissing for lack of standing claims brought against Audi AG by plaintiffs who purchased Volkswagen vehicles under "the rule that a named plaintiff in a consumer class action cannot raise claims relating to those other products which he did not purchase" (internal quotations omitted)).

Nor do the entirely conclusory assertions that Audi AG somehow participated in a "joint venture" with VWGoA and VW AG enable Plaintiffs to circumvent the fundamental obligation to show that their injuries are fairly traceable to Audi AG's conduct:  the Complaint is bereft of *any* factual allegation regarding Audi AG's participation in the supposed joint venture,

much less any explanation of how Audi AG's conduct harmed Plaintiffs, who allegedly purchased Volkswagen vehicles.  *See In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d at 1125 (holding that plaintiffs who purchased Volkswagen vehicles did not have standing to bring claims against Audi AG (and vice versa), despite allegations "that Volkswagen and Audi together engineered, designed, developed, manufactured[,] or installed the Defective Airbags in the Volkswagen- and Audi-branded Class Vehicles and approved the Defective Airbags for use in those vehicles" (internal quotations and alteration omitted)).  In other words, irrespective of this Court's conclusion that Plaintiffs adequately pleaded a joint venture between VWGoA and VW AG, Plaintiffs plainly have *not* "pleaded facts to support the inference" of any relevant conduct occurring "in the course of [a] joint venture and with authority of" Audi AG.  (ECF No. 79 at 3.) There is not even an allegation in the Complaint that Audi AG manufactured a single pre-production vehicle that was sold to a consumer, and no Audi vehicle was part of the recall described in the Complaint, which concerned only Volkswagen-branded vehicles.  (*See* Compl. ¶ 99.)  In short, Plaintiffs do not, and cannot, trace their alleged injuries to Audi AG.  As in *Faircloth*, Plaintiffs may not "assert claims on behalf of [absent] class members" against Audi AG, when Audi AG has "caused [Plaintiffs] no cognizable injury."  87 F. App'x at 317.  Plaintiffs' claims against Audi AG must therefore be dismissed for lack of standing.

## II.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER AUDI AG.

All of Plaintiffs' claims against Audi AG must also be dismissed for the additional reason that they fail to sufficiently allege that Audi AG is subject to this Court's jurisdiction in this action.  A party asserting personal jurisdiction "has the burden of establishing a *prima facie* case of jurisdiction" in order to survive a motion to dismiss under Rule 12(b)(2).  *Hawkins* v. *i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 226 (4th Cir. 2019).  This analysis "resembles the

plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.*

Personal jurisdiction over Audi AG is permissible only if the exercise of jurisdiction is "authorized under the state's long-arm statute" and "comport[s] with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc.* v. *Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Because the Virginia long-arm statute reaches to the extent permissible under due process, "the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp.* v. *Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). To comport with due process, "[d]etermining the extent of a State's judicial power over persons outside of its borders . . . can be undertaken through two different approaches—by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." *ALS Scan, Inc.* v. *Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002).

General jurisdiction over a corporation is permissible only when "that corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum state." *Daimler AG* v. *Bauman*, 571 U.S. 117, 139 (2014) (quotation omitted). A corporation is thus "fairly regarded at home" in its "place of incorporation and principal place of business." *Id.* at 137 (quotation omitted). Plaintiffs do not and cannot allege that general jurisdiction is permissible over Audi AG, which is a "German corporation with its principal place of business in Ingolstadt, Germany." (Compl. ¶ 19.) Accordingly, there is no general jurisdiction over Audi AG in Virginia.

In determining specific jurisdiction, courts "consider (1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the

-10-

exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan*, 293 F.3d at 712 (citation omitted). Plaintiffs "must prevail on each prong" for the Court to exercise personal jurisdiction over Audi AG. *Perdue Foods LLC* v. *BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016). Here, Plaintiffs' allegations are insufficient to plead even one of these prongs.

The first prong of the specific jurisdiction analysis requires that "the defendant purposefully availed itself of" Virginia, which reflects the "minimum contacts requirement of constitutional due process." *Consulting Eng'rs*, 561 F.3d at 278. Plaintiffs allege only three contacts by Audi AG, none of which plausibly demonstrates that Audi AG purposefully availed itself of Virginia.

