**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| RICARDO R. GARCIA, DUANE K. GLOVER, PAUL E. JACOBSON, GAETANO CALISE, MYKHAYLO I. HOLOVATYUK, BRIAN GARCIA, PAUL THOMSON, and DAVID HARTMAN, on behalf of themselves and all others similarly situated, ) ) ) ) ) ) ) | CASE NO.:  1:19-cv-00331-LO-MSN |
| Plaintiffs, ) ) | |
| v. ) ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC. a/k/a AUDI OF AMERICA, INC., VOLKSWAGEN AKTIENGESELLSCHAFF, And AUDI AKTIENGESELLSCHAFF, ) ) ) ) ) | |
| Defendants. ) | |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AUDI AKTIENGESELLSCHAFT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVL PROCEDURE 12(B)(1), 12(B)(2), AND 12(B)(6)**

---

Michael J. Melkersen
THE LAW OFFICES OF MICHAEL MELKERSEN, P.C.
9633 S. Congress Street
New Market, Virginia 22844
Telephone:    540.740.3937
Facsimile:    540.740.8851
Email:        mike@mlawpc.com

Nathan D. Finch
Joseph F. Rice (*Admitted Pro Hac Vice*)
Kevin R. Dean (*Admitted Pro Hac Vice*)
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Telephone:    843.216.9000
Facsimile:    843.216.9440
Email:        nfinch@motleyrice.com
              jrice@motleyrice.com
              kdean@motleyrice.com

*Attorneys for the Plaintiffs and Interim Class Counsel*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES……………………………………………………………..iii

INTRODUCTION………………………………………………………..…………...1

STATEMENT OF FACTS……………………………………………………………...3

ARGUMENT…………………………………………………………..…………...5

    A.    Legal Standards………………………………………………………5

    B.    Plaintiffs Allege Sufficient Facts Specific to Audi to Impose
        Liability Upon it as a Joint Venturer with its Co-Defendants...…………………..7

    C.    The Court has Specific Personal Jurisdiction over Audi…………………………..12

    D.    The Court Should Reject Audi's Article III Standing Argument………………15

    E.    Plaintiffs State Actionable Claims against Audi………………………...17

        1.    Odometer Act………………………………………………………17

        2.    Unjust Enrichment……………………………………………………18

        3.    Consumer Protection Act Claims………………………………...18

        4.    Breach of Warranty Claims………………………………....19

CONCLUSION………………………………………………………………..19

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982)…………………………………………………6

*Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198 (D. Mass. 2002)………….3, 16

*Beard v. Dominion Homes Fin. Servs., Inc.*, No. 2:06CV00137, 2007 WL 2137944
    (S.D. Ohio July 23, 2007)……………………………………………………………………9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………………………6

*Bensmiller v. E.I. DuPont De Nemours & Co.*, 47 F.3d 79 (2d Cir. 1995) …………………12-13

*Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689 (D. Md. 2014)……………...2-3, 15-16

*BP Chems. Ltd. v. Jiangsu Sopo Corp. (Grp.) Ltd.*, 285 F.3d 677 (8th Cir. 2002)………………9

*Bristol-Myers Squibb Co. v. Super. Ct. of Calif.*, 137 S. Ct. 1773 (2017)…………………………12

*Ciuffitelli v. Deloitte & Touche LLP*, 2017 U.S. Dist. LEXIS 106883
    (D. Or. April 10, 2017)…………………………………………………………………10-11

*Covey v. Assessor of Ohio County*, 777 F.3d 186 (4th Cir. 2015)………………………………5-6

*Designs88 Ltd. P'ship v. Power Uptik Prods., LLC*, 133 F. Supp. 2d 873 (W.D. Va. 2001)……12

*Di Vittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987)…………………10

*Dunn v. Borta*, 369 F.3d 421 (4th Cir. 2004)……………………………………………………10

*Engel v. Buchan*, 710 F.3d 698 (7th Cir. 2013)…………………………………………………10

*Faircloth v. Fin. Assets Secs. Corp.*, 87 Fed. Appx. 314 (4th Cir. Jan. 23, 2004)…………...16-17

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)……………………………...3, 16

*Goodyear Dunlop Tires Op's, S.A. v. Brown*, 564 U.S. 915 (2011)………………………..…12

*Hartz & Co., Inc. v. Prod. Control Info, Ltd.*, 1995 U.S. App. LEXIS 32063
    (4th Cir. Nov. 15, 1995)…………………………………………………………………12

*Johns v. Stillwell*, No. CIV. A. 3:07CV00063, 2008 WL 2795884
    (W.D. Va. July 18, 2008)…………………………………………………………………9

iii

*Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513 (E.D. Va. 2009)………………………...13

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002)………………………………………..17

*PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438 (Va. 2003)………………………………………8

*Popoola v. MD-Indiv. Pract. Ass'n, Inc.*, 230 F.R.D. 424 (D. Md. 2005)………………………17

*Roark v. Hicks*, 362 S.E.2d 711 (Va. 1987)………………………………………………………8

*Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563 (5th Cir. 2003)……………………………..10

*SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412 (4th Cir. 2015)…………………………6

*Smith v. Grenadier*, 127 S.E.2d 107 (Va. 1962)………………………………………………...7

*Sneha Media & Entertainment, LLC v. Assoc'd Broadcasting Co. P. Ltd.*,
   911 F.3d 192 (4th Cir. 2018)……………………………………………………………...6

