IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RICARDO R. GARCIA, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 1:19-cv-331-LO-MSN |
| VOLKSWAGEN GROUP OF AMERICA, INC., *et al.*, | ) |
| Defendants. | ) |

**VOLKSWAGEN GROUP OF AMERICA, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**

Defendant Volkswagen Group of America, Inc. ("VWGoA") respectfully submits this memorandum of law in support of its Motion for Protective Order under Rule 26(c)(1) of the Federal Rules of Civil Procedure, which asks this Court to prohibit the discovery Plaintiffs seek in their Second Requests for Production to VWGoA, served on June 18, 2020.

**PRELIMINARY STATEMENT**

In this putative class action, Plaintiffs allege that VWGoA and Volkswagen Aktiengesellschaft ("VW AG," and together with VWGoA, "Defendants") engaged in a fraudulent scheme to sell pre-production vehicles—vehicles built before the official "start of production," or the date on which an auto manufacturer officially begins mass-producing a certain model-year vehicle—and certain other vehicles used internally by VWGoA before being sold to consumers as certified pre-owned vehicles. Plaintiffs allege, among other things, that such pre-production vehicles cannot be sold to consumers because they purportedly *may* not comply with Federal Motor Vehicle Safety Standards ("FMVSS"). Plaintiffs further allege that Defendants' sale of certain internal-use vehicles to consumers was fraudulent or misleading because Defendants did

not adequately disclose the vehicles' prior internal use. The parties have commenced discovery, and Plaintiffs served VWGoA with 115 requests for production of documents that are purportedly relevant to Plaintiffs' claims. (Declaration of Suhana S. Han ("Decl.") Ex. A.)

Despite the pendency of those 115 individual document requests, Plaintiffs have now served a second set of Requests for Production (the "Requests") that ask VWGoA to produce vast quantities of admittedly irrelevant documents—in total, over 61 million pages of documents comprising over 22 terabytes of data that were previously produced by Defendants in two completely unrelated, sprawling litigations involving entirely different claims. (Decl. ¶ 8.) In particular, Plaintiffs seek production of *all* documents that VWGoA and VW AG produced in two multidistrict litigations arising out of emissions compliance of certain diesel vehicles manufactured by VW AG and certain affiliates—an issue that has no bearing on Plaintiffs' claims here. These documents are housed in two separate databases for the two separate multidistrict litigations: one in the United States District Court for the Northern District of California (the "California Diesel MDL"), and one in the Fairfax County Circuit Court in Virginia (the "Virginia Diesel MDL"; together, the "Diesel-Related Actions").

These Requests for massive amounts of documents that have no relevance to Plaintiffs' claims here are plainly improper, unreasonable, and far beyond the scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure. *See In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *5 (E.D. Va. Mar. 17, 2016) (a discovery request "seeks evidence outside the scope of Rule 26(b)(1)" if it is "so overbroad that compliance with its demands will necessarily require production of irrelevant evidence"). Indeed, Plaintiffs do not even dispute that the overwhelming majority of the 61 million pages of documents they seek have nothing to do with their claims. But based simply on the fact

that Plaintiffs' *counsel* had access to at least some subset of the Diesel Documents (*i.e.*, documents that VWGoA and VW AG previously produced in two separate and unrelated multidistrict litigations) while representing other plaintiffs in other unrelated litigation, Plaintiffs assert that all of the Diesel Documents should be produced in this case because there purportedly is a chance that some relevant documents *may* exist among their tens of millions of pages. (Decl. at ¶ 11.)

This Court should enter a protective order barring this plainly improper discovery seeking admittedly irrelevant information. *See Hayat* v. *Fairley*, 2010 WL 11451124, at *2 (D. Md. May 6, 2010) ("[I]rrelevancy of the proposed discovery can satisfy the good cause requirement for a protective order"). Courts frequently reject such requests to "clone" or "piggyback" discovery from one action to another even when the two actions share substantial factual or legal overlap because such requests are "overbroad and of speculative relevance." *Capital Ventures Int'l* v. *J.P. Morgan Mortg. Acquisition Corp.*, 2014 WL 1431124, at *2 (D. Mass. Apr. 14, 2014). Plaintiffs' Requests here are even more obviously improper because Plaintiffs' factual allegations and legal causes of action have *nothing* in common with the Diesel-Related Actions. At best, the Requests are nothing more than a fishing expedition that Plaintiffs believe is reasonable because the Diesel Documents are a particularly large "pond" of material.

