IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RICARDO R. GARCIA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:19cv331-LO-MSN |
| VOLKSWAGEN GROUP OF AMERICA, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## DECLARATION OF SUHANA S. HAN

Suhana S. Han hereby declares under penalty of perjury as follows:

1.      I am a member of the Bar of the State of New York and a partner of Sullivan & Cromwell LLP, counsel in the above-captioned action for Defendants Volkswagen Group of America, Inc. ("VWGoA") and Volkswagen Aktiengesellschaft ("VW AG," and together, "Defendants").  I have been admitted *pro hac vice* to appear in this action.

2.      I submit this Declaration on behalf of VWGoA in support of VWGoA's Motion for Protective Order, filed concurrently herewith.

3.      I understand that VWGoA and VW AG produced 3,956,231 documents in 141 separate productions in *In Re: Volkswagen "Clean Diesel" Litigation*, Case No. CL-2016-9917 (the "Virginia Diesel MDL"), numbering 26,921,221 pages of materials and consisting of 9.95 terabytes of data (the "Virginia Diesel Documents").  The Virginia Diesel Documents were produced over more than two years, starting on or around January 2017 and ending on or around October 2019.  It is my understanding that the Virginia Diesel Documents are currently stored in

a database that is maintained and hosted by Rational Retention, a third-party discovery services provider (the "Rational Database").

4.      The production of the Virginia Diesel Documents was governed by the court-entered protective order in the Virginia Diesel MDL, attached as Exhibit C. This protective order requires, among other things, that material subject to the protective order be used "only for prosecuting, defending, or attempting to settle" cases in the Virginia Diesel MDL. Ex. C at 7.

5.      I understand that VWGoA and VW AG produced 4,692,086 documents in 162 separate productions in the California Diesel MDL, numbering 34,256,837 pages of materials and consisting of 12.32 terabytes of data (the "California Diesel Documents"). The California Diesel Documents were produced over more than three years, starting on or around February 2016 and ending on or around December 2019. The production of the California Diesel Documents was governed by the court-entered protective order in the California Diesel MDL, attached as Exhibit D. This protective order requires, among other things, that material subject to the protective order be used "only for prosecuting, defending, or attempting to settle" cases in the California Diesel MDL. Ex. D at 9.

6.      Plaintiffs' second request in their Second Requests for Production to VWGoA seeks production of the California Diesel Documents in the "ILS iCONECT XERA" database. To the best of my knowledge, however, VWGoA does not have access to the ILS iCONECT XERA database.

7.      I understand that the Plaintiffs' Steering Committee appointed by Judge Charles Breyer in the California Diesel MDL controls, maintains, and/or pays for the ILS

iCONECT XERA database, and that the Plaintiffs' Steering Committee controls access to the California Diesel MDL documents in the ILS iCONECT XERA database.

8.     Together, the Virginia Diesel Documents and the California Diesel Documents (together, the "Diesel Documents") consist of 8,648,317 documents, 61,178,058 pages of materials and 22.27 terabytes of data, that were produced by VWGoA and VW AG in 303 separate productions over a period of more than three years.

9.     To the best of my knowledge, the Diesel Documents include, but are not limited to:  (i) documents containing emissions-related environmental data about the diesel vehicles, including impact studies sent to Defendants by state and federal regulators concerning alleged violations of the Clean Air Act, and related correspondence with regulators about Defendants' efforts to remediate environmental harm; (ii) technical summaries of emissions testing results and technical overviews of engine design; (iii) correspondence related to contractual agreements and technical development with Bosch, an outside company that supplied a component used in diesel vehicles; (iv) consumer complaints about diesel emissions-related issues and other correspondence between purchasers of diesel vehicles and dealerships, and (v) correspondence among Defendants' employees and between Defendants and outside parties regarding the emissions-related topics described in (i) through (iv).

10.     VWGoA in good faith conferred with Plaintiffs in an effort to resolve the dispute regarding Plaintiffs' demands for production of the Diesel Documents in the Rational Database and the ILS iCONECT XERA database.  On May 28, 2020, Plaintiffs' counsel emailed Defendants' counsel, seeking a call on June 11 or 12 to discuss, among other things, "a formal agreement for access by all Plaintiffs' counsel to VW emissions documents for use in searches/use in this case since they are readily available to all of us."  I ultimately responded to

this request by Plaintiffs' counsel on June 17, 2020, writing "Re plaintiffs' request for use of and access to the massive amount of VW emissions documents, we don't believe that those documents are relevant to the issues in this case and therefore do not agree."

11.     Later on June 17, 2020, Defendants' counsel (Suhana Han, Judd Littleton, and Adam Brebner) met and conferred with Plaintiffs' counsel (Mike Melkersen and Kevin Dean) via telephone regarding, among other things, Plaintiffs' request for production of the Diesel Documents.  Plaintiffs' counsel asked for production of all of the Diesel Documents in the two databases, asserting that counsel already had access to the Diesel Documents due to their roles as counsel to certain other plaintiffs in the California Diesel MDL and Virginia Diesel MDL.  Plaintiffs' counsel asserted that the Diesel Documents may contain relevant documents that VWGoA may not necessarily otherwise produce in this case, either because such documents are no longer preserved or because of inadvertent failure to produce.  Plaintiffs' counsel stated that they sought to use the Diesel Documents in order to "check" the comprehensiveness of VWGoA's productions in this action.  Defendants' counsel informed Plaintiffs' counsel that VWGoA would not agree to produce all of the Diesel Documents, but offered to consider requests for individual relevant documents among the Diesel Documents on a case-by-case basis.

12.     During this meet and confer, the parties reached an impasse regarding the Diesel Documents.  As a result, the parties agreed that Plaintiffs would serve formal discovery requests for the Diesel Documents and VWGoA would provide its objections and responses on an expedited schedule, so that the issue could be presented to the Court.  Plaintiffs propounded their Second Requests for Production on VWGoA on June 18, 2020.

13.     On July 5, 2020, I sent an email to Plaintiffs' counsel explaining that the ILS iCONECT XERA database is not maintained or paid for by VWGoA, and that VWGoA

does not have access to the ILS iCONECT XERA database and cannot grant access to it.  I therefore asked Plaintiffs to withdraw the request concerning the ILS iCONECT XERA database.  In a response on July 6, 2020, Plaintiffs' counsel wrote that in their view VWGoA had control over the ILS iCONECT XERA database under a policy set by the Plaintiffs' Steering Committee, and Plaintiffs did not withdraw the request.

14.     Attached hereto as <u>Exhibit A</u> is a true and correct copy of Plaintiffs' First Requests for Production to Defendant VWGoA.

15.     Attached hereto as <u>Exhibit B</u> is a true and correct copy of Plaintiffs' Second Requests for Production to Defendant VWGoA.

16.     Attached hereto as <u>Exhibit C</u> is a true and correct copy of the court-entered protective order in the Virginia Diesel MDL.

17.     Attached hereto as <u>Exhibit D</u> is a true and correct copy of the court-entered protective order in the California Diesel MDL.

18.     Attached hereto as <u>Exhibit E</u> is a true and correct copy of VWGoA's Responses and Objections to Plaintiffs' Second Requests for Production.

19.     Attached hereto as <u>Exhibit F</u> is a true and correct copy of *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2018 U.S. Dist. LEXIS 69066, at *6 (N.D. Cal. April 24, 2018), an opinion and order of the court denying a motion to compel by Volkswagen-branded franchise dealers.

I declare under penalty of perjury that the foregoing is true and correct.

This Declaration was executed in New York, NY on July 6, 2020.

*/s/ Suhana S. Han*

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| RICARDO R. GARCIA, DUANE K. GLOVER, PAUL E. JACOBSON, GAETANO CALISE, MYKHAYLO I. HOLOVATYUK, BRIAN GARCIA, PAUL THOMSON and DAVID HARTMAN on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. a/k/a AUDI OF AMERICA, INC., and VOLKSWAGEN AKTIENGESELLSCHAFF,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:19-cv-00331-LO-MSN<br><br><br><br><br><br><br>**PLAINTIFFS' FIRST REQUESTS**<br>**FOR PRODUCTION TO**<br>**DEFENDANT VOLKSWAGEN**<br>**GROUP OF AMERICA, INC.** |

---

**TO:   COUNSEL FOR DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.**
        **a/k/a AUDI OF AMERICA, INC.**

        Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"),

Plaintiffs, on behalf of themselves and all others similarly situated, by and through their undersigned

counsel, propounds this Request for Production to Defendant Volkswagen Group of America, Inc.

a/k/a Audi of America, Inc., to be answered as required by the Federal Rules.


**DEFINITIONS**

        The following definitions shall apply to these Requests.  In the event of ambiguity in one or

more of the following definitions, common usage and reference to any cited rules, statutes, or

regulations should be used to provide the broadest interpretation of the term in question:

1.      "You" or "VWGOA" means Defendant Volkswagen Group of America, Inc. a/k/a Audi of

America, Inc., as well as its subsidiaries, parent companies, affiliates, predecessors, successors,

1

representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on its behalf, at its instance, or under its control.

2.      "VWAG" means Defendant Volkswagen Aktiengesellschaff, as well as its subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on their behalf, at their instance, or under their control.

3.      "Audi AG" means non-party AUDI AKTIENGESELLSCHAFF, as well as its subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting in its behalf, at its instance, or under its control.

4.      "VW Credit" means non-party VW Credit, Inc., as well as its subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on its behalf, at its instance, or under its control.

5.      "Volkswagen" means any one or more of VWGOA, VWAG, Audi AG, and/or VW Credit, each as separately defined herein.

6.      "Action" means and refers to the above-captioned action.

7.      "Second Amended Complaint" means and refers to the Second Amended Class Action Complaint filed in the above-captioned action on March 27, 2020.

8.      "Class Vehicles" means all Volkswagen-branded used cars sold in the United States from January 1, 2007 to March 21, 2019 that were initially used internally by Volkswagen and later resold by an authorized Volkswagen or Audi dealership as a Certified Pre-Owned ("CPO") vehicle and which has at least one of the following characteristics at the time it was resold by an authorized Volkswagen or Audi dealership as a Certified Pre-Owned ("CPO") vehicle: (a) the vehicle is a pre-series, zero

series or pre-production car as those terms are more particularly described in paragraphs 34-36 of the Second Amended Complaint; (b) the vehicle is one of the 252 cars identified by Volkswagen in its so-called Part 573 Safety Recall Report filed with the NHTSA on May 16, 2018 (as amended on July 23, 2018); (c) the vehicle had been driven by one or more members of the automotive press and/or media; (d) the vehicle had been driven by one or more Volkswagen employees for short term use as part of the so-called Pool-Fleet (i.e. vehicles assigned to a pool of vehicles that were loaned for the personal use of employees of VWGOA or VWAG prior to being leased to a particular Volkswagen employee); (e) the vehicle was altered after the original date of manufacture; (f) the vehicle's actual mileage identified by you in connection with the application for the original title was incorrect or otherwise inaccurate; and/or (g) the vehicle is one of the 113 cars identified by you in its so-called Part 573 Safety Recall Report filed with the NHTSA on September 25, 2019 (as amended on December 20, 2019).

9.      "Pre-Production Vehicles" means Class Vehicles that are a pre-series, or zero series vehicle, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint.

10.     "Pre-Series Vehicle" means a Class Vehicle that was produced under a method known as the production try-out, which was intended to prove reproducibility, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint.

11.     "Zero-Series Vehicle" means a Class Vehicle produced at the stage after the Pre-Series stage to ensure the process and product quality is at a customer-acceptable product level, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint.

12.     "NHTSA" means the United States National Highway Traffic Safety Administration.

13.     "Recalled Vehicle" means a Class Vehicle that was one of the 252 cars identified by VWGOA in its so-called Part 573 Safety Recall Report filed with NHTSA on May 16, 2018 (as amended on July 23, 2018) or a Class Vehicle that was one of the 113 cars identified by Volkswagen in its so-

called Part 573 Safety Recall Report filed with the NHTSA on September 25, 2019 (as amended on December 20, 2019).

14.     "Press-Fleet Vehicle" means a Class Vehicle that was driven by one or more members of the press before being sold to the public.

15.     "Pool-Fleet Vehicle" means a Class Vehicle that Volkswagen assigned to a general pool of vehicles for short-term loans to Volkswagen employees for their personal use before being sold to the public.

16.     "Leased-Fleet Vehicle" means a Class Vehicle that was leased to one or more Volkswagen employees before being sold to the public.

17.     "Series-Production Vehicles" means vehicles that Volkswagen mass produces and sells to consumers through dealerships, and which are more particularly described in paragraphs 34-36 of the Second Amended Complaint.

18.     "VIN" means the Vehicle Identification Number of a vehicle.

19.     "Communication" means the transmittal (in the form of facts, ideas, thoughts, opinions, data, inquiries or otherwise) and includes, without limitation, correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, and postings of any type.

20.     The term "concerning" means constituting, evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or relating, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the inquiry or Request. Requests for "documents concerning" means any Documents which explicitly or implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a result of the subject matter of the Request, including all Documents which reflect, refer, record, are in regard to, in connection with, specify,

memorialize, relate, describe, discuss, consider, constitute, embody, evaluate, analyze, refer to, review, report on, comment on, impinge upon, or impact the subject matter of the Request.

21.     "Document" means the original (or, if the information called for cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or retrieved, and shall mean, without limitation, any written, recorded or graphic matter, in any language, whether produced or reproduced or stored on paper, cards, tapes, films, computer, electronic storage devices or any other media and includes, without limiting the generality of the foregoing, papers, trade letters, envelopes, telegrams, cables, messages, correspondence, memoranda, notes, electronic mail ("e-mails"), text messages, instant Electronic Messages, reports, Studies, press releases, comparisons, books, accounts, checks, audio and video recordings, pleadings testimony, articles, bulletins, pamphlets, brochures, magazines, questionnaires, surveys, charts, newspapers, calendars, desk calendars, pocket calendars, lists, logs, publications, notices, diagrams, instructions, diaries, minutes of Meetings, corporate minutes, orders, resolutions, agendas, memorials or notes of oral Communications, whether by telephone or face-to-face, contracts, Agreements, drafts or proposed contracts or Agreements, memoranda of understanding, letters of intent, deal memoranda, transcriptions of audio or video recordings, computer tapes, computer diskettes or disks, or any other tangible thing on which any handwriting, typing, printing, photostatic, electronic or other form of Communication or information is recorded or reproduced, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions of drafts thereof, whether used or not.

22.     "Electronic Media" means any magnetic, optical, or other storage media device used to record ESI including, without limitation, computer memory, hard disks, floppy disks, flash memory devices, CDs, DVDs, Blu-ray disks, cloud storage (e.g., DropBox, Box, OneDrive, and SharePoint), tablet computers (e.g., iPad, Kindle, Nook, and Samsung Galaxy), cellular or smart phones (e.g., BlackBerry,

iPhone, Samsung Galaxy), personal digital assistants, magnetic tapes of all types or any other means for digital storage and/or transmittal.

23.    "ESI," "Electronically Stored Information," or Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of Electronic Data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts and/or transmittals, logs of electronic mail history and usage, header information, and deleted files), internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, .PDF and .TIFF files, batch files, native files and all ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment. Electronic Data includes, but is not limited to, any and all items stored on any electronic media, computers, networks or "cloud" computing services and all backup files containing electronically stored data. The term "Electronic Data" also includes the file, folder tabs, metadata, personal electronic backup media, including thumb drives, and/or containers and labels appended to or associated with any physical storage device associated with each such original and/or copy. In addition, the term "Electronic Data" includes all text messages, instant messages, internet messages, intranet messages, electronic bulletin board messages, blog entries,

6

website postings of any nature, and all other methods by which messages may be transmitted by or through electronic means.

24.     "Identify" when used to refer to a natural person, shall mean to set forth that person's: (i) full name and title, if any; (ii) present or last known address; (iii) present or last known business and home telephone number(s); and (iv) present or last known employer.

25.     "Identify" when used to refer to a document, shall mean: (i) the date of each document; (ii) the type of each such document (i.e. correspondence, memorandum, business record, etc.); (iii) the identity of the author(s) or preparer(s) of each such document; and (iv) the present location of each such document or copies thereof.

26.     "Including" is used to illustrate examples of documents that would be responsive to the request and should not be construed as limiting the request in any way.

27.     The terms "Plaintiffs" and "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

## RULES OF CONSTRUCTION

1.     "Any," "All," and "Each" shall be construed as any, all and each.

2.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring all responses within the scope of these Requests.

3.     The singular form of a noun or pronoun includes the plural form and vice versa.

4.     The masculine shall be construed to include the feminine and vice versa.

5.     The use of any tense of any verb shall also include within its meaning all other tenses of   that verb.

6.      A term or word defined herein is meant to include both the lower-and-upper-case reference to such term or word.

7.      The "knowledge," "information," "possession," "custody," and "control" by a person shall be construed to include such person's agents, representatives, and attorneys.

## **INSTRUCTIONS**

1.      You are requested to produce all documents in your possession, custody, or control that are described below. In so doing, please furnish documents that are in the possession of your partners, officers, employees, attorneys, accountants, representatives, or agents, or that are otherwise subject to your custody or control.

2.      Unless otherwise indicated, the Documents to be produced include all Documents prepared, sent, dated or received, or those that otherwise came into existence any time during the Relevant Time Period defined herein.

