UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RICARDO R. GARCIA, DUANE K. GLOVER, PAUL E. JACOBSON, GAETANO CALISE, MYKHAYLO I. HOLOVATYUK, BRIAN GARCIA, PAUL THOMSON, and DAVID HARTMAN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VOLKSWAGEN GROUP OF AMERICA, INC. a/k/a AUDI OF AMERICA, INC., and VOLKSWAGEN AKTIENGESELLSCHAFT, <br><br> Defendants. | CASE NO.: 1:19-cv-00331-LO-MSN |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S DISCOVERY RESPONSES AND DOCUMENT PRODUCTION--*REDACTED***

Plaintiffs Ricardo R. Garcia *et al.* respectfully submit this memorandum of law in support of their Motion to Compel Defendant Volkswagen Group of America, Inc.'s ("VWGOA's") Discovery Responses and Document Production, and state in support thereof as follows.

## INTRODUCTION

Plaintiffs allege in this nationwide and multiple-state class action that Defendants VWGOA and Volkswagen Aktiengesellschaft (VWAG) engaged in a scheme to defraud consumers by selling them pre-production (also known as "zero-series") vehicles that could not lawfully be sold in the United States, while falsely certifying their compliance with all Federal Motor Vehicle Safety Standards ("FMVSS") and also misrepresenting the vehicles' ownership, driving, component readiness and mileage histories in violation of federal and state consumer

protection statutes and state common law.  *See* Second Amended Class Action Complaint ("2AC") (Dkt. 101-1), ¶¶ 1-8 (Introduction); ¶¶ 117-377 (Claims for Relief).

This motion concerns Plaintiffs' discovery requests related to the merits of their claims and class certification under Fed. R. Civ. P. 23 to which Defendant VWGOA has refused, after exchanges of extensive correspondence and numerous meet and confer discussions to provide responsive documents and/or answers.  Plaintiffs' discovery requests to which VWGOA is refusing to provide responses are grouped as follows:

- (1) Three document search strings involving terms that are clearly relevant to Plaintiffs' claims as demonstrated by their repeated use throughout the 2AC;

- (2) 23 document custodian searches for persons with relevant knowledge, which VWGOA opposes on based on alleged volume and duplication;

- (3) Documentation of correspondence between Defendants and putative Class members in which Defendants have obtained releases of Class members' claims in this action; and

- (4) Interrogatories to which VWGOA has refused to provide any response on the ground that each Plaintiff is permitted only a small fraction of the number of interrogatories provided under Fed. R. Civ. P. 33 and in this Court's Order.

Each of these disputes involves highly important discovery related to Plaintiffs' class claims and/or to their motion for class certification.

Despite the clear and obvious relevance of this discovery, Defendants have refused to provide responses based upon unsubstantiated assertions of undue burden, a constrained view of relevancy with respect to class certification and communications interfering with Class members' claims and the Court's oversight of this action, and a reading of the Rule and Order concerning the number of interrogatories each party may serve that is contrary to their plain language.  Since none of Defendants' grounds for resisting the discovery at issue has factual or legal merit as set forth herein, Plaintiffs' motion to compel should be granted.

**LEGAL STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, and parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issue, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Moreover, "[i]nformation within this scope of discovery need not be admissible to be discoverable." *Id.*

Rule 26 provides a "broad scope of discovery." *CSS, Inc. v. Herrington*, No. 2:16-cv-01762, 2018 WL 7131556, at *2 (S.D. W. Va. Jan. 9, 2018). Moreover, "[t]he rules of discovery, including Rule 26, are to be given a broad and liberal construction." *Bethel v. City of Norfolk*, No. 2:15-cv-501, 2017 WL 2874686, at *3 (E.D. Va. Jan. 13, 2017).

When a party objects to discovery of relevant information on grounds of allegedly undue burden or lack of proportionality, "[t]he objecting party carries the burden of proving that the challenged discovery production should not be permitted." *Minke v. Page Cty., Va.*, No. 5:18-cv-82, 2019 WL 922249, at *2 (W.D. Va. Feb. 25, 2019) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendments (Rule 26(b)(1) "does not place on the party seeking discovery the burden of addressing all proportionality considerations. Nor is the [2015 Amendment] change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional. The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.").

