IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| RICARDO R. GARCIA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-331-LO-MSN |
| | ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC., *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**VOLKSWAGEN GROUP OF AMERICA INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Defendant Volkswagen Group of America, Inc. ("VWGoA") respectfully submits

this memorandum of law in opposition to Plaintiffs' Motion to Compel (Dkt. 140).

**PRELIMINARY STATEMENT**

VWGoA has negotiated with Plaintiffs in good faith and worked diligently to

provide information and produce documents responsive to Plaintiffs' ever-expanding demands.

To date, VWGoA has produced over 92,000 documents, comprising more than 600,000 pages, at

enormous cost and burden.  Consistent with the electronic discovery protocol agreed to by the

parties (Dkt. 128), VWGoA's discovery process has been transparent.  Starting in September 2020,

VWGoA has consistently informed Plaintiffs about the numerous custodians identified as the best

sources of potentially responsive information and the lengthy list of "search strings" being used to

search not only for potentially responsive emails in custodial files, but also across the entirety of

the "Diesel" Rational database, which stores about four million documents previously produced

by VWGoA and Volkswagen Aktiengesellschaft ("VW AG," and together with VWGoA,

"Defendants") in other litigation.

As their motion to compel confirms, however, no amount of discovery is enough in Plaintiffs' view.  Plaintiffs have continuously demanded more and more document custodians and additional search strings, often with little to no explanation.  VWGoA has nonetheless made significant concessions in a good-faith attempt to resolve discovery disputes with Plaintiffs without involving this Court, including by agreeing to add 25 custodians (for a total of 36) and to add or expand 32 search strings, adding hundreds of thousands of documents to the number of documents VWGoA must review.

Plaintiffs now ask this Court to compel VWGoA to add *another* 23 document custodians, to conduct additional duplicative or unwarranted electronic searches, and to respond to up to 240 interrogatories.  In addition, Plaintiffs seek to conduct a fishing expedition into VWGoA's confidential settlement agreements and communications with individual putative class members, which are not relevant to Plaintiffs' claims and should not be produced without a showing that such communications were improper.  *See The Kay Co., LLC* v. *Equitable Prod. Co*., 246 F.R.D. 260, 264 (S.D.W. Va. 2007).   Because Plaintiffs' demands far outweigh any incremental benefit and are entirely disproportional to the needs of this action, Plaintiffs' motion should be denied in its entirety.

## BACKGROUND

### A.    Discovery to Date

Plaintiffs filed this putative class action on March 21, 2019 (Dkt. 1), and filed the operative Second Amended Complaint on March 27, 2020 (Dkt. 104).  Starting in May 2020, Plaintiffs have served 128 separate document requests and over 40 interrogatories on VWGoA, and have served 83 separate document requests and more than 30 interrogatories on VW AG (which are not at issue in the present motion).  (*See* Han Decl. ¶ 3.)  Following commencement of formal discovery by the Court's August 10, 2020 initial scheduling order (Dkt. 119), VWGoA

made its first document production of "segregable" documents identified from its central files on September 8, 2020.  (*See* Ex. F, Sept. 8, 2020 Production Letter.)

Following the entry of the parties' stipulated ESI protocol on September 17, 2020 (Dkt. 128), and in addition to its ongoing searches of centrally available files and documents, VWGoA identified 11 document custodians and proposed 10 different categories of broad search strings, comprising over 1,500 individual search terms.  Among other things, to identify any documents related to the vehicles in the putative class, VWGoA agreed to use as search terms the vehicle identification numbers ("VINs") of all 1,541 putative class vehicles identified to date. VWGoA designed these searches to identify documents potentially responsive to Plaintiffs' non-objectionable document requests.  (Ex. G, Sept. 28, 2020 Letter from S. Han, at 1-3.)  And on top of those searches, in accordance with the Court's guidance at the July 31, 2020 hearing, VWGoA has applied the same proposed search strings (without limitation by custodian) to search the entire Diesel database, which contains about four million documents.  VWGoA began document review immediately after identifying its initial custodians and search terms, and began producing responsive, non-privileged ESI on October 21, 2020.  (*See* Han Decl. ¶¶ 4-5.)

Plaintiffs nonetheless have repeatedly requested that VWGoA add more custodians, which Plaintiffs have proposed in seriatim fashion over the past six months—totaling a minimum of 74 additional custodians.  Similarly, Plaintiffs have requested that VWGoA expand its already-substantial review population to include documents that hit on 34 additional search strings. Through the course of good-faith negotiations, VWGoA agreed to expand its ESI searches to include an additional 25 custodians and 32 of Plaintiffs' search strings, some in the form proposed by Plaintiffs, and others in modified form pursuant to the parties' negotiations.  These additional

custodians and search terms have increased VWGoA's review population by over 260,000 documents. (*See id.* ¶ 6.)

All told, as of February 17, 2021—the date on which VWGoA agreed to add even more search strings in an effort to avoid a dispute over search terms—VWGoA has agreed to run 42 different search strings, comprising over 1,500 individual terms, over all available email of 36 custodians as well as the entire population of documents produced by VWGoA and VW AG stored in the Diesel database, over a more than 12-year time period. These searches have resulted in more than 450,000 unique hits, comprising millions of pages requiring review for responsiveness and privilege, and thus far requiring more than 12,000 attorney hours of document review at the first-level alone. (*See id.* ¶ 7.) VWGoA has to date produced more than 92,000 documents, comprising more than 600,000 pages and 290 GB of data. (*See id.* ¶ 8.) Review is ongoing, and VWGoA anticipates that it will substantially complete its production of responsive documents in March 2021. (*See id.* ¶ 9.) Based on VWGoA's forthcoming productions and VW AG's document productions, Defendants expect to produce ultimately more than a million pages of documents in this action that is centered around VWGoA's precautionary recalls of 365 vehicles.[1]

**B.   Motion to Compel**

Notwithstanding the expansive discovery they have already received, Plaintiffs' motion seeks to significantly broaden the scope of discovery in a number of unjustified respects.

---

[1] Plaintiffs claim that this case concerns 9,000 pre-production vehicles (Mot. at 5), but that number was plucked from a 2016 VW AG document and was a preliminary estimate of vehicles subject to review on a *worldwide* basis, the vast majority of which were sold outside the United States. As a result of Plaintiffs' class definition expanding this action to include vehicles such as certain "press vehicles," VWGoA has to date identified 1,541 vehicles that potentially meet Plaintiffs' class definition; but of these, only 61 vehicles are pre-production vehicles and only 199 vehicles are subject to the precautionary recalls identified in the Complaint. (*See* Han Decl. ¶ 10.)

*Custodians.*   Plaintiffs ask this Court to compel VWGoA to add at least 23 additional custodians—identified by name, position, or just a topic in a document request—on top of the 36 custodians whose emails VWGoA has already agreed to search (along with the millions of documents in the "Diesel" database that are being searched without regard to custodian).

