# **EXHIBIT C**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RICARDO R. GARCIA, DUANE K. GLOVER, PAUL E. JACOBSON, GAETANO CALISE, MYKHAYLO I. HOLOVATYUK, BRIAN GARCIA, PAUL THOMSON, and DAVID HARTMAN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. a/k/a AUDI OF AMERICA, INC., and VOLKSWAGEN AKTIENGESELLSCHAFF,<br><br>    Defendants. | CASE NO.: 1:19-cv-00331-LO-MSN<br><br>**RICARDO R. GARCIA'S FIRST SET OF INTERROGATORIES TO VOLKSWAGEN GROUP OF AMERICA, INC.** |

**TO: COUNSEL FOR DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC. a/k/a AUDI OF AMERICA, INC.**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Federal Rules"), Plaintiff Ricardo R. Garcia, by and through undersigned counsel, and subject to the definitions and instructions set forth hereinafter, issues the following interrogatories to Defendant Volkswagen Group of America, Inc. a/k/a Audi of America, Inc., to be answered as required by the Federal Rules.

**DEFINITIONS**

The following definitions and instructions shall apply to the interrogatories below. In the event of ambiguity in one or more of the following definitions, common usage and reference to any cited rules, statutes, or regulations should be used to provide the broadest interpretation of the term in question:

    1.    "You" or "VWGOA" means Defendant Volkswagen Group of America, Inc. a/k/a

1

Audi of America, Inc., as well as its subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on its behalf, at its instance, or under its control.

2. "VWAG" means Defendant Volkswagen Aktiengesellschaff, as well as its subsidiaries, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on its behalf, at its instance, or under its control.

3. "Volkswagen" means any one or more of VWGOA and/or VWAG, each as separately defined herein.

4. "Action" means and refers to the above-captioned action.

5. "Second Amended Complaint" means and refers to the Second Amended Class Action Complaint filed in the above-captioned action on March 27, 2020.

6. "Class Vehicles" means all Volkswagen-branded used cars sold in the United States from January 1, 2007 to March 21, 2019 that were initially used internally by Volkswagen and later resold by an authorized Volkswagen or Audi dealership as a Certified Pre-Owned ("CPO") vehicle and which has at least one of the following characteristics at the time it was resold by an authorized Volkswagen or Audi dealership as a Certified Pre-Owned ("CPO") vehicle: (a) the vehicle is a pre-series, zero series or pre-production car as those terms are more particularly described in paragraphs 34-36 of the Second Amended Complaint; (b) the vehicle is one of the 252 cars identified by Volkswagen in its so-called Part 573 Safety Recall Report filed with the NHTSA on May 16, 2018 (as amended on July 23, 2018); (c) the vehicle had been driven by one or more members of the automotive press and/or media; (d) the vehicle had been driven by one or more Volkswagen employees for short term use as part of the so-called Pool-

Fleet (i.e. vehicles assigned to a pool of vehicles that were loaned for the personal use of employees of VWGOA or VWAG prior to being leased to a particular Volkswagen employee); (e) the vehicle was altered after the original date of manufacture; (f) the vehicle's actual mileage identified by you in connection with the application for the original title was incorrect or otherwise inaccurate; and/or (g) the vehicle is one of the 113 cars identified by you in its so-called Part 573 Safety Recall Report filed with the NHTSA on September 25, 2019 (as amended on December 20, 2019).

7. "Pre-Production Vehicles" means Class Vehicles that are a pre-series, or zero series vehicle, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint.

8. "Pre-Series Vehicle" means a Class Vehicle that was produced under a method known as the production try-out, which was intended to prove reproducibility, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint.

9. "Zero-Series Vehicle" means a Class Vehicle produced at the stage after the Pre-Series stage to ensure the process and product quality is at a customer-acceptable product level, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint.

10. "NHTSA" means the United States National Highway Traffic Safety Administration.

11. "Recalled Vehicle" means a Class Vehicle that was one of the 252 cars identified by VWGOA in its so-called Part 573 Safety Recall Report filed with NHTSA on May 16, 2018 (as amended on July 23, 2018) or a Class Vehicle that was one of the 113 cars identified by Volkswagen in its so-called Part 573 Safety Recall Report filed with the NHTSA on September 25, 2019 (as amended on December 20, 2019).

