# **<u>EXHIBIT D</u>**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| RICARDO R. GARCIA, DUANE K. GLOVER, PAUL E. JACOBSON, GAETANO CALISE, MYKHAYLO I. HOLOVATYUK, BRIAN GARCIA, PAUL THOMSON and DAVID HARTMAN on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. a/k/a AUDI OF AMERICA, INC., and VOLKSWAGEN AKTIENGESELLSCHAFF,<br><br>    Defendants. | Case No.: 1:19-cv-00331-LO-MSN<br><br><br>**PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION TO DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.** |

**TO:   COUNSEL FOR DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.**
**a/k/a AUDI OF AMERICA, INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), Plaintiffs, on behalf of themselves and all others similarly situated, by and through their undersigned counsel, propounds this Request for Production to Defendant Volkswagen Group of America, Inc. a/k/a Audi of America, Inc., to be answered as required by the Federal Rules.

## DEFINITIONS

The following definitions shall apply to these Requests.  In the event of ambiguity in one or more of the following definitions, common usage and reference to any cited rules, statutes, or regulations should be used to provide the broadest interpretation of the term in question:

1.    "You" or "VWGOA" means Defendant Volkswagen Group of America, Inc. a/k/a Audi of America, Inc., as well as its subsidiaries, parent companies, affiliates, predecessors, successors,

1

representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on its behalf, at its instance, or under its control.

2.     "VWAG" means Defendant Volkswagen Aktiengesellschaff, as well as its subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on their behalf, at their instance, or under their control.

3.     "Audi AG" means non-party AUDI AKTIENGESELLSCHAFF, as well as its subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting in its behalf, at its instance, or under its control.

4.     "VW Credit" means non-party VW Credit, Inc., as well as its subsidiaries, parent companies, affiliates, predecessors, successors, representatives, agents, employees, experts, investigators, attorneys, insurers, and/or any other person or entity acting on its behalf, at its instance, or under its control.

5.     "Volkswagen" means any one or more of VWGOA, VWAG, Audi AG, and/or VW Credit, each as separately defined herein.

6.     "Action" means and refers to the above-captioned action.

7.     "Second Amended Complaint" means and refers to the Second Amended Class Action Complaint filed in the above-captioned action on March 27, 2020.

8.     "Class Vehicles" means all Volkswagen-branded used cars sold in the United States from January 1, 2007 to March 21, 2019 that were initially used internally by Volkswagen and later resold by an authorized Volkswagen or Audi dealership as a Certified Pre-Owned ("CPO") vehicle and which has at least one of the following characteristics at the time it was resold by an authorized Volkswagen or Audi dealership as a Certified Pre-Owned ("CPO") vehicle: (a) the vehicle is a pre-series, zero

series or pre-production car as those terms are more particularly described in paragraphs 34-36 of the Second Amended Complaint; (b) the vehicle is one of the 252 cars identified by Volkswagen in its so-called Part 573 Safety Recall Report filed with the NHTSA on May 16, 2018 (as amended on July 23, 2018); (c) the vehicle had been driven by one or more members of the automotive press and/or media; (d) the vehicle had been driven by one or more Volkswagen employees for short term use as part of the so-called Pool-Fleet (i.e. vehicles assigned to a pool of vehicles that were loaned for the personal use of employees of VWGOA or VWAG prior to being leased to a particular Volkswagen employee); (e) the vehicle was altered after the original date of manufacture; (f) the vehicle's actual mileage identified by you in connection with the application for the original title was incorrect or otherwise inaccurate; and/or (g) the vehicle is one of the 113 cars identified by you in its so-called Part 573 Safety Recall Report filed with the NHTSA on September 25, 2019 (as amended on December 20, 2019).

9.      "Pre-Production Vehicles" means Class Vehicles that are a pre-series, or zero series vehicle, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint.

10.      "Pre-Series Vehicle" means a Class Vehicle that was produced under a method known as the production try-out, which was intended to prove reproducibility, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint.

11.      "Zero-Series Vehicle" means a Class Vehicle produced at the stage after the Pre-Series stage to ensure the process and product quality is at a customer-acceptable product level, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint.

12.      "NHTSA" means the United States National Highway Traffic Safety Administration.

13.      "Recalled Vehicle" means a Class Vehicle that was one of the 252 cars identified by VWGOA in its so-called Part 573 Safety Recall Report filed with NHTSA on May 16, 2018 (as amended on July 23, 2018) or a Class Vehicle that was one of the 113 cars identified by Volkswagen in its so-

called Part 573 Safety Recall Report filed with the NHTSA on September 25, 2019 (as amended on December 20, 2019).

14.     "Press-Fleet Vehicle" means a Class Vehicle that was driven by one or more members of the press before being sold to the public.

15.     "Pool-Fleet Vehicle" means a Class Vehicle that Volkswagen assigned to a general pool of vehicles for short-term loans to Volkswagen employees for their personal use before being sold to the public.

16.     "Leased-Fleet Vehicle" means a Class Vehicle that was leased to one or more Volkswagen employees before being sold to the public.

17.     "Series-Production Vehicles" means vehicles that Volkswagen mass produces and sells to consumers through dealerships, and which are more particularly described in paragraphs 34-36 of the Second Amended Complaint.

18.     "VIN" means the Vehicle Identification Number of a vehicle.

19.     "Communication" means the transmittal (in the form of facts, ideas, thoughts, opinions, data, inquiries or otherwise) and includes, without limitation, correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, and postings of any type.

