UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RICARDO R. GARCIA, DUANE K. GLOVER, PAUL E. JACOBSON, GAETANO CALISE, MYKHAYLO I. HOLOVATYUK, BRIAN GARCIA, PAUL THOMSON, and DAVID HARTMAN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VOLKSWAGEN GROUP OF AMERICA, INC. a/k/a AUDI OF AMERICA, INC., and VOLKSWAGEN AKTIENGESELLSCHAFT, <br><br> Defendants. | CASE NO.: 1:19-cv-00331-LO-MSN |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S DISCOVERY RESPONSES AND DOCUMENT PRODUCTION--*REDACTED***

Plaintiffs Ricardo R. Garcia *et al.* respectfully submit this memorandum in support of their Motion to Compel Defendant Volkswagen Group of America, Inc.'s ("VWGOA's") Discovery Responses and Document Production (Dkt. 140), and state in reply to VWGOA's Memorandum of Law in Opposition (Dkt. 157) ("Opp.") as follows.

**INTRODUCTION**

Plaintiffs allege in this nationwide and multiple-state class action that Defendants VWGOA and Volkswagen Aktiengesellschaft (VWAG) engaged in a scheme to defraud consumers by selling them pre-production (also known as "zero-series") vehicles that could not lawfully be sold in the United States, while falsely certifying their compliance with all Federal Motor Vehicle Safety Standards ("FMVSS") and also misrepresenting the vehicles' ownership,

driving, component readiness, and mileage histories in violation of federal and state consumer protection statutes and state common law. *See* Second Amended Class Action Complaint ("2AC") (Dkt. 101-1), ¶¶ 1-8 (Introduction); ¶¶ 117-377 (Claims for Relief).

Plaintiffs' motion to compel seeks production of documents and discovery responses that VWGOA largely does not dispute are relevant to their claims and/or class certification. Instead, VWGOA primarily argues that Plaintiffs have had enough discovery and that the additional information they seek is not proportionate to the needs of the case. *See*, *e.g.*, Opp. at 2 ("Because Plaintiffs' demands far outweigh any incremental benefit and are entirely disproportionate to the needs of this action, Plaintiffs' motion should be denied in its entirety."). The Court should reject these arguments for two reasons.

First, VWGOA overlooks or misstates important facts in attempting to establish that the discovery Plaintiffs seek is unimportant or duplicative. To take a glaring example, VWGOA contends that it does not have a custodian for documents relevant to Plaintiffs' Request for Production No. 64—concerning alteration of vehicles after the date of manufacture, as alleged in Second Amended Complaint ("2AC"), ¶ 31—because "it does not alter vehicles in the manner described in ¶ 31 of the Complaint . . . ." Opp. at 12 n.4. This is false. In its September 16, 2020 National Highway Traffic Safety Administration ("NHTSA") Safety Recall Report (filed herein as Dkt. 141-4), VWGOA stated that:

> Recalled vehicles are vehicles with special internal manufacturing codes identifying the vehicles as subject to internal use and certain documentation requirements. *Volkswagen has determined that documentation of these vehicles' actual build status may be incomplete or could not be verified. It is also possible that modification(s) were made to these vehicles during their internal use period for which documentation may be incomplete or could not be verified.*

Dkt. 141-4 (NHTSA Recall No. 20V-561) at 1 (emphasis added); *see also id.* at 4 (describing "missing documentation of the actual build status and unknown potential for modifications made

during internal use," and concluding that the "established processes to ensure complete documentation of build status and/or modification(s), if any, made during internal vehicle use were not properly followed.").

