IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| RICARDO R. GARCIA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-331-LO-MSN |
| | ) | |
| VOLKSWAGEN GROUP OF AMERICA, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL RESPONSE TO PLAINTIFFS' FIRST REQUEST TO ADMIT
TO VW AG AND THE PRODUCTION OF CERTAIN VEHICLE DATA**

Defendants Volkswagen Group of America, Inc. ("VWGoA") and Volkswagen

Aktiengesellschaft ("VW AG," and together with VWGoA, "Defendants") respectfully submit this

memorandum of law in opposition to Plaintiffs' Motion to Compel Responses to Plaintiffs' First

Request to Admit and the Production of Certain Vehicle Data.

## PRELIMINARY STATEMENT

Still dissatisfied with what more than a year of discovery has revealed, Plaintiffs

filed the Motion as their latest attempt to make this case about something other than the merits of

the claims pleaded in their Second Amended Complaint ("Complaint"). This time, Plaintiffs seek

discovery about (i) entirely unrelated historical conduct by VW AG relating to the emissions of

excess nitrogen oxide ("NOx") from certain diesel vehicles, and (ii) vehicles that are indisputably

outside the scope of the Complaint's multi-pronged putative class definition.

Despite Plaintiffs' desperate attempts to obscure what is really at stake, this case

involves less than 1,700 vehicles identified in discovery to date (even under Plaintiffs'

impermissibly broad class definition), and the vast majority of those vehicles have no connection

to Plaintiffs' core allegations: less than 70 are pre-production vehicles, and less than 200 were subject to a recall.  Notably, Defendants have already offered to buy back every one of the 196 recalled vehicles.

*Discovery Regarding VW AG's Diesel Emissions Issues.*  Plaintiffs' Motion seeks to compel VW AG to answer irrelevant requests to admit concerning the widely publicized issues, made public in September 2015, involving excess NOx emissions from certain Volkswagen diesel cars.  Defendants swiftly reached comprehensive resolutions regarding that conduct, including with a nationwide class of affected consumers, and VW AG entered a guilty plea in January 2017, in which it admitted to installing an emissions-related "defeat device" in its diesel cars sold in the United States.  The problem for Plaintiffs, however, is that *this* case has nothing to do with those diesel emissions issues—or even with emissions at all.  In fact, nowhere in Plaintiffs' sprawling, 377-paragraph Complaint do they make a single allegation—not one—regarding emissions noncompliance of any of the putative class vehicles.  Plaintiffs' sole attempt to justify this irrelevant discovery is their contention that, in this action, Plaintiffs also allege that Defendants "illegally import[ed] cars and [sold] them."  (Mot. at 11.)  But the mere fact that Plaintiffs (wrongly) allege that Defendants "imported" vehicles that should not have been sold to consumers cannot justify irrelevant discovery requests into emissions issues that have no connection to the Complaint.  Nothing in Rule 26 countenances such discovery, and this Court should reject Plaintiffs' attempt to turn this litigation into an irrelevant and highly prejudicial sideshow about irrelevant past emissions issues that were the subject of other litigation (including nationwide class action litigation) that Defendants have already resolved.

*Discovery Regarding Vehicles Outside the Putative Class.*  The remainder of the Motion expressly seeks information about vehicles that are ***not*** part of the putative class as defined

in the Complaint, and are thus also irrelevant to Plaintiffs' claims.  Specifically, Plaintiffs seek (i) a report from the Integration Point system of *all* vehicles imported by VWGoA as non-FMVSS-conforming vehicles, as well as (ii) a list of *all* imported "Aktennotiz" vehicles (vehicles ordered using VW AG's Aktennotiz process) sold Certified Pre-Owned ("CPO") and their "PR codes" (production codes that reflect various attributes of a vehicle).  Importantly, Defendants have *already produced* conformity information for the putative class vehicles, including all available importation data for the named Plaintiffs' vehicles and the putative class vehicles, and including all such data available in Integration Point.  Similarly, Defendants have already produced a list of the PR codes for *every* putative class vehicle, including all Aktennotiz vehicles within the putative class.  Plaintiffs' requests for a so-called "HS-7 report" and a list of PR codes for Aktennotiz vehicles thus seek data *exclusively* for vehicles that fall outside the putative class.  At bottom, Plaintiffs are, yet again, seeking to expand discovery in this case into irrelevant, non-class vehicles, despite this Court's admonishment to Plaintiffs that "[t]he class is defined in the second amended complaint."  (Littleton Decl. ¶ 12, Ex. M, Dkt. 393, Aug. 13, 2021 Tr. 40:4.)