*First*, Plaintiffs allege that Audi vehicles were "manufactured by Audi AG and shipped to the United States whereupon title was transferred to VWGOA in Virginia by virtue of a manufacturer's certificate of origin issued by Audi AG." (Compl. ¶ 30.) Audi AG's manufacture of vehicles in Germany cannot be the basis for personal jurisdiction in Virginia. Although this Court found that VW AG "availed itself of Virginia by directing vehicles to be shipped into or through the Commonwealth" (ECF No. 79 at 1), there is no basis for such finding with respect to Audi AG because Plaintiffs do not allege that Audi AG itself ships the vehicles into the United States—just that the vehicles were "shipped to the United States" (Compl. ¶ 30).[2] *Second*, Plaintiffs allege that two Audi AG employees at some unspecified point in time "visited" VWGoA's headquarters in Virginia for "meetings" and "regularly interacted with VWGOA management in Virginia." (Compl. ¶ 31.) However, "in-person business meetings are not 'automatically sufficient'" to establish purposeful availment. *Universal Leather, LLC* v. *Koro AR,*

---

[2] Plaintiffs incorrectly assert that the transfer of ownership of Audi vehicles to VWGoA occurs in Virginia. In fact, it occurs in Germany, where the vehicles are sold.

*S.A.*, 773 F.3d 553, 561 (4th Cir. 2014).   Indeed, the Fourth Circuit has held that there was no specific jurisdiction even when "the parties exchanged 'some mail and telephone calls,'" and "two visits were made to [the forum state] by defendant's employees."   *Le Bleu Corp.* v. *Standard Capital Grp., Inc.*, 11 F. App'x 377, 380-81 (4th Cir. 2001) (citation omitted).   *Third*, Plaintiffs argue that the Virginia contacts of VWGoA and VW AG "can be imputed to Audi AG pursuant to the agency relationship that exists between and among the parties . . . and also by virtue of the Joint Venture."   (Compl. ¶ 32.)   But this argument ignores the Supreme Court's command that "[e]ach defendant's contacts with the forum State must be assessed individually."   *Calder* v. *Jones*, 465 U.S. 783, 790 (1984).   In any event, as explained below, *see infra* Section III.B., Plaintiffs do not sufficiently allege any relevant agency or joint venture relationship involving Audi AG, so this argument does not allow Plaintiffs to bootstrap jurisdiction over Audi AG.

The second prong of the specific jurisdiction analysis requires that "the plaintiff's claims arise out of the activities directed at the forum"—*i.e.*, that "the defendant's contacts with the forum state form the basis of the suit."   *Consulting Eng'rs*, 561 F.3d at 278-79.   Even if the Court finds that Audi AG has purposefully availed itself of Virginia, Plaintiffs fail to sufficiently plead any *facts* suggesting any relationship between Audi AG's alleged contacts in Virginia and their claims.   (Compl. ¶¶ 9-16 (alleging purchases of only Volkswagen-branded vehicles).)

Plaintiffs merely allege that Audi vehicles are "manufactured by Audi AG and shipped to the United States whereupon title was transferred to VWGOA in Virginia by virtue of a manufacturer's certificate of origin issued by Audi AG."   (Compl. ¶ 30.)   But Plaintiffs do not allege that *their* vehicles were manufactured by Audi AG, nor do they even allege that Audi AG manufactured any identifiable pre-production vehicle that was sold to a consumer.   Plaintiffs' claims thus do not arise out of this alleged contact.   Likewise, as the Court itself stated in the Order,

-12-

"the pleaded facts indicate that [VW AG]," not Audi AG, "shipped the vehicles subject to this suit to VWGoA" (ECF No. 79 at 1), so any shipments of vehicles later sold to Plaintiffs cannot be the basis for personal jurisdiction over Audi AG.  And thus, even assuming those Audi-branded vehicles' manufacturer certificates of origin and manufacturer's certifications contained the misrepresentations that Plaintiffs allege (*see* Compl. ¶¶ 193-94), Plaintiffs' claims do not arise out of those representations because Plaintiffs did not purchase Audi-branded vehicles.

The same is true for Plaintiffs' allegation that two Audi AG employees "visited" VWGoA's headquarters in Virginia for "meetings" in furtherance of the sales of the Class Vehicles," and "regularly interacted with VWGOA management in Virginia to develop and to direct strategy to increase sales of Audi-branded vehicles, which has included efforts to market Audi-branded and CPO-designated cars of which the Class Vehicles are a part."  (Compl. ¶ 31.) None of the Plaintiffs alleges that they purchased "Audi-branded vehicles," either CPO-designated or otherwise, so their claims cannot arise out of this alleged contact.