*Stone v. Trump*, 400 F. Supp. 3d 317 (D. Md. 2019)………………………………………...6-7

*Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553 (4th Cir. 2014)……………………….14

*Wells v. Whitaker*, 151 S.E.2d 422 (Va. 1966)…………………………………………………7

*Wikimedia Found. v. NSA/Central Service*, 857 F.3d 193 (4th Cir. 2017)………………………6

*W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 778 F. Supp. 2d 667 (E.D. Va. 2011)…….3, 15, 16

*Young v. FDIC*, 103 F.3d 1180 (4th Cir. 1997)………………………………………………….12

**STATUTES**

49 U.S.C. §§ 32701 *et seq.*………………………………………………………………………17

Va. Code Ann. § 8.01-328.1(a)(1)-(2)…………………………………………………………...12

Va. Code Ann. § 50-73.88(C)(3)…………………………………………………………………9

Va. Code. Ann. § 50-73.91………………………………………………………………………8

Va. Code Ann. § 50-73.95………………………………………………………………………...8

**COURT RULES**

Fed. R. Civ. P. 9(b)……………………………………………………………………………..9

Fed. R. Civ. P. 12(b)(1)……………………………………………………………………..1, 6, 19

Fed. R. Civ. P. 12(b)(2)……………………………………………………………………..1, 6, 19

Fed. R. Civ. P. 12(b)(6)……………………………………………………………1, 5, 11, 19

Plaintiffs Ricardo R. Garcia, Duane K. Glover, Paul E. Jacobson, Gaetano Calise, Mykhaylo I. Holovatyuk, Brian Garcia, Paul Thomson, and David Hartman (collectively, "Plaintiffs"), respectfully submit this memorandum of law in opposition to Defendant Audi Aktiengellschaft's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6) (Dkt. No. 87), and state in opposition as follows.

## **INTRODUCTION**

Plaintiffs filed this nationwide and multiple state class action alleging that Defendants Volkswagen Group of America, Inc. ("VW-America"), Volkswagen Aktiengesellschaft ("VW-Germany"), and Audi Aktiengesellschaft ("Audi") (collectively, "Defendants" or "Volkswagen") schemed to defraud American consumers by misrepresenting the safety certification, prior use, and prior mileage of certified-pre-owned ("CPO") vehicles.  VW-America and VW-Germany previously and separately moved to dismiss on a multitude of grounds.  VW-America argued primarily that Plaintiffs failed to state claims and that their claims were barred by state-law doctrines and/or federal preemption.  VW-Germany argued primarily that the Court lacked personal jurisdiction over it and that Plaintiffs failed to state claims against it specifically.  The Court denied both motions in their entirety, but acknowledged that Plaintiffs voluntarily withdrew two of their state-law claims.  *See* Oct. 25, 2019 Order (Dkt. No. 49) ("VW-America Order"); Dec. 23, 2019 Order (Dkt. No. 79) ("VW-Germany Order").

Defendant Audi now has moved to dismiss largely based on the same arguments VW-America and VW-Germany raised, though with one significant addition.  Like VW-Germany, Audi argues that the Court lacks personal jurisdiction over it.  *See* Audi Memo. of Law ("Audi Memo.") (Dkt. No. 88) at 9-14.  The Court should reject Audi's argument for the same reason it rejected VW-Germany's argument, *i.e.* that Audi purposely availed itself of Virginia to conduct

1

business here in the same manner by shipping vehicles, transferring title, and making the same misrepresentations of compliance with U.S. safety standards and also by physically entering Virginia to plan the fraudulent sales scheme in concert with VW-America. *See* VW-Germany Order at 2 (denying personal jurisdiction defense); *see also* Amended Class Action Complaint ("FAC") (Dkt. No. 13), ¶ 32 (physical presence allegations).

Audi also argues, like VW-America and VW-Germany both, that Plaintiffs fail to state actionable claims against it. *See* Audi Memo. at 14-24. The Court also should reject these arguments for the same reasons it did with respect to the other Defendants, *i.e.* that Plaintiffs sufficiently plead that all Defendants engaged in a joint venture whereby VW-Germany and Audi manufactured and shipped the Class vehicles to VW-America in Virginia and unlawfully made misrepresentations about the vehicles that were both necessary to transfer title to VW-America and passed on to American consumers who purchased the vehicles. *See* VW-Germany Order at 1 (denying dismissal of joint venture allegations); *see also id.* at 2-3 (denying dismissal of Odometer Act claims); *id.* at 4 (denying dismissal of state-law claims).

Finally, Audi raises the new argument that Plaintiffs lack Article III standing to sue it because no Plaintiff alleges that they purchased an Audi vehicle in connection with their claims. *See* Audi Memo. at 6-9. Plaintiffs have addressed this argument by moving for leave to amend to add the claims of proposed plaintiffs Donald B. Baker and Judy W. Baker, who purchased a 2017 Audi Q7 from a Volkswagen-Audi dealership that represented the Q7 to be a CPO vehicle. *See* Plaintiffs' Motion for Leave to Amend (Dkt. No. 91, filed Jan. 30, 2020). Plaintiffs' motion, if granted, would render Audi's Article III standing argument for dismissal moot. *See, e.g.*, *Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 719 (D. Md. 2014) ("Defendants' Motion to Dismiss Plaintiffs' MCPA claim is DENIED AS MOOT in light of the ruling [granting] Plaintiffs'

Motion for Leave to Amend."); *W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 778 F. Supp. 2d 667, 678 (E.D. Va. 2011) ("Upon amendment by the Plaintiffs, the Court will deem Defendants' motion to dismiss on that issue moot.").  If leave to amend is not granted, Audi's motion to dismiss still should be denied, as Plaintiffs have standing to sue Audi based upon its corporate relationships with VW-Germany and VW-America and the three companies' engagement in a common fraudulent scheme against all Class members through the joint venture.  *See, e.g.*, *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 205 (D. Mass. 2002) (finding standing in "cases in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.") (internal quotation marks and citation omitted); *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) ("[A]n individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans.").