Allowing Plaintiffs' Requests here would turn the rules and procedures of discovery on their head, relieving Plaintiffs of their obligation to make appropriately tailored requests for relevant discovery, and eliminating VWGoA's right to search its own documents and object to the production of any that exceed the permissible bounds of discovery. Like all other litigants—and as they have already done with their 115 outstanding document requests—Plaintiffs may obtain document discovery by "do[ing] their own work and request[ing] the information they seek directly." *Wollam* v. *Wright Med. Grp., Inc.*, 2011 WL 1899774, at *2 (D. Colo. May 18, 2011)

(quoting *Midwest Gas Servs., Inc.* v. *Ind. Gas Co.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000)) (denying "sweeping cloned discovery sought by the plaintiffs").

The lack of relevance and gross overbreadth alone are sufficient for this Court to grant the requested protective order. Even worse, Plaintiffs' second Request relating to the California Diesel MDL seeks production of documents in a database that is not even held or maintained by VWGoA, and to which VWGoA does not have (and cannot grant) access. (Decl. at ¶ 6.) This Request thus improperly seeks documents that are outside of VWGoA's possession, custody, or control, and should also be barred on that independent basis.

## BACKGROUND

### A. THIS LITIGATION AND PLAINTIFFS' REQUESTS

In this putative class action, Plaintiffs allege that VW AG and VWGoA engaged in a "fraudulent scheme to illegally sell [p]re-[p]roduction" vehicles and other vehicles "that were initially used internally by Volkswagen" before sale to consumers as "certified pre-owned" vehicles by non-party dealerships. (Second Am. Compl. ¶¶ 1, 26, 105, ECF No. 104 (the "SAC").) Specifically, Plaintiffs allege that Defendants (i) improperly sold pre-production vehicles, which Plaintiffs assert *may* not have complied with FMVSS (SAC ¶¶ 2, 39), and (ii) sold vehicles that VWGoA had loaned to members of the automotive media for testing and evaluation or loaned or leased to VWGoA employees for short-term periods without disclosing the nature of the prior use to purchasers. (SAC ¶¶ 3-4.)

Following Defendants' answers to the SAC, the parties have commenced written discovery. Plaintiffs have propounded interrogatories to VWGoA, and Plaintiffs have also served 115 requests for production of documents upon VWGoA.

On June 17, 2020, counsel for the parties met and conferred via telephone regarding, among other issues, a request by Plaintiffs that VWGoA produce in this action *all* of

the Diesel Documents, which are currently housed in two separate databases. These other multidistrict litigations do not involve allegations regarding pre-production vehicles, vehicles used internally by VWGoA before being sold to consumers, or any other matter that overlaps with this Action; instead, those litigations arise from defeat devices installed in certain diesel vehicles manufactured and sold by Defendants and affiliated entities. (Decl. at ¶ 9.)

Plaintiffs did not dispute during the telephone call that the vast majority of those Diesel Documents had no relevance to Plaintiffs' claims in this case. Nor did Plaintiffs identify *any* supposedly relevant documents that they believe exist in those databases, or even describe what kind of relevant documents they expect would be found in the Diesel Documents. Yet merely because certain counsel for Plaintiffs obtained access to at least some of the Diesel Documents contained in the two databases while representing other plaintiffs in the Diesel-Related Actions, Plaintiffs maintained that those Diesel Documents should be produced in this action because (i) allowing Plaintiffs to search through the Diesel Documents could provide a "check" on Defendants' document productions in this action, and (ii) the Diesel Documents *might* include some materials no longer retained by VW AG or VWGoA due to the passage of time. (Decl. at ¶ 11.)

Counsel for Defendants noted that neither of those rationales provides a basis to seek wholesale production of millions of pages of concededly irrelevant documents in this action, and declined to produce the Diesel Documents. Defendants nonetheless offered to consider any specific, tailored requests for relevant documents that may be contained within the Diesel Documents in the ordinary course of discovery.