3.      The production by one person, party, or entity of a Document does not relieve another person, party, or entity from the obligation to produce his, her, or its own copy of that Document, even if the two Documents are identical.

4.      In producing Documents, you are requested to produce a copy of each original Document together with a copy of all non-identical copies and drafts of that Document. If the original of any Document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

5.      Documents shall be produced as they are kept in the usual course of business. All Documents shall be produced with a copy of the file folder, envelope, or other container in which the Documents are kept or maintained. All Documents shall be produced intact in their original files, without disturbing the organization of Documents employed during the conduct of the ordinary course of business and during the subsequent maintenance of the Documents.

6.      Documents not otherwise responsive to these Requests shall be produced if such Documents mention, discuss, refer to, or explain the Documents which are called for by these Requests, or if such Documents are attached to Documents called for by these Requests and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

7.      Each Document requested herein is to be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire Document to be relevant or responsive to these Requests. If you have redacted any portion of a Document, stamp the word "redacted" on each page of such Document. If the redaction is made on the basis of privilege, then a privilege log must be produced with the production in accordance with the Federal Rules and the instructions hereinafter set forth.

8.      If any Document responsive to these Requests is not produced in full or is redacted on grounds that it is privileged or otherwise claimed to be protected against production, You are requested to provide the following information with respect to each such Document or redaction:

a.      date;

b.      author(s), signatory(s) and each and every other person who prepared or participated in its preparation;

c.      type of document (e.g., letter, chart, memorandum, etc.);

d.      a description of its subject matter and length;

e.      a list of those persons and entities to whom said Document(s) was disseminated, together with their last known addresses and the date or approximate date on which each such person or entity received it;

f.      a list of all other persons to whom the contents of the Document have been disclosed, the date such disclosure took place, the means of such disclosure, and the present location of the document and all copies thereof;

g.      each and every person having custody or control of the document and all copies thereof; and

h.      the nature of the privilege or other rule of law relied upon and any facts supporting Your position to withhold production of such Document.

9.      If you assert an objection to any Request, you must nonetheless respond and produce any responsive documents or ESI that are not subject to the stated objection.  If you object to part of a Request of category, you must specify the portion of the Request to which you object and must produce Documents responsive to the remaining parts of the Request.

10.     Notwithstanding a claim that a Document is protected from disclosure, any Document so withheld must be produced with the portion claimed to be protected redacted.

11.     If any Document or ESI is known to have existed but no longer exists, has been destroyed, or is otherwise available, You must identify the Document or ESI, the reason for its loss, destruction or unavailability, the name of each person known or reasonably believed by You to have present possession, custody, or control of the original and any copy thereof (if applicable), and a description of the disposition of each copy of the document or ESI.

12.     If your response to any Request makes reference to and/or may be determined by examining documents you are producing in response to any Request or Interrogatory, you must specifically identify those responsive documents by Bates numbers in accordance with Fed. R. Civ. P. 34(b)(2).

## <u>RELEVANT TIME PERIOD</u>

The relevant time period for each Request is from January 1, 2007 to the present (the "Relevant Time Period"), unless otherwise specifically indicated, and shall include all Documents and information concerning such period, even though prepared or published outside of the Relevant Time Period. If a Document prepared before the Relevant Time Period is necessary for a correct or complete understanding of any document covered by a Request, you must produce the earlier or subsequent

document as well. If a Document is undated, the date of its preparation cannot be ascertained, and the Document is otherwise responsive to Request, the Document shall be produced.

## DOCUMENT REQUESTS

**REQUEST NO. 1:**   All non-privileged documents reviewed by Volkswagen in preparing its responses to Ricardo R. Garcia's First Set of Interrogatories to Defendant Volkswagen Group of America, Inc.

**REQUEST NO. 2:**   All documents that report, describe, summarize, analyze, discuss or comment on sales strategies, projected market shares, or the profitability of Volkswagen in the supply, manufacture, distribution of CPO vehicles, including all strategic plans, long-range plans and business plans of Volkswagen related to the sale of CPO vehicles.

**REQUEST NO. 3:**   All documents concerning your guidelines or standards of conduct concerning how you ensure that the vehicles you sell conform to applicable federal safety standards and that you carefully obtain and accurately report information regarding your vehicles, including your vehicles' actual mileage driven as then reflected on its odometer, when making application for an original certificate of title.

**REQUEST NO. 4:**   All documents concerning the process and procedure that you use to the extent that you provide any assistance to VWAG in affixing the label described in paragraph 30 of the Second Amended Complaint, or in determining if a label is required of the type described in paragraph 31 of the Second Amended Complaint, or regarding the role you play in the issuance of the so-called manufacturer's certificate of origin.

**REQUEST NO. 5:**   All documents and communications provided by or to any governmental or regulatory body pursuant to any investigation of the Class Vehicles that concerns or relates to the conduct described in the Second Amended Complaint, including, but not limited to, any documents that may have been turned over by Volkswagen to the Braunschweig prosecutor's office.

11

**REQUEST NO. 6:**   All documents and correspondence between you and the NHTSA involving Recalls 18V329, 19V614 and 19V679 or otherwise regarding the Recalled Vehicles.

**REQUEST NO. 7:**   All correspondence within Volkswagen involving Recalls 18V329, 19V614 and 19V679 or otherwise regarding the Recalled Vehicles.

**REQUEST NO. 8:**   All documents concerning safety testing protocols that Volkswagen utilizes, including those governing the testing of component parts, to ensure compliance with Federal Motor Vehicle Safety Standards.

**REQUEST NO. 9:**   All correspondence within Volkswagen referencing or discussing the sale of any of the Class Vehicles.

**REQUEST NO. 10:**   All correspondence within Volkswagen referencing or discussing the legality of selling and/or operating any of the Class Vehicles.

**REQUEST NO. 11:**   All correspondence between Volkswagen and any other entity referencing or discussing the sale of any of the Class Vehicles.

**REQUEST NO. 12:**   All correspondence between Volkswagen and any other entity referencing or discussing the legality of selling and/or operating any of the Class Vehicles.

**REQUEST NO. 13:**   All correspondence within Volkswagen referencing or discussing whether you could legally sell any of the Class Vehicles as "Certified Pre-Owned" vehicles.

**REQUEST NO. 14:**   All correspondence referencing or related to the Pre-Production Sales Report provided to Herbert Diess, CEO of VWAG, in August 2016, as more particularly described in paragraphs 92-94 of the Second Amended Complaint.

**REQUEST NO. 15:**   A copy of the Pre-Production Sales Report provided to Herbert Diess, CEO of VWAG, in August 2016, including all attachments/exhibits/appendices as more particularly described in paragraphs 92-94 of the Second Amended Complaint.

**REQUEST NO. 16:**   All correspondence within Volkswagen regarding the original *Der Spiegel* article published on or about December 7, 2018 (available at: https://www.spiegel.de/wirtschaft/volkswagen-hat-nicht-serienreife-autos-verkauft-diagnose-unklarer-bauzustand-a-00000000-0002-0001-0000-000161216151) or regarding any subsequent articles suggesting that Volkswagen had been illegally selling Pre-Production Vehicles or otherwise failing to comply with vehicle safety standards.

**REQUEST NO. 17:**   All correspondence regarding any attempt to identify the Volkswagen employee(s) who may have provided information to *Der Spiegel* for the above-referenced article or who may have provided information to others outside of Volkswagen regarding the at-issue Pre-Production Vehicles.

**REQUEST NO. 18:**   For each of the Class Vehicles owned by the named Plaintiffs in this action as more particularly described paragraphs 9-16 of the Second Amended Complaint, and for the time period starting from the date each such vehicle was originally manufactured   until the time immediately following the sale of each such vehicle to the named Plaintiffs herein, for each such vehicle please provide the following: all documents evidencing the importation; the manufacturer's certificate of origin; the original application for title; the original title; the application for each subsequent title; each subsequent title that issued; and the service records. To the extent that you maintain access to service records for the at-issue vehicles owned by named Plaintiffs for any time period after the date that each Plaintiff acquired the at-issue vehicles (by virtue of your dealers' obligation to provide you with copies and/or by virtue of shared databases regarding service records with your dealers), please also produce those service records as well.

**REQUEST NO. 19:**   All documents reflecting any inspection that purported to qualify the Class Vehicles owned by the named Plaintiffs in this action to be sold as a CPO vehicle.

**REQUEST NO. 20:**  All Carfax Report provided by your dealers at the time of purchase to each consumer who purchased a Recalled Vehicle and to each of the named Plaintiffs herein.  Please ensure to produce those Carfax Reports, if available, in the form in which they existed on the day of sale.

**REQUEST NO. 21**:  All correspondence between Volkswagen and Carfax referencing or relating to the Carfax Price Calculator contained with the Carfax reports, which is more particularly described in paragraphs 78-80 of the Second Amended Complaint.

**REQUEST NO. 22:**  All buyback letters or settlement offers sent to purchasers of vehicles identified in Recalls 18V329, 19V614 and 19V679, the Recalled Vehicles or of any of the other Class Vehicles, and any response received.

**REQUEST NO. 23:**  A Vehicle Identification Number (VIN) decoding sheet for all vehicles identified in Interrogatory No. 1.

**REQUEST NO. 24:**  All documents evidencing modifications or alterations by you of the Class Vehicles owned by the named Plaintiffs in this action, which cars are more particularly described paragraphs 9-16 of the Second Amended Complaint.

**REQUEST NO. 25:**  Completed form HS-7 with all attachments (blank form HS-7 available at: https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/hs7_r.v.7.pdf) that you completed and submitted to facilitate the importation of each Class Vehicle owned by the named Plaintiffs in this action, which cars are more particularly described paragraphs 9-16 of the Second Amended Complaint.

**REQUEST NO. 26:**  All documents evidencing engineering change orders (ECO), engineering change requests (ECR), or engineering change notices (ECN) or similar documents evidencing changes to the design, build or component parts of the Series Production Vehicles from the Pre-Production Vehicles of the same make/model/year that form a portion of the Class Vehicles as defined herein.

**REQUEST NO. 27:**  A copy of any other lawsuit, other than the current action, that has been filed against you from March 2019 to the present to the extent that any such lawsuit makes similar claims to those alleged by Plaintiffs in this action.

**REQUEST NO. 28:**  The manufacturer's certificate of origin, the original application for title, the original title, and documents evidencing the transfer of title from you until title is ultimately vested in the first consumer purchaser of any Press-Fleet Vehicle, Pool-Fleet Vehicle, or Leased-Fleet Vehicle, as well as a copy of the CARFAX report as it existed on the date of the sale of each at-issue Class Vehicle to the first consumer purchaser.

**REQUEST NO. 29:**  To the extent not produced in response to Request No. 18, please provide all documents tracing the title to each Class Vehicle of the named Plaintiffs in this action from the time of manufacture to the time of transfer to each respective Plaintiff.

**REQUEST NO. 30:**  An organizational chart(s) for the department within Volkswagen that investigated the alleged illegal sale by Volkswagen of Pre-Production Vehicles.

**REQUEST NO. 31:**  Completed form HS-7 with all attachments that you completed and submitted to facilitate the importation of the Recalled Vehicles into the United States.

**REQUEST NO. 32:**  All correspondence or other documents regarding damage or abuse of Press-Fleet Vehicles.

**REQUEST NO. 33:**  All correspondence or other documents regarding damage or abuse of Pool-Fleet Vehicles.

**REQUEST NO. 34:**  All correspondence or other documents regarding damage or abuse of Leased-Fleet Vehicles.

**REQUEST NO. 35:**  All vehicle condition report that reflect the condition of each Press-Fleet Vehicle, Pool-Fleet Vehicle, or Leased-Fleet Vehicle prior to the time of any alteration to prepare those vehicles for resale to the public.

15

**REQUEST NO. 36:**  To the extent not produced in response to Request No. 18, please provide all service records for each of the Class Vehicles owned by the named Plaintiffs in this action.

**REQUEST NO. 37:**  All internal correspondence or other documents within Volkswagen discussing whether mileage on an original title application for any of the Class Vehicles should be reported differently than the actual mileage reflected on the odometer on each Class Vehicle, or otherwise discussing the issue of verifying (or failing to verify) the actual mileage on each Class Vehicle before reporting mileage for any such vehicle on the application for title.

**REQUEST NO. 38:**  All internal correspondence or other documents within Volkswagen discussing or referencing the legality of selling Pre-Production Vehicles, including any change in Volkswagen policy regarding when such Pre-Production Vehicles were permitted to be sold.

**REQUEST NO. 39:**  All internal correspondence or other documents within Volkswagen discussing or referencing the potential safety issues that may be implicated by selling Pre-Production Vehicles, Pre-Series Vehicles, or Zero-Series Vehicles.

**REQUEST NO. 40:**  All external correspondence or documents referencing the legality of selling Pre-Production Vehicles, Pre-Series Vehicles, or Zero-Series Vehicles.

**REQUEST NO. 41:**  All correspondence or documents discussing or referencing the timing of when mileage is put on vehicles used by Volkswagen for internal use and how that mileage impacts later classification of such vehicles as "new" or "used" or how such mileage/use impacts regulatory scrutiny of such vehicles.

**REQUEST NO. 42:**  An organizational chart(s) identifying the person(s) and position(s) of the individual(s) who signed the title applications for Plaintiff Garcia's vehicle on December 16, 2015, and for Plaintiff Jacobson's vehicle on October 21, 2015, as described in paragraphs 56-62 of the Second Amended Complaint.

**REQUEST NO. 43:**  All correspondence or documents discussing or referencing the scrapping, destruction or export of any of the Class Vehicles, or any Pre-Production Vehicles, Pre-Series Vehicles, Zero-Series Vehicles.

**REQUEST NO. 44:**  All correspondence or documents discussing or referencing damage or abuse of any of the Class Vehicles owned by the named Plaintiffs in this action.

**REQUEST NO. 45:**  All documents reflecting how the Class Vehicles owned by the named Plaintiffs in this action were used (i.e. by whom within and outside of Volkswagen Plaintiffs' vehicles were used; the specific time periods during which Plaintiffs' vehicles were used; the specific purpose of the use, etc.) prior to the sale of those Class Vehicles to Plaintiffs.

**REQUEST NO. 46:**  All correspondence or documents discussing or referencing the timing of when mileage is put on vehicles used by Volkswagen for internal use and how that mileage impacts later classification of such vehicles as "new" or "used" or how such mileage or use may impact regulatory scrutiny of those vehicles when such cars, at some later date, are (or are attempted to be) titled or registered or sold.

**REQUEST NO. 47:**  All correspondence or documents discussing whether vehicles imported by you are required to be scrapped, exported or otherwise cannot be sold to consumers if such vehicles were materially altered after the original date that such cars were manufactured.

**REQUEST NO. 48:**  All incoming and outgoing e-mail to and from your employee Tim Glynn regarding the scrapping of vehicles or the legality of reselling certain Volkswagen-branded cars to consumers.

**REQUEST NO. 49:**  All incoming and outgoing e-mail to and from your employee Chi-han Chen that references or relates to the selling of Pre-Production Vehicles, Pre-Series Vehicles or Zero-Series Vehicles, including, but not limited to, any correspondence with any VWAG or Audi AG employee(s)

17

that purportedly authorized or instructed Chen to sell such Pre-Production Vehicles, Pre-Series Vehicles or Zero-Series Vehicles.

**REQUEST NO. 50:**  All documents reflecting the meaning (i.e. decoder) of your so-called "PR" numbers or option codes used to refer to vehicles manufactured, imported or sold by you during the Relevant Time Period.

**REQUEST NO. 51:**  All documents indicating which PR numbers or option codes were used during the Relevant Time Period by you to indicate that any vehicle manufactured, imported or sold by you was a Pre-Production Vehicle, a Pre-Series Vehicle, or a Zero-Series Vehicle.

**REQUEST NO. 52:**  All documents discussing how PR numbers or option codes can be used to determine whether a given vehicle manufactured, imported or sold by you is a Pre-Production Vehicle, a Pre-Series Vehicle, or a Zero-Series Vehicle.

**REQUEST NO. 53:**  All documents reflecting any list of vehicles containing PR numbers or option codes used during the Relevant Time Period by you that indicate which vehicles imported by you was a Pre-Production Vehicle, a Pre-Series Vehicle, or a Zero-Series Vehicle, including but not limited to option codes S7Q, S99, SAO, SJO.

**REQUEST NO. 54:**  All documents reflecting any list of vehicles containing PR numbers or option codes used during the Relevant Time Period by you that indicate which vehicles imported by you was a Pre-Production Vehicle, a Pre-Series Vehicle, or a Zero-Series Vehicle, including but not limited to option codes S7Q, S99, SAO, SJO, and which also reflect the disposition of each such vehicle (i.e. scrapped, internal use only, use at port, exported, donated for charitable use, Pool-Fleet use, Leased-Fleet use, eTag use, transferred to VW Credit, auctioned to dealer for resale to public, etc.)

**REQUEST NO. 55:**  All documents referencing or reflecting GPS tracking of any Class Vehicle.

**REQUEST NO. 56:**  All logs, including excel spreadsheets, inventorying the Class Vehicles (or any portion thereof) that reflects how the Class Vehicles were used by you or VW Credit during the time that any of the Class Vehicles were owned by you or VW Credit.

**REQUEST NO. 57:**  All documents discussing or referencing the advantage of using a vehicle in your so-called eTag system before offering it for sale to authorized Volkswagen dealerships or for sale to the public.