## LEGAL ARGUMENT

### A. Plaintiffs' Search-Term Strings Seek Clearly Relevant Information that VWGOA Should Be Compelled to Produce.

There are three search-term strings out of 42 originally proposed by Plaintiffs where VWGOA's refusal to perform either complete or any searches at all will result in Plaintiffs being deprived of what is very likely to be highly relevant information. Plaintiffs proposed these search-term strings on November 3 and November 19, 2020; VWGOA provided responses on December 19, 2020; the parties addressed these requests in meet and confer discussions on December 14, 2020 and February 2, 2021; and the parties exchanged subsequent proposals, but were unable to reach agreement. *See* Declaration of Michael J. Melkersen, Esq. in Support of Plaintiffs' Motion to Compel ("Melkersen Decl."), ¶¶ 4, 13 and Ex's A-C (November 3, 2020 letter; February 10 and February 17, 2021 charts).

First, Plaintiffs asked VWGOA to perform the following term search concerning subject Class vehicles and federal safety standards:

> (0-series or 0series or "0 series" or "zero series" or "zero-series" or pre-series or preseries or "pre series" or preproduction or "pre production" pre-production or "early production") AND ("Federal Safety Standards" or FSS or "Federal Motor Vehicle Safety Standards" or FMVSS)

Melkersen Decl., Ex. B at Search String 11_5. This search would produce 1,502 unique document hits. *See id.* VWGOA responded, however, by limiting the proposed search to documents where terms from the two sets appear within 40 words of each other, which would produce only 53 unique document hits. Melkersen Decl., Ex. C at Search String 11_5. Plaintiffs' broader search is appropriate because both the sale of pre-production vehicles and representations concerning their compliance with the FMVSS are central to many of Plaintiffs' claims. *See*, *e.g.* 2AC (Dkt. 104), ¶¶ 2, 37-40, 100, 149-50 (breach of contract), 154 (unjust

4

enrichment), 164-65 (consumer protection statute), 181 (implied warranty), 187-88 (express warranty). Moreover, discovery to date confirms that ████████████████████████████ ████████████████████████████ *See* Melkersen Aff., Ex. P (VWAG internal audit report, 10/21/2016 ████████████████████████████████████████████). While many of these sales occurred outside of the United States, Plaintiffs discovery to date indicates that a substantial number of these cars were imported in the United States and sold to U.S. consumers. VWGOA's attempted limitation would likely exclude relevant documents where reference to the vehicles' series status and to their safety standards compliance are made separately, but nonetheless may be related.

Second, Plaintiffs asked VWGOA to perform the following term search concerning unlawfully-sold Class vehicles and one of Volkswagen's foreign production facilities:

((modif* w/5 vehicle*) and Puebla)

Melkersen Decl., Ex. B at Search String 17. This search would produce 829 unique document hits. *See id.* VWGOA responded by omitting this string from its searches altogether. *See* Melkersen Decl., Ex. C. Plaintiffs' search is appropriate because vehicle modification is one of the bases for Plaintiffs' allegation that certain Class vehicles could not be certified safety standards-compliant and therefore could not legally be sold in the United States. *See*, *e.g.*, 2AC, ¶¶ 36, 43, 89, 99, 100. Likewise, Volkswagen's Puebla, Mexico facility is relevant because it was one of several at which illegally-sold Class vehicles were manufactured and from which they were imported into the United States, and because this facility pioneered Volkswagen's techniques used to facilitate the unlawful sale of these vehicles. *See* 2AC, ¶¶ 26, 87. VWGOA has no permissible grounds for refusing to perform this search and produce these documents.

5

Third, Plaintiffs asked VWGOA to perform the following term search concerning Class vehicles that were subject to a September 2020 U.S. National Highway Traffic Safety Administration ("NHTSA") recall:

20V-561 or 20V561 or 01E9

Melkersen Decl., Ex. B at Search String 29. This search would produce 48 unique document hits. *See id.* VWGOA responded by omitting this string from its searches altogether. *See* Melkersen Decl., Ex. C. This omission is inappropriate. Plaintiffs' class claims cover recalled vehicles. *See* 2AC, ¶ 105(b), (g). Moreover, NHTSA Recall 20V561 covers "internal use vehicles" that "were sold without confirmation that they were built to Volkswagen's series production standards and applicable regulatory requirements," including that "documentation about their build status may be incomplete or could not be verified." Melkersen Decl., Ex. D (NHTSA 20561 Recall Report). *These are Class vehicles* at least in part. *See* 2AC, ¶ 105(d), (e) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ VWGOA thus has no permissible grounds for refusing to produce documents referencing this recall just because the recall itself is not specifically identified in the Second Amended Complaint since this recall all-but certainly covers Class Vehicles (and may, in fact, have been instigated by this action).