On September 28, VWGoA proposed 11 individual document custodians that it determined would be the most likely to have documents responsive to Plaintiffs' discovery requests, including custodians responsible for the production and logistics of pre-production vehicles; customs and importation of pre-production vehicles; internal use vehicle policies and practices; product safety, compliance and recalls; quality assurance; and certified pre-owned vehicles and Carfax.  (Ex. G, Sept. 28, 2020 Letter from S. Han, at 1-2.)  On October 1, Plaintiffs responded by requesting that VWGoA add 26 additional named custodians, four additional categories of custodians (that could encompass several individuals each), and all predecessors for each of the proposed custodians, for a total of around 40 additional custodians.  (Ex. H, Oct. 1, 2020 Letter from M. Melkersen, at 1-2.)  Plaintiffs provided little basis for their custodian requests, stating that "it is impossible . . . to know precisely which custodians' information should be searched."  (*Id.* at 1.)  Many of Plaintiffs' proposals were duplicative.  For example, Plaintiffs requested two new custodians from VWGoA's Corporate Vehicle Services Department ("CVS"), seemingly without regard for the fact that VWGoA had already proposed two CVS custodians.  (*Id.* at 2; Ex. G, Sept. 28, 2020 Letter from S. Han, at 2.)  Despite this, VWGoA agreed to add seven of the individual custodians requested by Plaintiffs, bringing the total number of agreed-upon VWGoA custodians to 18.  (Ex. I, Oct. 15, 2020 Letter from S. Han, at 1.)

On November 3, Plaintiffs then proposed five new named custodians and 13 new categories of custodians that could encompass several additional custodians each, none of which

they had included in their prior correspondence.  (Ex. J, Nov. 3, 2020 Letter from M. Melkersen, at 3-10.)  Once again, several of the categories requested by Plaintiffs were duplicative of existing custodians.  For example, although VWGoA had already agreed to include its CPO Sales Manager as a custodian, Plaintiffs asked VWGoA to propose custodians for information "reflecting profitability of CPO cars," "reflecting importance of residual value, and how CPO sales can impact that measurement," and "reflecting benefits of CPO cars over other types of vehicle sales."  (*Id.* at 7-8.)  VWGoA nonetheless compromised again and agreed to an additional 18 custodians, for a total of 36 VWGoA custodians.  (Ex. L, Nov. 25, 2020 Letter from S. Han, at 2-3.)

Despite VWGoA's significant concessions, Plaintiffs continued to make further, serial requests for additional VWGoA custodians.  Plaintiffs proposed two new custodians on December 8 (Ex. O, Dec. 8, 2020, 4:40 AM and 5:56 AM Emails from M. Melkersen), and four more on December 16, bringing the total additional custodians Plaintiffs have requested to at least 74.  (Ex. O, Dec. 16, 2020 Email from M. Melkersen.)  On December 18, VWGoA informed Plaintiffs that VWGoA had agreed to a more than reasonable number of custodians, whose responsibilities and positions encompassed the scope of the issues in the case, and as such, VWGoA would not agree to additional custodians because Plaintiffs' requests were duplicative and seemingly without regard for the many custodians VWGoA already agreed to search.  (Ex. P, Dec. 18, 2020 Letter from S. Han, at 1.)  On February 3, Plaintiffs reiterated their request for five of the custodians they had previously requested, and on February 5, VWGoA again declined.  (Ex. O, Feb. 3, 2021 Email from S. Han; Ex. W, Feb. 5, 2021 Email from S. Han.)

***Search Terms.***  The parties have reached agreement on nearly all of the 34 additional search strings Plaintiffs have requested be added to the 10 broad categories of search strings VWGoA initially proposed.  In total, VWGoA has agreed to 42 search strings, which are

more than sufficient to identify documents potentially responsive to Plaintiffs' non-objectionable document requests.  Yet Plaintiffs' motion seeks to compel VWGoA to further expand one search string and to run two additional search strings VWGoA has declined to apply.

*First*, for one of the search strings proposed by Plaintiffs, VWGoA proposed to use a proximity operator (within 40 words) instead of the broad "AND" connector requested by Plaintiffs in an effort to filter out documents that merely mention two potentially relevant sets of terms in a wholly unrelated (and therefore irrelevant) fashion.  (Ex. X, Feb. 17, 2020 Email from S. Freudenberg.)  *Second*, Plaintiffs asked VWGoA to run a search string of terms related to vehicle modification at Volkswagen's "Puebla" facility in Mexico, which Plaintiffs claim would capture documents responsive to a discovery request for "correspondence between Volkswagen and any other entity" concerning "the legality of selling and/or operating any of the Class Vehicles."  (Ex. J, Nov. 3, 2020 Letter from M. Melkersen, at 2.)  VWGoA declined to run this search because (i) the discovery request is limited by its terms to purported class vehicles, and VWGoA had already designed a search to capture potentially responsive documents related to those vehicles, and (ii) VWGoA already agreed to run seven other search strings proposed by Plaintiffs for this discovery request that relate more closely to the request.  *Third*, VWGoA declined to run a search string that incorporates terms strictly focused on a September 16, 2020 vehicle recall—a recall that was issued nearly six months after the operative Complaint was filed, is not the subject of a document request served on VWGoA, and is not part of the putative class definition.  (*See* Ex. Q, Dec. 19, 2020 Letter from S. Han, at 7.)

***Settlement Agreements, Executed Releases, and Communications with Absent Class Members.***  In connection with the two precautionary recalls identified in the Complaint, VWGoA offered to repurchase vehicles subject to recall.  (Ex.'s A-B, NHTSA Safety Recall

Reports. ("Volkswagen . . . will offer to repurchase these [recall] vehicles.")) The form buyback letter that was sent to customers subject to the recall is publicly available on the NHTSA website.[2] VWGoA separately offered to settle potential claims of certain customers whose vehicles were subject to the two precautionary recalls. In their document requests, Plaintiffs requested "[a]ll buyback letters or settlement offers sent to purchasers identified in [the precautionary recalls], and any response received," (Ex. D, Plaintiffs' First Requests for Production of Documents to VWGoA, at 25.) In response, VWGoA produced two samples of the general release forms and a copy of the form buyback letter sent to certain individuals considering a settlement agreement with VWGoA in connection with the two precautionary recalls. (*See* Han Decl. ¶ 13.) The form buyback letter expressly notified the recipient that "a putative class action lawsuit has recently been filed in Virginia concerning the recall and matters alleged to involve your vehicle." (Ex's. S-T, V, Form Releases & Buyback Letter.) The letter further explained that "[a] copy of the complaint in that lawsuit, which contains the allegations, claims and relief being sought, is contained in the enclosed CD-ROM," and offered to mail the recipient a "hard copy" of the complaint, if preferable. (*Id.*) In response to an interrogatory, VWGoA identified all putative class vehicles that were subject to any buyback or settlement. (*See* Han Decl. ¶ 12.) VWGoA objected to Plaintiffs' discovery requests to the extent they sought the production of *all* settlement agreements and related releases executed in connection with any putative class vehicles, as well as all correspondence between VWGoA and any putative class members regarding such settlements and releases. (*See* Ex. R, Dec. 21, 2020 Email from M. Melkersen.) Such individual copies of all executed settlement agreements and releases, and related communications, are

---

[2] The form letter is available at https://static.nhtsa.gov/odi/rcl/2018/RCRIT-18V329-0469.pdf.

irrelevant to the merits of Plaintiffs' claims and beyond the scope of reasonable discovery proportional to the needs of this case.