12. "Press-Fleet Vehicle" means a Class Vehicle that was driven by one or more members of the press before being sold to the public.

13. "Pool-Fleet Vehicle" means a Class Vehicle that Volkswagen assigned to a general pool of vehicles for short-term loans to Volkswagen employees for their personal use before being sold to the public.

14. "Leased-Fleet Vehicle" means a Class Vehicle that was leased to one or more Volkswagen employees before being sold to the public.

15. "Series-Production Vehicles" means vehicles that Volkswagen mass produces and sells to consumers through dealerships, and which are more particularly described in paragraphs 34-36 of the Second Amended Complaint.

16. "VIN" means the Vehicle Identification Number of a vehicle.

17. "Communication" means the transmittal (in the form of facts, ideas, thoughts, opinions, data, inquiries or otherwise) and includes, without limitation, correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, and postings of any type.

18. The term "concerning" means constituting, evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or relating, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the inquiry or Request. Requests for "documents concerning" means any Documents which explicitly or implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a result of the subject matter of the Request, including all Documents which reflect, refer, record, are in regard to, in connection with, specify, memorialize, relate, describe, discuss, consider, constitute,

embody, evaluate, analyze, refer to, review, report on, comment on, impinge upon, or impact the subject matter of the Request.

19. "Document" means the original (or, if the information called for cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or retrieved, and shall mean, without limitation, any written, recorded or graphic matter, in any language, whether produced or reproduced or stored on paper, cards, tapes, films, computer, electronic storage devices or any other media and includes, without limiting the generality of the foregoing, papers, trade letters, envelopes, telegrams, cables, messages, correspondence, memoranda, notes, electronic mail ("e-mails"), text messages, instant Electronic Messages, reports, Studies, press releases, comparisons, books, accounts, checks, audio and video recordings, pleadings testimony, articles, bulletins, pamphlets, brochures, magazines, questionnaires, surveys, charts, newspapers, calendars, desk calendars, pocket calendars, lists, logs, publications, notices, diagrams, instructions, diaries, minutes of Meetings, corporate minutes, orders, resolutions, agendas, memorials or notes of oral Communications, whether by telephone or face-to-face, contracts, Agreements, drafts or proposed contracts or Agreements, memoranda of understanding, letters of intent, deal memoranda, transcriptions of audio or video recordings, computer tapes, computer diskettes or disks, or any other tangible thing on which any handwriting, typing, printing, photostatic, electronic or other form of Communication or information is recorded or reproduced, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions of drafts thereof, whether used or not.

20. "Identify" when used to refer to a natural person, shall mean to set forth that person's: (i) full name and title, if any; (ii) present or last known address; (iii) present or last known

business and home telephone number(s); and (iv) present or last known employer.

21.     "Identify" when used to refer to a document, shall mean: (i) the date of each document; (ii) the type of each such document (i.e. correspondence, memorandum, business record, etc.); (iii) the identity of the author(s) or preparer(s) of each such document; and (iv) the present location of each such document or copies thereof.

22.     "Including" is used to illustrate examples of documents that would be responsive to the request and should not be construed as limiting the request in any way.

23.     The terms "Plaintiffs" and "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

## RULES OF CONSTRUCTION

1.     "Any," "All," and "Each" shall be construed as any, all and each.

2.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring all responses within the scope of these Requests.

3.     The singular form of a noun or pronoun includes the plural form and vice versa.

4.     The masculine shall be construed to include the feminine and vice versa.

5.     The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

6.     A term or word defined herein is meant to include both the lower-and-upper-case reference to such term or word.

7.     The "knowledge," "information," "possession," "custody," and "control" by a Person shall be construed to include such Person's agents, representatives, and attorneys.

## **INSTRUCTIONS**

1. Each interrogatory set forth herein requires your personal knowledge, and all knowledge available to you by reasonable inquiry, including inquiry of your consultants, representatives, or agents.

2. If you are unable to fully, completely, and adequately answer the following interrogatories upon exercising due diligence to secure the information to do so, please so state the reason for your inability to provide full, complete, and adequate answers, specifying in each instance your inability to answer the remainder and stating whatever information and/or knowledge available to you regarding the unanswered portions of the interrogatories, and to the best of your knowledge the names, addresses, and telephone numbers of all persons, entities, and/or organizations where such information is, will be, or is believed to be located.