20.     The term "concerning" means constituting, evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or relating, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the inquiry or Request. Requests for "documents concerning" means any Documents which explicitly or implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a result of the subject matter of the Request, including all Documents which reflect, refer, record, are in regard to, in connection with, specify,

4

memorialize, relate, describe, discuss, consider, constitute, embody, evaluate, analyze, refer to, review, report on, comment on, impinge upon, or impact the subject matter of the Request.

21.     "Document" means the original (or, if the information called for cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or retrieved, and shall mean, without limitation, any written, recorded or graphic matter, in any language, whether produced or reproduced or stored on paper, cards, tapes, films, computer, electronic storage devices or any other media and includes, without limiting the generality of the foregoing, papers, trade letters, envelopes, telegrams, cables, messages, correspondence, memoranda, notes, electronic mail ("e-mails"), text messages, instant Electronic Messages, reports, Studies, press releases, comparisons, books, accounts, checks, audio and video recordings, pleadings testimony, articles, bulletins, pamphlets, brochures, magazines, questionnaires, surveys, charts, newspapers, calendars, desk calendars, pocket calendars, lists, logs, publications, notices, diagrams, instructions, diaries, minutes of Meetings, corporate minutes, orders, resolutions, agendas, memorials or notes of oral Communications, whether by telephone or face-to-face, contracts, Agreements, drafts or proposed contracts or Agreements, memoranda of understanding, letters of intent, deal memoranda, transcriptions of audio or video recordings, computer tapes, computer diskettes or disks, or any other tangible thing on which any handwriting, typing, printing, photostatic, electronic or other form of Communication or information is recorded or reproduced, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions of drafts thereof, whether used or not.

22.     "Electronic Media" means any magnetic, optical, or other storage media device used to record ESI including, without limitation, computer memory, hard disks, floppy disks, flash memory devices, CDs, DVDs, Blu-ray disks, cloud storage (e.g., DropBox, Box, OneDrive, and SharePoint), tablet computers (e.g., iPad, Kindle, Nook, and Samsung Galaxy), cellular or smart phones (e.g., BlackBerry,

5

iPhone, Samsung Galaxy), personal digital assistants, magnetic tapes of all types or any other means for digital storage and/or transmittal.

23.      "ESI," "Electronically Stored Information," or Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of Electronic Data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts and/or transmittals, logs of electronic mail history and usage, header information, and deleted files), internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, .PDF and .TIFF files, batch files, native files and all ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment. Electronic Data includes, but is not limited to, any and all items stored on any electronic media, computers, networks or "cloud" computing services and all backup files containing electronically stored data. The term "Electronic Data" also includes the file, folder tabs, metadata, personal electronic backup media, including thumb drives, and/or containers and labels appended to or associated with any physical storage device associated with each such original and/or copy. In addition, the term "Electronic Data" includes all text messages, instant messages, internet messages, intranet messages, electronic bulletin board messages, blog entries,

website postings of any nature, and all other methods by which messages may be transmitted by or through electronic means.

24.    "Identify" when used to refer to a natural person, shall mean to set forth that person's: (i) full name and title, if any; (ii) present or last known address; (iii) present or last known business and home telephone number(s); and (iv) present or last known employer.

25.    "Identify" when used to refer to a document, shall mean: (i) the date of each document; (ii) the type of each such document (i.e. correspondence, memorandum, business record, etc.); (iii) the identity of the author(s) or preparer(s) of each such document; and (iv) the present location of each such document or copies thereof.

26.    "Including" is used to illustrate examples of documents that would be responsive to the request and should not be construed as limiting the request in any way.

27.    The terms "Plaintiffs" and "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

## RULES OF CONSTRUCTION

1.    "Any," "All," and "Each" shall be construed as any, all and each.

2.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring all responses within the scope of these Requests.

3.    The singular form of a noun or pronoun includes the plural form and vice versa.

4.    The masculine shall be construed to include the feminine and vice versa.

5.    The use of any tense of any verb shall also include within its meaning all other tenses of   that verb.

6.      A term or word defined herein is meant to include both the lower-and-upper-case reference to such term or word.

7.      The "knowledge," "information," "possession," "custody," and "control" by a person shall be construed to include such person's agents, representatives, and attorneys.

## INSTRUCTIONS

1.      You are requested to produce all documents in your possession, custody, or control that are described below. In so doing, please furnish documents that are in the possession of your partners, officers, employees, attorneys, accountants, representatives, or agents, or that are otherwise subject to your custody or control.

2.      Unless otherwise indicated, the Documents to be produced include all Documents prepared, sent, dated or received, or those that otherwise came into existence any time during the Relevant Time Period defined herein.

3.      The production by one person, party, or entity of a Document does not relieve another person, party, or entity from the obligation to produce his, her, or its own copy of that Document, even if the two Documents are identical.

4.      In producing Documents, you are requested to produce a copy of each original Document together with a copy of all non-identical copies and drafts of that Document. If the original of any Document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

5.      Documents shall be produced as they are kept in the usual course of business. All Documents shall be produced with a copy of the file folder, envelope, or other container in which the Documents are kept or maintained. All Documents shall be produced intact in their original files, without disturbing the organization of Documents employed during the conduct of the ordinary course of business and during the subsequent maintenance of the Documents.