Second, VWGOA's assessment of proportionality is one-sided, focusing entirely on the alleged burden and cost to itself, *see* Opp. at 4 ("VWGOA has to date produced more than 92,000 documents, comprising more than 600,000 pages and 290 GB of data."), while ignoring the needs of Plaintiffs' case that is the focus under the federal rules:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). This case is a national class action on behalf of at least 1,500 consumers whose Volkswagen-branded vehicles were unlawfully and/or fraudulently sold because VWGOA falsely certified their compliance with Federal Motor Vehicle Safety Standards ("FMVSS") and/or falsely represented the vehicles' mileage and driving histories. These practices, which have been the subject of three NHTSA safety recalls, implicate both the safety of the Class Vehicles and all or much of the purchase prices class members paid. VWGOA's omission of this context is fatal to its contention that the discovery Plaintiffs seek is not proportional to the needs of this case. *See*, *e.g.*, *U1it4Less, Inc. v. Federal Express Corp.*, 2014 WL 12779557, at *1 (S.D.N.Y. Oct. 31, 2014) ("I find that the information plaintiff seeks is otherwise unavailable to plaintiff, and that the burden or cost to the defendants—who have the resources to comply with plaintiff's demands (and who have not suggested otherwise)—is not out of proportion to the amount in controversy in this putative class action involving allegations

3

of a fraudulent and widespread course of conduct, affecting numerous shipments over an extended period of time.") (internal quotation marks and citation omitted).

For both of these reasons and as set forth more fully below and in the moving papers, Plaintiffs' motion to compel should be granted.

## ARGUMENT

### A. Plaintiffs' Search-Term Strings Seek Relevant Information that is Proportionate to the Needs of the Case.

The Court should order VWGOA to produce documents captured by Plaintiffs' three disputed search strings. VWGOA contends that each search string does not seek relevant documents or is disproportionate to the needs of the case. *See* Opp. at 15-16. This is incorrect.

First, Plaintiffs' Search String 11_5 asks VWGOA to perform the following term search concerning subject class vehicles and federal safety standards:

> (0-series or 0series or "0 series" or "zero series" or "zero-series" or pre-series or preseries or "pre series" or preproduction or "pre production" pre-production or "early production") AND ("Federal Safety Standards" or FSS or "Federal Motor Vehicle Safety Standards" or FMVSS)

Dkt. 157-12 (VWGOA Ex. K1) at Search String 11_5. VWGOA does not dispute the relevancy of these search terms. Indeed, it agrees to perform searches using these terms, only with an artificially limiting 40-word connection between the term sets. *See* Opp. at 17. The Court should reject this artificial limitation both because VWGOA does not and cannot justify its proposed proximity requirement, and because Plaintiffs' broader request should not be deemed excessive or disproportionate when it generates 122 unique document hits. *See* Dkt. 157-12 at Search String 11_5. This is not an excessive or disproportionate production for search terms whose relevancy VWGOA does not and cannot dispute.

Second, Plaintiffs' Search String 17 asks VWGOA to perform the following term search concerning unlawfully-sold Class vehicles and a Volkswagen foreign production facility:

((modif* w/5 vehicle*) and Puebla)

Dkt. 157-12 at Search String 17. VWGOA contends that these terms do not connect to any of Plaintiffs' requests for production and are duplicative of other searches it has agreed to perform. *See* Opp. at 18. Both contentions are incorrect. These terms relate to Plaintiffs' Request for Production No. 12, seeking correspondence discussing the legality of selling and/or operating any of the class vehicles. *See* Dkt. 157-5 (VWGOA Ex. D) at Request No. 12. This connection is demonstrated in a discovery document showing that ██████████████████████████████████████████████████████████████████████████████████████████████████. *See* Reply Declaration of Michael J. Melkersen, Esq. ("Melkersen Reply Decl."), Ex. Q (VWGoA-Garcia-00450475-476). Plaintiffs seek through this Search String to obtain *all* documents possibly making this connection. This request should not be deemed excessive or disproportionate when it generates 224 unique document hits. *See* Dkt. 157-12 at Search String 17. VWGOA should be ordered to perform this search based on the demonstrated relevancy of the terms and the lack of excessive or undue burden.