   ***Improperly Delayed Discovery.***  In addition to the fact that Plaintiffs' Motion seeks irrelevant discovery, it also should be denied on procedural grounds alone.  *First*, Plaintiffs inexplicably waited five weeks after receiving VW AG's objections to their request to admit regarding the diesel emissions issues to request to meet and confer with VW AG.  Then, after the parties had reached impasse on that meet-and-confer, Plaintiffs waited another two weeks to file this Motion to Compel.  (*See* Monahan Decl., ¶¶ 3-4.)

   *Second*,  Plaintiffs' request for an HS-7 report dates back to *May 28, 2020*, when they served a request for HS-7 information for all vehicles within the relevant time period for "which box 7 is checked."  (*See* Littleton Decl. ¶ 3, Ex. A, Plaintiffs' First Requests for Production

to Defendant Volkswagen Group of America, at 21.)  While the parties (and this Court) have engaged in much discussion on the topic of customs importation data, Plaintiffs have known *since August 7, 2020* (when Defendants served their Responses and Objections) that Defendants objected to the production of HS-7 data for vehicles *outside* of the putative class.  (*See* Littleton Decl. ¶ 3, Ex. B, Volkswagen Group of America, Inc.'s Responses and Objections to Plaintiffs' First Requests for Productions at 69-70.)  Again, Plaintiffs inexplicably waited to file this Motion until just 13 days remained until the close of the extended discovery period.  This unjustified delay is reason alone to deny the Motion.  *See Addax Energy SA* v. *M/V Yasa H. Mulla*, 2018 WL 10470917, at *5 (E.D. Va. Nov. 13, 2018) (denying motion to compel where moving party "ha[d] not provided an adequate explanation for why it failed to challenge [the opposing party's] discovery responses until four months after its discovery requests were filed"); *Flame S.A*. v. *Industrial Carriers*, 2014 WL 12547260, at *3 (E.D. Va. July 31, 2014) (denying motion to compel where moving party "chose not to exercise its right to file a motion to compel until over two months [after receiving the opposing party's objections]").

      *Third*, contrary to the suggestions in their Motion, Plaintiffs have *never* made a formal discovery request seeking the information about Aktennotiz vehicles they now ask this Court to compel.  (*See* Littleton Decl. ¶ 13.)  That is categorically improper:  "[a] court cannot grant a motion to compel unless a previous formal discovery request preceded the motion to compel." *Alberts* v. *Wheeling Jesuit Univ.*, 2011 WL 13195969, at *2 (N.D. W. Va. Jan. 21, 2011), *objections overruled* 2011 WL 2110805 (N.D. W. Va. May 25, 2011); *see Bethea* v. *Ellis*, 2017 WL 2473170, at *3 (E.D.N.C. June 7, 2017) ("[A] party cannot compel discovery responses when he has not served opposing counsel with any discovery requests.").

-4-

## BACKGROUND

***Diesel Emissions Requests to Admit.*** On July 7, 2021, Plaintiffs served their First Request to Admit to VW AG. (*See* Monahan Decl. ¶ 3, Ex. A (the "Diesel Emissions RFAs").) These requests relate entirely to the unrelated diesel emissions issues that came to light in September 2015 and ultimately resulted in a guilty plea in January 2017 by VW AG. Plaintiffs' Diesel Emissions RFAs ask 18 questions regarding VW AG's guilty plea and accompanying "Statement of Facts"—none of which has *any* connection to the conduct alleged in this action.

For example, one of the Diesel Emissions RFAs asks VW AG to admit that, "as detailed in the [Statement of Facts], VW employees have previously misrepresented, and caused to be misrepresented, to the [Environmental Protection Agency] and [the California Air Resources Board] that VW vehicles complied with U.S. NOx emissions standards, when they knew the vehicles did not." (*See* Monahan Decl., Ex. A at 3.) Another asks VW AG to admit that it "knowingly participated, devised, or intended to devise a scheme to defraud in order to obtain money or property as detailed in [VW AG's guilty plea]." (*Id*. at 2.)

On August 27, 2021—five weeks after receiving VW AG's July 22, 2021 Objections, and three weeks after receiving VW AG's August 6, 2021 Responses, in which VW AG refused to answer these irrelevant discovery requests (Monahan Decl. ¶ 3, Ex. B) — Plaintiffs' counsel asked for a meet-and-confer on the topic. (Monahan Decl. ¶ 4.) The parties met and conferred later that day and reached impasse. (*Id*.) Plaintiffs then waited an additional two weeks to file this Motion, despite the fact that the close of the already-extended discovery period was just 13 days away.