Plaintiffs' arguments regarding agency and a supposed joint venture (Compl. ¶ 32) are likewise fatally flawed.  As discussed below, Plaintiffs do not sufficiently allege any relevant agency or joint venture relationship, as there are no facts pleaded regarding Audi AG's role in the alleged agency and joint venture between VWGoA and VW AG.  *See infra* Section III.B.  Even Plaintiffs' allegation that Audi AG's employees purportedly visited VWGoA's headquarters "in furtherance of the sales of the Class Vehicles" (Compl. ¶ 31) is far too "conclusory and speculative . . . for establishing" a joint venture theory of personal jurisdiction.  *See Unspam Techs., Inc.* v. *Chernuk*, 716 F.3d 322, 330 (4th Cir. 2013).  Accordingly, because the alleged acts of VWGoA and VW AG cannot be imputed to Audi AG, Plaintiffs' claims against Audi AG cannot arise out of those acts to support jurisdiction.

-13-

Finally, particularly in light of the Complaint's paucity of factual allegations regarding Audi AG's conduct, it would be constitutionally unreasonable to assert personal jurisdiction over Audi AG here. To determine whether "the exercise of personal jurisdiction [is] constitutionally reasonable," the Court considers five factors: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs*, 561 F.3d at 279. The burden on Audi AG, a foreign defendant, would be overwhelming, and "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co.* v. *Super. Ct.*, 480 U.S. 102, 114 (1987). Moreover, given that "[P]laintiff[s] [are] not . . . [Virginia] resident[s], [Virginia's] legitimate interests in the dispute have considerably diminished." *Id.* Finally, even Plaintiffs themselves cannot show an "interest in obtaining convenient and effective relief," *Consulting Eng'rs*, 561 F.3d at 279, as Plaintiffs did not purchase Audi vehicles and cannot show how they would be entitled to *any* relief from Audi AG. The balance of factors confirms that asserting personal jurisdiction over Audi AG in this case is thus constitutionally unreasonable.

## III.  PLAINTIFFS FAIL TO ALLEGE ANY FACTS SPECIFIC TO AUDI AG SUFFICIENT TO STATE A CLAIM AGAINST IT.[3]

For many of the same reasons discussed above, the Complaint should be dismissed under Rule 12(b)(6) as against Audi AG because Plaintiffs fail to allege well-pled facts entitling

---

[3] Audi AG respectfully submits that Plaintiffs' claims should also be dismissed for the same reasons articulated in the motions to dismiss of VWGoA and VW AG. Although Audi AG does

them to relief.  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555-56 (2007).  "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes."  *Nemet Chevrolet, Ltd.* v. *Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  Before allowing a complaint to survive a motion to dismiss, a court must conclude that the factual allegations "possess enough heft" to set forth "a plausible entitlement to relief."  *Twombly*, 550 U.S. at 557, 559.

Because Plaintiffs' claims here sound in fraud or are based on fraud, they must also comply with Federal Rule of Civil Procedure 9(b), which mandates that Plaintiffs "state with particularity the circumstances constituting fraud."  *See also Harrison* v. *Westinghouse Savannah River Co.*, 176 F.3d 776, 784 n.5 (4th Cir. 1999) ("[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6).").  To satisfy Rule 9(b), a plaintiff "must *at a minimum*, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Murphy* v. *Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014) (quotation omitted).  Rule 9(b)'s requirements apply to fraud-based state law claims asserted in federal court.  *Baltimore County* v. *Cigna Healthcare*, 238 F. App'x 914, 921 (4th Cir. 2007) (In case involving state law claim, "[i]n evaluating whether a cause of action must be pled with particularity, a court should examine whether the claim requires an essential showing of fraud.").