For each of these reasons, the Court should deny Audi's motion to dismiss as moot with respect to Article III standing and lacking merit as to all other arguments.

## STATEMENT OF FACTS

Plaintiffs filed this action alleging that Defendants VW-America, VW-Germany, and Audi schemed to defraud American consumers by misrepresenting the safety certification, prior use, and prior mileage of CPO vehicles.  With respect to the safety certification, Defendants misrepresented to American consumers that the CPO Class Vehicles conformed to all Federal Motor Vehicle Safety Standards ("FMVSS" or "Federal Safety Standards") when all Defendants knew they did not and that they could not legally be sold in the U.S.  *See* FAC, ¶ 2.

With respect to prior use and mileage, Defendants sold the CPO Class Vehicles to consumers without disclosing the prior high-intensity uses of and mileage incurred on these

vehicles and instead deceptively created the false appearance that the prior mileage was incurred through a single owner's ordinary use. *Id.*, ¶¶ 3-6, 49 ("Press-Fleet Cars take some of the worst abuse and are some of the hardest-driven cars in existence."). As Plaintiffs explain,

> These temptations proved too much for Volkswagen insofar as it falsified the mileage of its Pre-Production Cars, Press-Fleet Cars and Pool-Fleet Cars when applying for the original title and registration. Specifically, Volkswagen falsely claimed that only 10 miles had been driven on these cars as of the time of initial titling and registration, rather than being honest and disclosing that most of the miles driven on Volkswagen's Pre-Production Cars, Press-Fleet Cars and Pool-Fleet Cars occurred before the initial titling and registration. This dishonesty allowed Volkswagen to sell its Pre-Production Cars, Press-Fleet Cars and Pool-Fleet Cars much more quickly as 'used' (resulting in less regulatory scrutiny) by counting pre-titling mileage as if it had occurred after the initial title issued. This fraud also allowed Volkswagen [to charge] a higher resale price for these cars by keeping its customers in the dark about these vehicles' history of use. Volkswagen ensured its prospective customers would rely on this false information by repeating these lies to every sales prospect who showed interest in one of its CPO cars, by-and-through a Carfax Report containing the false-mileage information, as well as the misleading designation of each of these vehicles as a '1-Owner' car.

*Id.*, ¶ 59.

With respect to Audi's participation in this unlawful and deceptive sales scheme, Plaintiffs allege that Audi is a "wholly owned subsidiary of VW-Germany" and that it "designs, develops, manufacture[]s, and sells automobiles." FAC, ¶ 19. Plaintiffs further allege that Audi, with VW-Germany and VW-America, formed and operated a "Joint Venture" in Virginia wherein:

> those parties agreed to assist each other in designing, manufacturing, importing, distributing, marketing and selling certain motor vehicles in the United States, including the Class Vehicles at-issue in this case. At the critical stages in the foregoing activities, [Defendants] acted as the agent for the other in pursuing their common goal of selling Volkswagen-branded . . . automobiles in the United States, including the Class Vehicles. At all relevant times, Defendants] each maintained a voice in the control and management of this Joint Venture, and each shared in the profits and losses of the enterprise. The Joint Venture arose in Virginia and is centered in Virginia . . . .

*Id.*, ¶ 20.

Plaintiffs also allege with respect to both Audi's role in the Joint Venture and this Court's personal jurisdiction that Audi:

> acted both directly and indirectly to (a) transaction business in Virginia; (b) supply services or things in Virginia; (c) cause tortious injury by an act or omission in Virginia; and (d) cause tortious injury in Virginia by an act or omission outside Virginia and regularly does or solicits business, engages in a persistent course of conduct, and derives substantial revenue from goods used or consumed or services rendered in Virginia. This includes all sales of the Audi-branded Class Vehicles all of which were manufactured by Audi AG and shipped to the United States whereupon title was transferred to [VW-America] in Virginia by virtue of a manufacturer's certificate of origin issue by Audi AG.

*Id.*, ¶ 30 (statutory citation omitted).

Plaintiffs further allege that Audi purposefully and physically availed itself of Virginia to do business through the fraudulent sales scheme:

> Audi AG executives have engaged in direct and extensive contacts with the state of Virginia concerning the fraud that forms the basis of this lawsuit. For example, Susan Romberg, Director of Sales North America for Audi AG, and Andreas Dietz, Sales Manager USA for Audi AG, personally visited VW-America's Herndon, Virginia headquarters for meetings in furtherance of the sales of the Class Vehicles. Both Romberg and Dietz also have regularly interacted with [VW-America] management in Virginia to develop and to direct strategy to increase sales of Audi-branded vehicles, which has included efforts to market Audi-branded and CPO-designated cars of which the Class Vehicles are a part.