The next day, on June 18, 2020, Plaintiffs served the two Requests, asking that VWGoA "produce documents previously produced by VWGOA and/or VWAG in the so-called

Dieselgate litigation" that are "currently or formerly housed in" (i) the "'RATIONAL' database," which contains documents produced in the Virginia Diesel MDL (the "Rational Database"), and (ii) the "'ILS iCONECT XERA' database," which purportedly contains documents produced in the California Diesel MDL.  (Ex. B.)

**B.   THE DIESEL-RELATED ACTIONS AND DIESEL DOCUMENTS**

The Diesel-Related Actions involve claims arising out of VW AG's use of "defeat devices" in certain diesel vehicles in violation of the U.S. Clean Air Act, which were brought against VW AG, VWGoA, and other subsidiaries of VW AG by various federal agencies, state and local governments, salespersons, consumers, shareholders, and auto dealerships, among others.  In response to hundreds of discovery and government requests across these various litigations, VW AG and VWGoA produced a wide range of documents pertaining to the particular vehicles and environmental compliance issues relevant to those matters.  As just a few examples, such documents include, among other things:

- **Environmental Compliance Data**.  Documents containing emissions-related environmental data about the diesel vehicles, including impact studies sent to Defendants by state and federal regulators concerning alleged violations of the Clean Air Act, and related correspondence with regulators about Defendants' efforts to remediate environmental harm.

- **Technical Design and Engineering Data About the Defeat Device**.  Technical summaries of emissions testing results and technical overviews of engine design.

- **Contractual Agreements and Technical Development with Bosch**.  Correspondence related to contractual agreements and technical development with Bosch, an outside company that supplied a component used in diesel vehicles.

- **Consumer Communications:**  Consumer complaints about diesel emissions-related issues and other correspondence between purchasers of diesel vehicles and dealerships.

- **Other Communications**.  Correspondence among Defendants' employees and between Defendants and outside parties regarding the emissions-related topics described above.

Plaintiffs' two Requests seek production of all of these documents insofar as they are "currently or formerly housed" in either of two separate databases. In their first Request, Plaintiffs seek all documents that VWGoA and VW AG produced in the Virginia Diesel MDL, which are "currently or formerly housed" in the Rational Database. This amounts to almost 10 terabytes worth of data, numbering almost 4 million documents and nearly 27 million pages of materials. Those documents are governed by a court-entered protective order in the Virginia Diesel MDL. (Ex. C.)

In their second Request, Plaintiffs seek all documents that VWGoA and VW AG produced in the California Diesel MDL, which are "currently or formerly housed" in the ILS iCONECT XERA database. VWGoA understands that this database is maintained, paid for, and controlled by the Plaintiffs' Steering Committee appointed by Judge Charles Breyer in the California Diesel MDL, subject to a court-entered protective order in that proceeding. (Ex. D.) VWGoA does not maintain or pay for, or have access to, the ILS iCONECT XERA database (the "PSC Database"); VWGoA cannot grant access to its contents. (Decl. at ¶ 6.) VWGoA and VW AG produced almost 5 million documents and over 34 million pages of materials to the Plaintiffs' Steering Committee in the California Diesel MDL, but VWGoA cannot verify the volume of Diesel Documents "currently or formerly housed" in the PSC Database, because VWGoA does not have access to that database.

In total, between the two separate databases that contain the documents sought by the two Requests, Plaintiffs seek production of at least 8 million Diesel Documents, consisting of at least 61 million pages of materials and 22 terabytes of data, all of which were produced by VWGoA and VW AG in 303 separate productions over more than three years. (Decl. at ¶ 8.)

On July 5, 2020, counsel for VWGoA sent an email to Plaintiffs' counsel explaining that the PSC Database is not actually maintained or paid for by VWGoA, and that VWGoA does not have access to the PSC Database and cannot grant access to it. In light of this circumstance, counsel for VWGoA asked if Plaintiffs would withdraw this production request. In a response on July 6, 2020, Plaintiffs' counsel wrote that in their view VWGoA had control over the PSC Database under a policy set by the Plaintiffs' Steering Committee, and Plaintiffs did not withdraw their request for the PSC Database. (Decl. at ¶ 13.)