**REQUEST NO. 58:**  All documents discussing or referencing legality of selling Pre-Production Vehicles, Pre-Series Vehicles, Zero-Series Vehicles to the public or to dealers to resell to the public.

**REQUEST NO. 59:**  All monthly and yearly summary reports for each month and year during the Relevant Time Period pertaining to Press-Fleet Vehicles, Leased-Fleet Vehicles, or Pool-Fleet Vehicles.

**REQUEST NO. 60:**  All documents reflecting your policy in effect during any given year during the Relevant Time Period regarding the sale, including by way of auction, of Pre-Production Vehicles, Pre-Series Vehicles, or Zero-Series Vehicles to your dealers for resale to the public, including any documentation reflecting any change to such policy and the reasons for any such change.

**REQUEST NO. 61:**  All documents reflecting any disciplinary action taken by Volkswagen against any of your employees for falsifying the mileage of any vehicle in making application for an original certificate of title.

**REQUEST NO. 62:**  All documents reflecting which vehicles were used by you in any auto show to the extent any such vehicle was later sold to one of your dealers or ultimately offered for sale to the public.

**REQUEST NO. 63:**  All documents reflecting modifications made to any vehicle used by you in any auto show to the extent any such vehicle was later sold to one of your dealers or ultimately offered for sale to the public.

**REQUEST NO. 64:**  All documents discussing or related to vehicles that were altered by you after the date of original manufacture, including but not limited to documents referencing or related to obligations that may arise from such alterations as described in paragraph 31 of the Second Amended Complaint.

**REQUEST NO. 65:**  All documents tracking the issuance and use of so-called "emissions exempt labels" including any documents that reflect the VIN of each vehicle on which an emissions exempt label was used.

**REQUEST NO. 66:**  An organizational chart(s) that reflect, during the Relevant Time Period, the name, position and/or managerial structure of those working in your so-called Pilot Hall.

**REQUEST NO. 67:**  An organizational chart(s) that reflect, during the Relevant Time Period, the name, position and/or managerial structure of those working on sourcing and marketing Volkswagen-branded CPO vehicles.

**REQUEST NO. 68:**  An organizational chart(s) that reflect, during the Relevant Time Period, the name, position and/or managerial structure of those working in your so-called Vehicle Administration department.

**REQUEST NO. 69:**  An organizational chart(s) that reflect, during the Relevant Time Period, the name, position and/or managerial structure of those overseeing your so-called eTag system.

**REQUEST NO. 70:**  An organizational chart(s) that reflect, during the Relevant Time Period, the name, position and/or managerial structure of those managing Volkswagen Group of America Chattanooga Operations, LLC.

**REQUEST NO. 71:**  An organizational chart(s) that reflect, during the Relevant Time Period, the name, position and/or managerial structure of those managing your so-called Customs Operations.

**REQUEST NO. 72:**  Provide a copy of your so-called Certified Preowned Manual (including all versions of or amendments to such manual in use at any time during the Relevant Time Period).

**REQUEST NO. 73:**  All documents reflecting internal discussions regarding how a designation of a CPO vehicle as a so-called one-owner car can increase its perceived value to consumers or otherwise impact the amount by which it can be sold.

**REQUEST NO. 74:**  All documents referencing or related to the importance of the so-called residual value of Volkswagen-branded used vehicles, how that residual value can impact demand and price at which Volkswagen-branded new vehicles can be sold, or how the sale of Volkswagen-branded CPO cars can enhance residual value.

**REQUEST NO. 75:**  All documents referencing or related to the benefits to you of increasing sales of CPO designated cars, including, but not limited to, any documents quantifying those benefits or comparing the benefits and/or profits of selling a CPO-designated vehicle with a non-CPO-designated vehicle.

**REQUEST NO. 76:**  Completed form HS-7, with all attachments, that you completed and submitted to facilitate the importation of any vehicle into the United States during the Relevant Time Period, however, please only do so for such HS-7 forms on which box 7 is checked, selected or otherwise marked.   (NOTE: Request No. 25 & 31 also require you to produce completed form HS-7 for the named Plaintiffs' vehicles and for the Recalled Vehicles, but those Requests, unlike this Request No. 76, require the production of ALL completed HS-7 forms for the specified cars.  This Request No. 76, by contrast, requires production of completed form HS-7 for ALL vehicles imported during the Relevant Time Period, BUT ONLY IF Box 7 on the completed and submitted HS-7 form was checked, selected or otherwise marked.  This Request No. 76 SHOULD NOT be read to limit or restrict Request No. 25 or Request No. 31).

**REQUEST NO. 77:**  All documents referencing or related to the issue of whether Pre-Production Vehicles, Pre-Series Vehicles or Zero-Series Vehicles conform to all applicable U.S. federal safety standards for motor vehicles.

**REQUEST NO. 78:**  All documents referencing or related to the issue of whether Volkswagen should disclose to prospective consumers or its dealers how CPO vehicles offered for sale were used prior to such sale (i.e. whether such CPO vehicles were used as part of your Press Fleet, Leased Fleet, Pool Fleet, etc.)

**REQUEST NO. 79:**  The Agreement for Audi/Volkswagen Certified Pre-Owned Programs" (the "Carfax Contract") between VWGOA and Carfax, Inc. ("Carfax"), effective June 1, 2011 (the "Effective Date"), which was signed by Richard Raines, President of Carfax, and Michael Lohscheller, CFO of VWGOA, as well as all amendments and/or modifications to the aforesaid Carfax Contract.

**REQUEST NO. 80:**  All correspondence between you and Carfax concerning the Carfax Contract, including any documents related to the termination and/or non-renewal of such Carfax Contract.

**REQUEST NO. 81:**  Any contract in place between you and Carfax during the Relevant Time Period that was in effect prior to the Carfax Contract.

**REQUEST NO. 82:**  All documents referencing or identifying any vehicle that you caused to be retrofitted or modified after using that vehicle internally if such vehicle was subsequently sold to one of your dealers.

**REQUEST NO. 83:**  All "Project Appropriation Request" forms that were completed for any vehicle(s) that was subsequently sold to one of your dealers.

**REQUEST NO. 84:**  All correspondence sent by you to any owner and/or lessee of any of the Recalled Vehicles.

**REQUEST NO. 85:**  All correspondence received by you from any owner and/or lessee of any of the Recalled Vehicles.

**REQUEST NO. 86:**  All internal or external correspondence or other documents discussing or referencing the Elektronischer Teilekatalog ("ETKA") and its ability to identify a vehicle as a Pre-Production Vehicle, or otherwise relating to the message that is sometimes generated by the ETKA

system that indicates "caution: preproduction model" or that otherwise warms that the "vehicle contains special equipment/fixtures that are not documented in the genuine parts catalogue."

**REQUEST NO. 87:**  All documents that reflect the as-built condition of the named Plaintiffs' vehicles, including any as-built documents from your so-called Daisy System.

**REQUEST NO. 88:**  All internal correspondence, studies, reports or other documents that reference or explain how you determined that the defect you identified in the Recalled Vehicles "relates to motor vehicle safety" and that "there could be an increased risk of a crash, fire or injury" for those who use a Recalled Vehicle as described by you in documents you submitted to the NHTSA. *See, e.g.,* NHTSA, Part 573 Safety Recall Report, 18V-329, Interim Owner Notification Letter, available at: https://static.nhtsa.gov/odi/rcl/2018/RIONL-18V329-0521.pdf (last visited Sept. 20, 2019).

**REQUEST NO. 89:**  All documents referencing or related to the differences between Pre-Production Vehicles and Series Production Vehicles and how those differences might impact safety, safety ratings, crash worthiness or regulatory compliance.

**REQUEST NO. 90:**  All documents that you contend provide support for your Third Affirmative Defense set forth in your Answer to the Second Amended Complaint in which you assert that Plaintiffs' claims are barred by the doctrine of estoppel.

**REQUEST NO. 91:**  All documents that you contend provide support for your Fourth Affirmative Defense set forth in your Answer to the Second Amended Complaint in which you assert that Plaintiffs' claims are barred by the applicable statute of limitations and/or the doctrine of laches.

**REQUEST NO. 92:**  All documents that you contend provide support for your Fifth Affirmative Defense set forth in your Answer to the Second Amended Complaint in which you assert that Plaintiffs' claims are barred by the doctrines of waiver, acquiescence or ratification.

**REQUEST NO. 93:**  All documents that you contend provide support for your Sixth Affirmative Defense set forth in your Answer to the Second Amended Complaint in which you assert that Plaintiffs' claims are barred by the doctrines of payment, release, accord or satisfaction.

**REQUEST NO. 94:**  All documents that you contend provide support for your Seventh Affirmative Defense set forth in your Answer to the Second Amended Complaint in which you assert that Plaintiffs' claims are barred because "any damages they allegedly sustained were caused by the acts and/or omissions of persons other than VWGoA and over whom VWGoA had no control."

**REQUEST NO. 95:**  All documents discussing or referencing any allegation made by any consumer (excluding named Plaintiffs' allegations in this Action) that you falsified the odometer reading of any CPO vehicle or that you reported inaccurate mileage on any application for the original title.

**REQUEST NO. 96:**  Any insurance policy, including all declarations pages setting forth coverage limitations, that that may provide insurance coverage to you for any of the claims asserted by Plaintiffs in this action.

**REQUEST NO. 97:**  All correspondence between you to your insurance provider relating to the claims asserted by the Plaintiffs in this action or relating to any request for insurance coverage for any such claims.

**REQUEST NO. 98:**  All correspondence discussing the so-called Buyback Guarantee Certificate referred to in the Carfax Contract, and which certificate is more particularly described in paragraph 74 of the Second Amended Complaint.

**REQUEST NO. 99:**  All correspondence or other documents that discuss the so-called "daily data file feed" referred to in the Carfax Contract and more particularly described in paragraph 74 of the Second Amended Complaint, especially any such documents that refer to the specific information provided by Volkswagen to Carfax for inclusion in the Carfax Reports, and the technical details of how that data was transferred or otherwise facilitated between Volkswagen and Carfax.

**REQUEST NO. 100:**  Please produce your Federal Income Tax Returns filed by VWGOA for each of the last three tax years, and upon filing your Federal Income Tax Return for the 2019 and 2020 tax years, please also produce each of those.

**REQUEST NO. 101:**  For each year during the Relevant Time Period, please produce a schedule or other documents reflecting the total amount of money paid by Volkswagen to R.L. Polk & Company for each year, and if available, for all years within the Relevant Time Period combined.

**REQUEST NO. 102:**  For each year during the Relevant Time Period, please produce a schedule or other documents reflecting the total amount of money paid by Volkswagen to Carfax, Inc. for each year, and if available, for all years within the Relevant Time Period combined.

**REQUEST NO. 103:**  Please produce the so-called Risk Sharing Agreement, including all amendments and/or versions in effect during the Relevant Time Period, which Risk Sharing Agreement is more particularly described in paragraph 20 of the Second Amended Complaint.

**REQUEST NO. 104:**  Please produce any videos or sales training materials by which Volkswagen trained its dealers and/or their salespeople how to market and sell CPO vehicles.

**REQUEST NO. 105:**  Please produce your so-called Certified Preowned Training Manual, including all amendments and/or versions in effect during the Relevant Time Period, by which Volkswagen trained its dealers and/or their salespeople how to market and sell CPO vehicles.

**REQUEST NO. 106:**  Please produce all advertising material (i.e. brochures, videos, television commercials, social media posts on Facebook, YouTube, Twitter, Instagram, webpages etc.) that you published during the Relevant Time Period to directly market your CPO vehicles to prospective customers.

**REQUEST NO. 107:**  Please produce all advertising material (i.e. brochures, videos, television commercials, social media posts on Facebook, YouTube, Twitter, Instagram, webpages etc.) that you

published during the Relevant Time Period to directly market your CPO vehicles to prospective customers.

**REQUEST NO. 108:**  Please produce any internal correspondence or internally created document that discusses, analyzes or attempts to quantify any increased profitability to Volkswagen or increased sales prices or residual value of your used-car sales as a result of the Carfax Price Calculator contained with the Carfax reports, which Carfax Price Calculator is more particularly described in paragraphs 78-80 of the Second Amended Complaint.

**REQUEST NO. 109:**  Please produce documents reflecting the fee that you were paid or were entitled to be paid for the extended warranty given to each named Plaintiff as a result of their purchase of a CPO-designated vehicle.

**REQUEST NO. 110:**   Please produce documents reflecting the gross profits that you earn on financing the average CPO vehicle through your financing venture with VW Credit.

**REQUEST NO. 111:**  Please produce documents reflecting the average increase in sales price and gross profit earned by you and your dealers on the sale of CPO-designated used cars compared to an otherwise similarly situated non-CPO-designated used car.

**REQUEST NO. 112:**  For each of the named Plaintiffs who purchased their Volkswagen-branded vehicle that is at-issue in this case from one of your dealers, please produce a copy of your franchise agreement with that dealer along with any other agreement(s) between you and that dealer that was in existence on the date when the corresponding named Plaintiff purchased his vehicle from your dealer. In doing so, please include any floor-plan financing agreement or any other contract that may provide you or one of your affiliates with a security interest in your dealers' vehicles, and which may result in you or your affiliates repossessing such vehicles in the event your dealer were to default on its financial obligations to you or one of your affiliates.

**REQUEST NO. 113:**  For each year during the Relevant Time Period, please produce documents that reflect your average gross profit on each CPO vehicle sold, and the number of CPO sales (provide documents separately reflecting these figures for both Volkswagen-branded CPO cars and Audi-branded CPO cars).

**REQUEST NO. 114:**  For each named Plaintiffs who purchased their vehicle from one of your dealers, please produce documents that trace or otherwise memorialize the transfer of any interest in-and-to named Plaintiffs' vehicle (prior to the time of Plaintiffs' purchase) from Volkswagen to your dealer, and that reflect the exact nature of that interest held by your dealer in such vehicle, as well the interest, if any, that was continued to be maintained by Volkswagen in-and-to such vehicle (i.e. security interest; right of dealer to reconvey vehicle to you on predetermined terms; dealers' inventory pledged as collateral for dealers' floor-plan financing, etc.).

**REQUEST NO. 115:**  Please produce your most-recent financial statements (balance sheet, income statement, statement of owners' equity) from which your net worth may be derived.

Dated:  May 28, 2020

Respectfully submitted,

/s/ *Michael J. Melkersen*
Michael J. Melkersen (VSB#69828)
5 Surfside Road
Humacao, Puerto Rico 00791
Telephone:     540.435.2375
Email:          mike@mlawpc.com

Joseph F. Rice, Esq. (*Admitted Pro Hac Vice*)
Kevin R. Dean, Esq. (*Admitted Pro Hac Vice*)
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Telephone:    843.216.9000
Facsimile:     843.216.9440
Email:          jrice@motleyrice.com
                kdean@motleyrice.com

*Attorneys for Plaintiffs and Interim Class Counsel*

## CERTIFICATE OF SERVICE

I, Michael J. Melkersen, hereby certify that on this date I served a true and correct copy of the foregoing Plaintiffs' First Requests for Production of Documents to Defendant Volkswagen Group of America, Inc. a/k/a Audi of America, Inc.

Dated:          May 28, 2020

/s/ *Michael J. Melkersen*
Michael J. Melkersen

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| RICARDO R. GARCIA, DUANE K. GLOVER, PAUL E. JACOBSON, GAETANO CALISE, MYKHAYLO I. HOLOVATYUK, BRIAN GARCIA, PAUL THOMSON and DAVID HARTMAN on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) | Case No.: 1:19-cv-00331-LO-MSN |
| Plaintiffs, | ) ) | **PLAINTIFFS' SECOND REQUESTS** |
| v. | ) ) | **FOR PRODUCTION TO DEFENDANT** **VOLKSWAGEN GROUP OF** |
| VOLKSWAGEN GROUP OF AMERICA, INC. a/k/a AUDI OF AMERICA, INC., and VOLKSWAGEN AKTIENGESELLSCHAFF, | ) ) ) ) ) ) | **AMERICA, INC.** |
| Defendants. | ) | |

**TO:   COUNSEL FOR DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC. a/k/a AUDI OF AMERICA, INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), Plaintiffs, on behalf of themselves and all others similarly situated, by and through their undersigned counsel, propounds this Request for Production to Defendant Volkswagen Group of America, Inc. a/k/a Audi of America, Inc. to be answered as required by the Federal Rules, but as limited to a shortened 14-day time in which to respond as agreed upon by counsel for the parties during a conference call on June 17, 2020.

## DEFINITIONS

The following definitions shall apply to these Requests. In the event of ambiguity in one or more of the following definitions, common usage and reference to any cited rules, statutes, or regulations should be used to provide the broadest interpretation of the term in question:

1. "You" or "VWGOA" means Defendant Volkswagen Group of America, Inc. a/k/a Audi of America, Inc., as well as its subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on its behalf, at its instance, or under its control.

2. "VWAG" means Defendant Volkswagen Aktiengesellschaff, as well as its subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on their behalf, at their instance, or under their control.

3. "Audi AG" means non-party AUDI AKTIENGESELLSCHAFF, as well as its subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting in its behalf, at its instance, or under its control.

4. "VW Credit" means non-party VW Credit, Inc., as well as its subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on its behalf, at its instance, or under its control.

5. "Volkswagen" means any one or more of VWGOA, VWAG, Audi AG, and/or VW Credit, each as separately defined herein.

6. "Action" means and refers to the above-captioned action.