Based on the foregoing, the Court should order Defendant VWGOA to perform searches and produce documents in accordance with Plaintiffs' requests 11_5, 17, and 29.

    **B.    Plaintiffs' Proposed Documents Custodians Will Likely Lead to Production of Relevant Evidence.**

Plaintiffs also have identified 23 persons or positions affiliated with VWGOA and connected to relevant subject matter as custodians for production of documents, but whose

records VWGOA refuses to search. Plaintiffs requested designation of most of these and other custodians on November 3, 2020. *See* Melkersen Decl., Ex. A (11/3/20 letter). Defendant VWGOA responded on November 25, 2020, agreeing to designate other persons as document custodians, but declining to designate any of the then-requested persons now at issue. *See* Melkersen Decl., Ex. E (11/25/20 Han letter). Plaintiffs responded on December 8, 2020, setting forth the names or positions of the 23 persons now at issue and the reasons their designation as custodians is expected to produce relevant documents. *See* Melkersen Decl., Ex. F (12/8/20 email). The parties addressed these requests in meet and confer discussions on December 14, 2020 and February 2, 2021. *See* Melkersen Decl., ¶¶ 4, 13.

The VWGOA employees and/or positions that Plaintiffs request be ordered to be designated as document custodians are:

- **David Mayer**—VWGOA Customs Manager; importation of pre-production vehicles; participated in internal investigation of pre-production vehicle sales;
- **Kathryn Joiner**—VWGOA Customs Specialist; same;
- **Executive Board Members who signed Project Appropriations Requests**—involved in discussions of legality of pre-production vehicle sales;
- **Michael Horn**—same, including discussion of budget impact of not making pre-production vehicle sales, and of untimely availability of component parts and design changes impacting safety rating of vehicles and legality of selling those cars;
- **Hardy Brennecke**—involved in discussions of legality of pre-production vehicle sales;
- **Rainer Michel**—same;
- **Hendrik Muth**—same;
- **Joerg Sommer**—same;
- **Kai Ly**—involved in discussion with VWGoA quality department about definitions pertaining to which vehicles could not legally be sold, and accuracy of VW's inventory valuations given that assessment;
- **Andrew D'haenens**—VWGOA quality department; prepared presentation addressing legality of sale of at-issue vehicles;
- **Patrick Mayer**—involved in discussion of Puebla facility approach to reselling early production vehicles;
- **Clark Campbell**—same;

7

- **Edward Stutzman**—VWGOA Audit Department; investigated pre-production vehicle sales and vehicle documentation of saleability of a portion of the Class vehicles;
- **Other Internal Audit Department Employees (e.g. Kleber Dias, head of VWGOA Internal Auditing)**; same
- **Product Safety Committee**—persons who communicated with Internal Audit Department persons above;
- **Walter Keith Hammock**—Conformity of Production Coordinator; successor in this position to Chi-han Chen, who is alleged to have been directed by VWAG executives to sell Zero-Series cars; *see* 2AC, ¶¶ 100-101;
- **Custodian for Plaintiffs' RFP # 21**--Carfax Price Calculator;
- **Custodian for Plaintiffs' RFP # 41, 46**—mileage timing and impact of classification of vehicle as new or used;
- **Custodian for Plaintiffs' RFP # 57**—putting vehicles in E-Tag before resale;
- **Custodian for Plaintiffs' RFP #64**—post-manufacture alterations to vehicles;
- **Custodian for Plaintiffs' RFP # 78**—discussion of disclosure of pre-sale vehicle use;
- **Custodian for Plaintiffs' RFP # 89**—safety impacts of differences between pre-production and series production vehicles;
- **Custodian for Plaintiffs' RFP # 99**—"daily data feed" referenced by CarFax.