       *Interrogatories.*  In addition to their expansive document requests, Plaintiffs have served over 40 interrogatories on VWGoA (and over 30 interrogatories on VW AG), exceeding the 30 interrogatory limit set by this Court's August 10, 2020 Order (Dkt. 119).  Plaintiffs contend, however, that because there are eight "named" Plaintiffs in this purported class action, they are entitled to serve up to 240 interrogatories on VWGoA alone.  In an effort to compromise before Plaintiffs filed their motion to compel, Defendants offered to respond to a total of 100 interrogatories (50 for each Defendant).  (Ex. W, Feb. 5, 2021 Email from S. Han.)  Plaintiffs did not respond to that offered compromise, instead choosing to file this motion.

## LEGAL STANDARD

       "[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *JTH Tax, Inc.* v. *Aime*, 2016 WL 9223926, at \*2 (E.D. Va. Dec. 13, 2016) (quoting *Hickman* v. *Taylor*, 329 U.S. 495, 507 (1947)).  Under Federal Rule of Civil Procedure 26, discovery must be "relevant to any party's claim or defense and proportional to the needs of the case," considering, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Although the party seeking discovery has the burden of establishing relevance, "[t]he party resisting or objecting to discovery 'bears the burden of showing why [the motion to compel] should not be granted.'"  *Mainstreet Collection, Inc.* v. *Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010).  Even if the conditions of Rule 26(b)(1) are met, "the simple fact that requested information is discoverable . . . does not mean that discovery must be had."  *Nicholas* v. *Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004).  Rather, "the court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative."  Fed. R. Civ. P. 26(b)(2)(C),

(b)(2)(C)(i).  Furthermore, when reviewing reasonable methods for locating materials responsive to requests for production, "courts give deference to a producing party's choice of search methodology and procedures in complying with discovery requests." *Progressive Cas. Ins. Co.* v. *Delaney*, 2014 WL 3563467, at *10 (D. Nev. July 18, 2014).

## ARGUMENT

### I.   PLAINTIFFS' REQUEST FOR 23 ADDITIONAL CUSTODIANS IS NOT PROPORTIONAL TO THE NEEDS OF THIS CASE.

#### A.   Plaintiffs Misunderstand Their Burden Under Rule 26.

VWGoA has already agreed to 36 custodians who adequately cover the relevant issues in this case.  Plaintiffs seek to add an additional 23 "persons or positions affiliated with VWGoA" on the basis that these individuals are "connected to [the] relevant subject matter" of the case.  (Mot. at 6-7.)  But that is not enough under the plain terms of Rule 26.[3]  Plaintiffs provide *no* showing that these additional custodians—the use of whom would add tens or hundreds of thousands of documents to VWGoA's already comprehensive review population—are necessary or proportional to the needs of the case.

Instead, Plaintiffs offer only barebones, conclusory assertions that additional proposed custodians must be added because they supposedly were "involved in discussions" of broad topics, or even merely had "discussion" with certain departments.  (Mot. at 7-8.)  But the mere fact that individuals were "involved in discussions" is not a sufficient basis for adding them

---

[3] "The current and amended version of Rule 26(b)(1) does not contain any reference to the subject matter of the action. . . . The text of the amended rule following the 2015 amendment no longer provides that a court, based upon good cause, may order discovery 'of any matter relevant to the subject matter involved in the action.'  The amended rule omits that sentence in its entirety." *Cole's Wexford Hotel, Inc.* v. *Highmark Inc.*, 209 F. Supp. 3d 810, 821-22 (W.D. Pa. 2016); *see id.* at 822-23 (noting that an interpretation of Rule 26 incorporating discovery "relevant to the general subject matter of the action" is "erroneous" and "contrary to the advisory committee's pervasive and continuing concerns about the abuse of discovery").

as custodians.  *See Kleen Prod. LLC* v. *Packaging Corp. of Am.*, 2012 WL 4498465, at *14 (N.D. Ill. Sept. 28, 2012) ("[J]ust because a proposed custodian exchanged a large number of emails with a current custodian does not mean that the proposed custodians will have a significant number of important, *non-cumulative* information." (emphasis in original)).  Plaintiffs essentially argue that they are entitled to any custodian whom they deem to be connected in some way to the subject matters of the litigation.  They are not.

**B.      Plaintiffs' Proposed Custodians Are Duplicative of Other Agreed-Upon Custodians.**

Plaintiffs have failed to "articulate a basis for the court to find that ESI in the possession of the additional custodians would be different from, and not simply duplicative of, information that the responding party has already produced."  *Enslin*, 2016 WL 7013508, at *1 n.2; *see also In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 2013 WL 4838796, at *2 (S.D.N.Y. Sept. 11, 2013) (denying motion to compel additional custodians because the court could not "discern any specialized documents or information that the rejected custodians will hold that is not likely to be held by defendants' proposed (or agreed to) custodians").  Plaintiffs' 23 additional proposed custodians are not only duplicative of VWGoA's previously identified custodians, they are duplicative of *each other*—as evidenced by Plaintiffs' recycling of the same rationales, including often resorting to just including the word "same," to justify their custodian proposals (*see* Mot. at 7-8).

Where, as here, "defendants have already included custodians from certain business units in their ESI search protocol, the plaintiffs must demonstrate that the additional requested custodians would provide *unique* relevant information not already obtained."  *Fort Worth Emps.' Ret. Fund* v. *J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013).  Plaintiffs' "speculation" that other custodians may have some email that would not be captured by current

custodians covering the same subject matter "standing alone, is not a sufficient basis for granting a motion to compel." *Little Hocking Water Ass'n, Inc.* v. *E.I. Du Pont de Nemours & Co.*, 2013 WL 608154, at *10 (S.D. Ohio Feb. 19, 2013); *see also Garcia* v. *Tyson Foods, Inc.*, 2010 WL 5392660, at *14 (D. Kan. Dec. 21, 2010) ("Plaintiffs must present something more than mere speculation that responsive emails *might* exist in order for this Court to compel the searches and productions requested." (emphasis in original)).  As detailed in the chart below, each of Plaintiffs' requested custodians is duplicative of several custodians VWGoA has already agreed to search. Specifically, VWGoA has already agreed to custodians for each of the following topics: (i) importation and customs; (ii) pre-production vehicle sales, including the related audit, as well as quality assurance and safety; (iii) vehicle titling and reporting of mileage; and (iv) CPO sales and Carfax.[4]