3. These interrogatories shall be deemed continuing and supplemental responses shall be required immediately upon receipt thereof if you obtain the documents before the time of trial.

4. If any interrogatory is deemed to call for the production of privileged information, you shall provide a log setting forth the following information: (i) the reason for withholding the information; (ii) the present custodian of the information; (iii) a summary of the general subject matter of the information; (iv) a statement of the basis upon which the asserted privilege is claimed; and (v) the individual interrogatory to which the information is responsive. Any information withheld under a claim of privilege must be preserved. If no information is withheld under a claim of privilege, so state.

5. To the extent that documents are produced in response to a given interrogatory, please Bates' number such documents and identify the specific documents and/or range of

documents by its particular Bates' number that are produced in response to any given interrogatory.

## RELEVANT TIME PERIOD

The relevant time period for each Interrogatory is from January 1, 2007 to the present (the "Relevant Time Period"), unless otherwise specifically indicated.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify each person to whom VWGoA has sold a Class Vehicle, as well as the year, model, and VIN of each Class Vehicle sold, the date of each sale, the dealership (if any) participating in the sale of the Class Vehicle, and a tracing of title of each Class Vehicle from VWAG through VWGOA, and to the ultimate purchaser.

**ANSWER:**

**INTERROGATORY NO. 2:** Identify which of the individuals identified in your Answer to Interrogatory No. 1 have accepted a settlement offer or buyback for their Class Vehicles.

**ANSWER:**

**INTERROGATORY NO. 3:** For each Class Vehicle identified in your Answer to Interrogatory No. 1, identify any other person besides the person listed as purchaser in your Answer to Interrogatory No. 1 who subsequently purchased the vehicle, the dates of transfer to any such person, and the dealership (if any) that sold the Class Vehicle to such person.

**ANSWER:**

**INTERROGATORY NO. 4:** For each Class Vehicle identified in your Answer to

8

Interrogatory No. 1, identify the specific subsection(s) ((a) – (g)) of the definition of "Class Vehicle" set forth above into which each such vehicle falls.

**ANSWER:**

**INTERROGATORY NO. 5:** For each Class Vehicle that Volkswagen used at any auto show, identify the name and dates of each auto show at which each Class Vehicle was so used and any company that performed preparation or modification work on the Class Vehicle for each such car show.

**ANSWER:**

**INTERROGATORY NO. 6:** For each Class Vehicle that Volkswagen has loaned to any person outside of Volkswagen, including but not limited to each Press-Fleet Vehicle, identify each such person to whom the vehicle loan was made, the dates each person possessed the Class Vehicle, the mileage put on the Class Vehicle during such possession, a copy of any contract or agreement governing such vehicle possession and/or use, and any condition report regarding the Class Vehicle from immediately before each loan period and from immediately after the vehicle was returned from such loan.

**ANSWER:**

**INTERROGATORY NO. 7:** For each Class Vehicle that was a Press-Fleet Vehicle, Pool-Fleet Vehicle, and/or a Leased-Fleet Vehicle, describe the disposition of the vehicle including whether it was destroyed, exported, or sold to the public, and for each vehicle sold to the public, identify the date of sale, by whom it was sold, to whom it was sold, whether the vehicle was titled in

9

Michigan, and who the current owner of the vehicle is if different from the purchaser when originally sold to the public.

**ANSWER:**

**INTERROGATORY NO. 8:** For each Class Vehicle originally titled in Michigan, state the number of miles identified on the title application as having been driven on such vehicle as of the date of the titling, the number of miles shown on the vehicle's odometer at the time of titling, and the number of miles shown in the then most-recent repair or service record for each such vehicle prior to the time of titling. In doing so, please identify the name, title, responsibilities and contact information for each person who signed any such title application containing incorrect mileage, including, but not limited to, the person who signed the title applications for Plaintiff Garcia's vehicle on December 16, 2015, and for Plaintiff Jacobson's vehicle on October 21, 2015, all as particularly described in paragraphs 56 through 62 of the Second Amended Complaint.

**ANSWER:**

**INTERROGATORY NO. 9:** For Series Production Vehicles imported by Volkswagen into the United States for each model/model year produced during the Relevant Time Period, identify the date in which such Series-Production Vehicles first entered the United States for intended resale to the public.