8

6.      Documents not otherwise responsive to these Requests shall be produced if such Documents mention, discuss, refer to, or explain the Documents which are called for by these Requests, or if such Documents are attached to Documents called for by these Requests and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

7.      Each Document requested herein is to be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire Document to be relevant or responsive to these Requests. If you have redacted any portion of a Document, stamp the word "redacted" on each page of such Document. If the redaction is made on the basis of privilege, then a privilege log must be produced with the production in accordance with the Federal Rules and the instructions hereinafter set forth.

8.      If any Document responsive to these Requests is not produced in full or is redacted on grounds that it is privileged or otherwise claimed to be protected against production, You are requested to provide the following information with respect to each such Document or redaction:

        a.      date;

        b.      author(s), signatory(s) and each and every other person who prepared or participated in its preparation;

        c.      type of document (e.g., letter, chart, memorandum, etc.);

        d.      a description of its subject matter and length;

        e.      a list of those persons and entities to whom said Document(s) was disseminated, together with their last known addresses and the date or approximate date on which each such person or entity received it;

        f.      a list of all other persons to whom the contents of the Document have been disclosed, the date such disclosure took place, the means of such disclosure, and the present location of the document and all copies thereof;

g.     each and every person having custody or control of the document and all copies thereof; and

h.     the nature of the privilege or other rule of law relied upon and any facts supporting Your position to withhold production of such Document.

9.    If you assert an objection to any Request, you must nonetheless respond and produce any responsive documents or ESI that are not subject to the stated objection.  If you object to part of a Request of category, you must specify the portion of the Request to which you object and must produce Documents responsive to the remaining parts of the Request.

10.    Notwithstanding a claim that a Document is protected from disclosure, any Document so withheld must be produced with the portion claimed to be protected redacted.

11.    If any Document or ESI is known to have existed but no longer exists, has been destroyed, or is otherwise available, You must identify the Document or ESI, the reason for its loss, destruction or unavailability, the name of each person known or reasonably believed by You to have present possession, custody, or control of the original and any copy thereof (if applicable), and a description of the disposition of each copy of the document or ESI.

12.    If your response to any Request makes reference to and/or may be determined by examining documents you are producing in response to any Request or Interrogatory, you must specifically identify those responsive documents by Bates numbers in accordance with Fed. R. Civ. P. 34(b)(2).

## RELEVANT TIME PERIOD

The relevant time period for each Request is from January 1, 2007 to the present (the "Relevant Time Period"), unless otherwise specifically indicated, and shall include all Documents and information concerning such period, even though prepared or published outside of the Relevant Time Period. If a Document prepared before the Relevant Time Period is necessary for a correct or complete understanding of any document covered by a Request, you must produce the earlier or subsequent

document as well. If a Document is undated, the date of its preparation cannot be ascertained, and the Document is otherwise responsive to Request, the Document shall be produced.

## DOCUMENT REQUESTS

**REQUEST NO. 1:**   All non-privileged documents reviewed by Volkswagen in preparing its responses to Ricardo R. Garcia's First Set of Interrogatories to Defendant Volkswagen Group of America, Inc.

**REQUEST NO. 2:**   All documents that report, describe, summarize, analyze, discuss or comment on sales strategies, projected market shares, or the profitability of Volkswagen in the supply, manufacture, distribution of CPO vehicles, including all strategic plans, long-range plans and business plans of Volkswagen related to the sale of CPO vehicles.

**REQUEST NO. 3:**   All documents concerning your guidelines or standards of conduct concerning how you ensure that the vehicles you sell conform to applicable federal safety standards and that you carefully obtain and accurately report information regarding your vehicles, including your vehicles' actual mileage driven as then reflected on its odometer, when making application for an original certificate of title.

**REQUEST NO. 4:**   All documents concerning the process and procedure that you use to the extent that you provide any assistance to VWAG in affixing the label described in paragraph 30 of the Second Amended Complaint, or in determining if a label is required of the type described in paragraph 31 of the Second Amended Complaint, or regarding the role you play in the issuance of the so-called manufacturer's certificate of origin.

**REQUEST NO. 5:**   All documents and communications provided by or to any governmental or regulatory body pursuant to any investigation of the Class Vehicles that concerns or relates to the conduct described in the Second Amended Complaint, including, but not limited to, any documents that may have been turned over by Volkswagen to the Braunschweig prosecutor's office.

**REQUEST NO. 6:**   All documents and correspondence between you and the NHTSA involving Recalls 18V329, 19V614 and 19V679 or otherwise regarding the Recalled Vehicles.

**REQUEST NO. 7:**   All correspondence within Volkswagen involving Recalls 18V329, 19V614 and 19V679 or otherwise regarding the Recalled Vehicles.

**REQUEST NO. 8:**   All documents concerning safety testing protocols that Volkswagen utilizes, including those governing the testing of component parts, to ensure compliance with Federal Motor Vehicle Safety Standards.

**REQUEST NO. 9:**   All correspondence within Volkswagen referencing or discussing the sale of any of the Class Vehicles.

**REQUEST NO. 10:**   All correspondence within Volkswagen referencing or discussing the legality of selling and/or operating any of the Class Vehicles.

**REQUEST NO. 11:**   All correspondence between Volkswagen and any other entity referencing or discussing the sale of any of the Class Vehicles.

**REQUEST NO. 12:**   All correspondence between Volkswagen and any other entity referencing or discussing the legality of selling and/or operating any of the Class Vehicles.

**REQUEST NO. 13:**   All correspondence within Volkswagen referencing or discussing whether you could legally sell any of the Class Vehicles as "Certified Pre-Owned" vehicles.