Third, and finally, Plaintiffs' Search String 29 asks VWGOA to perform the following term search concerning class vehicles that were subject to the post-Complaint filing September 2020 NHTSA safety recall:

20V-561 or 20V561 or 01E9

Dkt. 157-12 at Search String 29. VWGOA contends that these search terms do not relate either to Plaintiffs' Requests for Production or to the Second Amended Complaint. *See* Opp. at 19-20.

These search terms relate to both. As set forth in Plaintiffs' motion and above, *supra* at 2, this recall concerned "vehicles with special internal manufacturing codes identifying the vehicles as subject to internal use and certain documentation requirements" where Volkswagen "determined that documentation of these vehicles' actual build statues may be incomplete or could not be verified" and that "[i]t is also possible that modification(s) were made to these vehicles during their internal use period for which documentation may be incomplete or could not be verified." Dkt. 141-4 (NHTSA Recall 20V-561). Plaintiffs' Request for Production No. 64 seeks documents related to "vehicles that were altered by you after the date of original manufacture . . . ." Dkt. 157-5 at Request No. 64. The Second Amended Complaint is replete with references to vehicle modifications and failure to track modifications before sale. *See* 2AC, ¶¶ 36, 43, 89, 97, 99, 101.b. The NHTSA safety recall of such vehicles thus is relevant to Plaintiffs' claims, and the fact that this recall did not occur until *after* Plaintiffs' Second Amended Complaint was filed only underscores the urgency of the claims and this discovery.

For all of the reasons set forth, the Court should order VWGOA to perform searches for Plaintiffs' Search Strings 11_5, 17, and 29.

> **B.** **The Documents Custodians Plaintiffs Identified are Likely Sources of Relevant and Non-Duplicative Information.**

The Court also should order VWGOA to produce documents for the 23 persons or positions identified in Plaintiffs' motion. *See* Pltfs' Memo of Law (Dkt. 141) at 7-8. Defendants argue in opposition that this discovery should be disallowed because the 36 document custodians it has chosen or agreed to are enough, and anything else is disproportionate to the needs of the case and/or duplicative. *See* Opp. at 10 ("VWGoA has already agreed to 36 custodians who adequately cover the relevant issues in this case."). This is incorrect. There is no strict numerical limit to the number of document custodians that may be needed in a case. *See*, *e.g.*,

*U.S. ex rel. Bonzani v. United Technologies Corp.*, 2020 WL 7339916, at *9 (D. Conn. Dec. 14, 2020) (ordering ESI document search of 45 custodians listed in defendant's initial disclosures). Nor are the proposed custodians Plaintiffs identify duplicative of those whom VWGOA has included.

First, David Mayer and Kathryn Joiner were Manager and Customs Specialist in VWGOA Chattanooga Operations, LLC's customs department between 2014 and 2018, when many of the class vehicles were sold. Mayer and Joyner both were ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Melkersen Reply Decl., Ex. R (VWGoA-Garcia-00045818-823). VWGOA contends that discovery as to Mayer and Joiner is duplicative because it already has designated customs officials Patrick Stowe and John Ellefson as custodians. *See* Opp. at 12. Ellefson, however, appears to have been employed by Defendant VWAG, *not* VWGOA, and Stowe was not employed in VWGOA customs until 2017, after most class vehicles were sold. *See* Patrick Stowe Linked-In Profile (available at https://www.linkedin.com/in/patrick-stowe-93329b7/) (last visited Feb. 24, 2021); John Ellefson Linked-In Profile (available at https://www.linkedin.com/ in/john-ellefson-2a18246/) (last visited Feb. 24, 2021). Thus, Mayer and Joiner are likely to be critical sources of documents based on their involvement in the class vehicle sales at issue and in VWGOA's internal audit investigation of the same.