***HS-7 Conformity Data.*** Defendants have produced all available customs importation records that Defendants could find for all putative class vehicles. This includes conformity data and entry packets from the Integration Point system, to which VWGoA

transitioned in 2016, for all putative class vehicles whose data is contained in that system.  In their Motion, Plaintiffs now seek data from that same system for vehicles *outside* of the putative class.

Although Plaintiffs do not say so in their Motion, Plaintiffs served a discovery request seeking HS-7 conformity data in May 28, 2020, almost 16 months ago.  In it, Plaintiffs requested "[c]ompleted form HS-7 with all attachments" for "each Class Vehicle," "the Recalled Vehicles," and "any vehicle [imported] into the United States during the Relevant Time Period" for "which box 7 is checked."  (*See* Littleton Decl. ¶ 3, Ex. A, Plaintiffs' First Requests for Production to Defendant Volkswagen Group of America, at 21.)  Despite the fact that the parties have engaged in many discussions, including with the Court, relating to customs topics, Plaintiffs have known since VWGoA's Responses and Objections on August 7, 2020 that Defendants did not agree to produce HS-7 data, including from Integration Point, for vehicles outside of the putative class. (*See* Littleton Decl. ¶ 3, Ex. B, Volkswagen Group of America, Inc.'s Responses and Objections to Plaintiffs' First Request for Production, at 69-70.)

***Aktennotiz Vehicles.***  Plaintiffs' Motion also asks this Court to compel Defendants to identify "all Aktennotiz vehicles" that were later sold CPO as well as the "PR codes corresponding to each vehicle." (Mot. at 2, 9.)  But Defendants have already produced a list of the PR codes for *every* putative class vehicle, including all Aktennotiz vehicles within the putative class.  Specifically, on April 26, 2021, responding to Plaintiffs' December 8, 2020 Interrogatories, VWGoA produced a 50-page chart that listed the PR codes for each of the 1,541 putative class vehicles that Defendants had identified.   (Littleton Decl. ¶ 7, Ex. H, Pl. Glover's First Interrogatories to VWGoA, at 8; Littleton Decl. ¶ 7.)[1]  Since, as Plaintiffs acknowledge (*see* Mot.

---

[1]    By agreement among the parties, VWGoA has agreed to update this chart before the close of discovery for any new putative class vehicles identified since April 2021.  (Littleton Decl. ¶ 7.)

at 8), Aktennotiz vehicles can be identified by a unique "S99" PR code, the chart VWGoA produced of all putative class vehicles and their PR codes *also* identifies all of the Aktennotiz vehicles in the putative class.

Even worse, Plaintiffs have *never* served a discovery request on either of the Defendants seeking the identification of *all* Aktennotiz vehicles sold CPO and the PR codes associated with those vehicles. The discovery requests Plaintiffs reference in their Motion, which Plaintiffs served on May 28, 2020, sought:

> **REQUEST NO. 53:** All documents reflecting any list of vehicles containing PR numbers or option codes used during the Relevant Time Period by you that indicate which vehicles imported by you was a Pre-Production Vehicle, a Pre-Series Vehicle, or a Zero-Series Vehicle, including but not limited to option codes S7Q, S99, SAO, SJO.
>
> **REQUEST NO. 54:** All documents reflecting any list of vehicles containing PR numbers or option codes used during the Relevant Time Period by you that indicate which vehicles imported by you was a Pre-Production Vehicle, a Pre-Series Vehicle, or a Zero-Series Vehicle, including but not limited to option codes S7Q, S99, SAO, SJO, and which also reflect the disposition of each such vehicle (i.e. scrapped, internal use only, use at port, exported, donated for charitable use, Pool-Fleet use, Leased- Fleet use, eTag use, transferred to VW Credit, auctioned to dealer for resale to public, etc.)

(Littleton Decl. Ex. A, Plaintiffs' First Requests for Production to Defendant Volkswagen Group of America, at 18.)[2]  On their face, these requests do not request a list of all Aktennotiz vehicles sold CPO and their PR codes. Rather, they request PR codes and related information for certain subsets of the putative class:  Pre-Production, Pre-Series, and Zero-Series vehicles. (*See id.* at 2-3 (defining these terms as subsets of "Class Vehicles").)  Moreover, that a vehicle is Aktennotiz

---

[2]     On October 7, 2020, Plaintiffs served the same requests on VW AG. (*See* Littleton Decl. ¶ 5, Ex. E.)

does not indicate that the vehicle is pre-production, pre-series, or zero-series, which is what the referenced requests expressly sought. (*See* Littleton Decl. Ex. G, VWGoA-Garcia-00748145, at -147 ██████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████ By contrast, while Plaintiffs' discovery requests were limited to subsets of the putative class, Plaintiffs' motion to compel seeks a list of *all* AN vehicles and their PR codes, regardless of whether they are putative class vehicles.