### A.    Plaintiffs' Claims Against Audi AG Rest on Impermissible Group Pleading.

Plaintiffs must plead (and ultimately prove) the elements of their claims against *each* defendant.  Distinct defendants cannot be simply grouped "together without specif[ication

---

not repeat those arguments here in light of the Court's rulings on those motions, they are incorporated herein by reference.

of] which defendant committed which wrong." *David F. Apple, MD, Prof'l Corp. Pension Plan* v. *Prudential-Bache Sec., Inc.*, 820 F. Supp. 984, 987 (W.D.N.C. 1992), *aff'd sub nom. Juntti* v. *Prudential-Bache Sec., Inc.*, 1993 WL 138523 (4th Cir. 1993) (per curiam). Plaintiffs' allegations here fail under the pleading standards of both Rule 8 and Rule 9(b) because Plaintiffs impermissibly group together Audi AG with VWGoA and VW AG as "Volkswagen" and "Defendants." (Compl. ¶ 1; *see, e.g.*, Compl. ¶¶ 122, 157, 164, 181, 188, 204, 226, 233, 249, 266, 273, 289, 306, 313, 329, 346, 353, 369, 386, 393.) "[G]rouping multiple defendants who are affiliated together with a single name . . . for pleading purposes" is not adequate; rather, "[p]laintiffs must be able to separately state a claim against each and every defendant joined in this lawsuit." *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016).

In particular, Rule 8 requires that the Complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson* v. *Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). Individualized pleading is essential under the Rule "to ensure that the serious burdens of defending against this sort of lawsuit are visited upon" a defendant "only when the complaint 'plausibly suggest[s]'" that the defendant "engaged in 'his or her *own* misconduct.'" *Evans* v. *Chalmers*, 703 F.3d 636, 661 (4th Cir. 2012) (Wilkinson, J., concurring) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 681, 677 (2009)); *see also Joseph* v. *Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015) (dismissing complaint for failure to satisfy Rule 8 because the complaint "indiscriminately lump[s] all . . . Defendants together, without articulating the factual basis for each Defendant's liability" (quotation omitted)); *Atuahene* v. *City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (affirming dismissal because "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy th[e] minimum standard" of Rule 8).

Plaintiffs' impermissible use of group pleading also runs counter to the essential purposes of the heightened pleading standard of Rule 9(b).  Accordingly, courts in the Fourth Circuit routinely reject group pleading of claims sounding in fraud.  *See Juntti*, 1993 WL 138523, at *2 ("[I]ndicative of the insufficiently particular character of the complaint is its impermissible aggregation of defendants without specifically alleging which defendant was responsible for which act."); *Feeley* v. *Total Realty Mgmt.*, 660 F. Supp. 2d 700, 705 (E.D. Va. 2009) ("The Complaint while long, is replete with broad brush general group allegations, group pleading which is not sufficient in fraud claims.").[4]

Here, Plaintiffs have failed to identify any specific role Audi AG allegedly played in the purportedly fraudulent scheme, or to plead any facts showing that Audi AG participated in the alleged scheme.  To the contrary, as recognized by this Court, "the pleaded facts indicate that [VW AG]"—not Audi AG—"manufactured and shipped the vehicles subject to this suit to VWGoA" and "unlawfully made material misrepresentations about the vehicles."  (ECF No. 79 at 1.)  Consequently, Plaintiffs cannot satisfy Rule 8 or Rule 9(b) here because they do not allege that Audi AG participated in or was party to the sales of the Volkswagen-branded vehicles that Plaintiffs allege they purchased.

---

[4] *See also Iron Workers Local 16 Pension Fund* v. *Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 579 (E.D. Va. 2006) ("Grouping defendants together in a pleading fails to satisfy the requirement that the who, what, when, where, why, and how, be pled with specificity."); *Rich Food Servs., Inc.* v. *Rich Plan Corp.*, 2001 WL 36210598, at *10 (E.D.N.C. May 12, 2001) (dismissing fraud claim because it provides "no individual identification, differentiation or explanation of [the defendants'] personal actions"); *David F. Apple, MD Prof'l Corp. Pension Plan*, 820 F. Supp. at 987 ("By using common allegations to imply that each defendant is responsible for the statements and actions of the others, plaintiffs are not in compliance with Rule 9(b), which requires that a complaint set forth with particularity each defendant's culpable conduct.").

### B.     Audi AG Is Not Liable for the Alleged Actions of VWGoA.

As a backstop for their impermissible group pleading, Plaintiffs allege that Audi AG should be liable for the alleged actions of VWGoA because the two companies, along with VW AG, supposedly "operate a joint venture," or otherwise "acted as the agents of each other" such that "all misrepresentations at-issue in this lawsuit . . . were made with knowledge and intent by VWGOA, VWAG[,] and Audi AG." (Compl. ¶¶ 20, 22.)  But Plaintiffs' allegations about Audi AG's supposed joint venture or agency relationship with VWGoA and VW AG are entirely conclusory and insufficient to survive a motion to dismiss.