*Id.*, ¶ 31. Finally, Plaintiffs allege that VW-America's and VW-Germany's Virginia contacts may be imputed to Audi pursuant to the agency relationship that exists among these entities for purposes of the fraudulent sales scheme at issue. *Id.*, ¶ 32.

## ARGUMENT

### A.    Legal Standards

To prevail against a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a plaintiff must state a claim to relief that is plausible on its face" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Covey v. Assessor of Ohio County*, 777 F.3d 186, 192 (4th Cir. 2015) (internal quotation marks and citations omitted). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 441 (4th Cir. 2015) (internal quotation marks and citation omitted). "Instead, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Thus, in reviewing a motion to dismiss, the Court must "accept as true all of the factual allegations contained in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Covey*, 777 F.3d at 192 (internal quotation marks and citations omitted).

In reviewing a motion to dismiss for alleged lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) where the plaintiff has not yet taken discovery and no evidence is presented, the Court reviews the motion "in conceptually the same manner as we treat the disposition of motions to dismiss under Rule 12(b)(6), where we take the allegations of the complaint as true for purposes of assessing the motion to dismiss" and "give the plaintiffs' allegations a favorable presumption, taking the allegations in the light most favorable to the plaintiff." *Sneha Media & Entertainment, LLC v. Assoc'd Broadcasting Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018).

Similarly, in reviewing a motion to dismiss for alleged lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) that, like here, presents a facial challenge to the complaint, "the plaintiff 'is afforded the same procedural protection' that exists on a motion to dismiss." *Wikimedia Found. v. NSA/Central Service*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Thus, "the Court takes the facts alleged in the

complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 334 (D. Md. 2019).

### B.   Plaintiffs Allege Sufficient Facts Specific to Audi to Impose Liability Upon it as a Joint Venturer with its Co-Defendants.

Plaintiffs may hold Audi jointly and severally liable as a joint venturer with VW-America and VW-Germany in the fraudulent sales scheme.  This Court's ruling with respect to VW-Germany's participation in the Joint Venture should effectively decide this issue.  *See* VW-Germany Order at 1 ("Plaintiffs have alleged the separate entities were joint venturers because, as relevant here, the pleaded facts indicate that VW-G manufactured and shipped the vehicles subject to this suit to VWGoA through Virginia, maintained at least one record of preproduction series vehicles within the United States, directed VWGoA to perform allegedly unlawful actions, and unlawfully made material representations about the vehicles.").  The Court's ruling is correct and applies equally to Audi.

Under applicable Virginia law, a "joint venture" exists when "two or more persons combine in a joint business enterprise for their mutual benefit, with an express or implied understanding or agreement that they are to share in the profits of the enterprise, and that each is to have a voice in its control or management." *Wells v. Whitaker*, 151 S.E.2d 422, 430 (Va. 1966). "Joint adventures are not established by operation of law, but are created by contracts, express or implied. Little formality is required." *Smith v. Grenadier*, 127 S.E.2d 107, 110 (Va. 1962). "The conduct of the parties, as well as other facts and circumstances of a particular case, will often justify the inference that such a contract existed." *Id.* Moreover, "[t]he absence of an express agreement as to profits and losses is no proof that there is no joint adventure." *Id.*

Partnership law applies to joint ventures formed in Virginia. *Roark v. Hicks*, 362 S.E.2d 711, 714 (Va. 1987) ("[T]he rules of law governing the rights, duties, and liabilities of joint venturers are substantially the same as those which govern partnerships.  We will therefore apply the law of partnerships to resolve the statute-of-limitations question presented here."); *PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438, 442 (Va. 2003) (applying rules under the Virginia Uniform Partnership Act to joint venture).  Under Virginia law "[e]ach partner is an agent of the partnership [joint venture] for the purpose of its business," Va. Code Ann. § 50-73.91, and "all partners [joint venturers] are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law." *See also* Va. Code Ann. § 50-73.95 ("A partnership [joint venture] is liable for loss or injury caused to a person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership.").

Plaintiffs allege all the required elements of a joint venture based on specific and/or undisputed facts, which thereby give rise to joint and several liability.  With respect to Audi's role in the Joint Venture, Plaintiffs allege that it:

- "maintained a voice in the control and management of this Joint Venture," including by "direct[ing] strategy to increase sales of Audi-branded vehicles" through its interactions with VW-America, Am. Compl., ¶¶ 20, 31;

- participated by manufacturing the Audi-branded Class Vehicles, shipping them to the U.S., transferring title to VW-America in Virginia by means of the manufacturer's certificate of origin, and falsely representing to U.S. consumers that the Class Vehicles conformed to Federal Safety Standards, *id.*, ¶ 30; and

-  shared in the profits and losses of the enterprise, *id.*, ¶ 20.

These allegations more than suffice for Plaintiffs to seek to hold Audi jointly and severally liable as a joint venturer with VW-America and VW-Germany in the fraudulent sales scheme.[1]  *See* Va. Code Ann. § 50-73.88(C)(3) ("A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment: . . .").

Plaintiffs adequately allege that Audi may be liable for wrongfully using VW-America as its agent to commit the misconduct at issue in Virginia for its benefit.[2]  *See* Am. Compl., ¶ 22 (describing agency relationship among all Defendants).  Although Audi attacks Plaintiffs' agency allegations as conclusory, the detailed facts pleaded demonstrate otherwise. *See, e.g.,* Am. Compl., ¶ 31 ("Both Romberg and Dietz also have regularly interacted with [VW-America] management in Virginia to develop and direct strategy to increase sales of Audi-branded vehicles, which has included efforts to market Audi-branded and CPO-designated cars of which the Class Vehicles are a part.").