### C. VWGOA'S OBJECTIONS

On July 6, 2020, VWGoA objected to the Requests as plainly exceeding the scope of permissible discovery under Rule 26(b). (Ex. E.) VWGoA responded that, in light of its objections, it would not produce the Diesel Documents in this action in response to Plaintiffs' Requests. VWGoA now seeks a protective order barring Plaintiffs from pursuing this unreasonable discovery.

### LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A discovery request that is "so overbroad that compliance with its demands will necessarily require production of irrelevant evidence . . . seeks evidence outside the scope of Rule 26(b)(1)." *ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *5. "On motion or on its own," a "court must limit" discovery when "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Parties "from whom discovery is sought may move for a protective order," which the court may issue "for good cause," "forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1). "A showing of irrelevancy of the proposed discovery can satisfy the good cause

requirement for a protective order." *Hayat*, 2010 WL 11451124, at *2; *see also Anwar* v. *Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) (quoting *Smith* v. *Dowson*, 158 F.R.D. 138, 140–42 (D. Minn. 1994)) (noting that "a showing of irrelevancy of proposed discovery can satisfy the 'good cause' requirement of Rule 26(c)").

## ARGUMENT

Plaintiffs' Requests asking VWGoA to "produce documents previously produced by VWGOA and/or VWAG in the so-called Dieselgate litigation"—rather than requesting specific categories of relevant documents—turns well-settled discovery practice under the Federal Rules on its head. For the reasons set forth below, this Court should grant VWGoA's Motion for Protective Order.

I. **PLAINTIFFS' DEMAND FOR THE DIESEL DOCUMENTS SEEKS VAST AMOUNTS OF DOCUMENTS THAT ARE NOT RELEVANT TO THIS LITIGATION.**

"The purpose of discovery is to provide a mechanism for making *relevant* information available to the litigants." Fed. R. Civ. P. 26, advisory committee's note to 1983 amendment (emphasis added). Plaintiffs may only "obtain discovery . . . that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *Cook* v. *Howard*, 484 F. App'x 805, 812 (4th Cir. 2012) ("Relevance is thus the foundation for any request for production."). As courts in this Circuit have recognized, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Wilson Land Corp.* v. *Smith Barney, Inc.*, 2001 WL 1745241, at *2 (E.D.N.C. Aug. 20, 2001) (quoting *Hofer* v. *Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). Plaintiffs have made no effort to explain how the entire universe of documents produced by VWGoA and VW AG in two unrelated, sprawling litigations is relevant to this action, let alone proportional to the needs of this case.

The mere fact that a party previously produced documents in other litigation does not alter this threshold relevance requirement before the party can be required to produce those same documents in subsequent litigation. Courts recognize that "asking for all documents produced in another matter is not generally proper." *TravelPass Grp., LLC* v. *Caesars Entm't Corp.*, 2020 WL 698538, at *6 (E.D. Tex. Jan. 16, 2020) (denying defendants' requests for "wholesale reproduction" of previously produced documents because defendants "fail[ed] to make the requisite showing of relevance," even though there was potential "overlap between the issues"). As such, courts routinely deny such "attempts to clone the discovery taken by others in unrelated cases and to piggyback on that unrelated discovery." *Wollam*, 2011 WL 1899774, at *1 (collecting decisions of "the many courts" that have disapproved of cloned discovery because "a party seeking discovery ordinarily must do their own work and request the information they seek directly and must make proper requests describing the information in which they are interested") (internal quotations omitted).

Courts in the Fourth Circuit have rejected requests for cloned discovery, even when the other litigation involves the same allegations against the same defendant. In *Austin* v. *Nestle*, for example, a plaintiff alleged that the defendant's baby formula product caused a form of neonatal meningitis, and sought discovery materials produced in a previous litigation involving an identical allegation against the same defendant. *See* 2010 WL 4318815, at *4 (D.S.C. October 26, 2010). Despite the substantial overlap between the two actions, the court ruled that the plaintiff "should not have unfettered access to all of the [previous] discovery, as there is no indication that such discovery is relevant to this case." *Id.*; *see, e.g.*, *Belk, Inc.* v. *Meyer Corp.*, 2009 WL 703704, at *3 (W.D.N.C. Mar. 16, 2009) (denying motion to compel "excessively broad" request for "production of all documents from a prior patent lawsuit").