7. "Second Amended Complaint" means and refers to the Second Amended Class Action Complaint filed in the above-captioned action on March 27, 2020.

8. "Class Vehicles" means all Volkswagen-branded used cars sold in the United States from January 1, 2007 to March 21, 2019 that were initially used internally by Volkswagen and

2

later resold by an authorized Volkswagen or Audi dealership as a Certified Pre-Owned ("CPO") vehicle and which has at least one of the following characteristics at the time it was resold by an authorized Volkswagen or Audi dealership as a Certified Pre-Owned ("CPO") vehicle: (a) the vehicle is a pre-series, zero series or pre-production car as those terms are more particularly described in paragraphs 34-36 of the Second Amended Complaint; (b) the vehicle is one of the 252 cars identified by Volkswagen in its so-called Part 573 Safety Recall Report filed with the NHTSA on May 16, 2018 (as amended on July 23, 2018); (c) the vehicle had been driven by one or more members of the automotive press and/or media; (d) the vehicle had been driven by one or more Volkswagen employees for short term use as part of the so-called Pool-Fleet (i.e. vehicles assigned to a pool of vehicles that were loaned for the personal use of employees of VWGOA or VWAG prior to being leased to a particular Volkswagen employee); (e) the vehicle was altered after the original date of manufacture; (f) the vehicle's actual mileage identified by you in connection with the application for the original title was incorrect or otherwise inaccurate; and/or (g) the vehicle is one of the 113 cars identified by you in its so-called Part 573 Safety Recall Report filed with the NHTSA on September 25, 2019 (as amended on December 20, 2019).

9.      "Pre-Production Vehicles" means Class Vehicles that are a pre-series, or zero series vehicle, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint.

10.      "Pre-Series Vehicle" means a Class Vehicle that was produced under a method known as the production try-out, which was intended to prove reproducibility, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint.

11.    "Zero-Series Vehicle" means a Class Vehicle produced at the stage after the Pre-Series stage to ensure the process and product quality is at a customer-acceptable product level, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint.

12.    "NHTSA" means the United States National Highway Traffic Safety Administration.

13.    "Recalled Vehicle" means a Class Vehicle that was one of the 252 cars identified by VWGOA in its so-called Part 573 Safety Recall Report filed with NHTSA on May 16, 2018 (as amended on July 23, 2018) or a Class Vehicle that was one of the 113 cars identified by Volkswagen in its so-called Part 573 Safety Recall Report filed with the NHTSA on September 25, 2019 (as amended on December 20, 2019).

14.    "Press-Fleet Vehicle" means a Class Vehicle that was driven by one or more members of the press before being sold to the public.

15.    "Pool-Fleet Vehicle" means a Class Vehicle that Volkswagen assigned to a general pool of vehicles for short-term loans to Volkswagen employees for their personal use before being sold to the public.

16.    "Leased-Fleet Vehicle" means a Class Vehicle that was leased to one or more Volkswagen employees before being sold to the public.

17.    "Series-Production Vehicles" means vehicles that Volkswagen mass produces and sells to consumers through dealerships, and which are more particularly described in paragraphs 34-36 of the Second Amended Complaint.

18.    "VIN" means the Vehicle Identification Number of a vehicle.

19.    "Communication" means the transmittal (in the form of facts, ideas, thoughts, opinions, data, inquiries or otherwise) and includes, without limitation, correspondence, memoranda,

reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, and postings of any type.

20.    The term "concerning" means constituting, evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or relating, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the inquiry or Request. Requests for "documents concerning" means any Documents which explicitly or implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a result of the subject matter of the Request, including all Documents which reflect, refer, record, are in regard to, in connection with, specify, memorialize, relate, describe, discuss, consider, constitute, embody, evaluate, analyze, refer to, review, report on, comment on, impinge upon, or impact the subject matter of the Request.

21.    "Document" means the original (or, if the information called for cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or retrieved, and shall mean, without limitation, any written, recorded or graphic matter, in any language, whether produced or reproduced or stored on paper, cards, tapes, films, computer, electronic storage devices or any other media and includes, without limiting the generality of the foregoing, papers, trade letters, envelopes, telegrams, cables, messages, correspondence, memoranda, notes, electronic mail ("e-mails"), text messages, instant Electronic Messages, reports, Studies, press releases, comparisons, books, accounts, checks, audio and video recordings, pleadings testimony, articles, bulletins, pamphlets, brochures, magazines, questionnaires, surveys, charts, newspapers, calendars, desk calendars, pocket calendars, lists, logs, publications, notices,

diagrams, instructions, diaries, minutes of Meetings, corporate minutes, orders, resolutions, agendas, memorials or notes of oral Communications, whether by telephone or face-to-face, contracts, Agreements, drafts or proposed contracts or Agreements, memoranda of understanding, letters of intent, deal memoranda, transcriptions of audio or video recordings, computer tapes, computer diskettes or disks, or any other tangible thing on which any handwriting, typing, printing, photostatic, electronic or other form of Communication or information is recorded or reproduced, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions of drafts thereof, whether used or not.

22.     "Electronic Media" means any magnetic, optical, or other storage media device used to record ESI including, without limitation, computer memory, hard disks, floppy disks, flash memory devices, CDs, DVDs, Blu-ray disks, cloud storage (e.g., DropBox, Box, OneDrive, and SharePoint), tablet computers (e.g., iPad, Kindle, Nook, and Samsung Galaxy), cellular or smart phones (e.g., BlackBerry, iPhone, Samsung Galaxy), personal digital assistants, magnetic tapes of all types or any other means for digital storage and/or transmittal.

23.     "ESI," "Electronically Stored Information," or Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of Electronic Data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic

mails (including electronic mail receipts and/or transmittals, logs of electronic mail history and usage, header information, and deleted files), internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, .PDF and .TIFF files, batch files, native files and all ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment. Electronic Data includes, but is not limited to, any and all items stored on any electronic media, computers, networks or "cloud" computing services and all backup files containing electronically stored data. The term "Electronic Data" also includes the file, folder tabs, metadata, personal electronic backup media, including thumb drives, and/or containers and labels appended to or associated with any physical storage device associated with each such original and/or copy. In addition, the term "Electronic Data" includes all text messages, instant messages, internet messages, intranet messages, electronic bulletin board messages, blog entries, website postings of any nature, and all other methods by which messages may be transmitted by or through electronic means.

24.    "Identify" when used to refer to a natural person, shall mean to set forth that person's: (i) full name and title, if any; (ii) present or last known address; (iii) present or last known business and home telephone number(s); and (iv) present or last known employer.

25.   "Identify" when used to refer to a document, shall mean: (i) the date of each document; (ii) the type of each such document (i.e. correspondence, memorandum, business record, etc.); (iii) the identity of the author(s) or preparer(s) of each such document; and (iv) the present location of each such document or copies thereof.

26.   "Including" is used to illustrate examples of documents that would be responsive to the request and should not be construed as limiting the request in any way.

27.   The terms "Plaintiffs" and "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

## <u>RULES OF CONSTRUCTION</u>

1.   "Any," "All," and "Each" shall be construed as any, all and each.

2.   The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring all responses within the scope of these Requests.

3.   The singular form of a noun or pronoun includes the plural form and vice versa.

4.   The masculine shall be construed to include the feminine and vice versa.

5.   The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

6.   A term or word defined herein is meant to include both the lower-and-upper-case reference to such term or word.

7.   The "knowledge," "information," "possession," "custody," and "control" by a person shall be construed to include such person's agents, representatives, and attorneys.

## INSTRUCTIONS

1.    If you or VWAG  assert an objection to any Request, you or VWAG  must nonetheless respond and produce any responsive documents or ESI that are not subject to the stated objection. If you or VWAG object to part of a Request of category, you or VWAG must specify the portion of the Request to which you or VWAG object and must produce Documents responsive to the remaining parts of the Request.

2.    If any Document or ESI is known to have existed but no longer exists, has been destroyed, or is otherwise available, You or VWAG must identify the Document or ESI, the reason for its loss, destruction or unavailability, the name of each person known or reasonably believed by You or VWAG  to have present possession, custody, or control of the original and any copy thereof (if applicable), and a description of the disposition of each copy of the document or ESI.

## DOCUMENT REQUESTS

**REQUEST NO. 1:** Please produce documents previously produced by VWGOA and/or VWAG in the so-called Dieselgate litigation by granting permission to Counsel for Plaintiffs in this matter (subject to an appropriate protective order if required), to access and use documents currently or formerly housed in the following document production database (limited to only documents produced by VWGOA or VWAG) controlled and/or maintained and/or paid for by VWGOA and/or VWAG: the VW searchable "RATIONAL" database used to house, produce and store documents produced by VWGOA or VWAG responsive to discovery served in the matter of *In Re: Volkswagen "Clean Diesel" Litigation*, Case No.: CL-2016-9917, that is/was pending inVirginia in the Fairfax County Circuit Court.

**REQUEST NO. 2:** Please produce documents previously produced by VWGOA and/or VWAG in the so-called Dieselgate litigation by granting permission to Counsel for Plaintiffs in this matter (subject to an appropriate protective order if required), to access and use documents currently or formerly housed in the following document production database (limited to only documents produced by VWGOA or VWAG): the VW searchable "ILS iCONECT XERA" database used to house, produce and store documents responsive to discovery served in the matter of *In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, MDL No. 0672 CRB (JSC), that was/I spending in the United States District Court for the Northern District of California.


Dated: June 18, 2020

Respectfully submitted,

/s/ *Michael J. Melkersen*
Michael J. Melkersen (VSB#69828)
5 Surfside Road
Humacao, Puerto Rico 00791
Telephone:    540.435.2375
Email:          mike@mlawpc.com

Joseph F. Rice, Esq. (*Admitted Pro Hac Vice*)
Kevin R. Dean, Esq. (*Admitted Pro Hac Vice*)
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Telephone:    843.216.9000
Facsimile:     843.216.9440
Email:          jrice@motleyrice.com
                    kdean@motleyrice.com
*Attorneys for Plaintiffs and Interim Class
     Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Lisa Ranaldo, hereby certify that on this date I served a true and correct copy of the foregoing Plaintiffs' Second Requests for Production of Documents to Defendant Volkswagen Group of America, Inc. a/k/a Audi of America, Inc.

<u>Dated</u>:         June 18, 2020

/s/ *Lisa Ranaldo*
Lisa Ranaldo, Paralegal

# Exhibit C



VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

|  |  |
|---|---|
| *In re: Volkswagen "Clean Diesel"* <br> *Litigation* | Case No. : CL2016-9917 <br> Judge Bruce D. White |

## STIPULATED PROTECTIVE ORDER

### 1. PURPOSES AND SCOPE

      1.1    Disclosure and discovery activity in these Actions (which has been transferred to this Court for coordinated pre-trial purposes) are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this Action may be warranted. Accordingly, the Parties hereby stipulate to and petition the Circuit Court of Fairfax County, Virginia (the "Court") to enter the following Stipulated Protective Order (the "Order").

      1.2    The purpose of this Order is to facilitate the production of discovery material, facilitate the prompt resolution of disputes over confidentiality and privilege, protect material to be kept confidential and/or privileged, and ensure that protection is afforded only to material entitled to such treatment, pursuant to the Court's inherent authority, the judicial opinions interpreting such Rules, and any other applicable law. Except as otherwise stated in this Order, a Party shall produce, in response to a valid discovery request, otherwise discoverable information in its possession, custody or control that is Confidential or Highly Confidential, and such information shall be handled in accordance with the procedures set forth herein.

      1.3    This Order shall govern the practice and procedure in those actions transferred before this Court for coordinated pretrial matters by pursuant to the Order of June 16 2016, *BAW* any "tag-along" actions consolidated or transferred to this Court, and all related actions that have been or will be originally filed in, or transferred to, this Court and assigned thereto.

      1.4    This Order and all subsequent Protective Orders shall be binding on all Parties and their counsel in all cases currently pending or subsequently transferred to *In re Volkswagen "Clean Diesel" Litigation* for coordinated pretrial proceedings, and any other persons or entities who become bound by this Order by signifying their assent though execution of the "Acknowledgment and Agreement to Be Bound" attached as Exhibit A hereto, and shall govern each case in this proceeding unless the Order explicitly states that it does not apply to specific cases or that it applies only to specific cases.

      1.5    The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The Parties further acknowledge, as set forth in Section

13.3 below, that this Order does not entitle them to file confidential information under seal; rather, this Court's procedures will be followed and this Court's standards will be applied when a Party seeks permission from the Court to file material under seal.

## 2. DEFINITIONS

The following definitions apply for purposes of this Order:

     2.1     Action: any and all cases that have been or will be transferred to the Court for coordinated pre-trial proceedings as *In re Volkswagen "Clean Diesel" Litigation*, including any "tag-along" actions transferred to this Court, and all related actions that have been or will be originally filed in, or transferred to, this Court and assigned thereto.

     2.2     Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

     2.3     Confidential Information: Discovery Material (regardless of how it is generated, stored or maintained) or tangible things that would qualify for protection under Rule 4:1(c) of the Rules of the Supreme Court of Virginia.

     2.4     Counsel: Outside Counsel of Record and In-House Counsel (as well as their employees and support staff).

     2.5     Designating Party: a Party or Non-Party that designates documents, information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

     2.6     Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, answers to interrogatories, documents, responses to requests for admissions, tangible things, and informal exchanges of information), that are produced or generated in connection with any discovery in these Actions, whether formally or informally.

     2.7     Expert: a person retained by a Party or its Counsel to serve as an expert witness or consultant or technical advisor in this Action (as well as his or her employees and support staff).

     2.8     Foreign Private Data: any information that a Party believes in good faith to be subject to foreign data protection laws or other privacy obligations. Foreign Private Data constitutes Highly Confidential Information under the terms of this Order.

     2.9     Highly Confidential Information: Discovery Material that (a) is Foreign Private Data, or (b) meets the definition of "Confidential Information" and which the Designating Party reasonably believes to be (i) information reflecting product design or development, non-public technical research, pricing and business strategy documents concerning a particular product or line of products, financial statements reflecting sales data, product margin data, cost and expense data, and/or profit and loss data, sales information relating to specific customers or classes of customers, non-public scientific research; (ii) as to any governmental Parties, information the disclosure of which absent the protections afforded herein to Highly Confidential Information

may harm the United States or any state or foreign government's ability to investigate and/or enforce applicable laws; or (iii) information the disclosure of which absent the protections afforded herein to Highly Confidential Information could create a substantial risk of serious harm that could not be avoided by less restrictive means. Nothing herein precludes any Party from seeking additional protections not currently contemplated by this Order to be applied to any particular document or category of documents, including Highly Confidential Information.

2.10    In-House Counsel: attorneys who are employees of a Party to this Action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.11    Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action, and their counsel.

2.12    Outside Counsel of Record: attorneys who are not employees of a Party to this Action but have been retained to represent or advise a Party to this Action and have appeared in this Action on behalf of that Party or are affiliated with a law firm or governmental agency which has appeared on behalf of that Party.

2.13    Party: any party to this Action.

2.14    Prior Document Productions in Federal Multi-District Litigation: the documents produced in the federal Multi-District Litigation and referenced in MDL Pretrial Orders No. 8 (Initial Case Management), No. 12 (Stipulated Protective Order), No. 13 (Coordination Order) and 15 (Preservation of Documents) including documents identified in such Order as the "U.S. Prior Productions" and the "Non-U.S. Prior Productions."

2.15    Privileged Material: Discovery Material protected from disclosure under the attorney-client privilege, work product doctrine, or any other privilege or protection that would be afforded or recognized by Rule 4:1 of the Rules of the Supreme Court of Virginia or Rules 2-501, 2-502 of the Virginia Rules of Evidence, including any such privilege or protection under applicable U.S. or foreign law, regulation or statute.

2.16    Producing Party: a Party or Non-Party that produces Discovery Material in this Action.

2.17    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, graphic support services, coding, translating, preparing exhibits or demonstrations, document review, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.18    Protected Material: any Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.19    Receiving Party: a Party that receives Discovery Material from a Producing Party.

2.20    Submitting Entity: any entity or individual that has submitted information to the United States or the State of Virginia which the entity or individual claims is protected from public disclosure, or which the United States or State of Virginia has informed the entity or individual would be protected from public disclosure by applicable federal and/or state law.

3.    SCOPE

   3.1    The protections conferred by this Order apply to Protected Material (as defined above) and also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, translations, or compilations of Protected Material; and (3) any oral, written, or electronic communications, testimony or presentations, including for purposes of settlement, by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Order do not cover information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order.

   3.2    This Order and its protections apply for pre-trial purposes only. The Parties will meet and confer at the appropriate time regarding any use of Protected Material at trial, which use shall be governed by a separate agreement or order.

   3.3    In addition to other discovery by and between the Parties to these coordinated actions, this Order seeks to coordinate and facilitate production in this litigation with documents previously produced in accordance with the federal Multi-District Litigation "In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation," MDL No. 2672 CRB (JSC), in the United States District Court for the Northern District of California (the "federal MDL litigation"). As set forth in the Pre-Trial Order No. 13 in the federal MDL litigation, and in order to facilitate judicial economy, discovery conducted under the federal MDL is to be made available to related state court "Clean Diesel" litigants upon entry of a protective order providing substantially the same protections as entered in the federal MDL litigation. MDL Pre-Trial Order No. 13: Coordination Order at 2-5. This Order is intended to provide such protections to the Parties and the benefit of discovery previously produced in the federal MDL litigation.