*See* Melkersen Decl., Ex. F (Melkersen to Han email, 12/8/20); Ex. G (Melkersen to Han email, 2/3/21).

VWGOA responded after both meet and confer discussions by declining to designate any of these persons or positions as document custodians not on relevancy grounds, but on grounds of alleged burden and duplication. *See* Melkersen Decl., Ex. H (Han letter, 12/18/20) at 1 ("VWGoA has proposed not only a more than reasonable number of custodians, but also a set of custodians whose responsibilities and positions encompass the scope of your requests for production to VWGoA."); Ex. I (Han email, 2/5/21) ("Request for additional VWGoA custodians; As stated in my letter of December 18, 2020, we have proposed a more than reasonable number of custodians, which are sufficient to cover the scope of requests for production to VWGoA and thus will not agree to additional custodians.").

For much the same reasons that Plaintiffs' disputed search-term strings are likely to lead to discovery of relevant information, so too are its proposed document custodians.

Indeed, VWGOA has not disputed this. Instead, it argues only that it has proposed "a more than reasonable number of custodians" and that mostly unspecified other custodians may result in production of documents on the same subject matters. This is precisely the type of "boilerplate objection" on proportionality that Rule 26 *is not* intended to permit. *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendments (Rule 26(b)(1); *see also Minke*, *supra*, 2019 WL 922249, at *2 ("The objecting party carries the burden of proving that the challenged discovery production should not be permitted."); *Stone v. Trump*, 453 F. Supp. 3d 758, 766 (D. Md. 2020) ("Restoring the proportionality calculation to Rule 26(b)(1) did not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportional considerations.") (internal quotation marks and citation omitted).

Since Plaintiffs have proposed document custodians with knowledge of and involvement in relevant subject matter, which is not disputed, the Court should reject VWGOA's boilerplate objections to this discovery on grounds of alleged disproportionality and duplication and should order VWGOA to make the requested designations and produce the requested documents.

  **C. VWGOA Should Be Ordered to Produce its Communications with Putative Class Members Addressing Their Claims in this Action.**

VWGOA appears to admit that it has communicated with *and obtained releases of claims from* over 300 putative Class members during the pendency of this action. It has produced a spreadsheet identifying by Vehicle Identification Number (VIN) at least 345 putative Class members whom it lists as having "Accepted Buyback or Settlement." Melkersen Decl., Ex. J (Exhibit A to Amended and Supplemental Responses and Objections to R. Garcia's First Set of

9

Interrogatories). It also has produced a "General Release" *template* containing a provision



Melkersen Decl., Ex. K (General Release template, VWGoA-Garcia_00461809), ¶ 2 (emphasis added). It also has produced an "agreement letter" *template* stating in relevant part that ███████████████████████████████████████████████████████████████████████ Melkersen Decl., Ex. L (Repurchase Letter template, VWGoA-Garcia_00461813) (emphasis added). VWGOA has not, however, produced any actual agreements or correspondence with putative Class members.

Based on the foregoing, Plaintiffs asked VWGOA to produce all settlement agreements with putative Class members and correspondence related to these agreements. *See* Melkersen Decl., Ex. M (12/21/20 email request); Ex. N (1/14/21 follow-up email request). The parties held a meet-and-confer discussion on this request, in which Plaintiffs agreed at that time that they would consider accepting production of agreements and letters with putative Class members' identifying information redacted, on February 2, 2021. *See* Melkersen Decl., ¶ 13 and Ex. I. VWGOA, however, rejected this as a possible compromise and has refused to produce any of its actual agreements or related communications with putative Class members. *See* Melkersen Decl., Ex. I (Han 2/5/21 email) ("Request for redacted settlement correspondence and executed agreements. We decline to provide those documents for the reasons we previously explained.").

The Court should compel VWGOA to produce these putative Class member executed settlement and release agreements and related correspondence. These are highly relevant both to

10

Plaintiffs' motion for class certification and to this Court's effective oversight over this putative class action. Rule 23 provides in relevant part that:

> In conducting an action under this rule, the court may issue orders that . . . require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of . . . any step in the action; . . . impose conditions on the representative parties or on intervenors; . . . or deal with similar procedural matters.

Fed. R. Civ. P. 23(d)(1)(B)(i), (C), and (E).