| Plaintiffs' Proposed Custodian & Stated Rationale | Existing Custodian(s) |
| --- | --- |
| David Mayer – *"VWGOA Customs Manager; importation of pre-production vehicles; participated in internal investigation of pre-production vehicle sales"*<br><br>Kathryn Joiner – *"VWGOA Customs Specialist; same"* | **VWGoA has already agreed to appropriate and relevant importation and customs custodians:**<br>• Patrick Stowe, Senior Manager, Customs & Trade Compliance<br>• John Ellefson, Senior Manager, Customs & Trade Compliance (former) |
| Executive Board Members who signed Project Appropriations Requests ("PARs") | **VWGoA has already agreed to numerous custodians "involved" in pre-production vehicle sales,** including individuals from its Pilot Hall (which is the department responsible for vehicle design, |

[4] As to Plaintiffs' demand for a "Custodian for Plaintiffs' RFP #64" (Mot. at 8), that Request relates to "alterations as described in paragraph 31 of the Second Amended Complaint."  However, VWGoA has already informed Plaintiffs that it does not have documents responsive to Request No. 64, because it does not alter vehicles in the manner described in ¶ 31 of the Complaint, and it therefore is unable to identify a custodian likely to possess documents responsive to Request No. 64.  (*See* Ex. U, Jan. 20, 2021 Letter from S. Han, at 3.)

| Plaintiffs' Proposed Custodian & Stated Rationale | Existing Custodian(s) |
|---|---|
| – *"involved in discussions of legality of pre-production vehicle sales"*<br><br>Michael Horn – *"same, including discussion of budget impact of not making pre-production vehicle sales, and of untimely availability of component parts and design changes impacting safety rating of vehicles and legality of selling those cars"*<br><br>Hardy Brennecke – *"involved in discussions of legality of pre-production vehicle sales"*<br><br>Rainer Michel – *"same"*<br><br>Hendrik Muth – *"same"*<br><br>Jeorg Sommer – *"same"*<br><br>Patrick Mayer – *"involved in discussion of Puebla facility approach to reselling early production vehicles"*<br><br>Clark Campbell – *"same"*<br><br>Kai Ly[5] – *"involved in discussion with VWGoA quality department about definitions pertaining to which vehicles could not legally be sold, and accuracy of VW's inventory valuations given that assessment"*<br><br>Andrew D'haenens – *"VWGOA quality department; prepared presentation addressing legality of sale of at-issue vehicles"*<br><br>Walter Keith Hammock – *"Conformity of Production Coordinator; successor in this position to Chi-han Chen, who is alleged to have been directed by VWAG executives to* | including early stages of production, such as prototypes and pre-series vehicles), as well as individuals with knowledge of product planning and logistics, sales operations, and quality assurance:<br><br>Pilot Hall Custodians:<br>• Oliver Burke, Senior Manager, Finish; former Head of Pilot Hall<br>• Paulo Portela, Senior Manager, Pilot Hall<br>• Ralph Woll, Assistant Manager, Body Shop; former Director, Pilot Hall<br><br>Product Planning and Logistics Custodians:<br>• Steven Slatton, Assistant Manager, Program Planning & Production Control<br>• Kathrina Friedmann, Assistant Manager, Program Planning & Production Control<br><br>Sales Operations Custodians:<br>• Artemisa Landero Lopez, Vehicle Order Manager, Sales Operations<br>• Holger Schreiber, Vehicle Order Manager, Sales Operations<br>• Atia Yarbrough, Vehicle Order Manager, Sales Operations<br><br>Quality Assurance Custodians:<br>• Chi-Han Chen, Technical Assistant Manager FAP Resolution, Quality Assurance<br>• Richard Fuentes, Technical Manager, Quality Assurance<br>• Ana Wolyniec de Freitas, Director, Quality Baureihe & Projects |

---

[5] In addition to being unnecessary and duplicative of other custodians, Kai Ly is not an employee of VWGoA.

| Plaintiffs' Proposed Custodian & Stated Rationale | Existing Custodian(s) |
|---|---|
| sell Zero-Series cars; see 2AC, ¶¶ 100-101"<br><br>Custodian for Plaintiffs' RFP No. 89 – "safety impacts of differences between pre-production and series production vehicles" | |
| Edward Stutzman – "VWGOA Audit Department; investigated preproduction vehicle sales and vehicle documentation of saleability of a portion of the Class vehicles"<br><br>Other Internal Audit Department Employees (e.g., Kleber Dias[6]) – "same"<br><br>Product Safety Committee – "persons who communicated with Internal Audit Department persons above" | **VWGoA has already agreed to a custodian involved in the VWGoA investigation and audit of preproduction vehicle sales:**<br>• Steven Slatton, Assistant Manager, Program Planning & Production Control<br><br>**VWGoA has already agreed to appropriate product safety custodians:**<br>• Robert McCarthy, Senior Manager, Product Safety & Compliance<br>• Chris Sandvig, Director, Group Customer Protection |
| Custodian for Plaintiffs' RFP Nos. 41, 46 – "mileage timing and impact of classification of vehicle as new or used"<br><br>Custodian for Plaintiffs' RFP No. 57 – "putting vehicles in E-Tag before resale" | **VWGoA has already agreed to several custodians from its Corporate Vehicle Services department,** which is responsible for titling vehicles and managing VWGoA's internal use and employee lease program (including the eTag application):<br>• Carrie Glynn, Vehicle Asset Specialist, Corporate Vehicle Services<br>• Jed Hathaway, Director, Corporate Vehicle Services<br>• David Holtz, General Manager, Corporate Vehicle Services<br>• Andrew MacKnight, Vehicle Operations Team Lead, Corporate Vehicle Services |
| Custodian for Plaintiffs' RFP No. 21 – "Carfax Price Calculator"<br><br>Custodian for Plaintiffs' RFP No. 78 – "discussion of disclosure of pre-sale vehicle use" | **VWGoA has already agreed to appropriate custodians responsible for CPO sales and Carfax:**<br>• Michael Ashton, CPO Manager, VW Fleet & Remarketing<br>• Christopher Hoehner, General Manager, Fleet & CPO, VW Fleet & Remarketing |

---

[6] Plaintiffs' Motion is the first time they have requested Kleber Dias as a custodian.

| Plaintiffs' Proposed Custodian & Stated Rationale | Existing Custodian(s) |
|---|---|
| Custodian for Plaintiffs' RFP No. 99 – "'daily data feed' referenced by CarFax" | • Scott Weitzman, General Manager, Fleet & CPO, VW Fleet & Remarketing |

In short, the 36 existing custodians—already a result of good-faith negotiations and compromise by VWGoA—are more than sufficient to respond to Plaintiffs' discovery requests. Plaintiffs make no showing in support of their motion to compel 23 additional custodians other than vague, speculative claims that the additional custodians are "connected to [the] relevant subject matter," which is insufficient and misstates the Rule 26 standard.  Plaintiffs' motion to add these 23 custodians should therefore be denied.