**ANSWER:**

**INTERROGATORY NO. 10:** For Series Production Vehicles imported by you into the United States for each model/model year produced during the Relevant Time Period, and from January

1st until the date identified in your Answer to Interrogatory No. 9 for each calendar year for each Series Production, identify the specific model/model year and VIN of each Volkswagen vehicle that entered the United States, the basis stated on form HS7 for each such vehicle to support its importation, the specific use to which each such vehicle was put after entering the United States, and the actual disposition of each such vehicle after importation including whether it was sold to the public. Identify the name, title and responsibilities of the person within VWGOA most knowledgeable about this topic.

**ANSWER:**


**INTERROGATORY NO. 11:** For each vehicle identified in your Answer to Interrogatory Number 10 as having been sold to the public, identify the date of sale, by whom it was sold, to whom it was sold, whether the vehicle was titled in Michigan, and who the current owner of the vehicle is if different from the original purchaser.

**ANSWER:**


**INTERROGATORY NO. 12:** Identify all persons involved in preparing the "Pre-Production Sales Report" described by Plaintiffs in paragraphs 92-94 of the Second Amended Complaint (please include individuals who participated in assembling relevant data for purposes of preparation the aforesaid report), including his or her full name, present or last known business affiliation and position, present or last known business and/or personal address, telephone number, and email address, his or her business affiliation and position at the time in question, the years in which he or she was in that position, and who his or her immediate supervisors and subordinates were at the time in question. Identify the name, title and responsibilities of the

person within VWGOA most knowledgeable about this topic.

**ANSWER:**

**INTERROGATORY NO. 13**: Identify the VIN of each vehicle identified in or in connection with the Report referenced in Interrogatory No. 12 and, for each VIN identified, state whether the vehicle was imported into the United States and, if so, the date of import and the ultimate disposition of the vehicle including whether it was destroyed, exported, or sold to the public

**ANSWER:**

**INTERROGATORY NO. 14**: For each Class Vehicle sold to one of the named Plaintiffs listed in the caption to the Second Amended Complaint, provide a tracing of title to each such vehicle from VWAG through VWGOA to the Plaintiff (and each person/entity who held title from the time title was transferred from VWGOA until title reached each named Plaintiff), including the dates of each transfer by which title made its way from VWAG ultimately to each named Plaintiff, and the consideration paid for each such transfer.

**ANSWER:**

**INTERROGATORY NO. 15**: Identify each person who submitted a title application stating that a Class Vehicle had only 10 miles on it at the time of titling when the Class Vehicle's odometer and/or service or repair records showed more than 10 miles at that time, including, for each person identified, his or her full name, present or last known business affiliation and position, present or last known business and/or personal address, telephone number, and email address, his or her business affiliation and position at the time in question, the years in which he

or she was in that position, and who his or her immediate supervisors and subordinates were at the time in question.

**ANSWER:**

**INTERROGATORY NO. 16**: Describe how Volkswagen tests vehicles and their component parts for compliance with Federal Motor Vehicle Safety Standards and how, if at all, that testing differs for Pre-Production Vehicles compared to Series Production Vehicles. Identify the name, title and responsibilities of the person within VWGOA most knowledgeable about this topic.

**ANSWER:**

**INTERROGATORY NO. 17**: Identify each Volkswagen executive or manager who maintained direct responsibility for overseeing the sale of "vehicles through auction to third-party dealers" referenced by VWGOA in paragraph 48 of its Answer to the Second Amended Complaint, including, for each person identified, his or her full name, present or last known business affiliation and position, present or last known business and/or personal address, telephone number, and email address, the years in which he or she was in that position, and who his or her immediate supervisors and subordinates were at the time in question.

**ANSWER:**

**INTERROGATORY NO. 18**: State in detail all facts upon which VWGOA bases its denial of the allegations in paragraph 51 of the Second Amended Complaint, and in doing so, identify the name, title and responsibilities of each person from whom the facts purportedly supporting this denial were obtained, the specific facts attributable to each such person, and identify the person

within VWGOA most knowledgeable about this topic.

**ANSWER:**


**INTERROGATORY NO. 19**: State in detail all facts upon which VWGOA bases its denial of the allegations in paragraph 94 of the Second Amended Complaint, and in doing so, identify the name, title and responsibilities of each person from whom the facts purportedly supporting this denial were obtained, the specific facts attributable to each such person, and identify the person within VWGOA most knowledgeable about this topic.