**REQUEST NO. 14:**   All correspondence referencing or related to the Pre-Production Sales Report provided to Herbert Diess, CEO of VWAG, in August 2016, as more particularly described in paragraphs 92-94 of the Second Amended Complaint.

**REQUEST NO. 15:**   A copy of the Pre-Production Sales Report provided to Herbert Diess, CEO of VWAG, in August 2016, including all attachments/exhibits/appendices as more particularly described in paragraphs 92-94 of the Second Amended Complaint.

**REQUEST NO. 16:**   All correspondence within Volkswagen regarding the original *Der Spiegel* article published on or about December 7, 2018 (available at: https://www.spiegel.de/wirtschaft/volkswagen-hat-nicht-serienreife-autos-verkauft-diagnose-unklarer-bauzustand-a-00000000-0002-0001-0000-000161216151) or regarding any subsequent articles suggesting that Volkswagen had been illegally selling Pre-Production Vehicles or otherwise failing to comply with vehicle safety standards.

**REQUEST NO. 17:**   All correspondence regarding any attempt to identify the Volkswagen employee(s) who may have provided information to *Der Spiegel* for the above-referenced article or who may have provided information to others outside of Volkswagen regarding the at-issue Pre-Production Vehicles.

**REQUEST NO. 18:**   For each of the Class Vehicles owned by the named Plaintiffs in this action as more particularly described paragraphs 9-16 of the Second Amended Complaint, and for the time period starting from the date each such vehicle was originally manufactured  until the time immediately following the sale of each such vehicle to the named Plaintiffs herein, for each such vehicle please provide the following: all documents evidencing the importation; the manufacturer's certificate of origin; the original application for title; the original title; the application for each subsequent title; each subsequent title that issued; and the service records. To the extent that you maintain access to service records for the at-issue vehicles owned by named Plaintiffs for any time period after the date that each Plaintiff acquired the at-issue vehicles (by virtue of your dealers' obligation to provide you with copies and/or by virtue of shared databases regarding service records with your dealers), please also produce those service records as well.

**REQUEST NO. 19:**   All documents reflecting any inspection that purported to qualify the Class Vehicles owned by the named Plaintiffs in this action to be sold as a CPO vehicle.

**REQUEST NO. 20:**  All Carfax Report provided by your dealers at the time of purchase to each consumer who purchased a Recalled Vehicle and to each of the named Plaintiffs herein.  Please ensure to produce those Carfax Reports, if available, in the form in which they existed on the day of sale.

**REQUEST NO. 21**:  All correspondence between Volkswagen and Carfax referencing or relating to the Carfax Price Calculator contained with the Carfax reports, which is more particularly described in paragraphs 78-80 of the Second Amended Complaint.

**REQUEST NO. 22:**  All buyback letters or settlement offers sent to purchasers of vehicles identified in Recalls 18V329, 19V614 and 19V679, the Recalled Vehicles or of any of the other Class Vehicles, and any response received.

**REQUEST NO. 23:**  A Vehicle Identification Number (VIN) decoding sheet for all vehicles identified in Interrogatory No. 1.

**REQUEST NO. 24:**  All documents evidencing modifications or alterations by you of the Class Vehicles owned by the named Plaintiffs in this action, which cars are more particularly described paragraphs 9-16 of the Second Amended Complaint.

**REQUEST NO. 25:**  Completed form HS-7 with all attachments (blank form HS-7 available at: https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/hs7_r.v.7.pdf) that you completed and submitted to facilitate the importation of each Class Vehicle owned by the named Plaintiffs in this action, which cars are more particularly described paragraphs 9-16 of the Second Amended Complaint.

**REQUEST NO. 26:**  All documents evidencing engineering change orders (ECO), engineering change requests (ECR), or engineering change notices (ECN) or similar documents evidencing changes to the design, build or component parts of the Series Production Vehicles from the Pre-Production Vehicles of the same make/model/year that form a portion of the Class Vehicles as defined herein.

**REQUEST NO. 27:** A copy of any other lawsuit, other than the current action, that has been filed against you from March 2019 to the present to the extent that any such lawsuit makes similar claims to those alleged by Plaintiffs in this action.

**REQUEST NO. 28:** The manufacturer's certificate of origin, the original application for title, the original title, and documents evidencing the transfer of title from you until title is ultimately vested in the first consumer purchaser of any Press-Fleet Vehicle, Pool-Fleet Vehicle, or Leased-Fleet Vehicle, as well as a copy of the CARFAX report as it existed on the date of the sale of each at-issue Class Vehicle to the first consumer purchaser.

**REQUEST NO. 29:** To the extent not produced in response to Request No. 18, please provide all documents tracing the title to each Class Vehicle of the named Plaintiffs in this action from the time of manufacture to the time of transfer to each respective Plaintiff.

**REQUEST NO. 30:** An organizational chart(s) for the department within Volkswagen that investigated the alleged illegal sale by Volkswagen of Pre-Production Vehicles.

**REQUEST NO. 31:** Completed form HS-7 with all attachments that you completed and submitted to facilitate the importation of the Recalled Vehicles into the United States.

**REQUEST NO. 32:** All correspondence or other documents regarding damage or abuse of Press-Fleet Vehicles.

**REQUEST NO. 33:** All correspondence or other documents regarding damage or abuse of Pool-Fleet Vehicles.

**REQUEST NO. 34:** All correspondence or other documents regarding damage or abuse of Leased-Fleet Vehicles.

**REQUEST NO. 35:** All vehicle condition report that reflect the condition of each Press-Fleet Vehicle, Pool-Fleet Vehicle, or Leased-Fleet Vehicle prior to the time of any alteration to prepare those vehicles for resale to the public.