Second, Executive Board Members who signed Project Appropriations, including but not limited to Michael Horn, who was CEO of VWGOA for much of the time period covered by Plaintiffs' Complaint, are sources of relevant documents because they, including Horn, are involved in internal communications concerning how differences between Volkswagen series

and pre-production vehicles can undermine the latter's safety ratings. Plaintiffs allege facts concerning this occurrence. *See* 2AC, ¶ 36. Discovery produced to date bears out that Horn was ████████████████████████████████████████████ *See* Melkersen Reply Decl., Ex's S-T (VW-MDL2672-21293472, VW-MDL2672-21293473). He is thus appropriately identified as a document custodian for this action.

Third, <u>Custodian for Plaintiffs' RFP #64</u>—post-manufacture alterations to vehicles— addresses a topic central to many of Plaintiffs' claims. VWGOA responds that it "has already informed Plaintiffs that it does not have documents responsive to Request No. 64, because it does not alter vehicles in the manner described in ¶ 31 of the Complaint, and it therefore is unable to identify a custodian likely to possess documents responsive to Request No. 64." Opp. at 12 n. 8. *This is false*, as set forth above, *supra* at 2, 5-6. In its September 16, 2020 NHTSA Safety Recall Report, VWGOA stated that:

> Recalled vehicles are vehicles with special internal manufacturing codes identifying the vehicles as subject to internal use and certain documentation requirements. *Volkswagen has determined that documentation of these vehicles' actual build status may be incomplete or could not be verified. It is also possible that modification(s) were made to these vehicles during their internal use period for which documentation may be incomplete or could not be verified.*

Dkt. 141-4 (NHTSA Recall No. 20V-561) at 1 (emphasis added); *see also id.* at 4 (describing "missing documentation of the actual build status and unknown potential for modifications made during internal use," and concluding that the "established processes to ensure complete documentation of build status and/or modification(s), if any, made during internal vehicle use were not properly followed."). VWGOA's refusal herein to identify a custodian on the topic of post-manufacture alterations to vehicles on the grounds that it does not engage in this practice, when it said just the opposite in its NHTSA safety recall notice, should not be permitted.

Plaintiffs respectfully request that the Court order VWGOA to identify custodians on this and the other topics set forth in Plaintiffs' motion.

Fourth, Kai Ly, Andrew D'haenens, and Walter Keith Hammock all were involved in important discussions concerning the legality of the sale of vehicles encompassed within Plaintiffs' Class definition. VWGOA does not dispute this, but instead contends that their documents are not needed because its separately-identified Quality Assurance Custodians—Chi-Han Chen, Richard Fuentes, and Ana Wolyniec de Freitas—are sufficient. *See* Opp. at 13. They are not. Kai Ly (*employed by VW-Canada*) and Andrew D'haenens are critical because they ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* Melkersen Reply Decl., Ex's U-V (VWGoA-Garcia-00044363-369; VWGoA-Garcia-00244158-170). Hammock was Chen's successor as VWGOA's "Conformity of Production Coordinator," and thus is likely to be a source of *different* relevant documents concerning occurrences at different times, even if related to some of the same subject matter. The Court thus should order VWGOA to produce documents for these proposed custodians.

For all of the reasons set forth above and in Plaintiffs' moving papers, the Court should compel VWGOA to produce documents for all of the proposed custodians Plaintiffs have identified.

### C. VWGOA's Settlement Agreements and Communications with Putative Class Members are Relevant to the Fair Conduct of this Action.

The Court should order VWGOA to produce the settlement agreements it has entered into with putative class members releasing their claims in this action and all related communications. VWGOA contends that "such agreements and communications between VWGoA and its

9

customers—which contain personal identifying information about absent putative class members—are not relevant to any issue in this litigation, nor is their production proportional to the needs of discovery." Opp. at 21. Each of these contentions is incorrect.