## LEGAL STANDARD

The Federal Rules of Civil Procedure limit discovery to "any nonprivileged matter that is both "relevant to any party's claim or defense" and also "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *accord Shackleford* v. *Vivint Solar*, 2020 WL 585290, at *2 (D. Md. Feb. 6, 2020); *see Hoskins* v. *King*, 676 F. Supp. 2d 441, 447 (D.S.C. 2009) ("Where information sought does not pertain to a claim or defense, such information cannot be compelled on an assertion of relevance."). If the discovery sought "has no bearing on an issue of material fact" to the pending case, the discovery request is improper. *Tilley* v. *United States*, 270 F. Supp. 2d 731, 735 (M.D.N.C. 2003), *aff'd*, 85 F. App'x 333 (4th Cir. 2004); *see also Ralston Purina Co.* v. *McFarland*, 550 F.2d 967, 973 (4th Cir. 1977) (only discovery topics "germane to the subject matter of the pending action" are "properly within the scope of discovery").

Contrary to Plaintiffs' suggestion (Mot. at 10), requests for admission are no different—they are improper when "not reasonably calculated to lead to the discovery of admissible evidence, but rather relate to areas of factual dispute that are not dispositive to the issues that remain." *Cameron* v. *Sarraf*, 2000 WL 33677584, at *6 (E.D. Va. Mar. 17, 2000). As Plaintiffs acknowledge, Rule 36(a)(3) provides that "[a] matter is admitted unless, within 30 days

after being served, the party to whom the request is directed serves on the requesting party a written answer *or objection addressed to the matter* and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3) (emphasis added).

## ARGUMENT

### I.   PLAINTIFFS' MOTION TO COMPEL RELATING TO THE DIESEL EMISSIONS ISSUES SHOULD BE DENIED.

#### A.   This Case Has Nothing To Do with Volkswagen's Diesel Emissions Issues.

Plaintiffs do not argue in their Motion that the Diesel Emissions RFAs are relevant to the merits of any of their claims. Instead, Plaintiffs claim that this discovery is relevant because of the supposed "substantial similarity" between the NOx emissions-related misconduct and the alleged misconduct in this action. (Mot. at 11.) Plaintiffs attempt to manufacture this connection on the basis that both cases concern the "illegal importation and sale of cars in violation of U.S. law." (*Id*. at 5.)

This purported "similarity" is no similarity at all. Non-U.S. car companies by definition import cars for sale in the United States, so it is not enough for Plaintiffs simply to point to the "illegal importation and sale of cars" to establish relevance. Aside from the fact that they both involve vehicles manufactured abroad and imported to the United States, Plaintiffs have alleged no connection between the misconduct underlying the diesel emissions issues and Plaintiffs' theories of misconduct in this action. The diesel emissions issues involved VW AG's installation of an emissions "defeat device" in the diesel cars it manufactured for sale in the United States that ultimately resulted in excess NOx emissions from those cars. But this case has nothing to do with a "defeat device," NOx, or even emissions at all—in fact, the word "emissions" does not appear a single time in the entire Complaint.

An award of punitive damages must bear a relationship to the harm allegedly suffered by the plaintiffs, not simply seek to punish a defendant for "being an unsavory individual or business." *State Farm Mut. Auto. Ins. Co.* v. *Campbell*, 538 U.S. 408, 422-23 (2003); *see also In re C.R. Bard, Inc.*, 2013 WL 2432871, at *9 n.7 (S.D. W. Va. June 4, 2013) ("*Campbell* requires that the jury base its award of punitive damages on the defendant's wrongful conduct only as it relates to the specific conduct giving rise to the plaintiff's underlying claims." (citations omitted)). Plaintiffs' wafer-thin theory of a "similarity" is far too attenuated here.