Even if, as this Court held (ECF No. 79 at 1), Plaintiffs adequately pleaded that VW AG and VWGoA operated a "joint venture" entered into "for the purposes of unlawfully selling preproduction series vehicles," there is no basis in the Complaint to conclude that Audi AG was part of that joint venture.  This Court relied on four factual allegations that support Plaintiffs' joint venture theory as to VWGoA and VW AG:  (1) VW AG "manufactured and shipped the vehicles subject to this suit to VWGoA to Virginia," (2) VW AG "maintained at least one record of preproduction series vehicles within the United States," (3) VW AG "directed VWGoA to perform allegedly unlawful actions," and (4) VW AG "unlawfully made material misrepresentations about the vehicles." (ECF No. 79 at 1.)

But the Complaint contains no remotely equivalent allegations against Audi AG. Plaintiffs do not allege that any Plaintiff purchased a vehicle manufactured or sold by Audi AG. Thus, Plaintiffs fail to allege that Audi AG manufactured and shipped to VWGoA in Virginia any vehicles that are subject to this lawsuit, let alone any preproduction vehicles.  Further, Plaintiffs do not allege that Audi AG "maintained [any] record of preproduction series vehicles within the United States."  *Id.*  Nor does the Complaint contain any allegations that Audi AG employees directed VWGoA "to perform allegedly unlawful actions" or "unlawfully made material

-18-

misrepresentations" about any of the Volkswagen-branded vehicles included in the recall or purchased by Plaintiffs.  *Id.*

Applicable law confirms that Plaintiffs fail to plead that Audi AG entered into any joint venture related to the allegations of the Complaint.  Under Virginia law,[5] the elements of a joint venture "are an agreement, express or implied to 1) jointly share in the profits and losses of an undertaking in which the parties have a community of interest in the object and purpose and 2) have joint and mutual control and management by each party over the other in respects thereto." *Shintom Am., Inc.* v. *Cellular Info. Network, Inc.*, 825 F. Supp. 108, 111 (E.D. Va. 1993) (citing *Flip Mortg. Corp.* v. *McElhone*, 841 F.2d 531, 539 (4th Cir. 1988)).  Plaintiffs fail to plead these elements as to Audi AG.

First, Plaintiffs rely on conclusory allegations that "VWGOA, VWAG and Audi AG" agreed to and "each shared in the profits and losses of the enterprise" (Compl. ¶ 21), but the Complaint lacks factual allegations as to the nature and existence of a profit-sharing agreement between Audi AG and the other Defendants for the purported "special combination for the purpose of unlawfully selling preproduction series vehicles" (ECF No. 79 at 1).  *See A.G. Van Metre Constr., Inc.* v. *NVKettler L.P.*, 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992).  Although VW AG is the parent company of both VWGoA and Audi AG, (Compl. ¶¶ 17-19), the two subsidiaries are *separate* companies, and there are no facts pleaded as to how VW AG shares profits in the sale of Volkswagen-branded vehicles with Audi AG, much less how such profit

---

[5] According to Plaintiffs, Virginia law should govern the alleged joint venture and partnership because they "arose in Virginia and [are] centered in Virginia."  (Compl. ¶ 20.)  Virginia choice-of-law principles dictate that the law of the forum where an "agreement took place" governs issues surrounding that joint venture or partnership agreement.  *Sahraeyan* v. *Shahkarami*, 2014 WL 8239953, at *3 (Va. Cir. Ct. July 15, 2014).  Here, there is no joint venture or partnership agreement, but Audi AG assumes the application of Virginia law for purposes of addressing the joint venture and partnership allegations of the Complaint.

sharing relates to any participation by Audi AG in the supposed joint venture. Even if profits flow directly between VWGoA and VW AG, there is no allegation about how those profits are shared with Audi AG (a separate subsidiary) for sales of Volkswagen-branded vehicles—the only vehicles in the recall and the only brand of vehicles that Plaintiffs allege purchasing.

Second, Plaintiffs have not alleged facts plausibly showing that Audi AG had "a voice in the control and management" of how VW AG or VWGoA titled, registered, internally used, marketed, and/or sold the Volkswagen CPO vehicles at issue in the United States or otherwise had a "right to direct and govern" the venture. *Flip Mortg. Corp.*, 841 F.2d at 539 (citations omitted); *see also Bocek* v. *JGA Assocs., LLC*, 537 F. App'x 169, 179 (4th Cir. 2013) (no joint venture where the parties did not "each shar[e] in the profits and hav[e] a say in management and control of the business"). As this Court previously ruled, "the pleaded facts indicate that VW-G[ermany]," not Audi AG, "manufactured and shipped the vehicles subject to this suit to VWGoA." (ECF No. 79 at 1.)