---

[1]  Plaintiffs brought common-law fraud claims only against VW-America, and NOT against Audi. Consequently, Plaintiffs' allegations regarding joint venture, and Plaintiffs' alternative allegations of agency, do not fall under the rubric of Fed. R. Civ. P. 9(b) and are not required to be pled with particularity. *See Johns v. Stillwell*, No. CIV. A. 3:07CV00063, 2008 WL 2795884, at *4 (W.D. Va. July 18, 2008) (particularity in pleading agency not required), citing *BP Chems. Ltd. v. Jiangsu Sopo Corp. (Grp.) Ltd.*, 285 F.3d 677, 687 (8th Cir. 2002); *Beard v. Dominion Homes Fin. Servs., Inc.*, No. 2:06CV00137, 2007 WL 2137944, at *5 (S.D. Ohio July 23, 2007) (particularity in pleading joint venture not required).

[2]  Plaintiffs claim that the Defendants' scheme was centered in Virginia, specifically alleging that: (a) all the Class Vehicles were imported through Virginia; (b) the Class Vehicles' use was determined from Virginia prior to being sold to the Plaintiffs or the Class Members; (c) registration of the Class Vehicles, by and through false applications for title, was overseen and paid for from Virginia; (d) management of the Press-Fleet Cars occurred predominantly out of VW-America's headquarters in Herndon, Virginia (i.e. VW-America's Press Fleet Coordinator works out of VW-America's office in Herndon Virginia); (e) pre-sale repairs and maintenance of the Class Vehicles were overseen, directed and paid from Virginia; and (f) the CPO program is managed predominantly from Virginia (e.g. both the Audi & Volkswagen Certified Pre-Owned Managers work out of VW-America's office in Herndon Virginia). Am. Compl., ¶ 33.

9

In arguing for dismissal, Audi also contends that Plaintiffs engage in impermissible "group pleading" by referring in many of their allegations to "Defendants" generally rather than to each by name.  *See* Audi Memo. at 15-17.  The Court should reject this argument.  As a preliminary matter, the "group pleading" doctrine "is not a prohibition on forms of pleading; rather it serves as a presumption that may be invoked *in favor* of a plaintiff" by providing, for example that "'statements in company generated documents represent the collective work of those individuals directly involved in the company's daily management.'"  *Dunn v. Borta*, 369 F.3d 421, 434 (4th Cir. 2004) (emphasis in original) (quoting *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 569 n.4 (5th Cir. 2003)).  Thus, the mere fact that Plaintiffs refer generally to all "Defendants" in some of their allegations does not render these allegations legally deficient.

More fundamentally, federal courts also have held that plaintiffs sufficiently plead claims with reference to multiple defendants where a factual and/or legal predicate for imputing each individual defendant's conduct to the others is sufficiently alleged.  *See*, *e.g.*, *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013) ("But reading the allegations sensibly, and as a whole, there is no genuine uncertainty regarding who is responsible for what.  Wherever the complaint mentions specific misconduct in Engel's investigation and prosecution . . . there can be no doubt that it refers to Buchan and Quid, the two law-enforcement officers in the case.  And they are accused of acting jointly."); *Di Vittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1248 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.  However, no specific connection between fraudulent representations in an Offering Memorandum and particular defendants is necessary when, as here, defendants are insiders or affiliates participating in the offering of the securities in question.") (internal quotation marks and citations omitted); *Ciuffitelli*

10

*v. Deloitte & Touche LLP*, 2017 U.S. Dist. LEXIS 106883, at *42 (D. Or. April 10, 2017) ("The group pleading doctrine allows a plaintiff to allege wrongdoing against a group of individuals or entities jointly engaging in fraudulent or conspiratorial conduct.").

This is precisely what Plaintiffs do here with respect to Audi.  They plead sufficient specific facts as to Audi's control of, participation in, and profiting from the fraudulent sales scheme, *see* Am. Compl., ¶¶ 20, 30-31, so that they may impute all knowledge of and conduct in the scheme to Audi either as a joint venturer with co-Defendants VW-America and VW-Germany, or by its use of VW-America as its agent.  Audi's "group pleading" arguments thus have no merit and should be rejected as grounds for dismissal.

So, too, should the Court reject Audi's argument that Plaintiffs' allegations against it are too general.  *See* Audi Memo. at 18 ("But Plaintiffs' allegations about Audi AG's supposed joint venture or agency relationship with [VW-America] and [VW-Germany] are entirely conclusory and insufficient to survive a motion to dismiss.").  Audi can make this argument only by ignoring Plaintiffs' precise factual bases for making these allegations.  Plaintiffs' allegation that Audi exercised control over the fraudulent sales scheme as to Audi-branded vehicles by having its sales executives personally visit VW-America's Virginia headquarters to "develop and to direct strategy to increase sales" of Audi's own self-branded vehicles.  Am. Compl., ¶ 31.

In sum, Plaintiffs allege sufficiently specific facts as to Audi's control over, participation in, and profiting from the fraudulent sales scheme for it to be held liable by treating the ostensibly separate entities as engaged in a joint venture.  Audi's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) thus should be denied.