Indeed, courts have even rejected other plaintiffs' requests for cloned discovery of the *same Diesel Documents* that Plaintiffs seek here. In a putative class action alleging securities fraud in connection with the defeat device at issue in the Diesel-Related Actions, the plaintiffs sought access to all documents that had been produced to other parties in the California Diesel MDL, arguing that those underlying documents were relevant to securities claims based on alleged misstatements relating to the defeat device. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017). The court denied the plaintiffs' request because, despite the "overlap between their claims and those in the consolidated consumer class action," the plaintiffs had not "explained how the entire MDL Production is relevant to a claim or defense in their case." *Id.* at *1–2. The court held that the securities plaintiffs, like all other litigants, must "comply with the Federal Rules by serving Volkswagen with requests for production, which 'must describe with reasonable particularity each item or category of items to be inspected.'" *Id.* at *1 (quoting Fed. R. Civ. P. 34(b)(1)(A)).

In another example involving documents from the Diesel-Related Actions, certain franchise dealer plaintiffs sought discovery of all documents that third party Bosch had provided to federal and state agencies during government investigations relating to the same emissions issue in the Diesel-Related Actions. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2018 U.S. Dist. LEXIS 69066, at *5–6 (N.D. Cal. April 24, 2018) (Ex. F). The court again refused to compel the production of cloned discovery, noting that "such an approach makes it difficult to ensure that the scope of discovery is not expanded beyond what is allowed by the Federal Rules." *Id.* at *6.

Here, Plaintiffs' Requests attempt to take the roundly rejected practice of "cloned discovery" even further beyond the permissible bounds of Rule 26 discovery, because Plaintiffs

can identify *no* connection between the allegations at issue in this case—the sales of certified pre-owned vehicles that allegedly do not comply with FMVSS or with insufficient disclosure of their prior internal use by VWGoA—and the allegations at issue in the entirely unrelated Diesel-Related Actions, arising from the installation of defeat devices in certain diesel vehicles, from which they seek such "cloned discovery." Plaintiffs have no basis to require VWGoA to produce in this action the tens of millions of pages of Diesel Documents produced in the unrelated Diesel-Related Actions. Plaintiffs' claimed entitlement to such a production is far *weaker* than in all of these cases. That is because there is *no* relevant overlap between Plaintiffs' allegations, legal theories, and claims in this case and those at issue in the Diesel-Related Actions, and also because the actions involve different classes of vehicles, which is why Plaintiffs have not even disputed that the overwhelming majority of the Diesel Documents have no relevance to their claims here.

Because "compliance with [the Requests] will necessarily require production of irrelevant evidence," this Court should bar the Requests as "seek[ing] evidence outside the scope of Rule 26(b)(1)." *ThompsonMcMullan*, 2016 WL 1071016, at *5; *see Capital Ventures Int'l*, 2014 WL 1431124, at *2 (rejecting cloned discovery because "[p]laintiff has not demonstrated how this action and all other cases and investigations into defendants' . . . practices are related or even similar"); *Costa* v. *Wright Med. Tech., Inc.*, 2019 WL 108884, at *2 (D. Mass. Jan. 4, 2019) (rejecting cloned discovery from cases that involve "distinct" products because such "cloned discovery . . . would likely result in production of information with little or no relevance to this case").

II. **PLAINTIFFS' GROSSLY OVERBROAD DEMANDS FOR DOCUMENTS PRODUCED IN THE DIESEL-RELATED ACTIONS CANNOT BE JUSTIFIED ON ANY OTHER GROUNDS.**

Despite acknowledging the broad irrelevance of the Diesel Documents to their claims here, Plaintiffs insist that there may be *some* documents, out of the tens of millions of pages

of Diesel Documents, that would be appropriately discoverable in connection with this litigation. Even assuming that were true, a subset of discoverable documents could not justify a wholesale production of *all* documents from the Diesel-Related Actions. *See King Cty.* v. *Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) (noting that some documents in previous production "are relevant to [requesting party's] claim," but denying request for cloned production of complete "discovery files" anyway); *TravelPass Grp.*, 2020 WL 698538, at *6 (denying request for cloned discovery even though the resisting party "conced[ed]" that "much of" the previous production may be relevant); *Oklahoma, ex rel. Edmondson* v. *Tyson Foods, Inc.*, 2006 WL 2862216, at *3 (N.D. Okla. Oct. 4, 2006) ("The Court is not holding that no documents from the [prior] action are relevant to this action. The Court is finding that Plaintiffs have not sufficiently articulated the relevance of the documents sought."). Rather, if Plaintiffs believe that "relevant and proportional documents exist" in VWGoA's custody, "the appropriate thing to do is to request those documents," and whether they were also "produced in other litigation is irrelevant." *Goro* v. *Flowers Foods, Inc.*, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019).