4.    DURATION

   4.1 Even after final disposition of this Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; or (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.    DESIGNATING PROTECTED MATERIAL

   5.1 Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g., Section 5.2.4 below), or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this Order must be clearly so designated at the time the material is disclosed or produced. The Parties shall make Confidential and Highly Confidential designations in good faith to ensure that only those documents or testimony that merit Confidential or Highly Confidential treatments are so designated. Either designation may be withdrawn by the Designating Party. If it comes to a Designating Party's attention that information or items that it

4

designated for protection do not qualify for protection, the Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2    Designation in conformity with this Order requires the following:

    5.2.1  *Marking.* All or any part of a document, discovery response, or pleading disclosed, produced, or filed by a Producing Party may be designated Confidential or Highly Confidential by marking the appropriate legend (such as "CONFIDENTIAL – In re: VW Clean Diesel Litigation" or "HIGHLY CONFIDENTIAL – In re: VW Clean Diesel Litigation" or similar designation) on the face of the document and each page so designated. With respect to tangible items, the appropriate legend shall be marked on the face of the tangible item, if practicable, or by written notice to the Receiving Party at the time of disclosure, production or filing that such tangible item is Confidential or Highly Confidential or contains such information. With respect to documents produced in native format, the Electronically Stored Information Protocol, or ESI Protocol, to be entered in this Action or in the federal MDL litigation shall govern the form and method for marking such documents as Confidential or Highly Confidential.

    · 5.2.2   A Designating Party may request of a court reporter that transcript pages containing Confidential or Highly Confidential Information be separately bound with the appropriate legend (such as "CONFIDENTIAL – In re: VW Clean Diesel Litigation" or "HIGHLY CONFIDENTIAL – In re: VW Clean Diesel Litigation" or similar designation) affixed to the relevant pages. Any additional court reporter charges for this treatment of the transcript shall be borne by the Designating Party.

    5.2.3 ' A Receiving Party shall exercise good faith efforts to ensure that any copies, print-outs of natively produced documents or data, translations, excerpts, summaries, or compilations include a confidentiality legend that matches the confidentiality designation the Designating Party applied to the document, discovery response, transcript, or pleading.

    5.2.4  *Timing.* Except as otherwise provided herein, documents and other objects must be designated before disclosure or production. In the event that a Producing Party designates some or all of a witness's deposition or other pre-trial testimony (or related exhibits) Confidential or Highly Confidential, such designation may be made on the record of the deposition or hearing or within thirty (30) calendar days after receipt of the final transcript of such deposition or hearing. The specific page and line designations over which confidentiality is claimed must be provided to Plaintiffs' Counsel and Defendants' Counsel (collectively, "Parties' Counsel") within thirty (30) calendar days of receipt of the transcript in final form from the court reporter. Deposition or pre-trial testimony shall be treated as Highly Confidential pending the deadline or, if applicable, extended deadline for designation. After the expiration of that period, the transcript shall be treated only as actually designated.

    5.2.5  For information produced in some form other than documentary and for any other tangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL – In re: VW Clean Diesel Litigation" or "HIGHLY

CONFIDENTIAL – In re: VW Clean Diesel Litigation" or similar designation. If the Protected Material is produced in an electronic form with a load file, the Designating Party shall note that there is Protected Material in the load file. If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3     Inadvertent Failures to Designate. Accidental or inadvertent disclosure of Protected Material—including Protected Material inadvertently disclosed by failure to redact as set forth in Section 11—does not waive the confidential status of such information or any privilege or other protection attached thereto. In the event that Protected Material is inadvertently disclosed without appropriate designations, any Party or Non-Party may thereafter reasonably assert a claim or designation of confidentiality, and the Producing Party shall promptly provide replacement media. Thereafter, the Receiving Party must promptly return the original information and all copies of the same to the Producing Party, or destroy the original information and all copies, and make no use of such information. In the event that Protected Material is inadvertently disclosed to any person and such disclosure is not permitted by the terms of this Order, the Party making the inadvertent disclosure will make all reasonable efforts to ensure the original and all copies of inadvertently disclosed information are not used and are promptly returned or destroyed.

6.   CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1     Timing of Challenges. A challenge to a designation of confidentiality may be made at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the confidentiality designation is made.

6.2     Form of Challenges. The Challenging Party shall object to the propriety of the designation of specific material as Confidential or Highly Confidential by providing written notice to the Designating Party of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific Section of this Order. The Designating Party or its counsel shall thereafter, within fourteen (14) calendar days, respond to such challenge in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation. Counsel may agree to reasonable extensions.

6.3     Meet and Confer. If the Challenging Party continues to dispute the designation(s) at issue, it shall notify the Designating Party in writing within seven (7) calendar days thereafter. Counsel may agree to reasonable extensions. The Parties shall attempt to resolve each challenge in good faith by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient). A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet-and-confer process first or establishes that the Designating Party is unwilling to participate in the meet-and-confer process in a timely manner.

6

6.4     Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Challenging Party may move the Court for an order withdrawing the designation as to the specific designations on which the Challenging Party and the Designating Party could not agree, within fourteen (14) calendar days of the Parties agreeing that the meet-and-confer process will not resolve their dispute. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet-and-confer requirements imposed in the preceding Section.

6.5     The burden of persuasion in any such challenge proceeding shall be on the Designating Party. While a challenge is pending, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the Court orders otherwise.

7.      ACCESS TO AND USE OF PROTECTED MATERIAL

7.1     Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in this Action only for prosecuting, defending, or attempting to settle this Action or any action transferred or consolidated into this Action, including any appeal(s), or in Coordinated Litigation as defined in Section 7.2.11, so long as such use is permitted herein. Any Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. After the final disposition of the Action or action transferred into this Action, a Receiving Party must comply with the provisions of Section 14 below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2     Restrictions on Use of Confidential Information. Unless otherwise ordered by the Court or permitted in writing by the Designating Party a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

7.2.1   the Receiving Party's Counsel;

7.2.2   the officers, directors, and employees of the Receiving Party to whom disclosure is reasonably necessary for this Action;

7.2.3   Experts retained by the Receiving Party or the Receiving Party's Counsel to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

7.2.4   the Court and its personnel, and any appellate court or other court (and their personnel) before which the Parties appear in this Action;

7.2.5   special masters or discovery referees appointed by the Court;

7.2.6   mediators and their staff, provided such persons have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

7

7.2.7   court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

7.2.8   potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order;

7.2.9   the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

7.2.10   any other person to whom the Designating Party, in writing, authorizes disclosure; and

7.2.11   counsel (and their staff) for parties in other litigation asserting claims relating to Volkswagen, Audi and Porsche diesel vehicles and that have agreed to coordinate with Counsel for any of the parties to this Action, provided that (i) the proposed recipient agrees to be bound by this Order and signs the certificate attached as Exhibit A; (ii) the proposed recipient is only permitted to receive Protected Material that was produced by Producing Parties that are also parties in the litigation involving the proposed recipient; (iii) Counsel for the Party that supplies the Protected Material to such recipient maintains copies of the certificates and a log identifying each such recipient and the Protected Material provided to such recipient; and (iv) Counsel for the Party that supplies the Protected Material to such recipient shall make that log available to Counsel for the other Parties at their request. Upon a challenge that Confidential Information has been used in violation of this Order, Counsel shall provide copies of the log and certificates to Counsel for the other Parties and the Court for *in camera* review.

7.3     Restrictions on Use of Highly Confidential Information. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL only to the persons identified in Section 7.2 in accordance with the terms set forth therein, except that disclosure may not be made to the persons identified in Section 7.2.2.

7.4     Restrictions on Disclosure to Plaintiffs in Securities Actions. Nothing herein authorizes disclosure of Discovery Material to plaintiffs (or their Counsel) in securities actions consolidated or transferred into any similar federal or state litigation for coordinated pre-trial proceedings.

7.5     Restriction on Disclosure in Actions Outside the United States. Except with respect to any governmental Parties, where disclosure is otherwise authorized by United States law, treaty, convention, or international mutual agreement, no Protected Material shall be

disclosed, shared, distributed, or otherwise provided in any manner to legal counsel in pending or threatened litigation against any of the Defendants outside of the United States through any other provision of this Order, including but not limited to Section 7.2.11, regardless of whether such legal counsel can be classified as a consultant or affiliate of any U.S. attorney of record in any legal proceeding against any of the Defendants within the United States.

7.6 · Exclusion of Individuals from Depositions. Counsel for any Designating Party shall have the right to exclude from depositions any person who is not authorized by the Order to receive Protected Material, but only during periods of examination or testimony directed to or comprising Protected Material.

8.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

8.1 · If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any Protected Material, that Party must:

8.1.1  promptly notify in writing the Designating Party unless prohibited by law from doing so. Such notification shall include a copy of the subpoena or court order;

8.1.2  promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order. Such notification shall include a copy of this Order; and

8.1.3  cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

8.2    If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any Protected Material before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS ACTION

9.1    The terms of this Order are applicable to Protected Material produced by a Non-Party in this Action. Such information produced by Non-Parties in connection with this Action is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections. Any Party issuing a subpoena to a Non-Party shall enclose a copy of this Order.

9.2    For a period of fourteen (14) calendar days following production by a Non-Party, that production shall be deemed Highly Confidential Information even if not so designated by the Non-Party, to provide the Parties an adequate opportunity to designate information as Confidential or Highly Confidential Information. The inadvertent failure by any Party to

designate information produced by Non-Parties as "CONFIDENTIAL – VW Clean Diesel Litigation" or "HIGHLY CONFIDENTIAL – VW Clean Diesel Litigation" or similar designation within that fourteen (14) day period shall not waive a Party's right to later so designate such information with prospective effect, so long as the designation correction is made in a timely fashion, consistent with Section 5.3 of this Order.

9.3     In the event that a Party is required, by a valid discovery request, to produce a Non-Party's Protected Material in the Party's possession, and the Party is subject to an agreement with the Non-Party not to produce such information, then the Party shall:

9.3.1 promptly notify in writing the Party requesting the Protected Material that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

9.3.2 promptly provide the Non-Party with a copy of this Order, the relevant discovery request(s), and a reasonably specific description of the information requested; and

9.3.3 make the information requested available for inspection by the Non-Party.

9.4     If the Non-Party fails to object or seek a protective order from the appropriate court within fourteen (14) calendar days of receiving a notice and accompanying information pursuant to Section 9.3, the Receiving Party may produce the Non-Party's Protected Material responsive to the discovery request, and such information shall be produced with the same designation as the one made by the Non-Party. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in an appropriate court of its Protected Material.

## 10.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

10.1    If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures; (b) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (c) make all reasonable efforts to retrieve all unauthorized copies of the Protected Material.

## 11.     REDACTIONS ALLOWED

11.1    Any Producing Party may redact from Discovery Material matter that the Producing Party claims is (i) Privileged Material; or (ii) sensitive personal Foreign Private Data. The Producing Party shall mark each redaction with a legend stating "REDACTED," and specify the basis for the redaction as appropriate, or a comparable notice. Where a document consists of more than one page, at least each page on which information has been redacted shall be so marked. If counsel for the Producing Party agrees or if the Court orders that Discovery Material initially redacted shall not be subject to redaction or shall receive alternative treatment, and the

Discovery Material is subsequently produced in unredacted form, then that unredacted Discovery Material shall continue to receive the protections and treatment afforded to documents bearing the confidentiality designation assigned to it by the Producing Party.

11.2    Subject to any Party's right to seek modification, jointly or otherwise, of this Section 11.2 after the conclusion of the meet-and-confer regarding discovery of documents maintained in Germany, this Court may enter an Order consistent with the Order entered in the federal Multi-District Litigation (Pretrial Order No. 9), addressing redactions of Foreign Private Data. Pending the necessity for such Order, any Party may redact Foreign Private Data that it claims, in good faith, requires protections under the terms of this Order. Foreign Private Data, however, shall not be redacted from Discovery Material to the extent it directly relates to or identifies an individual named as a Party. However, Foreign Private Data shall be redacted from any public filing not filed under seal.

11.3    The right to challenge and process for challenging the designation of redactions shall be the same as the right to challenge and process for challenging the designation of Confidential Information and Highly Confidential Information as set forth in Section 6.

11.4    Nothing herein precludes any Party from seeking the other Parties' consent or an order allowing the Party to redact nonresponsive matter from otherwise responsive documents on a case-by-case basis.

## 12.    PRECEDENCE OF THE MDL PROTECTIVE ORDER

12.1    The terms of the Stipulated Protective Order, Pretrial Order No. 12, entered in the MDL (the "MDL Protective Order"), shall apply with equal force and effect in this Action, to the fullest extent permitted by Virginia law. In the event of any inconsistency between this Order and MDL Protective Order, this Court will make every effort to conform this Order to the terms of the MDL Protective Order .

12.2    Concurrently with the execution of this stipulation, the parties shall agree to be bound by the terms of the MDL Protective Order, pursuant to Section 7.2.11 therein, by executing the form "Acknowledgement and Agreement to be Bound" annexed to the MDL Protective Order as Exhibit A.

## 13. MISCELLANEOUS

13.1    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future. Any Party, entity or person covered by this Order may at any time apply to the Court for relief from any provision of this Order. Subject to the agreement of the Parties or an order of the Court, other entities or persons may be included in this Order by acceding to its provisions in a writing served upon counsel for the parties, with such writings to be filed with the Court if so directed.

13.2    Right to Assert Other Objections. By stipulating to the entry of this Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to use as evidence any of the material covered by this Order.

13.3   Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with the rules of this Court. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. A sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal is denied by the Court, then the Receiving Party may file the information in the public record unless otherwise instructed by the Court.

13.4 .  Hearings and Appeals

13.4.1 In the event that a Receiving Party intends to utilize Protected Material during a pre-trial hearing, such Receiving Party shall provide written notice no less than five (5) calendar days prior to the hearing, to the Producing Party and/or the Designating Party and to the Court, except that shorter notice may be provided if the Receiving Party could not reasonably anticipate the need to use the document at the hearing five (5) calendar days in advance, in which event notice shall be given immediately upon identification of that need. The use of such Protected Material during the pre-trial hearing shall be determined by agreement of the relevant Parties or by Order of the Court.

13.4.2 In the event that any Protected Material is used in any court proceeding in this Action or any appeal in connection with this Action, except for the use of Protected Material during trial, the manner of which shall be determined pursuant to Section 3.2, such Protected Material shall not lose its protected status through such use. Counsel shall comply with all applicable local rules and shall confer on such procedures that are necessary to protect the confidentiality of any documents, information, and transcripts used in the course of any court proceedings, including petitioning the Court to close the courtroom.

13.5   Reservations. Entering into, agreeing to or complying with the provisions of this Order shall not: (1) operate as admission that any particular material contains Protected Material; or (2) prejudice any right to seek a determination by the Court (a) whether particular material should be produced, or (b) if produced, whether such material should be subject to the provisions of this Order.

13.6   Rights to Inspect Certificates (Exhibit A). Unless otherwise provided herein, except in the event of a good-faith claim of violation of this Order, the Parties agree not to request copies of the certificates (attached hereto in their unexecuted form as Exhibit A) or to determine the identities of the persons signing them.

14.   ˙ FINAL DISPOSITION

14.1 Within ninety (90) calendar days after the final disposition of each of the Consolidated Actions, as defined in Section 4, each Receiving Party, including its employees, attorneys, consultants and experts, must use commercially reasonable efforts to destroy or return to the Producing Party all Protected Material, except (1) backup tapes or other disaster recovery

systems that, are routinely deleted or written over in accordance with an established routine system maintenance practice, or (2) documents that must be preserved as federal records or in compliance with other statutory, regulatory or legal authorities. As used in this Section, "all Protected Material" includes all originals, copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, upon request of the Producing Party, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90-day deadline that (1) states that commercially reasonable efforts have been made to assure that all Protected Material has been returned or destroyed, and (2) affirms that the Receiving Party has not retained any originals, copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product (including all emails attaching or referring to Protected Materials), and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Order as set forth in Section 4 (DURATION).

Entered this _11_ day of _August_, 2016

Bruce D. White
Judge, Fairfax Circuit Court

13

Seen and _____

Harris D. Butler, III (VSB No. 26483)
Zev H. Antell (VSB No. 74634)
Paul M. Falabella (VSB No. 81199)
BUTLER ROYALS, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219

Seen and _Agreed_____ :

James B. Feinman, Esq.
1003 Church Street,
P.O. Box 697
Lynchburg, Virginia 24505

Seen and _____ :

John Cole Gayle, Jr., Esq.      John C. Gayle by express permission
The Consumer Law Group, P.C.
5905 West Broad Street, Suite 303
Richmond, Virginia 23230

Seen and _agreed_____ :

Steven T. Webster, Esq.
Aaron S. Book, Esq.
Webster Book LLP
300 North Washington Street, Suite 404
Alexandria, Virginia 22314

Seen and _Agreed_____ :

Joseph F. Rice, Esq.       for Joe Rice
Nathan D. Finch, Esq.      w/permission
Kevin R. Dean, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464

14

Seen and _AGREED_ :

Kristi Cahoon Kelly, Esq.
Andrew J. Guzzo, Esq.
Kelly & Cranwell, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia, 22030

Seen and _AGREED_ :

_for LAB w/express permission_

Leonard A. Bennett, Esq.
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., 1A
Newport News, VA  23601

Seen and _AGREED_ :

_for MJE w/express permission_

Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
1800 Diagonal Rd., Suite 600
Alexandria, VA  22314

Seen and _Agreed_

Michael J. Melkersen, Esquire
The Law Offices of Michael J. Melkersen, P.C.
9633 S. Congress Street
New Market, Virginia 22844

Seen and _Agreed_ :

_for Kirby Griffis by express permission_

Kirby Griffis, Esq.
3700 Country Lane
Charlottesville, Virginia 22903

Seen and _agreed_ :

Terrence M. Bagley, Esq.
Christopher E. Trible, Esq.
Kenneth W. Abrams, Esq.
McGuire Woods LLP
800 East Canal Street
Richmond, Virginia 23219

15

## EXHIBIT A

### ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____
[print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the Circuit Court of Fairfax County, VA on _____ [date] in the cases transferred for coordinated pretrial matters as *In re: Volkswagen "Clean Diesel" Litigation.* I agree to comply with and to be bound by all the terms of this Stipulated Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the Circuit Court of Fairfax County, Virginia for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this Action.