The Supreme Court has held based on these provisions and a court's general authority over a class action case that, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). This includes the authority to enter "an order limiting communications between parties and potential class members . . . ." *Id.* at 101; *see also* Manual for Complex Litigation, Fourth (Fed. Jud. Ctr. 2004), § 21.12 at 247-48 ("Rule 23(d) authorizes the court to regulate communications with potential class members, even before certification."); *id.* at 248 (Direct communications with class members . . . can lead to abuse. For example, *defendants might attempt to obtain releases from class members without informing them that a proposed class action complaint has been filed.*") (emphasis added).

Courts in the Fourth Circuit have held that such communications can threaten abuse and may be restricted by the court. *See*, *e.g.*, *Ross v. Wolf Fire Prot., Inc.*, 799 F. Supp. 2d 518, 526 (D. Md. 2011) ("[C]ourts have required that before a protective order issue, the moving party show that (1) a particular form of communication has occurred or is threatened, and (2) the particular form of communication is abusive in that it threatens the proper functioning of the litigation.") (internal quotation marks and citations omitted); *see also Randolph v. PowerComm*

*Constr., Inc.*, 41 F. Supp. 3d 461, 465 (D. Md. 2014) (same; quoting *Ross*); *Weckesser v. Knight Enterprises S.E., LLC*, 392 F. Supp. 3d 631, 634 (D.S.C. 2019) (same); *Adair v. EQT Prod. Co.*, 2011 WL 4501048, at *5 (W.D. Va. Sept. 28, 2011) (same). In such circumstances, courts have ordered various remedies for the defendant's abuse, including prohibition of future misleading communications, *Ross*, 799 F. Supp. 2d at 527; issuance of corrective notices, *Randolph*, 41 F. Supp. 3d at 469; or even invalidating class members' releases already obtained, *see County of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *6 (N.D. Cal. July 8, 2010).

Here, VWGOA admits it has obtained releases of claims of over 300 putative Class members, Melkersen Decl., Ex. J (spreadsheet listing 345 Class VIN's), and *claims* to be doing so through agreements and communications that ███████████ *See* Melkersen Decl., Ex's K-L (General Release template; Repurchase Letter template). But it refuses to produce any executed agreements or actual letters sent so that Plaintiffs, Court-appointed Interim Class Counsel, and the Court can assess whether the actual communications made are abusive or permissible. *See* Fed. R. Civ. P. 23(g)(3) ("The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.").

Moreover, even the form-template documents VWGOA has produced raise red flags for abuse. The Repurchase Letter template states that ███████████ ███████████ ███████████ Melkersen Decl., Ex. L (Repurchase Letter template) (emphasis added), as though ███████████ ███████████

12

As a first step, the Court should order VWGOA to produce to Plaintiffs all executed release agreements with putative Class members and all accompanying communications. Plaintiffs' motion to compel production of these documents thus should be granted.

### D. The Court Should Order VWGOA to Provide Answers to Plaintiff Glover's First Set of Interrogatories.

Finally, the Court also should order VWGOA to provide answers to Plaintiff Duane K. Glover's First Set of Interrogatories. Plaintiff Glover served this set of 11 interrogatories on December 8, 2020. VWGOA responded on January 7, 2021. *See* Melkersen Decl., Ex. O (Responses and Objections). These interrogatories seek basic but critical information about the Class vehicles pertaining to Class members' damages and other monetary relief. *See*, *e.g.*, *id.* at Interrogatory No. 3 ("Identify data or Documents sufficient to show the average revenue per CPO certification recognized by you and/or Volkswagen for each calendar year from 2007 through the present."); Interrogatory No. 11 ("For each Class Vehicle, state the amount for which such vehicle was first sold by your dealer as a CPO car, itemize all other charges relating to the sale (i.e. tax/title/fees etc.), and identify each Buyer's Order that memorializes each such sale."). VWGOA responded to each interrogatory by stating:

> VWGOA will not respond to Interrogatory No. [#] because it exceeds the Court's limitation against 'more than thirty (30) written interrogatories, including parts and subparts, without leave of court.' *See* Order, ECF No. 119 (August 10, 2020) VWGoA is willing to meet and confer with Plaintiffs regarding the application of the numerical limit on written interrogatories to the parties in this Action.