## II.   PLAINTIFFS' DEMANDS FOR BROADER AND MORE SEARCH STRINGS ARE NOT PROPORTIONAL TO THE NEEDS OF THIS CASE.

Search strings are not themselves "discovery requests," but rather are "used as a tool to narrow the documents that must be reviewed" in response to discovery requests.  *See Story* v. *Fiat Chrysler Auto.*, 2018 WL 5307230, at *3 (N.D. Ind. Oct. 26, 2018) (noting that "[t]he purpose of such a search is to narrow the universe of ESI that a party must review when attempting to locate emails and other materials that are responsive to document requests" (quoting *Makorski* v. *SmithAmundsen LLC*, 2012 WL 1634832, at *1 (N.D. Ill. May 9, 2012)); *see also Youngevity Int'l Corp. v. Smith*, 2017 WL 6541106, at *10 (S.D. Cal. Dec. 21, 2017) ("Search terms are an important tool parties may use to identify *potentially* responsive documents in cases involving substantial amounts of ESI.  Search terms do not, however, replace a party's requests for production.").  This distinction is important here because Plaintiffs do not even attempt to show that their requested search strings are reasonably designed to identify documents that are potentially responsive to Plaintiffs' document requests.  "Because the motion to compel does not tether the search terms request to any of Plaintiffs' particular Rule 34 Requests for Production of

-15-

Documents," Plaintiffs' demands for yet more search strings—on top of the 42 search strings (comprising over 1,500 individual terms) to which VWGoA has already agreed to run—should be denied. *See Phillips* v. *Boilermaker-Blacksmith Nat'l Pension Tr.*, 2020 WL 5642341, at *2 (D. Kan. Sept. 22, 2020) (denying motion to compel searches that plaintiffs argued were "relevant to disputed issues").

Plaintiffs' additional and broadened search strings also are not "proportional to the needs of the case," and thus outside the scope of permissible discovery.[7] Fed. R. Civ. P. 26(b) ("the court must limit" discovery where "the proposed discovery is outside the scope permitted by Rule 26(b)(1)); *see CSX Transp., Inc.* v. *Peirce*, 2012 WL 12892735, at *5 (N.D.W. Va. July 18, 2012) (listing "the unreasonably cumulative or duplicative effect of the discovery" and "the importance of the discovery in resolving the issues" as factors "[i]n determining whether the burden or expense of the proposed discovery outweighs its likely benefit.").[8]

A.      **Search String #11_5**

VWGoA has agreed to run the following search string:  *(0-series or 0series or "0 series" or "zero series" or "zero-series" or pre-series or preseries or "pre series" or preproduction or "pre production" or pre-production or "early production")* **w/40** *("Federal Safety Standards" or FSS or "Federal Motor Vehicle Safety Standards" or FMVSS)* (emphasis

---

[7] Plaintiffs provide counts of the "unique document hits" for the three search strings at issue (Mot. at 4-6), but these counts exclude (i) the additional unique hits from the "Diesel" database, and (ii) the counts of document family members that would also be included in VWGoA's review population.

[8] Plaintiffs' proposed order seeks to require VWGoA to "produce to Plaintiffs all documents generated" from its proposed search strings. (ECF No. 140-1.)  Even if the search strings were necessary, however, VWGoA would still need to review the "hits" to identify responsive documents.  *See Thomas* v. *Roberts*, 2017 WL 11503455, at *3 (E.D. Va. May 18, 2017) (Nachmanoff, M.J.) (ordering that search term results be "review[ed] for privilege and responsiveness prior to production.").

added).  Instead of the proximity operator "w/40," Plaintiffs demand that VWGoA use an "AND" connector, with no explanation for why a document that uses a pre-production term more than 40 words away from a federal safety standard term is likely to be responsive to any particular document request.

In proposing Search String #11_5, Plaintiffs referenced Plaintiffs' Request No. 3, which seeks "guidelines or standards" on issues of vehicle safety and title applications.[9]  (*See* Ex. H, Oct. 1, 2020 Letter from M. Melkersen, at 4.)  In response to Request No. 3, VWGoA conducted reasonable searches for internal company protocols and used other search strings to "identify documents potentially responsive to Request No. 3 that relate to purported Class Vehicles."  (Ex. I, Oct. 15, 2020 Letter from S. Han, at 3.)  Despite the sufficiency of these searches, when Plaintiffs requested eight additional search strings for Request No. 3, VWGoA agreed in the interest of compromise to *all eight*, including Search String #11_5, with the reasonable modification of using proximity operators instead of "AND" connectors.  (*Id.*) Plaintiffs' motion offers no explanation at all for why a "w/40" proximity operator is insufficient for Search String #11_5, especially in light of VWGoA's searches for segregable documents, electronic searches using VINs as individual search terms, and the seven additional search strings to which VWGoA has already agreed.  Plaintiffs' demand for a limitless connector for Search String #11_5 should therefore be denied.

---

[9] Request No. 3 seeks "[a]ll documents concerning your guidelines or standards of conduct concerning how you ensure that the vehicles you sell conform to applicable federal safety standards and that you carefully obtain and accurately report information regarding your vehicles, including your vehicles' actual mileage driven as then reflected on its odometer, when making application for an original certificate of title."  (Ex. D, Plaintiffs' First Requests for Production to Defendant Volkswagen Group of America, Inc.).

B.     **Search String #17**

VWGoA declined to run Search String #17:  *((modif\* w/5 vehicle\*) and Puebla)*.

Plaintiffs proposed that VWGoA use six search strings, including Search String #17, to identify

documents potentially responsive to Plaintiffs' Request No. 12, which asks for "[a]ll

correspondence between Volkswagen and any other entity referencing or discussing the legality

of selling and/or operating any of the Class Vehicles."  (*See* Ex. J, Nov. 3, 2020 Letter from M.

Melkersen, at 2.)  Given that Request No. 12 by its terms seeks documents that relate to purported

class vehicles, it is covered by VWGoA's search strings using the VINs of purported class vehicles.

(*See* Ex. H, Nov. 13, 2020 Hit Reports; Ex. Q, Dec. 19, 2020 Letter from S. Han, at 5.)  Despite

the sufficiency of those searches, VWGoA agreed to run all of the search strings Plaintiffs

proposed for Request No. 12 (with minor modifications), with the lone exception of Search String

#17. (*See* Ex. X, Feb. 17, 2021 Email from S. Freudenberg.)  In addition to Search String #17's

lack of focus on purported class vehicles, it does not concern any "discussion" of the "legality of

selling and/or operating" of cars, as contemplated by this document request.  Instead, it is focused

on "vehicle modification" and Volkswagen's Mexican facility.  (Mot. at 5.)