**ANSWER:**


**INTERROGATORY NO. 20**: In your submission to the NHTSA regarding the Recalled Vehicles, you indicate that the Recalled Vehicles are "zero series vehicles (very early production vehicles)" despite the fact that the VIN of the Recalled Vehicles identified in your NHTSA submissions appear to include much later production vehicles that presumably would have been produced well after the so-called Start of Production (i.e. digits 12-17 of the VINs are part of the vehicle identifier section that is supposed to include the sequential number assigned to the vehicle in order or production - last six digits of range of VIN identified for 2011-2016 VW Golf Recalled Vehicles, for example, is 138533). Please explain this apparently contradiction in detail and, in doing so, identify the name, title and responsibilities of the person within VWGOA most knowledgeable about this topic.

**ANSWER:**


**INTERROGATORY NO. 21**: Identify all persons and describe all acts and/or omissions being

14

referenced by VWGOA through its Seventh Affirmative Defense in which you claim, "Plaintiffs' claims are barred, in whole or in part, because any damages they allegedly sustained were caused by the acts and/or omissions of persons other than VWGoA and over whom VWGoA had no control." In doing so, identify the name, title and responsibilities of each person from whom the facts purportedly supporting this Seventh Affirmative Defense were obtained, the specific facts attributable to each such person, and identify the person within VWGOA most knowledgeable about this topic.

**ANSWER:**

**INTERROGATORY NO. 22**: State in detail all facts upon which VWGOA relies for its Eighth Affirmative Defense in which you claim, "Plaintiffs' claims are barred, in whole or in part, because VWGoA did not make false or misleading statements to them." In doing so, identify the name, title and responsibilities of each person from whom the facts purportedly supporting this Eighth Affirmative Defense were obtained, the specific facts attributable to each such person, and identify the person within VWGOA most knowledgeable about this topic.

**ANSWER:**

**INTERROGATORY NO. 23:** Identify every government agency of which you are aware that is investigating or that has investigated the conduct described in the Second Amended Complaint. For each agency identified, please describe the nature of the investigation, the name and contact information for the individuals within each government agency leading the investigation, and provide a description of the investigation (including any identifying investigatory case number or reference number), the date the investigation began, the date the

investigation ended (if applicable), and whether the investigation is ongoing.

**ANSWER:**

**INTERROGATORY NO. 24:** Please state whether you have terminated or otherwise disciplined any person as a result of or related to the information described in the Second Amended Complaint. If so, please identify the name, title, and responsibilities of the person terminated or disciplined, the current address, phone number and e-mail address of the person disciplined or terminated, the factual basis for the termination and/or discipline, the nature of the discipline (if termination inapplicable), the date of the termination and/or discipline, and the name, title and responsibilities of the immediate supervisor of the person disciplined.

**ANSWER:**

**INTERROGATORY NO. 25:** Please identify each person with whom you have had any communication regarding any offer of settlement related to the Recalled Vehicles. To the extent that any such communication occurred after the appointment of undersigned interim class counsel on November 15, 2019, identify the date of the communication, the person who initiated the communication, state whether the communication was written (or if oral whether memorialized in any document), and identify the content of any communication including, but not limited to, the terms of any such settlement offer made and the current status (i.e. whether that settlement offer was purportedly accepted, rejected, etc.).

**ANSWER:**

Dated: May 26, 2020

Respectfully submitted,

/s/ *Michael J. Melkersen*
Michael J. Melkersen (VSB#69828)
5 Surfside Road
Humacao, Puerto Rico 00791
Telephone:	540.435.2375
Email:	mike@mlawpc.com

Joseph F. Rice, Esq. (*Admitted Pro Hac Vice*)
Kevin R. Dean, Esq. (*Admitted Pro Hac Vice*)
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Telephone:	843.216.9000
Facsimile:	843.216.9440
Email:	jrice@motleyrice.com
	kdean@motleyrice.com

*Attorneys for Plaintiffs and Interim Class Counsel*

17

## CERTIFICATE OF SERVICE

I, Michael J. Melkersen, hereby certify that on this date I served a true and correct copy of the foregoing Plaintiff Ricardo Garcia's First Set of Interrogatories to Defendant Volkswagen Group of America, Inc. a/k/a Audi of America, Inc.

Dated:          May 26, 2020

>                               /s/ *Michael J. Melkersen*
>                               Michael J. Melkersen