**REQUEST NO. 36:**  To the extent not produced in response to Request No. 18, please provide all service records for each of the Class Vehicles owned by the named Plaintiffs in this action.

**REQUEST NO. 37:**  All internal correspondence or other documents within Volkswagen discussing whether mileage on an original title application for any of the Class Vehicles should be reported differently than the actual mileage reflected on the odometer on each Class Vehicle, or otherwise discussing the issue of verifying (or failing to verify) the actual mileage on each Class Vehicle before reporting mileage for any such vehicle on the application for title.

**REQUEST NO. 38:**  All internal correspondence or other documents within Volkswagen discussing or referencing the legality of selling Pre-Production Vehicles, including any change in Volkswagen policy regarding when such Pre-Production Vehicles were permitted to be sold.

**REQUEST NO. 39:**  All internal correspondence or other documents within Volkswagen discussing or referencing the potential safety issues that may be implicated by selling Pre-Production Vehicles, Pre-Series Vehicles, or Zero-Series Vehicles.

**REQUEST NO. 40:**  All external correspondence or documents referencing the legality of selling Pre-Production Vehicles, Pre-Series Vehicles, or Zero-Series Vehicles.

**REQUEST NO. 41:**  All correspondence or documents discussing or referencing the timing of when mileage is put on vehicles used by Volkswagen for internal use and how that mileage impacts later classification of such vehicles as "new" or "used" or how such mileage/use impacts regulatory scrutiny of such vehicles.

**REQUEST NO. 42:**  An organizational chart(s) identifying the person(s) and position(s) of the individual(s) who signed the title applications for Plaintiff Garcia's vehicle on December 16, 2015, and for Plaintiff Jacobson's vehicle on October 21, 2015, as described in paragraphs 56-62 of the Second Amended Complaint.

**REQUEST NO. 43:**  All correspondence or documents discussing or referencing the scrapping, destruction or export of any of the Class Vehicles, or any Pre-Production Vehicles, Pre-Series Vehicles, Zero-Series Vehicles.

**REQUEST NO. 44:**  All correspondence or documents discussing or referencing damage or abuse of any of the Class Vehicles owned by the named Plaintiffs in this action.

**REQUEST NO. 45:**  All documents reflecting how the Class Vehicles owned by the named Plaintiffs in this action were used (i.e. by whom within and outside of Volkswagen Plaintiffs' vehicles were used; the specific time periods during which Plaintiffs' vehicles were used; the specific purpose of the use, etc.) prior to the sale of those Class Vehicles to Plaintiffs.

**REQUEST NO. 46:**  All correspondence or documents discussing or referencing the timing of when mileage is put on vehicles used by Volkswagen for internal use and how that mileage impacts later classification of such vehicles as "new" or "used" or how such mileage or use may impact regulatory scrutiny of those vehicles when such cars, at some later date, are (or are attempted to be) titled or registered or sold.

**REQUEST NO. 47:**  All correspondence or documents discussing whether vehicles imported by you are required to be scrapped, exported or otherwise cannot be sold to consumers if such vehicles were materially altered after the original date that such cars were manufactured.

**REQUEST NO. 48:**  All incoming and outgoing e-mail to and from your employee Tim Glynn regarding the scrapping of vehicles or the legality of reselling certain Volkswagen-branded cars to consumers.

**REQUEST NO. 49:**  All incoming and outgoing e-mail to and from your employee Chi-han Chen that references or relates to the selling of Pre-Production Vehicles, Pre-Series Vehicles or Zero-Series Vehicles, including, but not limited to, any correspondence with any VWAG or Audi AG employee(s)

17

that purportedly authorized or instructed Chen to sell such Pre-Production Vehicles, Pre-Series Vehicles or Zero-Series Vehicles.

**REQUEST NO. 50:**  All documents reflecting the meaning (i.e. decoder) of your so-called "PR" numbers or option codes used to refer to vehicles manufactured, imported or sold by you during the Relevant Time Period.

**REQUEST NO. 51:**  All documents indicating which PR numbers or option codes were used during the Relevant Time Period by you to indicate that any vehicle manufactured, imported or sold by you was a Pre-Production Vehicle, a Pre-Series Vehicle, or a Zero-Series Vehicle.

**REQUEST NO. 52:**  All documents discussing how PR numbers or option codes can be used to determine whether a given vehicle manufactured, imported or sold by you is a Pre-Production Vehicle, a Pre-Series Vehicle, or a Zero-Series Vehicle.

**REQUEST NO. 53:**  All documents reflecting any list of vehicles containing PR numbers or option codes used during the Relevant Time Period by you that indicate which vehicles imported by you was a Pre-Production Vehicle, a Pre-Series Vehicle, or a Zero-Series Vehicle, including but not limited to option codes S7Q, S99, SAO, SJO.

**REQUEST NO. 54:**  All documents reflecting any list of vehicles containing PR numbers or option codes used during the Relevant Time Period by you that indicate which vehicles imported by you was a Pre-Production Vehicle, a Pre-Series Vehicle, or a Zero-Series Vehicle, including but not limited to option codes S7Q, S99, SAO, SJO, and which also reflect the disposition of each such vehicle (i.e. scrapped, internal use only, use at port, exported, donated for charitable use, Pool-Fleet use, Leased-Fleet use, eTag use, transferred to VW Credit, auctioned to dealer for resale to public, etc.)