First, these settlement agreements and communications covering putative class members' claims *in this action* are relevant to the fair conduct of this action. *See* Fed. R. Civ. P. 23(d)(1)(B) ("the court may issues orders . . . to protect class members and fairly conduct the action . . . ."); Manual for Complex Litigation, Fourth (Fed. Jud. Ctr. 2004), § 21.12 at 247-48 ("Direct communications with class members . . . can lead to abuse. For example, defendants might attempt to obtain releases from class members without informing them that a proposed class action complaint has been filed.").

Defendants admit that they are obtaining releases of class members' claims through settlement agreements and cover letters that vaguely reference the existence of a class action lawsuit, but do not disclose any of the following:

- the captioned name of this action;
- the Court in which it is pending;
- the case docket number; or
- the names, law firms, or contact information of Interim Class Counsel.

*See* Opp. at 23 and VWGOA Ex's S, T, and V. Instead, for putative class members to access this information, VWGOA requires them either to have a CD-ROM drive or else to make a request for a separate document to be mailed. *Id.* These are telltale signs of abuse. *See*, *e.g.*, *County of Santa Clara v. Astra USA, Inc.*, 2010 WL 2010 WL 2724512, at *6 (N.D. Cal. July 8, 2010) (defendant's letter seeking releases and mentioning class action was materially misleading because it "did not contain the [class] complaint . . . , did not describe the claims, did not contain

the current status of the case, [and] did not provide contact information for the plaintiffs' attorneys . . . .").

Plaintiffs' discovery requests for the actual settlement agreements and communications are essential for the Court to make findings on the abuse the foregoing suggests and to order corrective action. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981) ("[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential for interference with the rights of the parties.").

Courts in the Fourth Circuit have held that class representative plaintiffs must identify the putative class members who have been subject to settlement communications by the defendant. *See*, *e.g.*, *Jones v. Fidelity Resources, Inc.*, 2020 WL 2112141, at *4 (D. Md. May 4, 2020) ("[O]n the current record, the Court is left only with allegations made by one class member, who insists on remaining anonymous. This Court would be unable to make the significant finding required to invalidate a litigant's decision to opt out on the basis of anonymous allegations that were not subject to appropriate discovery and cross-examination."). Plaintiffs' discovery requests for these settlement agreements and communications thus seek highly relevant information that is proportionate to the needs of the case in maintaining its integrity and fairness as a putative class action.

Second, the Court should reject for the same reason VWGOA's contention that its settlement agreements and communications contain "personal identifying information about putative class members . . . ." Opp. at 21. The putative class members' names and contact information are not confidential information. To the extent any settlement agreements or communications contain personal identifying information such as Social Security or taxpayer-

11

identification numbers, date of birth, the name of a minor, or a financial account number, that information is subject to redaction requirements upon any filing with the Court. *See* Fed. R. Civ. P. 5.2(a). The presence of any personal identifying information, however, is not grounds for shielding from discovery these settlement communications compromising putative class members' claims in this action.

### D. VWGOA Should be Required to Answer Plaintiff Glover's 11 Interrogatories.

The Court should order VWGOA to answer Plaintiff Glover's set of eleven (11) interrogatories. VWGOA's arguments in opposition to answering this discovery are misleading in several key respects.

First, Plaintiffs do not ask the Court to hold that they are entitled to serve 240 interrogatories on VWGOA. *See* Opp. at 25. They ask that the Court permit Plaintiff Glover to serve 11 interrogatories after Plaintiff Ricardo Garcia previously served a set of 25 interrogatories. *See* Dkt. 141-15 (Glover interrogatories and responses); Dkt. 157-4 (R. Garcia interrogatories). This is consistent with the federal rules, which provide that "*a party* may serve on any other party no more than 25 written interrogatories," Fed. R. Civ. P. 33(a) (emphasis added), and with this Court's Order likewise providing that "[a] party . . . may not serve on any other party more than thirty (30) interrogatories, including parts and subparts, without leave of court." Dkt. 119 (8/10/20 Order). VWGOA does not demonstrate that these Plaintiffs' service of a combined 36 interrogatories is disproportionate to the needs of the case or is otherwise excessive in light of Rule 33 and the Court's Order. The Court need not and should not rule on the hypothetical question of 240 interrogatories raised by VWGOA, when it is not presented, and should instead require answers to the 11 interrogatories Plaintiff Glover has actually served.