Plaintiffs also attempt to construct a theory of relevance by asserting that they "believe"—without pointing to any supporting evidence in the vast discovery record—that Defendants purposefully sought to "avoid announcement of *this* fraud at the time it announced its two billion-dollar fine for emissions fraud." (Mot. at 13.) This purported "belief" is not just based on sheer speculation: it is uniformly contradicted by the record. Defendants' witnesses have consistently rebutted the speculation that the recalls at issue in this case were purposefully delayed by, or in any way connected, with the diesel emissions issues. For instance, Dr. Schramm, who testified as a Rule 30(b)(6) witness, told Plaintiffs that she knew "that [the potential effect of a recall on Volkswagen's stock price at the time of the diesel emissions issue] was not the reason" for the timing of the recall, and testified that Volkswagen "needed just a whole lot of time to analyze all 9,063 vehicles, and that process just took an awful lot of time." (Littleton Decl. ¶ 9, Ex. J, Dep. Tr. of Annett Schramm at 160:16-22 (July 8, 2021).)

Similarly, Plaintiffs questioned Edward Stutzman, a corporate representative who testified on behalf of both VWGoA and VW AG on separate days, about his knowledge of any delay related to the diesel emissions issue. Mr. Stutzman likewise confirmed that he was "not

aware of any correlation between the two" topics.  (Littleton Decl. ¶ 8, Ex. I, Dep. Tr. of Edward Stutzman at 229:6-15 (June 23, 2021).)[3]

Without any evidentiary basis to support this invented "belief," Plaintiffs are not entitled to obtain answers to their irrelevant requests to admit.

Notably, this is not the first time Plaintiffs have sought discovery on the irrelevant topic of Defendants' prior diesel emissions issues.  On July 6, 2020, Defendants moved for a protective order concerning Plaintiffs' request for millions of documents previously produced in the diesel-related actions in which Plaintiffs' counsel took part, explaining that because of the irrelevance of the diesel-related actions to this litigation, the materials sought by that request would necessarily include large amounts of irrelevant materials.  (*See* Littleton Decl. ¶ 4.)  This Court granted Defendants' motion on July 31, 2020, stating that "there is overwhelming evidence that much of the information is irrelevant."  (*See* Littleton Decl. ¶ 4, Ex. D, Dkt. 132, Jul. 31, 2020 Tr. 31:9-10.)  That conclusion remains just as true today as it was 14 months ago, and the Court should deny this discovery for the same reason.

**B.    Plaintiffs Unreasonably Delayed in Bringing This Motion.**

Plaintiffs were aware of VW AG's Objections to the Diesel Emissions RFAs fifteen days before this Court extended the discovery cut-off on July 22, 2021, and Plaintiffs received VW AG's Responses the day the Court extended the deadline.  (*See* Monahan Decl. ¶ 3, Ex. B.) Yet Plaintiffs did not ask to meet and confer until August 27, 2021, five weeks after receiving

---

[3]    Beyond the absence of any evidence to support Plaintiffs' "belie[f]" and ample contradictory evidence in the record, Plaintiffs also never explain why, at a time when VW AG was pleading guilty to three crimes in connection with its diesel emissions issues, it would have made any sense for it to hide a recall or other additional "bad news" from the market.  If anything, the market reaction from additional "bad news" would have been muted due to the criminal guilty plea, which was front-page news everywhere.

Defendants' Objections.  (Monahan Decl. ¶ 4.)   Plaintiffs then waited an additional two weeks to file this Motion, even though the parties were at an impasse as of August 27, 2021.  (*Id*.)  Although "there is no time frame set forth in the Local Rule[s] for pursuing such a motion, it is clear that it should be done within a reasonable time period after discovering the violation."  *Carter* v. *Countrywide Home Loans*, 2009 WL 2742560, at *13 (E.D. Va. Aug. 25, 2009).  Plaintiffs' delay in bringing this motion, especially in the context of a twice-extended discovery period fast approaching completion, was unreasonable. *See Flame S.A.*, 2014 WL 12547260, at *3 (denying motion to compel where the moving party "chose not to exercise its right to file a motion to compel until over two months [after receiving the opposing party's objections]").   Indeed, the Court already warned when extending the discovery deadline that, "to the extent there are disputes that arise and they are new subjects that could have and should have been raised prior to August 9th, think very carefully on both sides about the positions you're taking."  (Littleton Decl. ¶ 11, Ex. L, Dkt. 392, Aug. 6, 2021, Tr. 12:22-25.)

## II.    PLAINTIFFS' MOTION TO COMPEL ADDITIONAL DISCOVERY REGARDING VEHICLES OUTSIDE THE PUTATIVE CLASS DEFINITION SHOULD BE DENIED.