At most, Plaintiffs allege that Audi AG sales managers "visited" VWGoA in Virginia at an unspecified time and "regularly interacted with VWGOA management in Virginia to develop and to direct strategy to increase sales of Audi-branded vehicles." (Compl. ¶ 31.) That is exactly the sort of minimal interaction that Virginia courts have held are insufficient to transform limited relationships with a separate corporation into a joint venture or partnership. *See Flip Mortg. Corp.*, 841 F.2d at 539 (ruling that there was no joint venture where one company had "specific contractual rights which gave it narrow authority to control certain [] business decisions" while "the great bulk of [] decisions were left entirely to the discretion of" the other company). It is particularly inadequate here, where no plaintiff is alleged to have purchased any "Audi-branded vehicle," and there is no allegation that Audi AG sales managers participated in "direct[ing]

-20-

strategy" regarding Volkswagen-branded vehicles.   Even though Plaintiffs assert that these "meetings" were "in furtherance of the sales of the Class Vehicles," there is no allegation that the meetings involved any of the Volkswagen-branded vehicles that were purchased by Plaintiffs. (Compl. ¶ 31.)   Likewise, there is no factual allegation that Audi AG manufactured any pre-production or incorrectly labeled vehicles sold to consumers.

Plaintiffs also appeal to agency law to try to salvage their claims against Audi AG. This too fails.  A parent company's "subsidiaries are not its agents and their actions should not be imputed" to the parent, even when the parent "supervised the creation of its subsidiaries, undertook to finance them and even contributed management skills and resources," because "[t]his type of participation . . . is the minimum to be expected from any parent corporation."  *Omega Homes, Inc.* v. *Citicorp Acceptance Co.*, 656 F. Supp. 393, 400 (W.D. Va. 1987).   Here, Plaintiffs' allegations do not reach even that far.

Contrary to Virginia law, Plaintiffs' joint venture and agency allegations attempt to conflate Audi AG with VW AG and VW AG's U.S. subsidiary, VWGoA, despite separate corporate forms for each of these entities.   "In Virginia, unlike in some states, the standards for veil piercing are very stringent and piercing is an extraordinary measure that is permitted only in the most egregious circumstances."  *C.F. Tr., Inc.* v. *First Flight Ltd. P'ship*, 580 S.E.2d 806, 811 (Va. 2003); *see Eure* v. *Norfolk Shipbuilding & Drydock Corp.*, 561 S.E.2d 663, 669 (Va. 2002). Without more, Plaintiffs are not entitled to assert claims against Audi AG based on its corporate relationship with the other defendants.

**C.      Plaintiffs' Allegations Are Insufficient To Plead Their Various Claims Against Audi AG.**

Without the benefit of their legally baseless reliance on group pleading or conclusory joint venture or agency allegations, Plaintiffs fail to plausibly state any claims against Audi AG.

**Odometer Act.**  Plaintiffs do not allege any conduct by Audi AG in violation of the Odometer Act.  Plaintiffs do not even mention a single act of Audi AG in their Odometer Act allegations except to say that Audi AG should be held "jointly and severally liable."  (Compl. ¶ 131.)  Instead, all of Plaintiffs' Odometer Act allegations are attributed to VWGoA.  (*See* Compl. ¶¶ 121-31.)  Plaintiffs allege that "[t]he conduct described herein by *VWGOA* constitutes violations of the Odometer Act *committed by VWGOA* with the intent to defraud."  (Compl. ¶ 131 (emphasis added).)  Although this Court allowed Odometer Act claims against VW AG to proceed on the theory that it engaged in a joint venture with VWGoA, the Complaint alleges no such joint venture relationship between Audi AG and VWGoA.  Accordingly, Plaintiffs' allegations fail to state an Odometer Act claim against Audi AG.