C.     **The Court has Specific Personal Jurisdiction over Audi.**

For largely the same reasons as set forth above, the Court may exercise specific personal jurisdiction over Audi consistent with Virginia's long-arm statute and due process.  The long-arm statute provides that a Virginia court "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth" or "[c]ausing tortious injury by an act or omission in Virginia." Va. Code Ann. § 8.01-328.1(a)(1)-(2).   The U.S. Constitution-Fourteenth Amendment's Due Process Clause similarly requires that "for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally,' an 'activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb*, *supra*, 137 S. Ct. at 1781 (quoting *Goodyear Dunlop Tires Op's, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The Fourth Circuit and courts within and beyond it hold that a court may exercise specific personal jurisdiction over a joint venture participant for claims arising from the venture's in-state conduct.  *See*, *e.g.*, *Hartz & Co., Inc. v. Prod. Control Info, Ltd.*, 1995 U.S. App. LEXIS 32063, at *16  (4th Cir. Nov. 15, 1995) ("[T]he district court rejected two of Hartz's three theories of personal jurisdiction and granted Hartz additional time to conduct discovery on the remaining theory, that of a joint-venture relationship between PCI-England and PCI-Georgia.  We are satisfied that the district court was within its discretion to do so."); *Designs88 Ltd. P'ship v. Power Uptik Prods., LLC*, 133 F. Supp. 2d 873, 876 (W.D. Va. 2001) (it is a "possible basis of personal jurisdiction over [a] foreign corporation if [it is] doing business as a single partnership with a corporation of the forum state.") (citing *Young v. FDIC*, 103 F.3d 1180, 1193 (4th Cir. 1997)); *Bensmiller v. E.I. DuPont De Nemours & Co.*, 47 F.3d 79, 84 (2d Cir. 1995) ("[T]he court must determine whether it has personal jurisdiction over a defendant on the ground that the defendant

12

allegedly entered into a contractual relationship, *i.e.* the joint venture, that provides jurisdiction."). Furthermore, "[t]he Fourth Circuit and other courts have found that personal jurisdiction may be based on contacts made by authorized agents." *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 534 (E.D. Va. 2009) (collecting cases).

Based on the foregoing, there is no question but that this Court may exercise specific personal jurisdiction over Audi for the claims in this case arising from the fraudulent sales scheme in which it manufactured, imported, and directed sales strategy for the Audi-branded Class Vehicles to the U.S. through Virginia, where title was transferred to VW-America using Audi's Manufacturer Certificate of Origin, which falsely stated that the vehicles complied with all applicable Federal Safety Standards when they did not. *See* Am. Compl., ¶¶ 30-31.

This Court held that the same type of Virginia-directed conduct by VW-Germany sufficed to establish this Court's specific personal jurisdiction over it. *See* VW-Germany Order at 2 ("[T]he claims here arise directly from VW-G's acts, though which it availed itself of Virginia. Those acts include business transactions in the Commonwealth and acts or omissions which caused injury. Specifically, VW-G availed itself of Virginia by directing sales to be shipped into or through the Commonwealth, transferred title in Virginia, and made misrepresentations giving rise to the alleged injuries here."). The same is true with respect to Audi.

In arguing to the contrary, Audi attempts to distinguish itself on the facts from VW-Germany. Audi contends that it, *unlike VW-Germany*, did not itself ship its manufactured vehicles to Virginia. *See* Audi Memo. at 11 (citing FAC, ¶ 30). This is a distinction without even a distinction, let alone a difference, because Plaintiffs make the same exact allegation with respect to both companies. *Compare* FAC, ¶ 26 ("This includes all sales of the Volkswagen-branded Class Vehicles-the majority of which were manufactured by VW Germany and shipped to the United

13

States whereupon title was transferred to VWGOA in Virginia by virtue of a manufacturer's certificate of origin issued by VWAG."); *with id.*, ¶ 30 ("This includes all sales of the Audi-branded Class Vehicles all of which were manufactured by Audi AG and shipped to the United States whereupon title was transferred to VWGOA in Virginia by virtue of a manufacturer's certificate of origin issued by Audi AG.").  Regardless, whether or not Audi or VW-Germany *itself* operated the ships carrying the vehicles, each Defendant company manufactured its Class Vehicles in Germany and sent those vehicles to the United States through Virginia for sale to American consumers.  Indeed, this Court drew no such distinction whatsoever in finding personal jurisdiction over VW-Germany.  *See* VW-Germany Order at 2 ("VW-G availed itself of Virginia by ***directing vehicles to be shipped into or through the Commonwealth* . . . .") (emphasis added).

Audi next argues that Plaintiffs' allegations that its executives met with VW-America management in Virginia to plan and direct sales of Audi-branded Class vehicles are insufficient because "'in-person business meetings are not automatically sufficient' to establish purposeful availment."  Audi Memo. at 11 (quoting *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 561 (4th Cir. 2014)).  This argument fails under *Universal Leather* itself, where the Fourth Circuit proceeded to hold that while in-person meetings are not automatically sufficient, "such instances may not be viewed in isolation from the totality of the facts before the court."  773 F.3d at 561. Viewing the totality of the pleaded facts here, the Court should hold that Audi's in-person meetings in Virginia addressing sales of Audi-branded Class vehicles, coupled with the overlapping facts concerning manufacture, import, certification, and misrepresentations that established personal jurisdiction over VW-Germany, are more than sufficient to establish jurisdiction over Audi as well.