Plaintiffs' position that they should obtain the entirety of the Diesel Documents for use in this case solely because there *may* be *some* relevant documents in those databases is particularly baseless given that they have already served **115** broad requests for production of documents on VWGoA.[1]  VWGoA has not yet responded to those requests, and Plaintiffs have offered no reason to believe that any incidentally relevant documents that may have been produced

---

[1] The parties are in the process of negotiating a protocol for producing electronically stored information, and VWGoA will be prepared at the appropriate time after submitting its responses to Plaintiffs' 115 requests to discuss sources, potential search terms, and custodians that may be used to identify documents responsive to those requests.

as part of the Diesel Documents would not be responsive to the more than 100 broad-based document requests Plaintiffs have already served.

Plaintiffs also claim that they are entitled to the Diesel Documents as a "check" to ensure that VWGoA's productions do not omit any relevant documents responsive to Plaintiffs' other requests. That is not how discovery works. "[I]t is the litigant responding to discovery requests, and that litigant's own lawyer, who searches for and identifies responsive documents that are relevant to the asserted claims or defenses. The opposing lawyer does not get that luxury." *In re eBay Seller Antitrust Litig.*, 2010 WL 2836815, at *3 (N.D. Cal. July 19, 2010). Nor do the Federal Rules permit "fishing expeditions" into a party's documents. *See, e.g.*, *Cook*, 484 F. App'x at 812-13 (subpoena properly quashed where the documents sought "ha[d] no correlation to the claims" against the defendants and plaintiffs' requests "ha[d] every indicia of the quintessential fishing expedition"). Nor does Plaintiffs' sheer speculation that the Diesel Documents may contain discoverable documents that are old enough that they would exceed otherwise-applicable retention periods here warrant the wholesale production of *all* of the Diesel Documents, given that VWGoA has offered to consider individual, tailored requests for Diesel Documents propounded in the normal course of discovery.

Again, if Plaintiffs believe that appropriately discoverable documents exist in the Diesel Documents that will not be responsive to their 115 document requests they have already served, the appropriate course is for Plaintiffs, like all other litigants, to propound specific requests that describe any such potentially relevant documents "with reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A). *See, e.g.*, *In re Volkswagen "Clean Diesel"*, 2017 WL 4680242, at *1 (plaintiffs "must comply with the Federal Rules by serving Volkswagen with requests for production, which 'must describe with reasonable particularity each item or category of items to be inspected'"); *King*

*Cty.*, 2011 WL 3438491, at *3 ("Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses"); *Midwest Gas Servs., Inc.*, 2000 WL 760700, at *1 ("[P]laintiffs . . . must make proper requests describing the information in which they are interested. The plaintiffs' counsel must do their own work and request the information they seek directly."). Plaintiffs should not be permitted to proceed down the inappropriate course of demanding "production of irrelevant evidence" that is "outside the scope of Rule 26(b)(1)." *ThompsonMcMullan*, 2016 WL 1071016, at *5.

Plaintiffs' Requests also cannot be justified on the grounds of efficiency, lack of prejudice, or lack of burden on VWGoA. Plaintiffs cannot plausibly claim that wholesale production of the Diesel Documents will result in any efficiency gains in discovery given that Plaintiffs are already demanding responses to the 115 initial document requests Plaintiffs have already served. As for prejudice, requiring VWGoA to turn over these documents wholesale would entirely override VWGoA's ability to object to the production of Diesel Documents that have no plausible relevance to Plaintiffs' claims. And producing tens of millions more pages of documents to Plaintiffs in this matter, no matter how irrelevant the Diesel Documents are, will necessarily increase the burden on VWGoA to prepare its defense by exponentially increasing the number of potential documents that could be used during depositions or a future trial.