Date: _____

City and State where sworn and signed: _____

# Exhibit D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

This Document Relates To:

ALL ACTIONS (except securities actions)

MDL No. 2672 CRB (JSC)

**PRETRIAL ORDER NO. 12:
STIPULATED PROTECTIVE ORDER**

Judge Charles R. Breyer

1.     <u>PURPOSES AND SCOPE</u>

1.1     Disclosure and discovery activity in this Action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this Action may be warranted. Accordingly, the Parties hereby stipulate to and petition the United States District Court for the Northern District of California (the "Court") to enter the following Stipulated Protective Order (the "Order").

1.2     The purpose of this Order is to facilitate the production of discovery material, facilitate the prompt resolution of disputes over confidentiality and privilege, protect material to be kept confidential and/or privileged, and ensure that protection is afforded only to material entitled to such treatment, pursuant to the Court's inherent authority, its authority under Fed. R. Civ. P. 16 and 26, the judicial opinions interpreting such Rules, and any other applicable law.  Except as otherwise stated in this Order, a Party shall produce, in response to a valid discovery request, otherwise discoverable information in its possession, custody or control that is Confidential or Highly Confidential, and such information shall be handled in accordance with the procedures set forth herein.

1.3     This Order shall govern the practice and procedure in those actions transferred to this Court by the Judicial Panel on Multidistrict Litigation (the "Panel") pursuant to its Transfer Order of December 8, 2015 (Dkt. No. 1), any "tag-along" actions transferred to this Court by the

Panel pursuant to the Panel's Rules of Procedure, and all related actions that have been or will be originally filed in, transferred to, or removed to this Court and assigned thereto.

1.4     This Order and all subsequent Protective Orders shall be binding on all Parties and their counsel in all cases currently pending or subsequently transferred to *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 CRB (JSC), and any other persons or entities who become bound by this Order by signifying their assent though execution of the "Acknowledgment and Agreement to Be Bound" attached as Exhibit A hereto, and shall govern each case in this MDL proceeding unless the Order explicitly states that it does not apply to specific cases or that it applies only to specific cases.

1.5     The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.  The Parties further acknowledge, as set forth in Section 13.3 below, that this Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the Court to file material under seal.

2.     <u>DEFINITIONS</u>

The following definitions apply for purposes of this Order:

2.1     <u>Action</u>:  any and all cases that have been or will be consolidated into the *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 CRB (JSC), for pre-trial proceedings, including any "tag-along" actions transferred to this Court by the Panel pursuant to the Panel's Rules of Procedure, and all related actions that have been or will be originally filed in, transferred to, or removed to this Court and assigned thereto.

2.2     <u>Challenging Party</u>:  a Party or Non-Party that challenges the designation of information or items under this Order.

2

2.3    Confidential Information:  Discovery Material (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.4    Counsel:  Outside Counsel of Record and In-House Counsel (as well as their employees and support staff).

2.5    Designating Party:  a Party or Non-Party that designates documents, information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.6    Discovery Material:  all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, answers to interrogatories, documents, responses to requests for admissions, tangible things, and informal exchanges of information), that are produced or generated in connection with any discovery in this Action, whether formally or informally.

2.7    Expert:  a person retained by a Party or its Counsel to serve as an expert witness or consultant or technical advisor in this Action (as well as his or her employees and support staff).

2.8    Foreign Private Data:  any information that a Party believes in good faith to be subject to foreign data protection laws or other privacy obligations.  Foreign Private Data constitutes Highly Confidential Information under the terms of this Order.

2.9    Highly Confidential Information:  Discovery Material that (a) is Foreign Private Data, or (b) meets the definition of "Confidential Information" and which the Designating Party reasonably believes to be (i) information reflecting product design or development, non-public technical research, pricing and business strategy documents concerning a particular product or line of products, financial statements reflecting sales data, product margin data, cost and expense data, and/or profit and loss data, sales information relating to specific customers or classes of customers, non-public scientific research; (ii) as to any governmental Parties, information the disclosure of which absent the protections afforded herein to Highly Confidential Information may harm the United States or any state or foreign government's ability to investigate and/or enforce applicable laws; or (iii) information the disclosure of which absent the protections afforded herein

3

to Highly Confidential Information could create a substantial risk of serious harm that could not be avoided by less restrictive means. Nothing herein precludes any Party from seeking additional protections not currently contemplated by this Order to be applied to any particular document or category of documents, including Highly Confidential Information.

2.10 <u>In-House Counsel</u>: attorneys who are employees of a Party to this Action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.11 <u>Non-Party</u>: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action, and their counsel.

2.12 <u>Outside Counsel of Record</u>: attorneys who are not employees of a Party to this Action but have been retained to represent or advise a Party to this Action and have appeared in this Action on behalf of that Party or are affiliated with a law firm or governmental agency which has appeared on behalf of that Party.

2.13 <u>Party</u>: any party to this Action.

2.14 <u>Prior Document Productions</u>: the documents referenced in Pretrial Order No. 9 as the "U.S. Prior Productions" and the "Non-U.S. Prior Productions."

2.15 <u>Privileged Material</u>: Discovery Material protected from disclosure under the attorney-client privilege, work product doctrine, or any other privilege or protection afforded or recognized by Rule 26 of the Federal Rules of Civil Procedure or Rule 501 of the Federal Rules of Evidence, including any such privilege or protection under applicable U.S. or foreign law, regulation or statute.

2.16 <u>Producing Party</u>: a Party or Non-Party that produces Discovery Material in this Action.

2.17 <u>Professional Vendors</u>: persons or entities that provide litigation support services (e.g., photocopying, videotaping, graphic support services, coding, translating, preparing exhibits or demonstrations, document review, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.18 <u>Protected Material</u>: any Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.19    <u>Receiving Party</u>:  a Party that receives Discovery Material from a Producing Party.

2.20    <u>Submitting Entity</u>:  any entity or individual that has submitted information to the United States which the entity or individual claims is protected from public disclosure, or which the United States has informed the entity or individual would be protected from public disclosure by applicable federal law.

3.    <u>SCOPE</u>

3.1    The protections conferred by this Order apply to Protected Material (as defined above) and also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, translations, or compilations of Protected Material; and (3) any oral, written, or electronic communications, testimony or presentations, including for purposes of settlement, by Parties or their Counsel that might reveal Protected Material.  However, the protections conferred by this Order do not cover information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order.

3.2    This Order and its protections apply for pre-trial purposes only.  The Parties will meet and confer at the appropriate time regarding any use of Protected Material at trial, which use shall be governed by a separate agreement or order.

4.    <u>DURATION</u>

4.1    Even after final disposition of this Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; or (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.    <u>DESIGNATING PROTECTED MATERIAL</u>

5.1    <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order (see, e.g., Section 5.2.4 below), or as otherwise stipulated or ordered, Discovery Material that

qualifies for protection under this Order must be clearly so designated at the time the material is disclosed or produced. The Parties shall make Confidential and Highly Confidential designations in good faith to ensure that only those documents or testimony that merit Confidential or Highly Confidential treatments are so designated. Either designation may be withdrawn by the Designating Party. If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, the Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

      5.2      Designation in conformity with this Order requires the following:

      5.2.1   *Marking.*  All or any part of a document, discovery response, or pleading disclosed, produced, or filed by a Producing Party may be designated Confidential or Highly Confidential by marking the appropriate legend ("CONFIDENTIAL – MDL 2672" or "HIGHLY CONFIDENTIAL – MDL 2672") on the face of the document and each page so designated. With respect to tangible items, the appropriate legend shall be marked on the face of the tangible item, if practicable, or by written notice to the Receiving Party at the time of disclosure, production or filing that such tangible item is Confidential or Highly Confidential or contains such information. With respect to documents produced in native format, the Electronically Stored Information Protocol, or ESI Protocol, to be entered in this Action shall govern the form and method for marking such documents as Confidential or Highly Confidential.

      5.2.2  A Designating Party may request of a court reporter that transcript pages containing Confidential or Highly Confidential Information be separately bound with the appropriate legend ("CONFIDENTIAL – MDL 2672" or "HIGHLY CONFIDENTIAL – MDL 2672") affixed to the relevant pages. Any additional court reporter charges for this treatment of the transcript shall be borne by the Designating Party.

      5.2.3  A Receiving Party shall exercise good faith efforts to ensure that any copies, print-outs of natively produced documents or data, translations, excerpts, summaries, or compilations include a confidentiality legend that matches the confidentiality designation the Designating Party applied to the document, discovery response, transcript, or pleading.

5.2.4   *Timing*.  Except as otherwise provided herein, documents and other objects must be designated before disclosure or production.  In the event that a Producing Party designates some or all of a witness's deposition or other pre-trial testimony (or related exhibits) Confidential or Highly Confidential, such designation may be made on the record of the deposition or hearing or within thirty (30) calendar days after receipt of the final transcript of such deposition or hearing. The specific page and line designations over which confidentiality is claimed must be provided to Plaintiffs' Lead Counsel, Defendants' Liaison Counsel, and Government Coordinating Counsel (collectively, "Liaison Counsel") within thirty (30) calendar days of receipt of the transcript in final form from the court reporter, provided, however, that Liaison Counsel will consider reasonable requests for an extension of the deadline.  Deposition or pre-trial testimony shall be treated as Highly Confidential pending the deadline or, if applicable, extended deadline for designation.  After the expiration of that period, the transcript shall be treated only as actually designated.

5.2.5   For information produced in some form other than documentary and for any other tangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL – MDL 2672" or "HIGHLY CONFIDENTIAL – MDL 2672."   If the Protected Material is produced in an electronic form with a load file, the Designating Party shall note that there is Protected Material in the load file.  If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3   <u>Inadvertent Failures to Designate</u>.  Accidental or inadvertent disclosure of Protected Material—including Protected Material inadvertently disclosed by failure to redact as set forth in Section 11—does not waive the confidential status of such information or any privilege or other protection attached thereto.  In the event that Protected Material is inadvertently disclosed without appropriate designations, any Party or Non-Party may thereafter reasonably assert a claim or designation of confidentiality, and the Producing Party shall promptly provide replacement media.  Thereafter, the Receiving Party must promptly return the original information and all copies of the same to the Producing Party, or destroy the original information and all copies, and

make no use of such information.  In the event that Protected Material is inadvertently disclosed to any person and such disclosure is not permitted by the terms of this Order, the Party making the inadvertent disclosure will make all reasonable efforts to ensure the original and all copies of inadvertently disclosed information are not used and are promptly returned or destroyed.

6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1    Timing of Challenges.  A challenge to a designation of confidentiality may be made at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the confidentiality designation is made.

6.2    Form of Challenges.  The Challenging Party shall object to the propriety of the designation of specific material as Confidential or Highly Confidential by providing written notice to the Designating Party of each designation it is challenging and describing the basis for each challenge.  To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific Section of this Order.  The Designating Party or its counsel shall thereafter, within fourteen (14) calendar days, respond to such challenge in writing by either:  (i) agreeing to remove the designation; or (ii) stating the reasons for such designation.  Counsel may agree to reasonable extensions.

6.3    Meet and Confer.  If the Challenging Party continues to dispute the designation(s) at issue, it shall notify the Designating Party in writing within seven (7) calendar days thereafter.  Counsel may agree to reasonable extensions.  The Parties shall attempt to resolve each challenge in good faith by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient).  A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet-and-confer process first or establishes that the Designating Party is unwilling to participate in the meet-and-confer process in a timely manner.

6.4    Judicial Intervention.  If the Parties cannot resolve a challenge without court intervention, the Challenging Party may move the Court for an order withdrawing the designation

8

as to the specific designations on which the Challenging Party and the Designating Party could not agree, within fourteen (14) calendar days of the Parties agreeing that the meet-and-confer process will not resolve their dispute. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet-and-confer requirements imposed in the preceding Section.

6.5     The burden of persuasion in any such challenge proceeding shall be on the Designating Party. While a challenge is pending, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the Court orders otherwise.

7.     ACCESS TO AND USE OF PROTECTED MATERIAL

7.1     Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in this Action only for prosecuting, defending, or attempting to settle this Action, including any appeal(s), or in Coordinated Litigation as defined in Section 7.2.11, so long as such use is permitted herein. Any Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. After the final disposition of the Action, a Receiving Party must comply with the provisions of Section 14 below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2     Restrictions on Use of Confidential Information. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, and except as specifically authorized by Section 13.7, a Receiving Party may disclose any information or item designated "CONFIDENTIAL – MDL 2672" only to:

7.2.1   the Receiving Party's Counsel;

7.2.2   the officers, directors, and employees of the Receiving Party to whom disclosure is reasonably necessary for this Action;

9

7.2.3    Experts retained by the Receiving Party or the Receiving Party's Counsel to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

7.2.4    the Court and its personnel, and any appellate court or other court (and their personnel) before which the Parties appear in this Action;

7.2.5    special masters or discovery referees appointed by the Court;

7.2.6    mediators and their staff, provided such persons have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

7.2.7    court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

7.2.8    potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court.  If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material.  Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order;

7.2.9    the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

7.2.10  any other person to whom the Designating Party, in writing, authorizes disclosure; and

7.2.11  counsel (and their staff) for parties in other litigation asserting claims relating to Volkswagen, Audi and Porsche diesel vehicles and that have agreed to coordinate with Plaintiffs' Lead Counsel ("Coordinated Litigation"), provided that (i) the proposed recipient agrees to be bound by this Order and signs the certificate attached as Exhibit A; (ii) the proposed recipient is only permitted to receive Protected Material that was produced by Producing Parties that are also parties in the Coordinated Litigation involving the proposed recipient; (iii) Liaison

1 Counsel for the Party that supplies the Protected Material to such recipient maintains copies of the

2 certificates and a log identifying each such recipient and the Protected Material provided to such

3 recipient; and (iv) Liaison Counsel for the Party that supplies the Protected Material to such

4 recipient shall make that log available to Liaison Counsel for the other Parties at their request.

5 Upon a challenge that Confidential Information has been used in violation of this Order, Liaison

6 Counsel shall provide copies of the log and certificates to Counsel for the other Parties and the

7 Magistrate Judge for in camera review.

8    7.3  Restrictions on Use of Highly Confidential Information. Unless otherwise ordered

9 by the Court or permitted in writing by the Designating Party, and except as specifically

10 authorized by Section 13.7, a Receiving Party may disclose any information or item designated

11 "HIGHLY CONFIDENTIAL – MDL 2672" only to the persons identified in Section 7.2 in

12 accordance with the terms set forth therein, except that disclosure may not be made to the persons

13 identified in Section 7.2.2.

14    7.4  Restrictions on Disclosure to Plaintiffs in Securities Actions. Nothing herein

15 authorizes disclosure of Discovery Material to plaintiffs (or their Counsel) in the securities actions

16 consolidated in this Action for pre-trial proceedings. Any disclosure of Discovery Material with

17 respect to the securities actions will be addressed in a separate order at an appropriate time in the

18 future.

19    7.5  Restriction on Disclosure in Actions Outside the United States. Except as

20 specifically provided in Section 13.7, and except, with respect to governmental Parties, where

21 disclosure is otherwise authorized by United States law, treaty, convention, or international mutual

22 agreement, no Protected Material shall be disclosed, shared, distributed, or otherwise provided in

23 any manner to legal counsel in pending or threatened litigation against any of the Defendants

24 outside of the United States through any other provision of this Order, including but not limited to

25 Section 7.2.11, regardless of whether such legal counsel can be classified as a consultant or

26 affiliate of any U.S. attorney of record in any legal proceeding against any of the Defendants

27 within the United States.

28

7.6  <u>Exclusion of Individuals from Depositions.</u>  Counsel for any Designating Party shall have the right to exclude from depositions any person who is not authorized by the Order to receive Protected Material, but only during periods of examination or testimony directed to or comprising Protected Material.

8.  <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

8.1  If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any Protected Material, that Party must:

8.1.1  promptly notify in writing the Designating Party unless prohibited by law from doing so.  Such notification shall include a copy of the subpoena or court order;

8.1.2  promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order.  Such notification shall include a copy of this Order; and

8.1.3  cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

8.2  If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any Protected Material before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission.  The Designating Party shall bear the burden and expense of seeking protection of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.  <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS ACTION</u>

9.1  The terms of this Order are applicable to Protected Material produced by a Non-Party in this Action.  Such information produced by Non-Parties in connection with this Action is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.   Any Party issuing a subpoena to a Non-Party shall enclose a copy of this Order.