*Id.*, Responses to Interrogatories No. 1-11. These non-responses are based on the fact that a different Plaintiff, Ricardo Garcia, previously had served his own set of interrogatories on VWGOA, which VWGOA contends must be counted together and cumulatively with Plaintiff Glover's. The parties met and conferred on this issue on February 2, 2021, but despite that

13

meeting, and follow-up correspondence about the matter thereafter, the parties have been unable to reach agreement. *See* Melkersen Decl., ¶ 13 and Ex. I.

The Court should order VWGOA to respond to Plaintiff Glover's interrogatories. The federal rules clearly provide for each party to an action to serve up to 25 interrogatories on any other party. *See* Fed. R. Civ. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, ***a party*** may serve on ***any other party*** no more than 25 written interrogatories . . . .") (emphasis added). This Court's Order increased the limit to 30, and did so using the same party-based language as in Rule 33. *See* Order (Dkt. 119, filed 8/10/20) ("***A party*** . . . may not serve ***on any other party*** more than thirty (30) interrogatories . . . .") (emphasis added). Plaintiff Glover's 11 interrogatories thus are well within the limits set by Rule 33 and the Court.

Courts addressing Rule 33 have held that its language should be construed literally to afford each party to an action the right to serve up to 25 interrogatories on each opposing party. *See*, *e.g.*, *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006) ("According to the Federal Rules, *each* plaintiff may serve *each* defendant with 25 interrogatories.") (emphasis in original); *St. Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288, 289 (D. Mass. 2003) ("Under the plain terms of Rule 33(a), each defendant could, without leave of court, serve 25 interrogatories on the plaintiff.").

Although other courts outside of this district have adopted a more limited approach applying a "per-side" limitation, *see*, *e.g.*, *Laws v. Stevens Transp., Inc.*, 2013 U.S. Dist. LEXIS 32221, at *4 (S.D. Ohio March 8, 2013), even those courts will permit additional interrogatories per side where there is no showing of undue prejudice to the receiving parties. *See id.* at *5 ("[I]t does not appear that defendants will be unduly burdened by having to answer these particular interrogatories. Consequently, the Court, in its discretion, will deny defendants' motion to strike

14

the interrogatories of Chandra Laws on the ground that they exceed the maximum allowable number under Fed. R. Civ. P. 33(a).").

Here, the Court should rely on the plain language of both Rule 33(a) and its own Order and on the absence of prejudice to VWGOA in requiring it to answer Plaintiff Glover's 11 interrogatories. In refusing to provide substantive responses, VWGOA did not demonstrate or even allege any prejudice from being required to answer. Instead, it simply relied upon incomplete language it quoted from the Court's Order, while leaving out the Court's per-party language set forth in that Order. Since Plaintiff Glover's interrogatories are permissible under Rule 33 and the Court's Order, and since VWGOA does not and cannot show prejudice in having to respond, Plaintiffs' motion to compel should be granted.

## CONCLUSION

For all of the reasons set forth herein, Plaintiffs' motion to compel should be granted.

*[Signature block appears on following page]*

Dated: February 18, 2021

Respectfully submitted,

/s/ *Michael J. Melkersen*
Michael J. Melkersen, Esq.
5 Surfside Road – Palmas Del Mar
Humacao, Puerto Rico 00791
Telephone: 540.435.2375
Facsimile: 540.740.8851
Email: mike@mlawpc.com

Nathan D. Finch, Esq.
Joseph F. Rice, Esq. (*Admitted Pro Hac Vice*)
Kevin R. Dean, Esq. (*Admitted Pro Hac Vice*)
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Telephone: 843.216.9000
Facsimile: 843.216.9440
Email: nfinch@motleyrice.com
jrice@motleyrice.com
kdean@motleyrice.com

*Attorneys for Plaintiffs and Interim Class Counsel*

16

## **CERTIFICATE OF SERVICE**

I, Michael J. Melkersen, hereby certify that on this date I served a true and correct copy of the foregoing Memorandum of Law in Support of Motion to Compel upon counsel of record for Defendants by filing via the Court's Electronic Case Filing (ECF) system.

Dated: February 18, 2021

/s/ *Michael J. Melkersen*
Michael J. Melkersen