Implicitly acknowledging as much, Plaintiffs' motion again impermissibly treats

Search String #17 as an independent discovery device, failing to tie the search terms to Request

No. 12 or any other discovery request.  In any event, given VWGoA's agreement to run versions

of all other search strings that Plaintiffs proposed for Request No. 12—above and beyond the

searches using over 1,500 VINs as individual search terms—Search String #17 is "unreasonably

cumulative and duplicative" of VWGoA's existing efforts to respond to Plaintiffs' Requests.  *CSX*

*Transp., Inc.*, 2012 WL 12892735, at \*5.

C.      **Search String #29**

VWGoA has also declined to run Search String #29:  *20V-561 or 20V561 or 01E9.* These terms relate to a recall initiated by VWGoA on September 16, 2020 (the "September 2020 Recall"), and Plaintiffs requested them for the supposed purpose of locating documents responsive to Request No. 64.[10]  (Ex. J, Nov. 3, 2020 Letter from M. Melkersen, at 6-7.)  VWGoA has already designed and executed a search string sufficient to respond to Request No. 64.  Furthermore, contrary to Plaintiffs' assertion that the "clear relevan[ce]" of the terms comprising Search String #29 are "demonstrated by their repeated use throughout the 2AC" (Mot. at 2), none of the terms appear *anywhere* in the Second Amended Complaint—which is unsurprising, given that they relate to a recall initiated six months after that complaint was filed.  Plaintiffs' motion to compel VWGoA to add Search String #29 should thus be denied for several reasons.

*First*, Plaintiffs again do not point to a document request properly served on VWGoA that calls for the use of Search String #29 to identify potentially responsive documents. Search String #10 was already designed to sufficiently respond to Request No. 64,[11]  and Plaintiffs do not explain how search terms identifying a later recall are also necessary to respond to Request No. 64.  (Ex. Q, Dec. 19, 2020 Letter from S. Han, at 7.)  This search string thus amounts to another improper attempt to propound new discovery requests through search strings.

---

[10] Request No. 64 seeks "[a]ll documents discussing or related to vehicles that were altered by you after the date of original manufacture, including but not limited to documents referencing or related to obligations that may arise from such alterations as described in paragraph 31 of the Second Amended Complaint."  (Ex. D, Plaintiffs' First Requests for Production to Defendant Volkswagen Group of America, Inc.)

[11] Search String #10, proposed by VWGoA on September 28, 2020, consists of the following terms:  "(Certificate w/5 alter*) OR (alter* or modif* or retrofit* w/10 (manufactur* w/5 (post* OR after)))."  VWGoA has already informed Plaintiffs that it does not have documents responsive to Request No. 64, because it does not alter vehicles in the manner described in ¶ 31 of the Complaint.

*Second*, even apart from their discovery requests, Plaintiffs wrongly claim that the operative Complaint's definition of class vehicles broadly "cover[s] recalled vehicles."  (Mot. at 6.)  Rather, the class definition includes vehicles that (in addition to meeting other conditions) were part of two *specific* recalls, neither of which is the September 2020 Recall.  (*See* SAC ¶ 105(b) and (g) (listing recalls filed on May 16, 2018 and September 25, 2019).)  Plaintiffs' effort to effectively expand the putative class definition through a search string should be rejected.

*Finally*, Plaintiffs fail to show any other connection between Search String #29 and the SAC.  Plaintiffs note that two of the over 1,500 VINs VWGoA had already identified as purported class vehicles in its interrogatory responses of August 7, 2020 were subject to the September 2020 Recall. [12]  But that does not somehow make *every vehicle* that was part of the September 2020 Recall relevant to Plaintiffs' claims.  To the contrary:  the fact that so few of the over 1,500 vehicles identified to date as purported class vehicles were subject to the September 2020 Recall simply confirms that requiring VWGoA to run additional searches focused exclusively on that recall would be disproportionate to the needs of the case in light of the broad search strings VWGoA has already agreed to (including all of the individual VINs of purported class vehicles).  Plaintiffs are not entitled to more.

---

[12] These two vehicles were identified as potentially within the purported class because they were loaned to one or more members of the automotive press and otherwise met the conditions in the class definition.  In addition, a third VIN (1VWAS7A35GC017382) that was identified by VWGoA as potentially within the purported class because it was a pre-production vehicle that otherwise met the conditions in the class definition, was later subject to the September 2020 Recall. (*See* Han Decl. ¶ 11.)

## III.   PLAINTIFFS FAIL TO SHOW THAT CONFIDENTIAL SETTLEMENT AGREEMENTS, EXECUTED RELEASES, AND COMMUNICATIONS WITH ABSENT CLASS MEMBERS ARE DISCOVERABLE.

The Court should also reject Plaintiffs' demand that VWGoA produce copies of all settlement agreements, executed releases, and any related correspondence with putative individual class members.  VWGoA has already identified all putative class vehicles that were subject to a settlement or buyback, and has produced two samples of the general release forms and a copy of the form buyback letter sent to certain individuals considering a settlement agreement with VWGoA in connection with the two precautionary recalls.[13]  (*See* Ex's. S–T, V, Form Releases & Buyback Letter.)  Plaintiffs offer no legitimate basis to require VWGoA to produce *every individual copy* of such agreements and any related correspondence.  To the contrary, such agreements and communications between VWGoA and its customers—which contain personal identifying information about absent putative class members[14]—are not relevant to any issue in this litigation, nor is their production proportional to the needs of discovery.

---

[13] Plaintiffs' document requests sought "buyback letters or settlement offers" sent to the purchasers of vehicles subject to three recalls.  One of those recalls does not appear in the Complaint and is thus irrelevant to this case; as such, VWGoA objected to providing any discovery in connection with that recall.  (Ex. D, Plaintiffs' First Requests for Production to Defendant Volkswagen Group of America, Inc., at 14.)

[14] For avoidance of doubt, to the extent Plaintiffs seek to compel production of unredacted versions of the settlement agreements, releases, and related communications, VWGoA objects to the production of such unredacted documents on the basis that they include the identities and contact information of putative class member prior to the certification of any class.  *See Dziennik* v. *Sealift, Inc.*, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification."); *Jenkins* v. *TJX Cos.*, 2011 WL 1563677, at *1-3 (E.D.N.Y. Apr. 25, 2011) (denying motion to compel as "plaintiff's request for contact information of putative Rule 23 class members is premature"); *see also Oppenheimer Fund, Inc.* v. *Sanders*, 437 U.S. 340, 352-54 (1978) (pre-certification discovery requests seeking identities of putative class members are beyond "the scope of legitimate discovery").