**REQUEST NO. 55:**  All documents referencing or reflecting GPS tracking of any Class Vehicle.

**REQUEST NO. 56:**  All logs, including excel spreadsheets, inventorying the Class Vehicles (or any portion thereof) that reflects how the Class Vehicles were used by you or VW Credit during the time that any of the Class Vehicles were owned by you or VW Credit.

**REQUEST NO. 57:**  All documents discussing or referencing the advantage of using a vehicle in your so-called eTag system before offering it for sale to authorized Volkswagen dealerships or for sale to the public.

**REQUEST NO. 58:**  All documents discussing or referencing legality of selling Pre-Production Vehicles, Pre-Series Vehicles, Zero-Series Vehicles to the public or to dealers to resell to the public.

**REQUEST NO. 59:**  All monthly and yearly summary reports for each month and year during the Relevant Time Period pertaining to Press-Fleet Vehicles, Leased-Fleet Vehicles, or Pool-Fleet Vehicles.

**REQUEST NO. 60:**  All documents reflecting your policy in effect during any given year during the Relevant Time Period regarding the sale, including by way of auction, of Pre-Production Vehicles, Pre-Series Vehicles, or Zero-Series Vehicles to your dealers for resale to the public, including any documentation reflecting any change to such policy and the reasons for any such change.

**REQUEST NO. 61:**  All documents reflecting any disciplinary action taken by Volkswagen against any of your employees for falsifying the mileage of any vehicle in making application for an original certificate of title.

**REQUEST NO. 62:**  All documents reflecting which vehicles were used by you in any auto show to the extent any such vehicle was later sold to one of your dealers or ultimately offered for sale to the public.

**REQUEST NO. 63:**  All documents reflecting modifications made to any vehicle used by you in any auto show to the extent any such vehicle was later sold to one of your dealers or ultimately offered for sale to the public.

19

**REQUEST NO. 64:**  All documents discussing or related to vehicles that were altered by you after the date of original manufacture, including but not limited to documents referencing or related to obligations that may arise from such alterations as described in paragraph 31 of the Second Amended Complaint.

**REQUEST NO. 65:**  All documents tracking the issuance and use of so-called "emissions exempt labels" including any documents that reflect the VIN of each vehicle on which an emissions exempt label was used.

**REQUEST NO. 66:**  An organizational chart(s) that reflect, during the Relevant Time Period, the name, position and/or managerial structure of those working in your so-called Pilot Hall.

**REQUEST NO. 67:**  An organizational chart(s) that reflect, during the Relevant Time Period, the name, position and/or managerial structure of those working on sourcing and marketing Volkswagen-branded CPO vehicles.

**REQUEST NO. 68:**  An organizational chart(s) that reflect, during the Relevant Time Period, the name, position and/or managerial structure of those working in your so-called Vehicle Administration department.

**REQUEST NO. 69:**  An organizational chart(s) that reflect, during the Relevant Time Period, the name, position and/or managerial structure of those overseeing your so-called eTag system.

**REQUEST NO. 70:**  An organizational chart(s) that reflect, during the Relevant Time Period, the name, position and/or managerial structure of those managing Volkswagen Group of America Chattanooga Operations, LLC.

**REQUEST NO. 71:**  An organizational chart(s) that reflect, during the Relevant Time Period, the name, position and/or managerial structure of those managing your so-called Customs Operations.

**REQUEST NO. 72:**  Provide a copy of your so-called Certified Preowned Manual (including all versions of or amendments to such manual in use at any time during the Relevant Time Period).

**REQUEST NO. 73:**  All documents reflecting internal discussions regarding how a designation of a CPO vehicle as a so-called one-owner car can increase its perceived value to consumers or otherwise impact the amount by which it can be sold.

**REQUEST NO. 74:**  All documents referencing or related to the importance of the so-called residual value of Volkswagen-branded used vehicles, how that residual value can impact demand and price at which Volkswagen-branded new vehicles can be sold, or how the sale of Volkswagen-branded CPO cars can enhance residual value.

**REQUEST NO. 75:**  All documents referencing or related to the benefits to you of increasing sales of CPO designated cars, including, but not limited to, any documents quantifying those benefits or comparing the benefits and/or profits of selling a CPO-designated vehicle with a non-CPO-designated vehicle.

**REQUEST NO. 76:**  Completed form HS-7, with all attachments, that you completed and submitted to facilitate the importation of any vehicle into the United States during the Relevant Time Period, however, please only do so for such HS-7 forms on which box 7 is checked, selected or otherwise marked.   (NOTE: Request No. 25 & 31 also require you to produce completed form HS-7 for the named Plaintiffs' vehicles and for the Recalled Vehicles, but those Requests, unlike this Request No. 76, require the production of ALL completed HS-7 forms for the specified cars.  This Request No. 76, by contrast, requires production of completed form HS-7 for ALL vehicles imported during the Relevant Time Period, BUT ONLY IF Box 7 on the completed and submitted HS-7 form was checked, selected or otherwise marked.  This Request No. 76 SHOULD NOT be read to limit or restrict Request No. 25 or Request No. 31).

**REQUEST NO. 77:**  All documents referencing or related to the issue of whether Pre-Production Vehicles, Pre-Series Vehicles or Zero-Series Vehicles conform to all applicable U.S. federal safety standards for motor vehicles.