Second, Plaintiffs' motion to compel is not untimely. VWGOA contends that Plaintiffs were obligated to submit any dispute concerning the number of interrogatories by October 30 or December 14, 2020. *See* Opp. at 25. This is incorrect. VWGOA relies upon the parties' Proposed Discovery Plan, which stated that the parties "are conferring regarding reasonable numerical limits per side on interrogatories" and that "[i]f no agreement can be reached, the parties shall submit their dispute to the Court on or before October 30, 2020." Dkt. 120 (Proposed Discovery Plan), ¶ 7. This did not require Plaintiffs to submit the instant dispute to the Court at that time because the governing Order at that time (and at this time) provides, as set forth above, that "[a] party . . . may not serve on any other party more than thirty (30) interrogatories[.]" Dkt. 119. This Order permits precisely the discovery that Plaintiffs here are seeking to take. Plaintiffs thus did not need to file a motion to obtain this discovery in accordance with the Court's Order unless and until VWGOA refused to provide it.

Finally, the Court should reject VWGOA's argument that Plaintiffs collectively should be subject to a strict 30 interrogatories "per side" limit. VWGOA contends that because Plaintiffs "share common interests in this putative class action lawsuit and they are represented by the same counsel," they should be limited to a combined 30 interrogatories. Opp. at 26. This argument fails not only because it is contrary to the per-party language of Rule 33 and the Court's Order, but also because it ignores the context and needs of this case as a nationwide class action concerning unlawful and fraudulent sales that implicate both vehicle safety and substantial expenditures by each of 1,500 or more putative class members. In this setting, either applying a "per party" limit or else recognizing the need for each side to be permitted to serve more than the 30-interrogatory limit is appropriate. *See*, *e.g.*, *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006) (applying per-party limit in consumer debt-collection class action); *Zamora v.*

*D'Arrigo Bros. Co. of Calif.*, 2006 WL 931278, at *4 (N.D. Cal. April 11, 2006) (applying per-party limit in Title VII employment discrimination class action case); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 13756255, at *8 (N.D. Cal. Oct. 22, 2015) (summarizing authority for increasing interrogatories limit in putative class action cases). The Court thus should order VWGOA to answer Plaintiff Glover's 11 interrogatories.

## CONCLUSION

For all of the reasons set forth herein, Plaintiffs' motion to compel should be granted.

Dated: February 25, 2021

                                                        Respectfully submitted,

/s/ *Michael J. Melkersen*
Michael J. Melkersen, Esq.
5 Surfside Road – Palmas Del Mar
Humacao, Puerto Rico 00791
Telephone: 540.435.2375
Facsimile: 540.740.8851
Email: mike@mlawpc.com

Nathan D. Finch, Esq.
Joseph F. Rice, Esq. (*Admitted Pro Hac Vice*)
Kevin R. Dean, Esq. (*Admitted Pro Hac Vice*)
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Telephone: 843.216.9000
Facsimile: 843.216.9440
Email: nfinch@motleyrice.com
            jrice@motleyrice.com
            kdean@motleyrice.com

*Attorneys for Plaintiffs and Interim Class Counsel*

## CERTIFICATE OF SERVICE

I, Michael J. Melkersen, hereby certify that on this date I served a true and correct copy of the foregoing Reply Memorandum in Support of Motion to Compel upon counsel of record for Defendants by filing via the Court's Electronic Case Filing (ECF) system.

Dated:	February 25, 2021

/s/ *Michael J. Melkersen*
Michael J. Melkersen