Again trying to expand the scope of vehicles at issue in this case, Plaintiffs also impermissibly seek discovery of vehicles outside of the defined putative class.  In particular, Plaintiffs seek two lists of vehicles:  a report of *all* vehicles as to which Defendants declared Box 7 to NHTSA upon import (indicating non-compliance with FMVSS), and a list of *all* Aktennotiz vehicles that were subsequently sold CPO to consumers (plus PR codes associated with all of those vehicles).  Plaintiffs' class definition contains *no* reference to HS-7 importation status, FMVSS, or Aktennotiz status:

> All Volkswagen-branded used cars sold in the United States from January 1, 2007 to March 21, 2019 that were initially used internally by Volkswagen and later resold by an authorized Volkswagen or

Audi dealership as a Certified Pre-Owned ("CPO") vehicle and which has at least one or more of the following characteristics: (a) the vehicle is a pre-series, zero series or pre-production car ("Pre-Production Cars"); (b) the vehicle is one of the 252 cars (the "Recalled Vehicles") identified by Volkswagen in its so-called Part 573 Safety Recall Report filed with the NHTSA on May 16, 2018 (as amended on July 23, 2018); (c) the vehicle was driven by one or more members of the automotive press ("Press-Fleet Cars"), but such use was not disclosed;  (d) the vehicle was driven by one or more Volkswagen employees for short-term use as part of the Pool-Fleet, but such use was not disclosed; (e) the vehicle was altered after the date of manufacture, but no Alterer's Certificate was affixed to such vehicle; (f) the vehicle's actual mileage was falsified by Volkswagen in connection with the application for the original title.  (g) the vehicle is one of the 113 cars (the "Recalled Vehicles") identified by Volkswagen in its so-called Part 573 Safety Recall Report filed with the NHTSA on September 25, 2019 (as amended on December 20, 2019).

(Dkt. 104, 2d. Am. Compl. ¶ 105.)  Because Plaintiffs' requests seek irrelevant discovery about non-class vehicles, the Motion should be denied.

A.   **Plaintiffs' Motion to Compel a "HS-7 Report" Should Be Denied As Seeking Irrelevant Information, Compounded By Unreasonable Delay.**

1.   **Plaintiffs' Motion Seeks Irrelevant Information Regarding Vehicles Outside the Scope of the Putative Class.**

Plaintiffs' Motion seeks an "HS-7 Report" identifying all cars imported into the United States "for which Box #7 was checked (or its electronic equivalent)."  (Mot. at 6.)  As this Court is aware, Defendants have undertaken substantial efforts to produce customs importation and HS-7 data where available for all putative class vehicles.  Importantly here, these prior steps included (among many other things) pulling *all* responsive entry packets from Integration Point for *all* putative class vehicles with information in that system (which VWGoA began using in 2016).  Such a report is not possible to create from VWGoA's older system.  Plaintiffs' effort to now, as discovery is coming to a close, compel production of data from that *same* system pertaining to *non*-class vehicles should be rejected.

-13-

Plaintiffs argue that the "HS-7 Report" they seek is somehow relevant because "it serves, in part, as a cross-check to ensure the accuracy and completeness of identifying the Class vehicles." (Mot. at 6.) But as explained above, no part of Plaintiffs' putative class definition defines class vehicles based on what HS-7 information was declared to NHTSA, or even based on a vehicle's FMVSS compliance. Plaintiffs largely admit as much, arguing that "even if such cars do not fall into the Class as currently defined," the information would "still [be] relevant to Plaintiffs' claims and in ascertaining the universe of potential vehicles illegally sold." (Mot. at 14; *see id.* at 6 (report "would allow Plaintiffs to determine if Volkswagen has been selling other vehicles that it knows and represented do not conform with Federal Safety Standards").) But Defendants have already pulled all available relevant information for putative class vehicles from Integration Point, and as such, this request necessarily seeks information only for vehicles outside of the putative class.

In the end, Plaintiffs are simply fishing for irrelevant vehicles with no regard to the allegations of their Complaint or the putative class they pleaded. Rule 26 does not permit such a blatant fishing expedition. *See E.I. DuPont de Nemours & Co*. v. *Kolon Indus., Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012) (noting that, though the rules of discovery are broad, they are not meant to "devolve into a fishing expedition for irrelevant or cumulative information[.]").