**Unjust Enrichment.**  Plaintiffs' unjust enrichment claims must be dismissed because they do not sufficiently allege that Audi AG was enriched by any conduct described in the Complaint.  That the "defendant received a benefit" is a basic element of any unjust enrichment claim.  *Harris Grp., Inc.* v. *Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009); *see also Century Senior Servs.* v. *Consumer Health Benefit Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1266 (S.D. Fla. 2011); *EnviroFinance Grp., LLC* v. *Envt'l Barrier Co., LLC*, 113 A.3d 775, 790 (N.J. Super. Ct. App. Div. 2015); *Norcon Builders, LLC* v. *GMP Homes VG, LLC*, 254 P.3d 835, 844 (Wash. Ct. App. 2011).  Because no Plaintiff purchased an Audi vehicle, Audi AG could not have, and did not, receive any alleged benefit from Plaintiffs.

**State Consumer Protection Acts.**  Plaintiffs' state consumer protection act claims must be dismissed because no Plaintiff alleges that they engaged in a consumer transaction with Audi AG.  Each state's consumer protection act requires a civil plaintiff "to show he suffered 'actual damage' *as a result of* the defendant's violation of the act."  *Camasta* v. *Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (citation omitted); *see also* Cal. Civ. Code § 1780(a); Colo. Rev. Stat. § 6-1-113(1)(a); Fla. Stat. § 501.211(2); Ill. Comp. Stat. § 505/10a(a); N.J. Stat. Ann. § 56:8-19; *Cousineau* v. *Microsoft Corp.*, 992 F. Supp. 2d 1116, 1128 (W.D. Wash. 2012).  Plaintiffs cannot establish that any purported damages were caused by Audi AG because no Plaintiff is alleged to have purchased an Audi vehicle.

**Breach of Warranty.**[6]  Plaintiffs fail to allege that Audi AG breached any purported warranty.  "[T]o establish a breach of implied warranty, [a] plaintiff must show that the product was not reasonably fit for the ordinary purposes for which it was sold and such defect proximately caused injury to the ultimate consumer."  *Hoffman* v. *Nutraceutical Corp.*, 2013 WL 2650611, at *4 (D.N.J. June 10, 2013) (citation and internal quotation marks omitted).  Here, Plaintiffs make no allegations that an Audi vehicle was unfit for its ordinary purpose or that any defect in any Audi vehicle caused Plaintiffs any injury.  Indeed, Plaintiff have no basis to allege that any of them were beneficiaries of any warranty (express or implied) from Audi AG because none of them purchased an Audi vehicle.  Significantly, Plaintiffs concede that no Audi vehicles are alleged to have been part of the recall underlying the allegations in the Complaint (*see* Compl. ¶ 99), and Plaintiffs provide no other basis for their assertion that any vehicle does not comply

---

[6] Plaintiffs withdrew their Illinois and Washington implied warranty claims against VWGoA and VW AG.  (ECF No. 47 at 37; ECF No. 68 at 29.)  There is equally no basis to maintain those claims against Audi AG.

with FMVSS or otherwise does not comply with any warranty provided by Audi AG. (*See* ECF

No. 47 at 36-37 (quoting the recall notice "to establish an actionable defect").)

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against Audi AG

with prejudice.

Dated:  January 16, 2020

MCGUIREWOODS LLP

/s/ Frank Talbott V
Terrence M. Bagley (VSB No. 22081)
Kenneth W. Abrams (VSB No. 78216)
Frank Talbott V (VSB No. 86396)
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Tel:  804-775-4773
Fax:  804-698-2323
tbagley@mcguirewoods.com
kabrams@mcguirewoods.com
ftalbott@mcguirewoods.com

Respectfully submitted,

SULLIVAN & CROMWELL LLP

Robert J. Giuffra Jr. (*pro hac vice*)
Suhana S. Han (*pro hac vice*)
Adam R. Brebner (*pro hac vice*)
125 Broad Street
New York, NY  10004
Tel:  212-558-4000
Fax:  212-558-3558
giuffrar@sullcrom.com
hans@sullcrom.com
brebnera@sullcrom.com

Judson O. Littleton (*pro hac vice*)
1700 New York Avenue, NW
Washington, DC  20006
Tel:  202-956-7500
Fax:  202-293-6330
littletonj@sullcrom.com

*Counsel for Audi Aktiengesellschaft*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2020, I electronically filed the foregoing with the

Clerk of Court using the Court's CM/ECF filing system which will send notification of

electronic filing (NEF) to all counsel of record.

<u>/s/ Frank Talbott V</u>
Frank Talbott V (VSB No. 86396)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Telephone: 804-775-4773
Fax: 804-698-2313
ftalbott@mcguirewoods.com

*Counsel for Audi Aktiengesellschaft*