Finally, the Court also should reject Audi's arguments against finding personal jurisdiction based upon the fact that Plaintiffs purchased Volkswagen-branded rather than Audi-branded

vehicles.  *See* Audi Memo. at 12, 14.  As discussed, Plaintiffs have addressed this argument by moving for leave to amend to add the claims of proposed plaintiffs Mr. and Ms. Baker, who purchased an Audi vehicle represented by their Volkswagen-Audi dealership to be a CPO (and thus a Class) vehicle.  *See* Plaintiffs' Motion for Leave to Amend (Dkt. No. 91, filed Jan. 30, 2020). Plaintiffs' motion, if granted, would render moot this argument by Audi for dismissal based upon personal jurisdiction.  *See*, *e.g.*, *W.L. Gore*, *supra*, 778 F. Supp. 2d at 678 ("Upon amendment by the Plaintiffs, the Court will deem Defendants' motion to dismiss on that issue moot.").

For all of the reasons set forth, the Court has specific personal jurisdiction over Audi just as it does over VW-Germany based upon materially the same conduct in Virginia relating to the same fraudulent sales scheme giving rise to Plaintiffs' claims.

### D.    The Court Should Reject Audi's Article III Standing Argument.

Audi argues that all claims against it must be dismissed due to lack of Article III standing because no named Plaintiff alleges that they purchased an Audi-branded vehicle.  *See* Audi Memo. at 7-8 ("Because no Plaintiff has standing to bring a claim against Audi AG, Audi AG must be dismissed from the entire case.").  The Court should reject this argument for either of two reasons.

First, Plaintiffs have addressed this argument by moving for leave to amend to add the claims of proposed plaintiffs Mr. and Ms. Baker, who purchased a 2017 Audi Q7 that their Volkswagen-Audi dealership represented to be CPO, and thus a Class Vehicle.  *See* Plaintiffs' Motion for Leave to Amend (Dkt. No. 91, filed Jan. 30, 2020), Ex. A (Proposed Second Amended Class Action Complaint) ("2AC") (Dkt. No. 92-1), ¶¶ 16(a) (Audi purchase), 361-399 (Bakers' North Carolina Subclass Counts).  Plaintiffs' motion, if granted, would render Audi's Article III standing argument for dismissal moot.  *See*, *e.g.*, *Boardley*, *supra*, 39 F. Supp. 3d at

15

719 ("Defendants' Motion to Dismiss Plaintiffs' MCPA claim is DENIED AS MOOT in light of the ruling [granting] Plaintiffs' Motion for Leave to Amend."); *W.L. Gore*, 778 F. Supp. 2d at 678 ("Upon amendment by the Plaintiffs, the Court will deem Defendants' motion to dismiss on that issue moot.").  Plaintiffs argued in their motion why leave to amend should be granted as to the Baker allegations and claims, *see* Memo. of Law (Dkt. No. 92) at 3-4, and incorporate those arguments herein as grounds for rejecting Audi's Article III standing arguments as moot.

If the Court does not grant leave to amend, it still should reject Audi's Article III standing arguments for dismissal.  Plaintiffs have standing to sue Audi based upon their purchases of Volkswagen-branded Class Vehicles, Audi's corporate relationships with VW-Germany and VW-America, and all three companies' involvement in the joint venture scheme to sell all of the Class Vehicles through use of common misrepresentations.  *See, e.g.*, *Alves*, *supra*, 204 F. Supp. 2d at 205 (finding standing in "cases in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.") (internal quotation marks and citation omitted); *see also Fallick*, *supra*, 162 F.3d at 422 ("[A]n individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans."). Based upon this and similar authority, Plaintiffs have standing to sue Audi even if their motion for leave to amend is denied (*which it should not be*).

As between these grounds, the Court should grant Plaintiffs leave to amend.  Although authority supports Plaintiffs' Article III standing with or without amendment, the "juridical link" argument for standing without amendment involves unsettled law in this Circuit.  The Fourth Circuit has discussed the concept of juridical link.  In *Faircloth v. Fin. Assets Secs. Corp.*, 87 Fed. Appx. 314 (4th Cir. Jan. 23, 2004), the Court explained that the "'juridical link' doctrine . . .

16

might allow for third-party standing under the proper circumstances" where defendants are "linked by way of some 'conspiracy or concerted scheme' with a defendant against whom the representative *does* have a claim." *Id.* at 318 (quoting *Payton v. County of Kane*, 308 F.3d 673, 678-79 (7th Cir. 2002)) (emphasis in original). But the Court also noted that "we have yet to recognize [the doctrine] in this circuit . . . ." *Id.* Moreover, other district courts in this Circuit have limited or rejected the doctrine's application. *See*, *e.g.*, *Popoola v. MD-Indiv. Pract. Ass'n, Inc.*, 230 F.R.D. 424, 431-33 (D. Md. 2005) (declining to apply juridical link doctrine; dismissing claim against non-transacting defendant for lack of standing). Rather than wading into this complex legal issue, Plaintiffs respectfully submit that the Court should grant them leave to amend for the reasons set forth in their separately-filed motion.

### E.   Plaintiffs State Actionable Claims Against Audi.

Audi argues for dismissal of each of Plaintiffs' claims on the merits based upon a combination of Article III standing arguments and repeated arguments this Court has rejected when made by VW-America and/or VW-Germany. The Court should reject these arguments here.