In the end, any such interests cannot overcome Rule 26's fundamental threshold requirement that Plaintiffs pursue discovery only of *relevant* documents through the means of individual, targeted discovery requests that are proportional to the needs of the action. *See ThompsonMcMullan*, 2016 WL 1071016, at *5 (a discovery request "seeks evidence outside the scope of Rule 26(b)(1)" if it is "so overbroad that compliance with its demands will necessarily

require production of irrelevant evidence"). That certain *counsel* for Plaintiffs may have had access to large amounts of VWGoA documents while representing other individuals in unrelated litigation does not allow them to short-circuit the rules of discovery that apply in this action. Although in some sense it might always be "efficient" and less "burdensome" for defendants to simply provide plaintiffs access to their complete company documents, databases, and systems in order to search for relevant documents at their leisure, "such a practice would expand the scope of discovery beyond that allowed by the Federal Rules." *In re Volkswagen "Clean Diesel"*, 2017 WL 4680242, at *1.

### III. PLAINTIFFS' SECOND REQUEST SEEKS PRODUCTION OF DOCUMENTS IN A DATABASE TO WHICH VWGOA DOES NOT HAVE ACCESS AND CANNOT GRANT ACCESS.

The lack of relevance of the Diesel Documents to this action and the gross overbreadth of the Requests provide more than a sufficient basis for this Court to grant a protective order barring both of Plaintiffs' Requests. But Plaintiffs' second Request—for all documents previously produced by VWGoA and VW AG that are contained in the PSC Database—suffers from the added infirmity of seeking production of documents stored in a database that is not in VWGoA's possession, custody, or control.

Specifically, Plaintiffs' second Request seeks production of Diesel Documents that VWGoA and VW AG produced in the California Diesel MDL that are "currently or formerly housed" in the PSC Database. But VWGoA understands that the PSC Database is held, maintained, and paid for by the Plaintiffs' Steering Committee in the California Diesel MDL, not by VWGoA, and VWGoA does not have access and cannot grant access to that database. Accordingly, as an independent basis for granting a protective order barring Plaintiffs' second Request, the PSC Database is outside of VWGoA's "possession, custody, or control," and Plaintiffs thus cannot obtain access to the documents in that database through a discovery request

to VWGoA. Fed. R. Civ. P. 34(a)(1); *see Hatfill* v. *New York Times Co.*, 242 F.R.D. 353, 355 (E.D. Va. 2006) (denying motion to compel production of documents not in "possession, custody or control" of responding party).

## CONCLUSION

For the foregoing reasons, this Court should grant VWGoA's Motion for Protective Order and deny Plaintiffs' Requests for the Diesel Documents produced in the Virginia Diesel MDL and the California Diesel MDL.

Dated: July 6, 2020

MCGUIREWOODS LLP

*/s/ Frank Talbott V*
Terrence M. Bagley (VSB No. 22081)
Kenneth W. Abrams (VSB No. 78216)
Frank Talbott V (VSB No. 86396)
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Tel:  804-775-4773
Fax:  804-698-2323
tbagley@mcguirewoods.com
kabrams@mcguirewoods.com
ftalbott@mcguirewoods.com

Respectfully submitted,

SULLIVAN & CROMWELL LLP

Robert J. Giuffra Jr. (*pro hac vice*)
Suhana S. Han (*pro hac vice*)
Adam R. Brebner (*pro hac vice*)
125 Broad Street
New York, NY  10004
Tel:  212-558-4000
Fax:  212-558-3558
giuffrar@sullcrom.com
hans@sullcrom.com
brebnera@sullcrom.com

Judson O. Littleton (*pro hac vice*)
1700 New York Avenue, NW
Washington, DC  20006
Tel:  202-956-7500
Fax:  202-293-6330
littletonj@sullcrom.com

*Counsel for Volkswagen Group of America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2020 I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF filing system which will send notification of electronic filing (NEF) to all counsel of record.

*/s/ Frank Talbott V*
Frank Talbott V (VSB No. 86396)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: 804-775-4773
Fax: 804-698-2313
ftalbott@mcguirewoods.com

*Counsel for Volkswagen Group of America, Inc.*