12

9.2     For a period of fourteen (14) calendar days following production by a Non-Party, that production shall be deemed Highly Confidential Information even if not so designated by the Non-Party, to provide the Parties an adequate opportunity to designate information as Confidential or Highly Confidential Information.  The inadvertent failure by any Party to designate information produced by Non-Parties as "CONFIDENTIAL – MDL 2672" or "HIGHLY CONFIDENTIAL – MDL 2672" within that fourteen (14) day period shall not waive a Party's right to later so designate such information with prospective effect, so long as the designation correction is made in a timely fashion, consistent with Section 5.3 of this Order.

9.3     In the event that a Party is required, by a valid discovery request, to produce a Non-Party's Protected Material in the Party's possession, and the Party is subject to an agreement with the Non-Party not to produce such information, then the Party shall:

9.3.1   promptly notify in writing the Party requesting the Protected Material that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

9.3.2   promptly provide the Non-Party with a copy of this Order, the relevant discovery request(s), and a reasonably specific description of the information requested; and

9.3.3   make the information requested available for inspection by the Non-Party.

9.4     If the Non-Party fails to object or seek a protective order from the appropriate court within fourteen (14) calendar days of receiving a notice and accompanying information pursuant to Section 9.3, the Receiving Party may produce the Non-Party's Protected Material responsive to the discovery request, and such information shall be produced with the same designation as the one made by the Non-Party.  If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.  Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in an appropriate court of its Protected Material.

10.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

10.1    If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures; (b) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (c) make all reasonable efforts to retrieve all unauthorized copies of the Protected Material.

11.    REDACTIONS ALLOWED

11.1    Any Producing Party may redact from Discovery Material matter that the Producing Party claims is (i) Privileged Material; or (ii) sensitive personal Foreign Private Data. The Producing Party shall mark each redaction with a legend stating "REDACTED," and specify the basis for the redaction as appropriate, or a comparable notice.  Where a document consists of more than one page, at least each page on which information has been redacted shall be so marked.  If counsel for the Producing Party agrees or if the Court orders that Discovery Material initially redacted shall not be subject to redaction or shall receive alternative treatment, and the Discovery Material is subsequently produced in unredacted form, then that unredacted Discovery Material shall continue to receive the protections and treatment afforded to documents bearing the confidentiality designation assigned to it by the Producing Party.

11.2    Subject to any Party's right to seek modification, jointly or otherwise, of this Section 11.2 after the conclusion of the meet-and-confer regarding discovery of documents maintained in Germany, as required by Pretrial Order No. 9, in addition to the foregoing, the following shall apply to redactions of Foreign Private Data:

11.2.1  Any Party may redact Foreign Private Data that it claims, in good faith, requires protections under the terms of this Order.  Foreign Private Data, however, shall not be redacted from Discovery Material to the extent it directly relates to or identifies an individual named as a Party.

11.2.2  Foreign Private Data shall be redacted from any public filing not filed under seal.

14

11.3 The right to challenge and process for challenging the designation of redactions shall be the same as the right to challenge and process for challenging the designation of Confidential Information and Highly Confidential Information as set forth in Section 6.

11.4 Nothing herein precludes any Party from seeking the other Parties' consent or an order allowing the Party to redact nonresponsive matter from otherwise responsive documents on a case-by-case basis.

12. PROTECTION OF CERTAIN CONFIDENTIAL AND HIGHLY CONFIDENTIAL GOVERNMENT INFORMATION

12.1 If a Party requests otherwise discoverable information from the United States, which a Submitting Entity has claimed is protected from public disclosure, the United States shall, based upon the claimed grounds of confidentiality, designate such information as "CONFIDENTIAL – MDL 2672" or "HIGHLY CONFIDENTIAL – MDL 2672," as appropriate.

12.2 If, pursuant to a valid discovery request, the United States produces otherwise discoverable information and designates such information as "CONFIDENTIAL – MDL 2672" or "HIGHLY CONFIDENTIAL – MDL 2672" because a Submitting Entity claims that it is protected from public disclosure or because the United States has informed the Submitting Entity that it would be protected from public disclosure by applicable federal law, and a Challenging Party raises an objection pursuant to Section 6, the United States shall, within fourteen (14) calendar days, send notice to the Submitting Entity. The United States shall not be required to respond to the objection until fourteen (14) calendar days after such notice has been sent to the Submitting Entity. The Submitting Entity shall be permitted to intervene to defend the designation pursuant to the procedures and standards set forth in Section 6.

12.3 This Order constitutes a court order within the meaning of 40 C.F.R. § 2.209(d), the Privacy Act, 5 U.S.C. § 552a(b)(11), and the Health Insurance Portability and Affordability Act of 1996 (HIPAA) implementing regulations, 45 C.F.R. § 164.512(a), (e)(1)(i). Nothing in this Order shall be construed to compel the United States to produce information that, under law or agreement, it is prohibited from producing, including, *inter alia*, information protected from compelled disclosure by a Certificate of Confidentiality or an Assurance of Confidentiality issued

15

pursuant to the Public Health Service Act, 42 U.S.C. §§ 241(d), 242m(d), and/or the Confidential

Information Protection and Statistical Efficiency Act, 44 U.S.C. § 101; confidential substance

abuse information protected by 42 U.S.C. §§ 290aa(n) or 290dd-2; visa application material

protected by 8 U.S.C. § 1202(f); or information protected by Federal Rule of Criminal Procedure

6(e).  This Section does not preclude any Party from challenging that any Discovery Material

meets these criteria.

    12.4    With respect to governmental plaintiffs, Protected Material, including documents or

communications produced to a Party prior to filing this Action and those prepared for settlement

purposes that could reveal Protected Material, shall not be released or disclosed under the

Freedom of Information Act, 5 U.S.C. § 552 *et seq.*

    12.5    Otherwise discoverable information that is protected by the HIPAA implementing

regulations shall, in response to a valid discovery request, be designated as "Confidential

Information" pursuant to this Order.  Notwithstanding Sections 7.2 and 7.3, all such HIPAA-

protected records must be destroyed or returned to the United States pursuant to Section 14 and 45

C.F.R. § 164.512(e)(1)(v) and may not be used in any related proceeding absent a separate

protective order authorizing their disclosure in such proceeding.  This Section does not preclude

any Party from challenging that any Discovery Material meets these criteria.

    12.6    This Order shall not govern the production or designation of classified information,

sensitive security information, information on classified computer systems, or enforcement-

sensitive government documents and information relating to ongoing criminal investigations.  This

Section does not preclude any Party from challenging that any Discovery Material meets these

criteria.

    12.7    Notwithstanding any federal statute or regulation, no agency, officer, employee or

attorney of the United States shall be subject to any civil or criminal penalty or sanction relating to

the disclosure of non-public information, provided that such disclosure is made pursuant to the

terms of this Order.

13.   <u>MISCELLANEOUS</u>

13.1    <u>Right to Further Relief</u>.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.  Any Party, entity or person covered by this Order may at any time apply to the Court for relief from any provision of this Order.  Subject to the agreement of the Parties or an order of the Court, other entities or persons may be included in this Order by acceding to its provisions in a writing served upon Plaintiffs' Lead Counsel, Defendants' Liaison Counsel, and Government Coordinating Counsel, with such writings to be filed with the Court if so directed.

13.2    <u>Right to Assert Other Objections</u>.  By stipulating to the entry of this Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order.  Similarly, no Party waives any right to object on any ground to use as evidence any of the material covered by this Order.

13.3    <u>Filing Protected Material</u>. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action any Protected Material.  A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5.  Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue.  Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law.  If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5(d) is denied by the Court, then the Receiving Party may file the information in the public record pursuant to Civil Local Rule 79-5(e) unless otherwise instructed by the Court.

13.4    <u>Hearings and Appeals</u>

13.4.1  In the event that a Receiving Party intends to utilize Protected Material during a pre-trial hearing, such Receiving Party shall provide written notice no less than five (5) calendar days prior to the hearing, to the Producing Party and/or the Designating Party and to the Court, except that shorter notice may be provided if the Receiving Party could not reasonably

17

anticipate the need to use the document at the hearing five (5) calendar days in advance, in which event notice shall be given immediately upon identification of that need. The use of such Protected Material during the pre-trial hearing shall be determined by agreement of the relevant Parties or by Order of the Court.

13.4.2 In the event that any Protected Material is used in any court proceeding in this Action or any appeal in connection with this Action, except for the use of Protected Material during trial, the manner of which shall be determined pursuant to Section 3.2, such Protected Material shall not lose its protected status through such use. Counsel shall comply with all applicable local rules and shall confer on such procedures that are necessary to protect the confidentiality of any documents, information, and transcripts used in the course of any court proceedings, including petitioning the Court to close the courtroom.

13.5    Reservations. Entering into, agreeing to or complying with the provisions of this Order shall not: (1) operate as admission that any particular material contains Protected Material; or (2) prejudice any right to seek a determination by the Court (a) whether particular material should be produced, or (b) if produced, whether such material should be subject to the provisions of this Order.

13.6    Rights to Inspect Certificates (Exhibit A). Unless otherwise provided herein, except in the event of a good-faith claim of violation of this Order, the Parties agree not to request copies of the certificates (attached hereto in their unexecuted form as Exhibit A) or to determine the identities of the persons signing them.

13.7    The Parties agree that Discovery Material may be shared by the United States with any state or federal law enforcement or regulatory agency with jurisdiction over matters related to this Action without limitation, provided that (a) such agency signs the "Agency's Agreement To Be Bound by Stipulated Protective Order" (Exhibit B) with respect to the particular Discovery Material that may be shared, (b) the United States provides the Producing Party with a copy of such Exhibit B at least 24 hours in advance of sharing the Discovery Material with the agency, and (c) upon request of the Producing Party, the United States provides the Producing Party with information sufficient for the Producing Party to identify the Discovery Material that was provided

18

1    to each such state or federal law enforcement or regulatory agency.  This Section has no

2    applicability to materials provided to the United States outside of this MDL proceeding.  Nothing

3    in this Section precludes any state or federal law enforcement or regulatory agency that receives

4    Discovery Material pursuant to this Section from using that material in accordance with the

5    agency's applicable statutes, rules and regulations, or from seeking materials or information

6    outside of this MDL proceeding pursuant to applicable law.

7    14.      FINAL DISPOSITION

8          14.1    Within ninety (90) calendar days after the final disposition of this Action, as

9    defined in Section 4, each Receiving Party, including its employees, attorneys, consultants and

10    experts, must use commercially reasonable efforts to destroy or return to the Producing Party all

11    Protected Material, except (1) backup tapes or other disaster recovery systems that are routinely

12    deleted or written over in accordance with an established routine system maintenance practice, or

13    (2) documents that must be preserved as federal records or in compliance with other statutory,

14    regulatory or legal authorities.  As used in this Section, "all Protected Material" includes all

15    originals, copies, abstracts, compilations, summaries, and any other format reproducing or

16    capturing any of the Protected Material.  Whether the Protected Material is returned or destroyed,

17    upon request of the Producing Party, the Receiving Party must submit a written certification to the

18    Producing Party (and, if not the same person or entity, to the Designating Party) by the 90-day

19    deadline that (1) states that commercially reasonable efforts have been made to assure that all

20    Protected Material has been returned or destroyed, and (2) affirms that the Receiving Party has not

21    retained any originals, copies, abstracts, compilations, summaries or any other format reproducing

22    or capturing any of the Protected Material.  Notwithstanding this provision, Counsel are entitled to

23    retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts,

24    legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work

25    product (including all emails attaching or referring to Protected Materials), and consultant and

26    expert work product, even if such materials contain Protected Material.  Any such archival copies

27    that contain or constitute Protected Material remain subject to this Order as set forth in Section 4

28    (DURATION).

1

2    IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

3

4    DATED: _____    */s/ Elizabeth J. Cabraser*_____

5                                        Elizabeth J. Cabraser
                                         ecabraser@lchb.com
6                                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                         275 Battery Street, 29th Floor
7                                        San Francisco, CA  94111-3339
                                         Telephone: (415) 956-1000
8                                        Facsimile:      (415) 956-1008

9                                        *Lead Counsel for Plaintiffs*

10

11   DATED: _____    */s/ Joshua H. Van Eaton*_____

12                                       Joshua H. Van Eaton
                                         Josh.Van.Eaton@usdoj.gov
13                                       Environmental Enforcement Section
                                         Environment and Natural Resources Division
14                                       United States Department of Justice
                                         P.O. Box 7611
15                                       Washington, D.C. 20044-7611
                                         Telephone: (202) 514-5474
16                                       Facsimile: (202) 514-0097
                                         Josh.Van.Eaton@usdoj.gov

17

18                                       *Coordinating Counsel for the United States*

19

20

21

22

23

24

25

26

27

28

DATED:_____    */s/ Robert J. Giuffra, Jr.*_____

Robert J. Giuffra, Jr.
Sharon L. Nelles
William B. Monahan
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
giuffrar@sullcrom.com
nelless@sullcrom.com
monahanw@sullcrom.com

*Co-Liaison Counsel for the Volkswagen
Group Defendants*

DATED:_____    */s/ Jeffrey L. Chase*_____

Jeffrey L. Chase
Michael B. Gallub
HERZFELD & RUBIN, P.C.
125 Broad Street
New York, New York 10004
Telephone: (212) 471-8500
Facsimile: (212) 344-3333
jchase@herzfeld-rubin.com
mgallub@herzfeld-rubin.com

*Co-Liaison Counsel for the Volkswagen
Group Defendants*

DATED:_____    */s/ Cari K. Dawson*_____

Cari K. Dawson
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7766
Facsimile:  (404) 253-8567
cari.dawson@alston.com

*Liaison Counsel for Porsche Cars North America, Inc.*

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: February 25, 2016            _____

United States District/Magistrate Judge

21

EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on _____ [date] in the case *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 CRB (JSC). I agree to comply with and to be bound by all the terms of this Stipulated Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this Action.


Date: _____

City and State where sworn and signed: _____


Printed name: _____


Signature: _____

EXHIBIT B

AGENCY'S AGREEMENT TO BE BOUND BY STIPULATED PROTECTIVE ORDER

The United States may share Discovery Material produced or provided by

_____ [print or type name of Producing Party] with

_____ [print or type name of agency].


In the event the United States does so, _____ [print or type

name of agency] agrees to be bound by the terms of the Stipulated Protective Order that was

issued by the United States District Court for the Northern District of California on _____

[date] in the case *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products

Liability Litigation*, MDL No. 2672 CRB (JSC), to the fullest extent permitted by law.




Date: _____


City and State where sworn and signed: _____


Printed name: _____


Signature: _____


On Behalf of: _____

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RICARDO R. GARCIA, *et al.*,  ) | |
| )  | |
|     Plaintiffs,  ) | |
| )  | |
| v.  ) | Civil Action No. 1:19-cv-331-LO-MSN |
| )  | |
| VOLKSWAGEN GROUP OF AMERICA,  ) | |
| INC., *et al.*,  ) | |
| )  | |
|     Defendants.  ) | |

## VOLKSWAGEN GROUP OF AMERICA, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26(C) of the Local Rules for the Eastern District of Virginia, Defendant Volkswagen Group of America, Inc. ("VWGoA"), by and through its undersigned counsel, hereby submits these responses and objections to Plaintiffs' Second Requests for Production (each a "Request," and collectively, the "Requests"), served on June 18, 2020, in the above-captioned action ("Action").

## General Objections

1.    The General Objections (collectively with the Objections to Definitions, Objections to Instructions, and the Specific Objections, the "Objections") set forth below apply to the Requests generally and to each Definition, Instruction, and specific Request and, unless otherwise stated, shall have the same force and effect as if set forth in full in response to each Definition, Instruction, and Request.  Any objection to a Definition or Instruction shall also apply equally to any other Definition, Instruction, or Request that incorporates that Definition or Instruction.  The

fact that an objection is not listed herein does not constitute a waiver of that objection or otherwise preclude VWGoA from raising that objection at a later time.

2.      VWGoA objects to the Requests to the extent they purport to require VWGoA to provide confidential documents before an appropriate protective order has been entered in this Action.

## Objections to Definitions

1.      VWGoA objects to Definition No. 1 ("You" or "VWGOA"), and to any Definition or Request that incorporates that Definition, on the grounds that it is overly broad and calls for information that is not relevant to the claims, defenses, or subject matter of the Action because it includes VWGoA's "subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on its behalf, at its instance, or under its control."  In particular, Definition No. 1 expands the meaning of "VWGOA" such that the scope of documents sought is outside the possession, custody, or control of VWGoA and beyond the asserted claims and purported Class Vehicles, which are limited to, among other things, Volkswagen-branded vehicles.  VWGoA further objects to Definition No. 1 because it fails to distinguish between distinct corporate entities and would require VWGoA to discern or inquire about relationships between or among entities that are not affiliated with VWGoA.  For the purposes of responding to the Requests, VWGoA construes the term "VWGOA" to refer to Volkswagen Group of America, Inc. and its current or former officers, directors, and employees.