-21-

*First*, Plaintiffs assert that copies of every settlement agreement, executed release, and all related communications with putative class members "are highly relevant . . . to Plaintiffs' motion for class certification."[15]  (Mot. at 10-11.)  But Plaintiffs offer no explanation whatsoever of why these documents are relevant to their class certification motion.  *See Pontones* v. *San Jose Rest. Inc.*, 2019 WL 1548897, at *3 (E.D.N.C. Apr. 9, 2019) (denying motion to compel absent class member information where the plaintiff "fail[ed] to demonstrate with specificity how the identifying information is necessary pre-certification").  Indeed, courts in similar cases have restricted the production of such documents prior to the certification of a class.  *See Madeira* v. *Converse, Inc.*, 2019 WL 7877349, at *5-6 (C.D. Cal. Dec. 19, 2019) (denying motion to compel the production of "settlement agreements and releases prior to class certification" and finding "no case law in support of [the plaintiff's] entitlement to these documents"); *see also Mondragon* v. *Scott Farms, Inc.*, 329 F.R.D. 533, 542 (E.D.N.C. 2019) (restricting precertification discovery to communications related to the named plaintiffs only).  Here, Plaintiffs do not even attempt to explain why all of the settlement offers, executed releases, and related communications are relevant to any future motion for class certification.  Particularly given that VWGoA has identified by VIN every putative class vehicle that has been subject to a settlement or buyback and has produced form releases and buyback letters reflecting the content of documents sent in connection with the two precautionary recalls identified in the operative Complaint, Plaintiffs can identify no

---

[15] Plaintiffs' assertion that VWGoA "communicated with *and obtained releases of claims from* over 300 putative Class members during the pendency of this action" is inaccurate.  (Mot. at 9.)  In response to Plaintiffs' interrogatory requesting that VWGoA "[i]dentify which of the [putative class members] have accepted a settlement offer or buyback for their Class Vehicles," (*see* Ex. C, Plaintiff R. Garcia Interrogatories, at 8), VWGoA has identified to date 348 putative class vehicles that were subject to *any* settlement or buyback, regardless of reason or time period.  Only 154 of these 348 vehicles were even subject to the two recalls identified in the Complaint.  (*See* Han Decl. ¶ 12.)

additional relevant information that the individual executed copies of those documents could provide.

    *Second*, Plaintiffs' contention that they are entitled to these documents in order to investigate the mere *possibility* that VWGoA engaged in improper or abusive communications is based on sheer speculation and not an appropriate basis to compel discovery. *See Susko* v. *City of Weirton*, 2011 WL 98557, at *4 (N.D.W. Va. Jan. 12, 2011) ("[M]ere speculation that documents exist is not a sound basis for a motion to compel production."). Plaintiffs have pointed to *no* evidence remotely suggesting that VWGoA engaged in any abusive or threatening communications.[16] Plaintiffs instead baselessly characterize the reference to an "enclosed CD-ROM" containing a copy of Plaintiffs' Complaint in a form buyback offer letter as a "red flag[]" for abuse." (Mot. at 12.) The inclusion of case documents in a CD-ROM with a settlement offer letter is not remotely abusive or misleading. The form buyback offer letter Plaintiffs cite clearly notifies recipients of the pendency of this class action lawsuit, refers them to Plaintiffs' counsel if they "wish to contact the counsel that filed this lawsuit," and advises that the release "includes any claims that are or may be asserted in the lawsuit." (*See* Ex. T, Form Buyback Letter.) In fact, in addition to the enclosed CD-ROM, the letter expressly offers to send a hard copy of the Complaint to recipients upon request. (*See id.*) Such letters are plainly permissible under the law. *See In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1139 (7th Cir. 1979)

---

[16] As a general matter, defendants are permitted to engage in communications, settle claims, and obtain releases from putative class members prior to the certification of a class. *See Kay Co., LLC* v. *Equitable Prod. Co.*, 246 F.R.D. 260, 264 (S.D.W. Va. 2007) ("[A] defendant may discuss settlement offers with putative class members prior to class certification."); *see also Tolmasoff* v. *Gen. Motors, LLC*, 2016 WL 3548219, at *10 (E.D. Mich. June 30, 2016) ("Generally speaking, a defendant has a right to communicate settlement offers directly with putative class members.") (alteration and internal quotation omitted)); *Wu* v. *Pearson Educ. Inc.*, 2011 WL 2314778, at *6 (S.D.N.Y. June 7, 2011) (noting that prior to certification, "defendants can even negotiate settlement of the claims of potential class members").

(precertification offer letters to putative class members should include notice of "available avenues for pursuing [a] claim"); *Keystone Tobacco Co.* v. *U.S. Tobacco Co.*, 238 F. Supp. 2d 151, 155 (D.D.C. 2002) (same).

Plaintiffs cite cases recognizing a district court's authority to restrict precertification class member communications, but those cases provide no support for their motion to compel production of those documents.  (*See* Mot. at 11-12.)  Plaintiffs have not moved for any protective order and have not even come close to making a showing that would justify such an order.[17]   They identify *no* case allowing plaintiffs' counsel to obtain all precertification communications with putative class members based on unsupported speculation that these communications may have been abusive or misleading, and courts in the Fourth Circuit have specifically rejected the notion that defendants must produce their communications with putative class members merely because counsel for a putative class is unaware of the content of those communications.  *See Kay Co.*, 246 F.R.D. at 264 (denying a motion for discovery of the "content of the communications between the defendants and the putative class members" based on plaintiffs' argument that "they cannot know whether the defendants' contacts are abusive unless they are made aware" of such discovery).  Plaintiffs' demand for these documents amounts to an improper "fishing expedition for irrelevant or cumulative information," *E.I. DuPont de Nemours & Co.* v. *Kolon Indus., Inc.*, 286 F.R.D. 288, 295 (E.D. Va. 2012), and therefore should be denied.

---

[17] *See Tolmasoff*, 2016 WL 3548219, at *10 ("[A]n order limiting communications between parties should be based on a *clear record* and *specific findings* that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties that would occur if such an order is not granted." (emphasis in original) (internal quotation omitted)).

## IV.    PLAINTIFFS' REQUEST FOR AN ORDER THAT THEY ARE ENTITLED TO SERVE 240 INTERROGATORIES ON VWGoA SHOULD BE DENIED.

Plaintiffs argue that each of the eight individual named Plaintiffs in this putative class action should be permitted to serve 30 interrogatories on each Defendant.  (Mot. at 13-15.) To justify this unreasonable request, Plaintiffs rely on this Court's August 10, 2020 Order stating that "[a] party . . . may not serve on any other party more than thirty (30) interrogatories, without parts and subparts, without leave of court."  (*See* Mot. at 14 (stating that "each party to an action" should be permitted to serve up the interrogatory limit "on any other party").)  Because Plaintiffs' seek an unreasonable and disproportionate number of interrogatories, the Court should deny their motion.[18]

For one thing, Plaintiffs' motion to compel responses to their interrogatories should be denied as untimely.  The Rule 26(f) Discovery Plan entered by this Court required that the parties submit any dispute on the "reasonable numerical limits per side on interrogatories" on or before October 30, 2020.  (Dkt. Nos. 120, 122.)  Defendants agreed to Plaintiffs' request to extend that deadline to December 14, 2020, which has long since passed.  (*See* Han Decl. ¶ 14.)