**REQUEST NO. 78:**  All documents referencing or related to the issue of whether Volkswagen should disclose to prospective consumers or its dealers how CPO vehicles offered for sale were used prior to such sale (i.e. whether such CPO vehicles were used as part of your Press Fleet, Leased Fleet, Pool Fleet, etc.)

**REQUEST NO. 79:**  The Agreement for Audi/Volkswagen Certified Pre-Owned Programs" (the "Carfax Contract") between VWGOA and Carfax, Inc. ("Carfax"), effective June 1, 2011 (the "Effective Date"), which was signed by Richard Raines, President of Carfax, and Michael Lohscheller, CFO of VWGOA, as well as all amendments and/or modifications to the aforesaid Carfax Contract.

**REQUEST NO. 80:**  All correspondence between you and Carfax concerning the Carfax Contract, including any documents related to the termination and/or non-renewal of such Carfax Contract.

**REQUEST NO. 81:**  Any contract in place between you and Carfax during the Relevant Time Period that was in effect prior to the Carfax Contract.

**REQUEST NO. 82:**  All documents referencing or identifying any vehicle that you caused to be retrofitted or modified after using that vehicle internally if such vehicle was subsequently sold to one of your dealers.

**REQUEST NO. 83:**  All "Project Appropriation Request" forms that were completed for any vehicle(s) that was subsequently sold to one of your dealers.

**REQUEST NO. 84:**  All correspondence sent by you to any owner and/or lessee of any of the Recalled Vehicles.

**REQUEST NO. 85:**  All correspondence received by you from any owner and/or lessee of any of the Recalled Vehicles.

**REQUEST NO. 86:**  All internal or external correspondence or other documents discussing or referencing the Elektronischer Teilekatalog ("ETKA") and its ability to identify a vehicle as a Pre-Production Vehicle, or otherwise relating to the message that is sometimes generated by the ETKA

system that indicates "caution: preproduction model" or that otherwise warms that the "vehicle contains special equipment/fixtures that are not documented in the genuine parts catalogue."

**REQUEST NO. 87:**  All documents that reflect the as-built condition of the named Plaintiffs' vehicles, including any as-built documents from your so-called Daisy System.

**REQUEST NO. 88:**  All internal correspondence, studies, reports or other documents that reference or explain how you determined that the defect you identified in the Recalled Vehicles "relates to motor vehicle safety" and that "there could be an increased risk of a crash, fire or injury" for those who use a Recalled Vehicle as described by you in documents you submitted to the NHTSA. *See, e.g.,* NHTSA, Part 573 Safety Recall Report, 18V-329, Interim Owner Notification Letter, available at: https://static.nhtsa.gov/odi/rcl/2018/RIONL-18V329-0521.pdf (last visited Sept. 20, 2019).

**REQUEST NO. 89:**  All documents referencing or related to the differences between Pre-Production Vehicles and Series Production Vehicles and how those differences might impact safety, safety ratings, crash worthiness or regulatory compliance.

**REQUEST NO. 90:**  All documents that you contend provide support for your Third Affirmative Defense set forth in your Answer to the Second Amended Complaint in which you assert that Plaintiffs' claims are barred by the doctrine of estoppel.

**REQUEST NO. 91:**  All documents that you contend provide support for your Fourth Affirmative Defense set forth in your Answer to the Second Amended Complaint in which you assert that Plaintiffs' claims are barred by the applicable statute of limitations and/or the doctrine of laches.

**REQUEST NO. 92:**  All documents that you contend provide support for your Fifth Affirmative Defense set forth in your Answer to the Second Amended Complaint in which you assert that Plaintiffs' claims are barred by the doctrines of waiver, acquiescence or ratification.

**REQUEST NO. 93:**  All documents that you contend provide support for your Sixth Affirmative Defense set forth in your Answer to the Second Amended Complaint in which you assert that Plaintiffs' claims are barred by the doctrines of payment, release, accord or satisfaction.

**REQUEST NO. 94:**  All documents that you contend provide support for your Seventh Affirmative Defense set forth in your Answer to the Second Amended Complaint in which you assert that Plaintiffs' claims are barred because "any damages they allegedly sustained were caused by the acts and/or omissions of persons other than VWGoA and over whom VWGoA had no control."

**REQUEST NO. 95:**  All documents discussing or referencing any allegation made by any consumer (excluding named Plaintiffs' allegations in this Action) that you falsified the odometer reading of any CPO vehicle or that you reported inaccurate mileage on any application for the original title.

**REQUEST NO. 96:**  Any insurance policy, including all declarations pages setting forth coverage limitations, that that may provide insurance coverage to you for any of the claims asserted by Plaintiffs in this action.

**REQUEST NO. 97:**  All correspondence between you to your insurance provider relating to the claims asserted by the Plaintiffs in this action or relating to any request for insurance coverage for any such claims.

**REQUEST NO. 98:**  All correspondence discussing the so-called Buyback Guarantee Certificate referred to in the Carfax Contract, and which certificate is more particularly described in paragraph 74 of the Second Amended Complaint.

**REQUEST NO. 99:**  All correspondence or other documents that discuss the so-called "daily data file feed" referred to in the Carfax Contract and more particularly described in paragraph 74 of the Second Amended Complaint, especially any such documents that refer to the specific information provided by Volkswagen to Carfax for inclusion in the Carfax Reports, and the technical details of how that data was transferred or otherwise facilitated between Volkswagen and Carfax.