## 2. Plaintiffs Unreasonably Delayed in Bringing This Motion.

Plaintiffs' unreasonable delay in bringing this Motion is likewise sufficient reason to deny it. As explained, Plaintiffs requested HS-7 information for all vehicles within the relevant time period for "which box 7 is checked" in May 2020, and Defendants told Plaintiffs on August 7, 2020 that VWGoA would not produce HS-7 data for vehicles *outside* of the putative class. (*See* Littleton Decl. ¶ 3, Ex. B, VWGoA's Responses and Objections to Plaintiffs' First Request for Production.) In all the parties' numerous discussions of HS-7 and customs data, Defendants have

never wavered from this position, and this request has not been the subject of any further negotiation between the parties.  The fact that Plaintiffs waited more than a year, until less than two weeks remained in discovery, to file a motion to compel constitutes unreasonable delay and is an additional basis to deny this Motion.  *See Addax Energy SA*, 2018 WL 10470917, at *5; *Carter*, 2009 WL 2742560, at *13.

**B.      Plaintiffs' Motion to Compel the Identification of All Aktennotiz Vehicles Is Improper and Seeks Information Far Beyond the Scope of the Putative Class.**

Plaintiffs' Motion also seeks to compel the identification of  "all 'Aktennotiz' vehicles . . . that were later sold to customer[s] as 'Certified Pre-Owned,' as well as the 'PR Codes' associated with each."  (Mot. at 2.)  Plaintiffs argue that the Court must compel the production of this information because "despite Defendants' implicit recognition that at least *some* of these Aktennotiz vehicles are relevant to Plaintiffs' claims here, Defendants refuse to produce a list of *all* such vehicles."  (Mot. at 15.)  Plaintiffs fail to inform the Court that (i) Defendants have already identified *any* Aktennotiz vehicles that fall into Plaintiffs' definition of the class in the Complaint, along with their PR codes; and (ii) Plaintiffs never served any discovery request seeking a list of "*all* Aktennotiz VW-branded vehicles."  (Mot. at 9.)  Again, Plaintiffs are improperly seeking information only about vehicles that fall outside of the putative class, but even worse here, are doing so without *ever* having served a formal discovery request for this information.

**1.      Plaintiffs' Motion Seeks Irrelevant Information Outside the Scope of the Putative Class.**

Defendants have already produced to Plaintiffs the available PR codes for the putative class vehicles at issue in this case, including vehicles with PR Code S99, indicating that

they were ordered using VW AG's Aktennotiz process.[4]  As a result, the discovery Plaintiffs are seeking through their Motion would be *entirely* for vehicles that do *not* fall into the putative class.

Specifically, on April 26, 2021, Defendants produced a 50-page chart as an exhibit to interrogatory responses that detailed every available PR code applicable to all 1,541 of the putative class vehicles Defendants had identified at that time. (Littleton Decl. ¶ 7.)[5]  As Plaintiffs acknowledge that Aktennotiz vehicles can be identified using their PR codes (Mot. at 8, 15), they could easily filter this list to the Aktennotiz vehicles in the putative class through the produced PR codes.  Since Defendants have already produced all available PR codes for all of the putative class vehicles, by definition, the only *new* information that Plaintiffs' motion seeks concerns vehicles outside of the putative class that are irrelevant to this case.  Plaintiffs' motion therefore exceeds the proper scope of discovery and should be denied.  *See O'Bar* v. *Lowe's Home Ctrs., Inc.*, 2007 WL 1299180, at *3 (W.D.N.C. May 2, 2007) (limiting discovery "to only those areas where Plaintiffs may potentially be class representatives" (emphasis omitted)).

## 2. Plaintiffs' Failure to Serve a Formal Discovery Request for this List Makes the Motion Categorically Improper.

Plaintiffs incorrectly assert that they "served Defendants with document requests . . . seeking the disclosure of the internal use of each Aktennotiz vehicle and the PR codes corresponding to each vehicle." (Mot. at 9.)[6]  To the contrary, Plaintiffs *never* served a discovery

---

[4]   Plaintiffs claim that they "learned" through discovery that "after August 31, 2016, Defendants stopped using the PR Code S99 altogether." (Mot. at 8.) But the exhibit Plaintiffs cite provides no support for this assertion.  As VW AG's corporate representative testified: ███████████████████ (Littleton Decl. Ex. K, Dep. Tr. of Stefan Weber at 26:15-17 (July 15, 2021) (emphasis added).)

[5]   Defendants have also agreed to update this chart to include newly-added putative class vehicles since April 2021.  (*See* Littleton Decl. ¶ 7.)