#### 1.   Odometer Act

Audi seeks to avoid liability under the Odometer Act, 49 U.S.C. §§ 32701 *et seq.*, on the grounds that Plaintiffs fail to allege a joint venture relationship between Audi and VW-America and VW-Germany. *See* Audi Memo. at 22. The Court should reject this argument for the reasons set forth herein, *supra*, Argument § B, and for the reasons it rejected the same argument made by VW-Germany. *See* VW-Germany Order at 3 ("Plaintiffs have pleaded facts to support the inference that [VW-America's] allegedly unlawful transfers were made in the course of the joint venture and with authority of [VW-Germany].").

17

### 2.    **Unjust Enrichment**

Audi argues that Plaintiffs' unjust enrichment claims must be dismissed because Plaintiffs "do not sufficiently allege that Audi AG was enriched by any conduct described in the Complaint." Audi Memo. at 22.  This is incorrect.  Plaintiffs allege that Audi, along with VW-America and VW-Germany, "maintained a voice in the control and management of this Joint Venture, and each [Defendant] shared in the profits and losses of the enterprise."  FAC, ¶ 20.  Plaintiffs further allege that Audi "derives substantial revenue from goods used or consumed or services rendered in Virginia[,]" which "includes all sales of the Audi-branded Class Vehicles all of which were manufactured by Audi AG and shipped to the United States whereupon title was transferred to [VW-America] in Virginia . . . ."  *Id.*, ¶ 30.  Plaintiffs thus more than sufficiently allege that Audi was enriched by its conduct at issue in this case.

### 3.    **Consumer Protection Act Claims**

Audi next argues that Plaintiffs' state consumer protection act claims must be dismissed because "no Plaintiff alleges that they engaged in a consumer transaction with Audi AG."  Audi Memo. at 23.  The Court should reject this argument for two reasons.  First, to the extent this argument repeats Audi's Article III standing argument, the Court should reject it for the reasons set forth above, *supra*, Argument § D.

Second, Audi's argument that Plaintiffs cannot assert statutory claims against it because they did not transact with it also is contrary to this Court's holding that Plaintiffs *can* state the same claims against VW-Germany, which also did not directly transact with them.  *See* VW-Germany Order at 3 ("Plaintiffs have pleaded facts to support the inference that [VW-America's] allegedly unlawful transfers were made in the course of the joint venture and with authority of [VW-Germany].  Under Virginia law, [VW-Germany] is therefore liable for the violative acts of

[VW-America].”); *id.* at 4 (“As to the other disputed counts, the Court finds that the Amended Complaint contains sufficient well-pleaded facts to survive a motion to dismiss.”).

### 4.     Breach of Warranty Claims

Finally, the Court also should reject Audi’s arguments for dismissal of Plaintiffs’ breach of warranty claims. Audi contends that “Plaintiffs make no allegations that an Audi vehicle was unfit for its ordinary purpose or that any defect in any Audi vehicle caused Plaintiffs any injury.” Audi Memo. at 23. Here again, to the extent this argument repeats Audi’s Article III standing argument, the Court should reject it for the reasons set forth above, *supra*, Argument § D.

To the extent this argument is based upon Plaintiffs’ general pleadings, it is incorrect. Plaintiffs allege that Audi, like VW-Germany, expressly warranted that each Audi-branded Class Vehicle “conforms to all applicable Federal motor vehicle safety . . . standards in effect on the date of manufacture shown above.” FAC, ¶ 194; *see also id.*, ¶ 193 (substantively the same). Plaintiffs further allege that Audi “breached this express warranty because the build of the Pre-Production Cars on the date of manufacture differed materially from the build of the Series-Production Cars . . . .” *Id.*, ¶ 194. Plaintiffs thus state actionable breach of warranty claims, as the Court held with respect to VW-Germany based upon materially identical allegations. *See* VW-Germany Order at 4 (“As to the other disputed counts, the Court finds that the Amended Complaint contains sufficient well-pleaded facts to survive a motion to dismiss.”). The Court therefore should not dismiss Plaintiffs’ breach of warranty claims against Audi.

### CONCLUSION

For all of the reasons set forth, Audi’s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6) should be denied.

<u>Dated</u>: January 30, 2020

Respectfully submitted,

/s/ *Michael J. Melkersen*
Michael J. Melkersen, Esq.
THE LAW OFFICES OF MICHAEL MELKERSEN, P.C.
9633 S. Congress Street
New Market, Virginia 22844
Telephone:    540.740.3937
Facsimile:    540.740.8851
Email:        mike@mlawpc.com

Nathan D. Finch, Esq.
Joseph F. Rice, Esq. (*Admitted Pro Hac Vice*)
Kevin R. Dean, Esq. (*Admitted Pro Hac Vice*)
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Telephone:    843.216.9000
Facsimile:    843.216.9440
Email:        nfinch@motleyrice.com
              jrice@motleyrice.com
              kdean@motleyrice.com

*Attorneys for Plaintiffs and Interim Class Counsel*

## CERTIFICATE OF SERVICE

I, Michael J. Melkersen, hereby certify that on this date I served a true and correct copy of the foregoing Memorandum of Law in Opposition to Motion to Dismiss upon counsel of record for Defendants by filing via the Court's Electronic Case Filing (ECF) system.

Dated:        January 30, 2020

                                        /s/ *Michael J. Melkersen*
                                        Michael J. Melkersen

21