2.      VWGoA objects to Definition No. 2 ("VWAG"), and to any Definition or Request that incorporates that Definition, on the grounds that it is overly broad and calls for information that is not relevant to the claims, defenses, or subject matter of the Action because it includes

-2-

Volkswagen Aktiengesellschaft's ("VW AG") "subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on their behalf, at their instance, or under their control." VWGoA further objects to Definition No. 2 because the scope of information sought is outside the possession, custody, or control of VWGoA and beyond the asserted claims and purported Class Vehicles, which are limited to, among other things, Volkswagen-branded vehicles. VWGoA further objects to Definition No. 2 because it fails to distinguish between distinct corporate entities and would require VWGoA to discern or inquire about relationships between or among entities that are not affiliated with VWGoA. For the purposes of responding to the Requests, VWGoA construes the term "VWAG" to refer to Volkswagen Aktiengesellschaft and its current or former officers, directors, and employees.

**Specific Responses and Objections**

**REQUEST NO. 1:** Please produce documents previously produced by VWGOA and/or VWAG in the so-called Dieselgate litigation by granting permission to Counsel for Plaintiffs in this matter (subject to an appropriate protective order if required), to access and use documents currently or formerly housed in the following document production database (limited to only documents produced by VWGOA or VWAG) controlled and/or maintained and/or paid for by VWGOA and/or VWAG: the VW searchable "RATIONAL" database used to house, produce and store documents produced by VWGOA or VWAG responsive to discovery served in the matter of *In Re: Volkswagen "Clean Diesel" Litigation*, Case No.: CL-2016-9917, that is/was pending inVirginia in the Fairfax County Circuit Court.

**Objections to Request No. 1:**

> VWGoA incorporates by reference its above-stated Objections. VWGoA objects to Request No. 1 on the grounds that it is overly broad and calls for information or documents that

are neither relevant to the claims, defenses, or subject matter of, nor proportional to the needs of, the Action.  In particular, the Request seeks production of almost 10 terabytes worth of data, numbering almost 4 million documents and nearly 27 million pages of materials, which consist of 141 separate productions made by VWGoA and VW AG over a period of more than two years in the unrelated multidistrict litigation in the Fairfax County Circuit Court in Virginia (the "Virginia Diesel MDL").  The Virginia Diesel MDL involved issues with the emissions compliance of certain diesel vehicles manufactured by VW AG and certain affiliates, a topic that has no relevance to any of Plaintiffs' claims in this Action.

VWGoA further objects to the Request because to the extent the referenced database contains some documents that are incidentally relevant to this Action, there is no reason to believe that copies of any such documents will not be produced in response to the 115 Requests for Production that Plaintiffs served on May 28, 2020.  The mere *potential* presence of any relevant documents in the referenced database does not cure the vast overbreadth of the Request; does not make this Request proportional to the needs of this Action; and does not otherwise provide any basis to require VWGoA to produce nearly 27 million pages of documents that were produced in the Virginia Diesel MDL, a litigation factually and legally unrelated to this Action.

VWGoA further objects to the Request because it calls for impermissible "cloned" discovery.  *See Austin* v. *Nestle USA, Inc.*, 2010 WL 4318815, at *4 (D.S.C. Oct. 26, 2010) (denying a plaintiff "unfettered access to all of [a previous action's] discovery, as there is no indication that such discovery is relevant to this case"); *see also Wollam* v. *Wright Med. Grp., Inc.*, 2011 WL 1899774, at *1-2 (D. Colo. May 18, 2011) ("agree[ing] with the many courts" that have disapproved of cloned discovery because "a party seeking discovery ordinarily must 'do their own work and request the information they seek directly' and 'must make proper requests describing

the information in which they are interested'") (quoting *Midwest Gas Servs., Inc.* v. *Ind. Gas Co.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000)).

   Additionally, VWGoA objects to the Request because it is vague and ambiguous insofar as it fails to define or explain the phrases "Dieselgate litigation" and "access and use." Moreover, the Request seeks documents held by parties other than VWGoA, specifically VW AG, that are outside the possession, custody, or control of VWGoA.  VWGoA also objects to the Request because it does not describe with reasonable particularity each item or category of items to be inspected under Federal Rule of Civil Procedure 34(b)(1)(A).  VWGoA finally objects to the Request on the grounds that it is needlessly cumulative and duplicative of the 115 Requests for Production Plaintiffs served on May 28, 2020.

**Response to Request No. 1:**

   In light of its Objections, and particularly because the documents sought are not relevant to the Action and, even to the extent some small number of documents are relevant, because the Request is vastly overbroad, VWGoA does not currently intend to produce documents in response to this Request.

**REQUEST NO. 2:** Please produce documents previously produced by VWGOA and/or VWAG in the so-called Dieselgate litigation by granting permission to Counsel for Plaintiffs in this matter (subject to an appropriate protective order if required), to access and use documents currently or formerly housed in the following document production database (limited to only documents produced by VWGOA or VWAG): the VW searchable "ILS iCONECT XERA" database used to house, produce and store documents responsive to discovery served in the matter of *In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, MDL No. 0672 CRB (JSC), that was/I spending in the United States District Court for the Northern District of California.

**Objections to Request No. 2:**

VWGoA incorporates by reference its above-stated Objections.  VWGoA objects to Request No. 2 on the grounds that it requests that VWGoA produce documents that are outside the possession, custody, or control of VWGoA.  Specifically, the Request seeks production of documents in the "ILS iCONECT XERA database" that is maintained and controlled by the Plaintiffs' Steering Committee appointed by Judge Charles Breyer in the multidistrict litigation in the United States District Court for the Northern District of California (the "California Diesel MDL")—a database to which VWGoA does not have access and to which VWGoA cannot grant access.

VWGoA further objects to the Request on the grounds that it is overly broad and calls for information or documents that are neither relevant to the claims, defenses, or subject matter of, nor proportional to the needs of, the Action.  In particular, the Request seeks production of documents in a database held by the Plaintiffs' Steering Committee in the California Diesel MDL, an unrelated litigation involving issues with the emissions compliance of certain diesel vehicles manufactured by VW AG and certain affiliates, a topic that has no relevance to any of Plaintiffs' claims in this Action.  VWGoA and VW AG produced almost 5 million documents and over 34 million pages of materials to the Plaintiffs' Steering Committee in the California Diesel MDL, but VWGoA cannot verify the volume of documents "currently or formerly housed" in the "ILS iCONECT XERA database," because VWGoA does not have access to that database.

VWGoA further objects to the Request because to the extent the referenced database contains some documents that are incidentally relevant to the Action, there is no reason to believe that copies of any such documents will not be produced in response to the 115 Requests for Production that Plaintiffs served on May 28, 2020.  The mere *potential* presence of any documents in the referenced database does not cure the vast overbreadth of the Request; does not

make this Request proportional to the needs of this Action; and does not provide any other basis to require VWGoA to produce millions of pages of documents that were produced in the California Diesel MDL, a litigation factually and legally unrelated to this Action.

VWGoA further objects to the Request because it calls for impermissible "cloned" discovery. *See Austin* v. *Nestle USA, Inc.*, 2010 WL 4318815, at *4 (D.S.C. Oct. 26, 2010) (denying a plaintiff "unfettered access to all of [a previous action's] discovery, as there is no indication that such discovery is relevant to this case"); *see also Wollam* v. *Wright Med. Grp., Inc.*, 2011 WL 1899774, at *1-2 (D. Colo. May 18, 2011) ("agree[ing] with the many courts" that have disapproved of cloned discovery because "a party seeking discovery ordinarily must 'do their own work and request the information they seek directly' and 'must make proper requests describing the information in which they are interested'") (quoting *Midwest Gas Servs., Inc.* v. *Ind. Gas Co.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000)).

Additionally, VWGoA objects to the Request because it is vague and ambiguous insofar as it fails to define or explain the phrases "Dieselgate litigation" and "access and use." VWGoA also objects to the Request because it does not describe with reasonable particularity each item or category of items to be inspected under Federal Rule of Civil Procedure 34(b)(1)(A). VWGoA finally objects to the Request on the grounds that it is needlessly cumulative and duplicative of Request No. 1 and the 115 Requests for Production Plaintiffs served on May 28, 2020.

**Response to Request No. 2:**

In light of its Objections, and particularly because the documents sought are outside the possession, custody, or control of VWGoA, because the documents sought are not relevant to the Action, and, even to the extent some small number of documents are relevant, because the

Request is vastly overbroad, VWGoA does not currently intend to produce documents in response to this Request.

Dated:  July 6, 2020

MCGUIREWOODS LLP

*/s/ Frank Talbott V*
Terrence M. Bagley (VSB No. 22081)
Kenneth W. Abrams (VSB No. 78216)
Frank Talbott V (VSB No. 86396)
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Tel:  804-775-4773
Fax:  804-698-2323
tbagley@mcguirewoods.com
kabrams@mcguirewoods.com
ftalbott@mcguirewoods.com

SULLIVAN & CROMWELL LLP

Robert J. Giuffra Jr. (*pro hac vice*)
Suhana S. Han (*pro hac vice*)
Adam R. Brebner (*pro hac vice*)
125 Broad Street
New York, NY  10004
Tel:  212-558-4000
Fax:  212-558-3558
giuffrar@sullcrom.com
hans@sullcrom.com
brebnera@sullcrom.com

Judson O. Littleton (*pro hac vice*)
1700 New York Avenue, NW
Washington, DC  20006
Tel:  202-956-7500
Fax:  202-293-6330
littletonj@sullcrom.com

*Counsel for Volkswagen Group of America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 6, 2020, a true and correct copy of the foregoing

instrument was emailed to:

Michael J. Melkersen, Esq.
5 Surfside Road
Humacau, PR  00791
Tel:  540-435-2375
mike@mlawpc.com

Joseph F. Rice, Esq.
Kevin R. Dean, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC  29464
Tel:  843-216-9000
Fax:  843-216-9440
jrice@motleyrice.com
kdean@motleyrice.com

/s/ <i>Frank Talbott V</i>        
Frank Talbott V (VSB No. 86396)

# Exhibit F

## *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*

United States District Court for the Northern District of California

April 24, 2018, Decided; April 24, 2018, Filed

No. 16-cv-02086-CRB; MDL No. 2672 CRB (JSC)

**Reporter**
2018 U.S. Dist. LEXIS 69066 *

IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION; This Order Relates To: MDL Dkt. No. 4967, Napleton Orlando Imports, LLC v. Volkswagen Group of America, Inc.

**Prior History:** *4048 Napleton v. Volkswagen Grp. of Am., Inc. (In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.), 2018 U.S. Dist. LEXIS 54950 (N.D. Cal., Mar. 30, 2018)*

**Counsel: [*1]** For Napleton Orlando Imports, LLC, an Illinois limited liability company doing business as Napleton's Volkswagen of Orlando, Napleton Sanford Imports, LLC, an Illinois limited liability company doing business as Napleton's Volkswagen of Sanford, Napleton Automotive of Urbana, LLC, a Florida limited liability company, on behalf of themselves and all others similarly situated doing business as Napleton Volkswagen of Urbana, Plaintiffs: Steve W. Berman, Thomas Eric Loeser, LEAD ATTORNEYS, PRO HAC VICE, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For J. Bertolet, Inc., Plaintiff: Steve W. Berman, PRO HAC VICE, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Anthony Altomare, Altomare 22 Union LLC, Altomare Realty, LLC, 3rd party plaintiffs: Derek G. Howard, LEAD ATTORNEY, Derek G. Howard Law Firm, Inc., Mill Valley, CA; Ashley Marie Romero, Derek G. Howard Law, Inc., Mill Valley, CA.

**Judges:** JACQUELINE S. CORLEY, United States Magistrate Judge.

**Opinion by:** JACQUELINE S. CORLEY

## Opinion

**ORDER DENYING VOLKSWAGEN-BRANDED FRANCHISE DEALERS' MOTION TO COMPEL**

A group of Volkswagen-branded franchise dealers (the "Franchise Dealers") allege that Robert Bosch LLC and Robert Bosch GmbH (collectively, "Bosch") conspired with Volkswagen **[*2]** to develop the defeat device that Volkswagen used in its "clean diesel" vehicles to cheat on emissions tests. Presently before the Court is a discovery dispute between the Franchise Dealers and Bosch.

The Franchise Dealers have served Bosch with subject-matter-specific requests for the production of documents. They also have served Bosch with a request for the production of documents that Bosch previously provided to certain federal and state agencies that are investigating the "clean diesel" emissions fraud. Bosch is in the process of responding to the former requests, but has objected to the latter. With respect to the latter, Bosch asserts that the government investigations are not coextensive with the Franchise Dealers' claims, and that the request would therefore lead to the production of documents that are not discoverable in this case.

The Franchise Dealers have moved to compel the withheld production. Specifically, they have moved to compel Bosch to produce "documents provided to US, NY and CA government agencies in the United States in connection with investigations of defeat devices installed in Affected Vehicles." (Dkt. No. 4967 at 3.) For the reasons that follow, the Court **[*3]** DENIES the

motion to compel.

* * *

The Franchise Dealers may obtain discovery of any nonprivileged matter that is relevant to their claims or defenses and that is proportional to the needs of their case. See *Fed. R. Civ. P. 26(b)(1)*. The traditional route for obtaining document discovery is to serve subject-matter-specific requests for production, which "must describe with reasonable particularity each item or category of items to be inspected." *Fed. R. Civ. P. 34(b)(1)(A)*. Such "[d]irect requests allow a court to consider the relevance of the information sought to the specific claims and defenses in the pending case." *Wollam v. Wright Medical Group, Inc., No. 10-cv-03104-DME-BNB, 2011 U.S. Dist. LEXIS 56649, 2011 WL 1899774, at *2 (D. Colo. May 18, 2011)*. When a party seeks discovery of documents that were produced during other litigation or investigations, a different—hazier—analysis ensues. The focus turns to comparing one case to another instead of an analysis of how specific information would affect the plaintiff's case.

The latter type of request is particularly challenging in cases like this one, where the Court does not know the precise contours of the government investigations at issue. The document requests or subpoenas issued by the federal and state agencies to Bosch are not before the Court. And because those **[*4]** investigations are confidential and ongoing, the Franchise Dealers acknowledge that Bosch has not told them "what was produced, to which entities and when productions were made." (Dkt. No. 4967 at 3.) Given this uncertainty, the Court cannot adequately determine how the scope of those investigations compares to that of the Franchise Dealers' case, let alone determine whether all of the documents produced by Bosch in those investigations are relevant to the Franchise Dealers' claims.[1]

_____

[1] This uncertainty distinguishes the Franchise Dealers' request from the one addressed in *Schneider v. Chipotle Mexican Grill, Inc., No. 16-cv-2200-HSG (KAW), 2017 U.S. Dist. LEXIS 43652, 2017 WL 1101799 (N.D. Cal. Mar. 24, 2017)*, for which the court compelled production. The plaintiffs there, seeking discovery of all documents produced by Chipotle in a separate case against it, submitted the complaint from the other action with their motion to compel. *See 2017 U.S. Dist. LEXIS 43652, [WL] at *2-3*. This allowed the court to compare the scope of the two lawsuits and to conclude that they involved "the same legal claims based on the same facts." *2017 U.S. Dist. LEXIS 43652, [WL] at *4*. The Franchise Dealers have not submitted any similar evidence that reveals the precise scope of the

In this way, the Franchise Dealers' request is comparable to the one addressed in *King County v. Merrill Lynch & Co., No. C10-1156-RSM, 2011 U.S. Dist. LEXIS 86775, 2011 WL 3438491 (W.D. Wash. Aug. 5, 2011)*. The plaintiffs there filed a securities action against the defendants, and requested that the defendants produce all documents that they had previously provided to certain government entities that were investigating the same conduct. While acknowledging that "some portion of documents encompassed by Plaintiffs' request may be relevant," the court reasoned that it had "no method of determining which of those documents are relevant, and which are not." *2011 U.S. Dist. LEXIS 86775, [WL] at *3*. As a result, the court denied the request and instructed the plaintiffs to "make **[*5]** proper discovery requests, identifying the specific categories of documents sought." *Id.*

The Court agrees with the approach taken in *King County*, as it avoids the guesswork involved in comparing the scope of an investigation that is not before the Court to the scope of a case that is. Further, under the circumstances of this case, there is little need to engage in this guesswork. Bosch has made clear to the Franchise Dealers and the Court that it "will not withhold relevant documents solely because they were previously produced to a government authority." (Dkt. No. 4967 at 6.) The documents that Bosch produced to the government agencies at issue are therefore not beyond the Franchise Dealers' reach if they are indeed relevant to their case.

To be sure, it may be less burdensome for the Franchise Dealers to ask for and receive a wholesale reproduction of what Bosch produced in the government investigations. But such an approach makes it difficult to ensure that the scope of discovery is not expanded beyond what is allowed by the Federal Rules. Nor does the need for the government productions outweigh this possible overbreadth, as "[t]he [Franchise Dealers] are well-represented and can **[*6]** fashion their own document requests without relying upon the government [productions]." *In re WorldCom, Inc. Sec. Litig., No. 02-cv-3288 DLC, 2003 U.S. Dist. LEXIS 22732, 2003 WL 22953645, at *7 (S.D.N.Y. Dec. 16, 2003)*.

If the Franchise Dealers are not satisfied with what they receive from Bosch in response to their subject-matter-specific requests, they may serve additional requests if needed, and to the extent permitted by the federal and

_____

government investigations at issue.

2018 U.S. Dist. LEXIS 69066, *6

local rules. But they are not entitled to complete access to Bosch's prior government productions simply because there is some overlap between their claims and the government investigations. The motion to compel is accordingly DENIED.

**IT IS SO ORDERED**.

Dated: April 24, 2018

/s/ Jacqueline S. Corley

JACQUELINE S. CORLEY

United States Magistrate Judge

---

**End of Document**