In addition, when considering the question of whether an interrogatory limit should be applied on a *per side* or *per party* basis, courts in the Fourth Circuit have taken a "case-by-case approach" that considers "the nature of and the relationships between the parties involved."  *CSX Transp., Inc.* v. *Peirce*, 2012 WL 12892736, at *3 (N.D.W. Va. Aug. 15, 2012).  In doing so, courts aim to "strik[e] the right balance between the potential burdens that interrogatories impose on

---

[18] As an effort to compromise, Defendants previously offered to answer a total of 100 interrogatories (50 for each Defendant)—an offer that would have included agreeing to respond to *all* of the interrogatories served by Plaintiff Glover.  (Ex. W, Feb. 17, 2021 Email from S. Han). Plaintiffs appear to have rejected Defendants' compromise offer (without explanation) and instead filed the instant motion on this issue.

parties and the benefits they offer to parties."  *Id.* at *3; *see Herdlein Techs., Inc.* v. *Century Contractors, Inc.*, 147 F.R.D. 103, 104 (W.D.N.C. 1993) (courts set "a limit on the number of interrogatories because responding to them is inherently expensive and burdensome").  Courts thus frequently recognize that "in some instances nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation."  *CSX Transp.*, 2012 WL 12892736, at *2 (quoting 6 Wright & Miller, *Federal Practice and Procedure* § 2168.1 (3d ed. 2012)); *see also Allen* v. *Gillenwater*, 2010 WL 5067769, at *1 (M.D.N.C. Dec. 6, 2010) (limiting parties to 25 interrogatories "per side"); *Felman Prod., Inc.* v. *Indus. Risk Insurers*, 2009 WL 3668038, at *3 (S.D.W. Va. Nov. 3, 2009) (limiting interrogatories and requests for admission to a certain number "per side").  In *CSX Transp., Inc.*, for example, the court applied a 40-interrogatory limit to each side, rather than each party, on the basis that the responding parties "are represented by the same counsel . . . and they have previously acted in concert during discovery, for example by using their interrogatories in concert, such that it would not be unreasonable to view them as one for the purposes of interrogatories."  2012 WL 12892736, at *3 (N.D.W. Va. Aug. 15, 2012).

Here, because the named Plaintiffs share common interests in this putative class action lawsuit and they are represented by the same counsel, there is no reason to consider each named Plaintiff to be a separate "party" for purposes of the Court's 30-interrogatory limit.  Indeed, all interrogatories served by Plaintiffs seek information that is applicable to the putative class action case as a whole and have nothing to do with individual claims of the identified named Plaintiffs.  (*See, e.g.*, Ex. C, R. Garcia Interrogatories, Interrogatory No. 7:  "For each Class Vehicle that was a Press-Fleet Vehicle, Pool-Fleet Vehicle, and/or a Leased Fleet Vehicle, describe the disposition of the vehicle including whether it was destroyed, exported, or sold to the public, and for each vehicle sold to the public, identify the date of sale, by whom it was sold, to whom it

was sold, whether the vehicle was titled in Michigan, and who the current owner of the vehicle is if different from the purchaser when originally sold to the public.").  Plaintiffs do not even argue that each named Plaintiff requires 30 separate interrogatories for the purpose of obtaining discovery about their own personal claims.  Rather, they contend that the interrogatories broadly seek "information about the *Class vehicles* pertaining to *Class Members'* damages and other monetary relief."  (Mot. at 13 (emphasis added).)

In light of the sweeping scope of Plaintiffs' interrogatories to date, their rejection of Defendants' offer to provide answers to all outstanding interrogatories currently served on VWGoA,[19] (Ex. W, Feb. 5, 2021 Email from S. Han), and their delay in raising this issue with the Court, Plaintiffs' request for an order recognizing that they may serve a total of 240 interrogatories on VWGoA should be denied as excessively burdensome and disproportional to the needs of this case.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion to Compel Discovery in its entirety.

---

[19] Defendants' compromise proposal was offered in an effort to resolve an ongoing disagreement between the parties regarding (i) the number of interrogatories permitted per side, and (ii) whether to count compound interrogatories with multiple discrete subparts as a single or multiple interrogatories.  Defendants maintain their position that certain multi-part interrogatories should be counted as multiple interrogatories, such as Plaintiff Glover's first interrogatory, which seeks the following information for *each* of the over 1,500 purported class vehicles identified to date: (1) VIN; (2) production date; (3) factory-installed options, or option codes; (4) invoice date indicating the date of first sale to dealership; (5) date of first retail sale; (6) date of CPO certification; (7) invoice price; (8) incentive amounts paid by VWGoA to "dealership and end-using customers in connection with the first retail sale of the vehicle"; (9) whether the vehicle was financed through VW Credit, Inc.; (10) the date financed through VW Credit, Inc.; (11) "[r]evenue recorded" by VWGoA "in association with CPO certification"; and (12) "[g]ross profit recorded" by VWGoA "in association with CPO certification."  (Ex. N, Glover Interrogatories, Interrogatory No. 1.)

Dated:  February 24, 2021

MCGUIREWOODS LLP

/s/ Frank Talbott V
Terrence M. Bagley (VSB No. 22081)
Kenneth W. Abrams (VSB No. 78216)
Frank Talbott V (VSB No. 86396)
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Tel:  804-775-4773
Fax:  804-698-2323
tbagley@mcguirewoods.com
kabrams@mcguirewoods.com
ftalbott@mcguirewoods.com

Respectfully submitted,

SULLIVAN & CROMWELL LLP

Robert J. Giuffra Jr. (*pro hac vice*)
Suhana S. Han (*pro hac vice*)
Adam R. Brebner (*pro hac vice*)
125 Broad Street
New York, NY  10004
Tel:  212-558-4000
Fax:  212-558-3558
giuffrar@sullcrom.com
hans@sullcrom.com
brebnera@sullcrom.com

Judson O. Littleton (*pro hac vice*)
1700 New York Avenue, NW
Washington, DC  20006
Tel:  202-956-7500
Fax:  202-293-6330
littletonj@sullcrom.com

*Counsel for Volkswagen Group of America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2021, I electronically filed the foregoing with the

Clerk of Court using the Court's CM/ECF filing system which will send notification of electronic

filing (NEF) to all counsel of record.

/s/ Frank Talbott V
Frank Talbott V (VSB No. 86396)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Telephone:  804-775-4773
Fax:  804-698-2313
ftalbott@mcguirewoods.com

*Counsel for Volkswagen Group of America, Inc.*