**REQUEST NO. 100:**  Please produce your Federal Income Tax Returns filed by VWGOA for each of the last three tax years, and upon filing your Federal Income Tax Return for the 2019 and 2020 tax years, please also produce each of those.

**REQUEST NO. 101:**  For each year during the Relevant Time Period, please produce a schedule or other documents reflecting the total amount of money paid by Volkswagen to R.L. Polk & Company for each year, and if available, for all years within the Relevant Time Period combined.

**REQUEST NO. 102:**  For each year during the Relevant Time Period, please produce a schedule or other documents reflecting the total amount of money paid by Volkswagen to Carfax, Inc. for each year, and if available, for all years within the Relevant Time Period combined.

**REQUEST NO. 103:**  Please produce the so-called Risk Sharing Agreement, including all amendments and/or versions in effect during the Relevant Time Period, which Risk Sharing Agreement is more particularly described in paragraph 20 of the Second Amended Complaint.

**REQUEST NO. 104:**  Please produce any videos or sales training materials by which Volkswagen trained its dealers and/or their salespeople how to market and sell CPO vehicles.

**REQUEST NO. 105:**  Please produce your so-called Certified Preowned Training Manual, including all amendments and/or versions in effect during the Relevant Time Period, by which Volkswagen trained its dealers and/or their salespeople how to market and sell CPO vehicles.

**REQUEST NO. 106:**  Please produce all advertising material (i.e. brochures, videos, television commercials, social media posts on Facebook, YouTube, Twitter, Instagram, webpages etc.) that you published during the Relevant Time Period to directly market your CPO vehicles to prospective customers.

**REQUEST NO. 107:**  Please produce all advertising material (i.e. brochures, videos, television commercials, social media posts on Facebook, YouTube, Twitter, Instagram, webpages etc.) that you

25

published during the Relevant Time Period to directly market your CPO vehicles to prospective customers.

**REQUEST NO. 108:**  Please produce any internal correspondence or internally created document that discusses, analyzes or attempts to quantify any increased profitability to Volkswagen or increased sales prices or residual value of your used-car sales as a result of the Carfax Price Calculator contained with the Carfax reports, which Carfax Price Calculator is more particularly described in paragraphs 78-80 of the Second Amended Complaint.

**REQUEST NO. 109:**  Please produce documents reflecting the fee that you were paid or were entitled to be paid for the extended warranty given to each named Plaintiff as a result of their purchase of a CPO-designated vehicle.

**REQUEST NO. 110:**  Please produce documents reflecting the gross profits that you earn on financing the average CPO vehicle through your financing venture with VW Credit.

**REQUEST NO. 111:**  Please produce documents reflecting the average increase in sales price and gross profit earned by you and your dealers on the sale of CPO-designated used cars compared to an otherwise similarly situated non-CPO-designated used car.

**REQUEST NO. 112:**  For each of the named Plaintiffs who purchased their Volkswagen-branded vehicle that is at-issue in this case from one of your dealers, please produce a copy of your franchise agreement with that dealer along with any other agreement(s) between you and that dealer that was in existence on the date when the corresponding named Plaintiff purchased his vehicle from your dealer. In doing so, please include any floor-plan financing agreement or any other contract that may provide you or one of your affiliates with a security interest in your dealers' vehicles, and which may result in you or your affiliates repossessing such vehicles in the event your dealer were to default on its financial obligations to you or one of your affiliates.

**REQUEST NO. 113:**  For each year during the Relevant Time Period, please produce documents that reflect your average gross profit on each CPO vehicle sold, and the number of CPO sales (provide documents separately reflecting these figures for both Volkswagen-branded CPO cars and Audi-branded CPO cars).

**REQUEST NO. 114:**  For each named Plaintiffs who purchased their vehicle from one of your dealers, please produce documents that trace or otherwise memorialize the transfer of any interest in-and-to named Plaintiffs' vehicle (prior to the time of Plaintiffs' purchase) from Volkswagen to your dealer, and that reflect the exact nature of that interest held by your dealer in such vehicle, as well the interest, if any, that was continued to be maintained by Volkswagen in-and-to such vehicle (i.e. security interest; right of dealer to reconvey vehicle to you on predetermined terms; dealers' inventory pledged as collateral for dealers' floor-plan financing, etc.).

**REQUEST NO. 115:**  Please produce your most-recent financial statements (balance sheet, income statement, statement of owners' equity) from which your net worth may be derived.

Dated:  May 28, 2020

Respectfully submitted,

/s/ *Michael J. Melkersen*
Michael J. Melkersen (VSB#69828)
5 Surfside Road
Humacao, Puerto Rico 00791
Telephone:    540.435.2375
Email:          mike@mlawpc.com

Joseph F. Rice, Esq. (*Admitted Pro Hac Vice*)
Kevin R. Dean, Esq. (*Admitted Pro Hac Vice*)
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Telephone:    843.216.9000
Facsimile:    843.216.9440
Email:          jrice@motleyrice.com
                kdean@motleyrice.com

*Attorneys for Plaintiffs and Interim Class Counsel*

## **CERTIFICATE OF SERVICE**

I, Michael J. Melkersen, hereby certify that on this date I served a true and correct copy of the foregoing Plaintiffs' First Requests for Production of Documents to Defendant Volkswagen Group of America, Inc. a/k/a Audi of America, Inc.

<u>Dated</u>:        May 28, 2020

/s/ *Michael J. Melkersen*_____
Michael J. Melkersen