[6]   This is just one of many misstatements in Plaintiffs' motion.  Defendants dispute the numerous mischaracterizations of the record put forward by Plaintiffs in seeking to compel irrelevant information outside the scope of their allegations.  For example, the VW Mexico APS

request for a list of all Aktennotiz vehicles, or for the PR codes of Aktennotiz vehicles.  (Littleton Decl. ¶ 13.)  Rather, the discovery requests cited in their motion relate to *pre-production, pre-series, and zero-series* vehicles, categories that are distinct from Aktennotiz.  (Littleton Decl. ¶ 3, Ex. A, Pls.' First RFPs to VWGoA, at 18.)  Furthermore, Plaintiffs' discovery requests defined these terms as subsets of the putative class (*see*, *e.g.*, *id.* at 3 ("'Pre-Production Vehicles' means Class Vehicles that are a pre-series, or zero series vehicle, and as is more particularly described in paragraphs 34-36 of the Second Amended Complaint")), and Defendants have already produced the available PR codes for *all* putative class vehicles, including any of the Aktennotiz vehicles in the putative class.

Under Federal Rule of Civil Procedure 37(a)(3)(B)(iv), a party may move to compel if "a party fails to produce documents . . . as requested under Rule 34."  *See* Fed. R. Civ. P. 37 (formal procedure for service of discovery requests).  It is black-letter law that "[a] court cannot grant a motion to compel unless a previous formal discovery request preceded the motion to compel."  *Alberts*, 2011 WL 13195969, at *2;  *see Susko* v. *City of Weirton*, 2011 WL 98557, at *2 (N.D. W. Va. Jan. 12, 2011) (same); *Bethea*, 2017 WL 2473170, at *3 ("[A] party cannot compel discovery responses when he has not served opposing counsel with any discovery requests."); *Jones* v. *Mullins Police Dept.*, 2008 WL 269503, at *4 (D.S.C. Jan. 29, 2008) ("As it appears to the Court that the Plaintiff did not serve discovery on the Defendants, the Court finds

---

Presentation that Plaintiffs reference does not support their claim that VW Mexico "admitted that it cannot guarantee compliance with Federal Safety Standards of ANY vehicle build using the Aktennotiz process."  (Mot. at 8.)  Rather, the presentation, which applies only to vehicles manufactured by VW Mexico, includes a recommendation to ███████████████████ defines ████████████████ as ███████████████████████████ and specifically does not list Aktennotiz or zero series vehicles as ████████ (Pls.' Ex. I, VWAG-Garcia-00092132, at -134, -139 (emphasis added).)  In any event, Plaintiffs' scattershot factual misstatements on the record have no bearing on the merits of their discovery motion.

that the Plaintiff's motion to compel is moot.").  Since Plaintiffs never served a discovery request for all Aktennotiz vehicles sold CPO—a request that would have been overbroad, disproportionate, and improperly seeking irrelevant information in any event—their Motion to compel such discovery should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

Dated:  September 21, 2021

MCGUIREWOODS LLP

/s/ Frank Talbott V
Terrence M. Bagley (VSB No. 22081)
Kenneth W. Abrams (VSB No. 78216)
Frank Talbott V (VSB No. 86396)
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Tel:  804-775-4773
Fax:  804-698-2323
tbagley@mcguirewoods.com
kabrams@mcguirewoods.com
ftalbott@mcguirewoods.com

Respectfully submitted,

SULLIVAN & CROMWELL LLP

Robert J. Giuffra Jr. (*pro hac vice*)
Suhana S. Han (*pro hac vice*)
William B. Monahan (*pro hac vice*)
Adam R. Brebner (*pro hac vice*)
125 Broad Street
New York, NY  10004
Tel:  212-558-4000
Fax:  212-558-3588
giuffrar@sullcrom.com
hans@sullcrom.com
brebnera@sullcrom.com

Judson O. Littleton (*pro hac vice*)
1700 New York Avenue, NW
Suite 700
Washington, DC  20006
Tel:  202-956-7500
Fax:  202-956-7676
littletonj@sullcrom.com

*Counsel for Volkswagen Group of America, Inc. and Volkswagen Aktiengesellschaft*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2021, I electronically filed the foregoing with the

Clerk of Court using the Court's CM/ECF filing system which will send notification of electronic

filing (NEF) to all counsel of record.

<u>/s/ Frank Talbott V</u>
Frank Talbott V (VSB No. 86396)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Telephone:  804-775-4773
Fax:  804-698-2313
ftalbott@mcguirewoods.com

*Counsel for Volkswagen Group of America, Inc.*
*and Volkswagen Aktiengesellschaft*