**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| RICARDO R. GARCIA, et. al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-331 |
| | ) | Hon. Liam O'Grady |
| VOLKSWAGEN GROUP OF AMERICA, INC., et. al., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## MEMORANDUM OPINION

**Introduction**

Before the Court is the Defendants' Motion for Summary Judgment (Dkt. 714), the Defendants' Motion to Exclude the Opinions of Stuart Raskin (Dkt. 743), the Defendants' Motion to Exclude the Opinions of Edward Stockton (Dkt. 740), and the Plaintiffs' Motion to Strike (Dkt. 768). The Motions have been fully briefed by the Parties, the Court has heard oral argument, and the issues are currently ripe for decision.

**Background**

The Plaintiffs in this case are four individuals[1] who have purchased vehicles that were either sold or manufactured by one of the named Defendants in this case. Plaintiff Ricardo Garcia is a resident of the State of Washington and purchased a Volkswagen Golf on February 6, 2016. Dkt. 101 at 5. Plaintiff Paul Jacobson is a resident of Colorado who purchased a Volkswagen CC

---

[1] The Plaintiff, Duane Glover, has accepted an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68. *See* Dkt. 788.

1

R-Line on March 11, 2016. *Id.* at 6. Plaintiff Gaetano Calise is a resident of Illinois who purchased a Volkswagen CC VR6 on August 18, 2017. *Id.* at 7. Plaintiff David Hartman is a resident of California who purchased a Volkswagen Touareg on June 12, 2018. *Id.* at 8-9.

The Defendants in this case are Volkswagen Group of America, Inc. and Volkswagen Akteingesellschaft. The Defendant Volkswagen Group of America, Inc. is a New Jersey Corporation with its principal place of business located in Herndon Virginia. *See Id.* at 10. Defendant Volkswagen Akteingesellschaft is a German corporation with its principal place of business in Wolfsburg, Germany. *Id.* Volkswagen Group of America is a wholly owned subsidiary of Volkswagen Akteingesellschaft. *Id.* The Defendants are engaged in the business of manufacturing and selling cars and other vehicles. Collectively the Defendants will be referred to as "Volkswagen."

In May of 2018, Volkswagen initiated a recall for a group of vehicles, some of which belonged to the named Plaintiffs in this case.[2] According to Volkswagen, the recall was done out of an "abundance of caution" because the internal documentation for the vehicles was not maintained properly. Dkt. 715 at 10. On March 21, 2019, the Plaintiffs initiated a civil action in this Court alleging various theories of injury and damages that the Plaintiffs have attributed to Volkswagen. Dkt. 1. The Plaintiffs engaged in aggressive, broad, and significant discovery where the theories that supported damages, liability and alleged injuries continuously shifted and evolved. After discovery was completed, the Court denied the certification of a class action lawsuit because the Plaintiffs could not meet the requirements of Federal Rule of Civil Procedure 23. Dkt. 697. The Defendants have now moved for Summary Judgment and moved to exclude the opinions of two of the Plaintiffs' expert witnesses. The Plaintiffs have moved to strike Affidavits that the

---

[2] *See e.g.* Dkt. 723-70 (Recall notice for Duane Glover)

Defendants have filed along with a memorandum that supports the Defendants' Motions. As discussed below, there is no evidence that the Plaintiffs are entitled to statutory damages, there is no evidence that demonstrates a Plaintiff's individual damages, there is no evidence that could show the Plaintiffs' have suffered individual injuries, and there is no legal basis for recission as an appropriate remedy. For these reasons, the Motion for Summary Judgment is **GRANTED**.

## Legal Standard

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact." Federal Rule of Civil Procedure 56(a). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of material fact exists, and that summary judgment should not be granted in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Fourth Circuit has held, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson*, 477 U.S. at 247-248). "It is the responsibility of the party seeking summary judgment to inform the court of the basis for its motion, and to identify the parts of the record which it believes demonstrate the absence of a genuine issue of material fact." *Hyatt v. Avco. Fin. Servs. Mgmt. Co.*, 2000 U.S. Dist. Lexis 13645 at *11 (E.D. Va. March 2, 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); aff'd, 22 F. App'x 81 (4th Cir. 2000). If a non-movant fails to properly support an assertion of fact, the Court will grant summary judgment if the "motion and supporting materials—including the facts

considered undisputed—show that the movant is entitled to it." Federal Rule of Civil Procedure 56(e)(3).

**Discussion**

The Court will first address the Defendants' Motions to exclude the expert testimony of Stuart Raskin and Edward Stockton. The Court will then address the various theories of liability, injury, and damages that have been advanced by the Plaintiffs.

### 1. The Defendants' Motion to exclude testimony

An expert may offer testimony under Federal Rule of Evidence 702 if the testimony given will be both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). To determine if the testimony can meet this standard, the Court must find that "it concerns (1) scientific, technical or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999) (citing *Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579, 592 (1993)). Therefore, the Court will first look at the "reasoning or methodology underlying the expert's proffered opinion." *Id.* The Court will then evaluate if the testimony is tied to the facts that will be at issue in the case. *Id.* Although this inquiry is "flexible," there have been several factors that are generally used that can guide the Court's analysis:

> (1) whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer republication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific expert community.

*United States v. Crisp*, 324 F.3d 261, 265-266 (4th Cir. 2003) (internal quotations omitted) (quoting *Daubert*, 509 U.S. at 589).

The Court may also allow a witness to testify as an expert based on their relevant experience (as opposed to the application of scientific methodology). *Peters-Martin v. Navistar Int'l Transp. Corp.*, 410 Fed. Appx. 612, 618 (4th Cir. 2011) (quoting *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007)). When a witness who is testifying as an expert based on experience, the Court may "require an experiential witness to explain how his experience leads to the conclusion reached, why his is a sufficient basis for the opinion, and how his experience is reliably applied to the facts" to deem the testimony admissible. *Wilson*, 484 F.3d at 274 (internal quotations omitted) (quoting Federal Rule of Evidence 702 advisory committee note).

As neither Edward Stockton nor Stuart Raskin has tied their expert opinion to any injury or damages suffered by the individual Plaintiffs in this case, the Court finds that resolving the *Daubert* motions at the summary judgment stage will be necessary to gauge the amount or lack of evidence that may be probative of the Plaintiffs' alleged individual injuries or damages. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 284-285 (4th Cir. 2021) (The Appellate Court found that it was harmful error to admit expert testimony when it was the only evidence with which the jury could return a verdict for the proponent of the testimony).

### A. *Daubert* motion to exclude the opinions of Stuart Raskin

The Defendants have moved to exclude the testimony of Stuart Raskin on the basis that his opinion has no relevance to the individual damages claimed by the Plaintiffs. Dkt. 744 at 5-6. Stuart Raskin is a "Specialty Vehicle Appraiser" with relevant certifications, experience, and education in the automotive industry. Dkt. 744-2 at 3 (expert report of Stuart Raskin). In Raskin's report, his description of his business experience indicates that he individually inspects vehicles to estimate a value for sale at auctions and to individual purchasers. *Id.* at 2 ("Clients contact me from all over the country to personally inspect and evaluate used motor vehicles which they have an

interest in purchasing.") Raskin admits that he has not individually inspected any of the Plaintiffs' vehicles in the present case. *Id.* at 4 ("None of the above referenced vehicles have been personally inspected by this appraiser.") Instead, Raskin uses his experience to conclude a diminution in value exists based on the various defects that may be found in the Plaintiffs' vehicles (on the assumption those defects exist). Raskin also concludes that the Plaintiffs' vehicles are analogous to so-called "grey market" vehicles based on the assumption that the vehicles do not comply with Federal Safety Standards. In sum, Raskin has created a series of general categories of devaluation that Raskin believes correspond to defects that Raskin was told to assume the Plaintiffs' vehicles had.

Raskin's proposed testimony is not based on any reliable methodology. Raskin has provided no basis to find that any of his theories can be tested. Raskin was unable to identify any time his theories have been used in any setting. Raskin has not explained how accurate his methodology is. Raskin's purported methodology for estimating a vehicle's value isn't based on any industry standard, or any standard at all beyond his conclusory statements about "fair market value." *Id.* at 5. Raskin has not indicated that any other appraiser has (or would) use his methodologies to value the sale price of any individual vehicle. Raskin is very likely an expert appraiser, however it is clear from his report that he is an expert at evaluating vehicles on an *individual* basis. While Raskin may be able to establish a reliable basis to evaluate cars which he has individually appraised, his expert report demonstrates that Raskin cannot reliably tie his proposed testimony to any of the individual vehicles at issue in this case. As such, Raskin's conclusions are merely *ipse dixit* testimony without any relevance to an inquiry that would be helpful to the jury. *See Sardis*, 10 F.4th at 290 (the district court had abdicated its gatekeeping responsibility when it allowed a jury to hear testimony not based on a reliable methodology); *Holesapple v. Barret*, 5 Fed. Appx. 177, 179-180 (4th Cir. 2001) (expert testimony based only on

expert experience was properly excluded when the opinion was only "conjecture and post hoc reasoning").

The cases that the Plaintiffs cite in Opposition to Summary Judgment do not indicate that an appraiser is allowed to testify on an item they have not individually evaluated. In *Shield Global Partners-G1, LLC v. Forester*, the Indiana Appeals Court ruled that (the same) Raskin's testimony was proper to establish damages because the record reflected that Raskin had viewed "several documents and reports regarding the vehicle." 141 N.E.3d 1269, 1273 (Ind. Ct. App. 2020). Similarly, in *Phillips v. Garrison Prop. & Cas.*, the district court found that several courts had allowed "desktop appraisals" when there were individual "photographs, records and other documents, rather than physical inspection." 2020 U.S. Dist. LEXIS 104094 at *49 (N.D. Ala. May 12, 2020) (collecting cases). These cases make it clear that an appraiser's testimony can be based on a vehicle or item the appraiser had not physically inspected, but those courts still required that the appraiser's testimony was based on some piece of evidence individually tied to the specific car or item at issue in the case. There is no data or evidence upon which Raskin relies that individually ties the specific cars at issue in this case to the conclusions in Raskin's expert report.

Raskin's opinion is based upon his experience as an appraiser and not founded upon any discernible methodology. Raskin has not reviewed any of the car mileage reports; any individual buyback offers; or any photograph, document or other evidence pertaining to any of the Plaintiffs' vehicles. Raskin has not provided a reliable foundation to show that his methodology is anything beyond an unsupported conclusion that the Court is urged to accept only because of his related experience. Even if the Court were to accept as reliable the valuation of the general categories that Raskin proposes, Raskin does not (and cannot) say why any of the Plaintiff's individual vehicles would or should fall into one of those categories. In short, there is no basis to find that Raskin's

testimony would be relevant or reliable in regard to any issue to be decided in this case. Therefore, the Motion to exclude Raskin's testimony is **GRANTED**.

### B. *Daubert* motion to exclude the opinions of Edward Stockton

Volkswagen has also moved to exclude the opinions of the expert witness Edward Stockton on the basis that his opinion is not tied to any of the individual Plaintiffs' damages or injury in this case. *Dkt.* 741 at 2-3. Edward Stockton is an economist who specializes in the retail automotive industry. Dkt. 741-2 at 3. The Defendants have argued that Stockton's expert testimony would measure the Plaintiffs' damages. Stockton makes several conclusions regarding the value of vehicles in general based on the (1) age of the vehicle; (2) vehicle mileage; and (3) the presence or absence of a designation of a vehicle as 'Certified Pre-owned' ("CPO").

Stockton's vehicle age methodology was calculated by taking the value of 16 vehicles and comparing them to the same model of vehicle with identical mileage when that model of vehicle is six months older. *Id.* at 32. Stockton then concludes that vehicles depreciate at a constant monthly rate from any given point in time. *Id.* at 33. The Plaintiffs argue that Volkswagen's "lies about mileage camouflaged vehicle age, resulting in measurable harm to Plaintiffs." Dkt. 763 at 12. Under the assumption that the methodology used to calculate the effect of vehicle age is a reliable methodology, Edward Stockton's testimony on this methodology would still be excluded because it is not relevant to any issue to be decided in the case.

In their opposition to the *Daubert* motion, the Plaintiffs have created a table that purportedly calculates the amount each Plaintiff was overcharged. Dkt. 763 at 12-13. Possibly the table was created by applying Edward Stockton's methodology. It is unclear from the memorandum what dates are used to calculate the premium. Without any coherent explanation of how this supposed measure of damages was arrived at, the Court cannot rely on the representations

8

of the Plaintiffs to find that the vehicle age methodology is or could be related to any issue in the present case. Further, this supposed measure of individual damages appears nowhere in Stockton's report and currently it is not apparent whether these calculations are even Stockton's own conclusions.

In addition, there is no evidence in the record that any disclosure by the Plaintiff contained an inaccurate record of when the Plaintiffs' vehicles were manufactured. Therefore, there is no meritorious argument that the age of the Plaintiffs' vehicles is relevant to the calculation of damages in this case. Therefore, this 'vehicle-age' testimony must be excluded.

Stockton's 'vehicle mileage' methodology was calculated in case the Plaintiffs were found to be entitled to recission as a proper remedy.[3] As discussed below, recission is not an appropriate remedy for the Plaintiffs for a variety of reasons. Therefore, the 'vehicle mileage' methodology is not a basis for finding Stockton's testimony to be admissible.

For his third methodology, Stockton calculated a 'CPO-premium' that purportedly represents the amount that the Plaintiffs were overcharged for their vehicles. Dkt. 741-2 at 34. Stockton calculates the premium by comparing an assortment of the prices of Volkswagen vehicles with the CPO premium to a listed retail price for the same vehicle. *Id.* at 27. Stockton also performs a second analysis where he normalizes the sales price of the 'CPO' designated vehicles based on the mileage a vehicle was driven. *See generally Id.* at 28; 79-112. Both methods yielded an estimated premium close to 4.5%.

---

[3] The Plaintiffs have alleged that statements regarding the past mileage of their vehicles are fraudulent. Stockton's mileage methodology however only reflects that more recorded mileage decreases the value of the vehicle. The methodology does not correspond (and Stockton's report does not try to correspond) to a representation about a vehicle's mileage in the past when the current accurate mileage of a vehicle is known at the time of purchase.

Volkswagen has argued that the 'CPO-premium' methodology should be excluded for the same reason that other district courts have rejected Stockton's similar methodology in other cases. Dkt. 766 at 10-11. In *In re Volkswagen "Clean Diesel" Mktg. Sales Practices & Prods. Liab. Litig.*, the district court found that Stockton's opinion on a 'TDI premium' was inadmissible because it estimated the value of "the full bundle of additional TDI vehicle features..." received by the plaintiff rather than the specific injury alleged by the plaintiff in that case. 500 F. Supp. 3d 940, 951-952 (N.D. Cal. 2020). Similarly, in *Counts v. GM LCC*, the district court found Stockton's analyses were not sufficient to demonstrate injury in fact because the economic models were not correlated with the value of the injury alleged by the plaintiff in that case. 2021 U.S. Dist. LEXIS 256168 at *52-53 (E.D. Mich. September 1, 2021) (Stockton's model was not admissible to estimate the economic harm of the presence of a 'defeat device' Volkswagen may have installed in some vehicles to beat emissions testing). Stockton's methodology in the current case suffers from similar defects as the methodology rejected by our sister courts in California and Michigan.

As Volkswagen argues, Stockton has not accounted for other benefits the Plaintiffs have received from purchasing a vehicle designated as 'CPO.' Volkswagen points to evidence that 'CPO' purchasers receive a safety inspection, a warranty, roadside assistance, and satellite radio. *See* Dkt. 766 at 11-13. Stockton and the Plaintiffs argue that these features have zero value, although this claim is only supported with argument rather than any evidence in the record. Stockton has categorically excluded this data from his analysis although it may be relevant to the individual Plaintiffs' alleged injury in this case. In addition, the methods used to estimate the 'CPO-premium' relies on data based on vehicle models and model years that are not the same as the Plaintiffs' vehicles. Stockton uses data that is a generalization of a series of vehicles, rather than data that is tied to the individual vehicles owned by the Plaintiffs. Therefore, Stockton's

analysis is far removed from an inquiry into any individual injury or damages supposedly suffered by the Plaintiffs.

Just like in *In re Volkswagen* and *Counts*, Stockton's economic model is not tied to the individual injury that the Plaintiffs have actually suffered, which is the supposed overpayment for the 'CPO' designation. And as discussed below, there is no evidence in the record that can indicate how any of the Plaintiffs' vehicles are deficient in a way where the 'CPO' label would be improper. As there has been no allegation of a specific defect, attributing the entire 'CPO-premium' to the alleged injury suffered by the Plaintiff is entirely unreliable.[4] The only relevance of the methodology is that the expert testimony may show that vehicles labeled as 'CPO' may be sold for a higher price than 'non-CPO' vehicles. The methodology does not show that any specific injury alleged by any Plaintiff is correlated with the value of the 'CPO-premium' or that the premium is a reliable measure of damages for any injury potentially suffered by the Plaintiffs. As the methodology is not sufficiently or properly tied to the relevant issue to be decided by a jury, it is not relevant as a foundation to support the admissibility of expert testimony.

The Court does not believe there is any reason to dispute Stockton's qualifications as an expert economist. The Court also makes no findings on whether Stockton's methodologies (in this case or any other) would be admissible for estimating damages for a class of vehicles. But for a litigation which only involves four individual Plaintiffs, none of Stockton's proposed methodologies are tied to the individual injuries that the Plaintiffs have allegedly suffered (the relevant issue to be decided by a jury). Therefore, Stockton's expert testimony would not be relevant under the standards required under *Daubert* and Stockton's testimony must be excluded.

---

[4] Stockton has calculated the entire injury based on the assumption in the Amended Complaint that the Plaintiffs' vehicles were improperly labeled as 'CPO.'

For this reason, the Defendants' Motion to Exclude the testimony of Edward Stockton is **GRANTED**.

### 2. Claims under the Federal Odometer Act

The Plaintiffs have alleged that the Defendants violated the Federal Odometer Act when they titled the vehicles with the state of Michigan. It is undisputed by the Parties that Volkswagen had a practice of titling all its vehicles with a default mileage of ten miles when the cars were registered with the state of Michigan. The Plaintiffs argue that this mileage was false at the time the vehicles were titled. The Plaintiffs also now allege in their Opposition to Summary Judgment that Volkswagen engaged in odometer tampering by physically altering the odometer readings in the vehicles. Dkt. 723 at 18. The Plaintiffs have argued that these actions violate the Federal Odometer Act.  In general, the Federal Odometer Act requires that "a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure: (A) disclosure of the cumulative mileage registered on the odometer." 49 USC §32705(a). The Act requires that a person making this transfer may not give a "false statement to the transferee" when this disclosure is made. 49 USC §32705(a)(2).

*Odometer Tampering*

The Federal Odometer act also states that "a person may not—…(2) disconnect, reset, alter, or have disconnected, reset, or altered, an odometer[5] of a motor vehicle intending to change the mileage registered by the odometer[.]" 49 USC § 32703(2). The Plaintiffs have, for the first time, raised the accusation that Volkswagen engaged in a widespread physical manipulation of some of Volkswagen's vehicles that were sold to consumers. The Plaintiffs base this accusation on three e-mails between different Volkswagen entities. One e-mail is between a "Press Fleet Coordinator"

---

[5] The statute defines "odometer" to mean "an instrument or system of components for measuring and recording the distance a motor vehicle is driven…" 49 USC §32702(5).

that states that "Did they install broken-in engines and brake components… roll back/ Replace the odometers… or were these vehicles never Press Finished? My money is on 'never Press Prepped.'" Dkt. 726-28 at 2-3. As other support for their odometer tampering claims, the Plaintiffs have pointed to e-mails that generally direct the conversation participants to not communicate via e-mail or opine on the lack of transparency. *See* Dkt. 726-59.

The accusation of odometer tampering was not raised in the Second Amended Complaint. It is not proper for the Plaintiffs to raise it for the first time in an Opposition to Summary Judgment. Further, there is no evidence linking any of the individual Plaintiffs' vehicles to any alleged odometer tampering. Therefore, the new allegation of odometer tampering cannot support the Plaintiffs' arguments during a Motion for Summary Judgment.

### *Titling the Vehicles with 10 miles*

The Plaintiffs have raised the other new argument that the Plaintiffs have standing under the Federal Odometer Act based on the alleged misrepresentation that Volkswagen made to the State of Michigan. The Plaintiffs have argued that Volkswagen Group of America transferred title to Volkswagen Credit at the time the cars were titled with the State of Michigan. Dkt. 723 at 19-20. Based on this transfer, the Plaintiffs argue that the Federal Odometer Act allows for civil actions to be brought by private actors for an improper disclosure based on the language of 49 USC §32710. The Plaintiffs rely on the holding in *Nigh v. Koons Buick Pontiac GMC, Inc.*, to support this argument. 143 F. Supp. 2d 563, 565 (E.D. Va. 2001). The *Nigh* court held that the Federal Odometer Act permits "suit for violations about which the DMV and the State might not otherwise have know[n]." *Id*. However, in the *Nigh* case the district court found that there was a factual dispute about the intent to deceive either the DMV or the State of Virginia. *Id*. In the current case, the Plaintiffs have never previously alleged that the Defendants have intended to deceive

either the state of Michigan or the DMV until their Opposition to Summary Judgment. The allegation that fraudulent statements were made to the Michigan DMW was not alleged in the Amended Complaint and therefore does not meet the requirements for pleading fraud under Federal Rule of Civil Procedure 9(b). *See United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contr. Co.*, 612 F.3d 724, (4th Cir. 2010) (allegations of fraud raised at summary judgment do not comply with the pleading requirements of Rule 9(b)) (*ref, Wahi v. Charleston Area Medical Center, Inc.,* 562 F.3d 599, 617 (4th Cir. 2009)); *Baxter v. Kawasaki Motors Corp. USA*, 2008 U.S. Dist. LEXIS 111559 at *7 (N.D. Ill. July 17, 2008) (holding that claims brought under the Federal Odometer Act must meet the requirements of Rule 9(b)) . Therefore, this new allegation—raised for the first time in the Opposition to Summary Judgment—cannot serve as a basis to deny Summary Judgment.

The allegation that was advanced by the Plaintiffs in the Second Amended Complaint was that the Plaintiffs received an improper mileage disclosure in the Carfax reports. This disclosure indicated that at some point before the Plaintiffs purchased the vehicles in question, the vehicles had only been driven ten miles. The Federal Odometer Act requires "disclosure of the cumulative mileage registered on the Odometer." 49 USC §32705(a)(1)(A). This disclosure must be made by the transferor and given to the transferee. 49 USC §32705(a)(1); *see Nelson v. Cowles Ford, Inc.*, 77 Fed. Appx. 637, 641 (4th Cir. 2003) ("The Act prohibits the transferor from making a false statement in the disclosure"). It is well recognized that a claim can be brought under the Federal Odometer Act when the cumulative mileage matches the odometer reading of a transferred vehicle, but the transferor had knowledge that the odometer reading was false or inaccurate. *Ryan v. Edwards*, 592 F.2d 756, 759 (4th Cir. 1979) (Claims could be brought when the mileage disclosure matched the disclosure, but the odometer had 'turned over' and no longer reflected the accurate

14

cumulative mileage of the transferred vehicle). District courts have also found liability under the Federal Odometer Act when the factual circumstances of the case could indicate to the transferor that disclosure of cumulative mileage or the odometer reading was inaccurate or false. *Alexander v. Southeastern Wholesale Corp.*, 2014 U.S. Dist. LEXIS 39505 at *10-11 (E.D. Va. February 26, 2014) (plaintiff alleged sufficient facts that the defendant had knowledge the odometer was not accurate) (citing *Oettinger v. Lakeview Motors, Inc.*, 675 F. Supp. 1488, 1491-1492 (E.D. Va. 1988) (a vehicle's previous title certificates appeared to be physically altered and therefore the transferor was shown to have knowledge that the mileage disclosure was fraudulent)).

In comparison, the factual evidence in the current case demonstrates a disclosure that is in stark contrast to the type of disclosure that other courts have found give rise to a claim under the Federal Odometer Act. In the current case, there is no evidence that the disclosure of the cumulative mileage of the Plaintiffs' individual vehicles at the time of sale was false (or that the cumulative mileage didn't match the actual odometer reading). Although the Plaintiffs may have received a disclosure that contained an inaccurate mileage reading for some date prior to the purchase of the vehicle, there is no evidence that these same disclosures had inaccurate cumulative[6] mileage disclosures (or disclosures of the actual vehicle mileage *at the time* the transfer was made).[7] *See e.g. Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 715 (7th Cir. 2005) (Federal Odometer Act claims could not be brought when the transferor intended to accurately disclose the vehicle's mileage at transfer). Therefore, there is no evidence that Volkswagen's alleged disclosure of *cumulative* mileage was false, as is required for a claim to be brought under the Federal

---

[6] Cumulative is defined as "increasing by successive additions" or "made up of accumulated parts." Webster's Ninth New Collegiate Dictionary (1991).

[7] The Court has previously ruled that the cumulative mileage is required to be disclosed at the time of transfer. *See* Dkt. 735 at 4 n. 4.

Odometer Act. Accordingly, the Plaintiffs cannot support a claim that the cumulative mileage disclosure was fraudulent as required to find liability under the statute.

### 3. The alleged fraudulent statements

The Plaintiffs have advanced several arguments as to why they believe that Volkswagen made fraudulent statements regarding the vehicles that were purchased. Throughout the course of litigation, the Plaintiffs' theories and arguments have changed, but generally there have been a series of implications and inferences that the Plaintiffs believe show that there might be some defect with the individual vehicles in question. The Plaintiffs have argued that their vehicles are "pre-production" and therefore might have different parts or configurations from other vehicles in each production cycle. As discussed above, the Plaintiffs have argued that the mileage was fraudulently reported when the vehicles were purchased. The Plaintiffs have argued that Volkswagen made fraudulent representations because the vehicles that were purchased were not actually compliant with Federal Law or other standards. The Plaintiffs have also argued that the labels of "Certified Pre-owned" and "1-owner vehicle" are fraudulently misleading. However, at no point have the Plaintiffs been able to—or attempted to—provide any evidence that any of the individual Plaintiff's vehicles had an actual defect, non-conformity, or some type of identifiable problem. The Plaintiffs have also not properly tied any alleged injury to any fraudulent statements allegedly made by Volkswagen. The generalized innuendo that a Plaintiff may have suffered an injury is not evidence from which a reasonable factfinder could conclude that a Plaintiff might be entitled to have a verdict entered in their favor.

*Compliance with federal law*

The Plaintiffs have alleged that their vehicles are defective in a way that indicates that those vehicles are not compliant with Federal safety laws. The Plaintiffs argue that because their vehicles

may be 'pre-production,'[8] those vehicles have different parts or components which implies that Volkswagen cannot guarantee that the vehicles are compliant with these safety laws. The Plaintiffs also argue that their vehicles may have had alterations after the vehicles were manufactured (such as to prepare the vehicles to be loaned to the media). In the same way that 'pre-production' vehicles are allegedly non-compliant with Federal law, the Plaintiffs believe that the post-production modifications might make those vehicles also non-compliant with the Federal safety laws.

Federal law requires that vehicle manufacturers must certify that a vehicle "complies with applicable motor vehicle safety standards." 49 USC §30115(a). The Plaintiffs have argued that Volkswagen is unable to guarantee that the Plaintiffs' vehicles are able to meet federal safety standards, and therefore there is a stigma associated with the vehicles that make the cars less valuable than the price that was paid to purchase them. The Plaintiffs have pointed to a various array of Volkswagen's internal documentation systems to attempt to show that a vehicle might be pre-production, or in some way improperly vary from a build (based on the composition of component parts) for a specific car or vehicle. In their most recent filing, the Plaintiffs argue that the data in the 'Daisy' system shows that Volkswagen considers the Plaintiffs' vehicles to be 'pre-production.' Dkt. 723 at 3.

However, Volkswagen's internal labeling and indications are unimportant to the Motion for Summary Judgment when none of the supposed labels or tracking systems have ever been connected to any actual defect in a vehicle. The Plaintiffs have not been able produce evidence to show that any changes were made to their specific individual vehicles due to their vehicles' status

---

[8] The Parties both point to evidence as to whether the Plaintiffs' vehicles are so-called 'pre-production' or 'series-production' vehicles. Volkswagen appears to have a myriad of internal tracking systems, many of which are recorded in German, likely resulting in some of the confusion. The resolution of this dispute would not definitively affect the analysis of the Summary Judgment Motion, so the existence of the factual dispute does not preclude granting summary judgment for Volkswagen.

as 'pre-production.' At no point have the Plaintiffs been able to show that a certain part was changed from a certain build and that therefore that car (with one of any of the many designations) was potentially dangerous, or at the very least non-compliant with Federal safety laws. The Plaintiffs have not produced any evidence that the supposed alterations or modifications made to the vehicles in one of the other processes makes the cars or vehicles non-compliant with Federal safety laws. The Plaintiffs have not pointed to any evidence that shows that one of Volkswagen's internal codes, labels, or designations is even correlated with a certain defect, and therefore could be considered an indication of something akin to a non-conformity.[9]

Most importantly for the Motion for Summary Judgment, the Plaintiffs have produced zero evidence that any of the vehicles owned by the Plaintiffs were affected in any way that makes the vehicles non-compliant with Federal safety laws. *See Bellville v. Ford Motor Co.*, 919 F.3d 224, 234 (4th Cir. 2019) (Summary judgment was affirmed when the district court "correctly observed that none of the experts tested any of the Plaintiffs' vehicles or any other of the thousands of Ford vehicles in their purported class.") At every stage of this litigation the Plaintiffs have asked the Court to indulge the assumption that some deleterious modification was made to the Plaintiffs' vehicles. The Plaintiffs have relied on the allegations within their Complaint to argue that all 'pre-production' vehicles or vehicles modified post-manufacture must have a certain defect, a certain change, or a non-conforming part. However, a review of the evidence in the record does not support that the Plaintiffs' vehicles should or could be assumed to be non-compliant with federal safety standards.[10]

---

[9] There is also no evidence that one of the Plaintiffs' vehicles was repaired after an undisclosed accident and did not receive an alterer certification as required by Federal law.
[10] In their opposition to summary judgment the Plaintiffs' rely on the expert report of Peter Leiss to argue that there are facts within the record that support that the alleged defects would make a vehicle non-compliant with Federal safety standards. However, Leiss' report only states that certain parts may or could affect the safety of a vehicle. For instance, Leiss

Further, a general recall is not evidence that any of the Plaintiffs' vehicles possessed some defect.[11] *See Burbank v. BMW of N. Am., LLC*, 2022 U.S. Dist. LEXIS 49435 at *24 (D.N.J. March, 21, 2022) ("the mere existence of a recall does not prove that any individual's vehicle actually contained a nonconformity."); *Bishop v. Triumph Motorcycles Am. Ltd.*, 2021 U.S. Dist. LEXIS 180423 at *28 (N.D.W. Va. September 22, 2021) (a recall notice and a company investigation were not evidence that could support a motorcycle possessed a certain defect); *McGee v. Mercedes-Benz USA, LLC*, 2020 U.S. Dist. LEXIS 55949 at *15 (S.D. Cal. March 30, 2020) ("Here the Court finds that the existence of the Takata Recall, without any related malfunction, is insufficient to raise a genuine dispute of material fact that the vehicle was unfit for its intended use."); *Redford v. SC Johnson & Son, Inc.*, 437 F. Supp. 2d 391, 397 (D. Md. 2006) (a recall notice was not evidence of a defect in an air freshener); *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1045 (N.D. Ga. 2004) (a recall notice for a motor home "is insufficient to create a triable issue regarding the existence of a defect.") These district court cases make clear that even when a

---

states "A modification as simple as grinding down a weld seam on the unibody or chassis to have a sleeker presentation at an Auto Show can have detrimental effects to the vehicle's safety." Dkt. 726-50 at 2. Leiss' report is not even conclusory; it is pure speculation without any supposition to factual predicates. Further, Leiss' report is only a reiteration of Volkswagen employees testifying about an undisputed fact in the current case, that Volkswagen lacked proper documentation for certain pre-production vehicles. *See* Dkt. 652 at 32. Leiss' general speculation about a potential cause of injury is insufficient to indicate that there is a defect in the Plaintiffs' individual vehicles or that vehicles are not compliant with federal safety standards.

[11] The description of the recall reads "A small number of zero-series vehicles (very early production vehicles) were sold as used after they were no longer needed for internal use. Volkswagen had discovered that documentation about possible modification(s) made during the internal use period may be incomplete. Because of this, Volkswagen cannot verify that the vehicles comply with all applicable regulatory requirements. Out of an abundance of caution, Volkswagen has decided to recall these vehicles. If the vehicles do not meet all regulatory requirements, there could be an increased risk of a crash, fire or injury." *See e.g.* Dkt. 726-70 (Recall notice issued to Duane Glover)

specific defect[12] is alleged in a vehicle or other product, a recall notice is not evidence that demonstrates an individual plaintiff's vehicle or product possesses that defect.

The recall notice provided to the Plaintiffs does not provide evidence that would create a triable issue for a jury. Importantly, the recall notice is not evidence that shows any of the individual vehicles owned by the Plaintiffs possess any defect or other non-conformity that would make the Plaintiffs' vehicles non-compliant with Federal safety standards as alleged in the Second Amended Complaint.

As there is no relevant or admissible evidence that the individual Plaintiff's vehicles possessed a defect that might affect the safety of the vehicle, the only indication that the Plaintiff purchased a vehicle that is non-compliant with federal safety standards is merely the bare allegations within the Plaintiffs' Second Amended Complaint. Therefore, there is no evidence upon which a reasonable jury could find that Volkswagen's indication that the Plaintiffs' vehicles complied with federal safety standards was a fraudulent statement. *See Belville*, 919 F.3d at 236 ("Plaintiffs cannot establish the existence of a defect, let alone its risk or danger.")

*Mileage fraud*

As discussed above, the Plaintiffs have alleged that fraudulent statements about their Volkswagen vehicles' mileage was made through the Carfax reports given to the Plaintiffs when their vehicles were purchased. The Plaintiffs argue that the fraudulent statements indicate that the vehicles had been driven only ten miles at one point in time while in actuality the vehicles had been utilized much more extensively at that earlier time. These alleged fraudulent mileage readings correspond to the time the vehicles were titled in Michigan. To reiterate, the Second Amended

---

[12] As opposed to the current case where there is not even a specific defect alleged to be found in the Plaintiffs' vehicles but rather a general allegation that the vehicles are defective.

Complaint and evidentiary record before the Court contains no accusation or evidence that the there was a fraudulent misrepresentation of any of the Plaintiff Vehicles' current mileage at the time those vehicles were purchased.

There is no evidence that the Plaintiffs have produced that could demonstrate an injury from this supposed fraudulent statement. As discussed earlier, the Plaintiffs' expert witnesses have not offered admissible testimony that could support a claim for damages flowing from these supposed fraudulent statements. Further, Edward Stockton's economic model only reflects that a car with more mileage has less value. Stockton's model does not reflect that there is a decrease in value of a vehicle that was reported to have less mileage at some time before the sale, when the true and accurate mileage was disclosed (and also readily discernible from an accurate odometer reading).

For these reasons, the Plaintiffs have not presented a persuasive argument that explains how this inaccurate mileage reading might have harmed the Plaintiffs and lead to cognizable damages. The Plaintiffs have also not produced any evidence that supports a claim that they were harmed by the allegedly fraudulent statement. Therefore, there is no triable issue of material fact based on the statements regarding mileage that would preclude the Court from granting Summary Judgment for Volkswagen.

*CPO and 1-owner vehicles*

The Plaintiffs have argued that their vehicles' designations as 'CPO' and 'one-owner vehicles' constituted fraudulent statements. The Plaintiffs have failed to produce any evidence that the designation of their Vehicles with these labels was fraudulent.

It is undisputed that Carfax "defines an owner as an individual or business that possesses and uses a vehicle." *See* Dkt. 723 at 16; Dkt. 723-48 at 4 (definition appearing on the Carfax

report). The Plaintiffs have argued that their vehicles were in fact driven by more than one person, and therefore the vehicles have less value. Dkt. 723 at 17. Again, there is no admissible evidence that supports this claim.[13] The arguments about 'one-owner vehicles' appear to dovetail with the Plaintiffs' arguments regarding the represented mileage of their cars. But for both these arguments, there is again no evidence that supports any injury or damages resulting from this supposed misrepresentation. Therefore, the allegations that the 'one-owner' designation within the Carfax report cannot support a claim for fraud.

Similarly, the Plaintiffs have not provided any evidence from which the Court could find that the 'CPO' designation was fraudulent. Indeed, this allegation is not even addressed in the Plaintiffs' brief for summary judgment. As discussed above, the expert opinion of Edward Stockton is not admissible or relevant to the individual claims asserted by the Plaintiffs at this stage in the litigation. Further, at no point have the Plaintiffs articulated how or why their cars should not be labeled as 'CPO'. There is no evidence that the Plaintiffs' individual vehicles do not meet the criteria to be designated 'CPO'. For the same reasons there is no evidence that the Plaintiffs' vehicles do not meet Federal safety standards, there is also no evidence that 'pre-production' vehicles cannot meet the criteria to be labeled 'CPO.'

Without any evidence showing an actual injury or damages from these two purported misrepresentations, there is no basis for the Plaintiffs to argue that these statements should be considered fraudulent. Therefore, the Court is not precluded from granting summary judgment to the Defendants based on the Plaintiffs' vehicles having the 'CPO' or 'one-owner' designations.

---

[13] In their opposition, the Plaintiffs argue that when a car was loaned to members of the media "[t]he car sustained significant damage during that time, which [Volkswagen] repaired and failed to disclose." Dkt. 723 at 16. Despite citing to their own memorandum, this claim regarding significant damage is completely unsupported by any evidence in the record and appears to only be the attorney's colorful interpretation of their own argument.

### 4. Breach of Contract

The Plaintiffs have alleged breach of contract based on the theory that Volkswagen breached a contract between itself and third-party Carfax. The Plaintiffs argue that they have been injured by the alleged breach as the Plaintiffs were intended third-party beneficiaries of the contract between Volkswagen and Carfax.[14] The Plaintiffs argue that the contract required Volkswagen to correct any incorrect information that was communicated to Carfax and that Volkswagen must comply with relevant state and federal laws. The Second Amended Complaint alleges that this contract was breached by Volkswagen "violating the Odometer Act, misrepresenting the history of the mileage of the Class Vehicles, violating the certification requirements of the Federal Safety Regulations, including the failure to include the mandatory Alterer's Certification, and ... misleading Plaintiffs..." Dkt. 199-1 at 70. As already discussed, these supposed breaches are all identical to claims that the Plaintiffs have raised to support fraud or violations of the Federal Odometer Act. Once again, the Plaintiffs have not produced any evidence that any of the statements were fraudulent, that the Federal Odometer Act was violated, or that there were any damages or injury suffered by the Plaintiffs attributable to these omissions purportedly attributed to Volkswagen. As the Plaintiffs cannot prove individual damages based on the alleged breach of contract, Summary Judgment must be **GRANTED** in favor of the Defendants on the breach of contract claims.

### 5. Unjust Enrichment

The Plaintiffs have brought claims for unjust enrichment against Volkswagen on the theory that an improper benefit was conferred to Volkswagen when the Plaintiffs' vehicles were

---

[14] The Parties dispute whether the contract was in effect at the time the Plaintiffs purchased their vehicles. Even under the assumption there was a valid contract at the relevant time, there is still no viable claim for breach of contract that should survive Summary Judgment.

purchased. Unjust enrichment is an equitable remedy "that is generally available only where there is not adequate remedy at law." *In re Ford. Tailgate Litig.*, 2014 U.S. Dist. LEXIS 119769 at *12 (N.D. Cal. August 8, 2014) (dismissing unjust enrichment claims brought under the common law of several states when other theories of liability were advanced). The Plaintiffs have declined to point to any evidence or make any argument in their Opposition Memorandum that would support a finding that unjust enrichment would be a proper remedy in the present case. Further, there is no admissible evidence from which the Court could measure a benefit improperly conferred on Volkswagen. *See e.g. Fessler v. IBM*, 969 F.3d 146, 157 (4th Cir. 2020) (under Virginia law, unjust enrichment is "limited to the benefit realized by the defendant.") As discussed above, there is no relevant or reliable evidence from which the Plaintiffs could measure the value that their vehicles were purportedly overpriced. As there is no evidence that the Plaintiffs could rely on to show an improper benefit was conferred, Summary Judgment must be **GRANTED** on the claims for unjust enrichment.

### 6. State Law Claims

For many of the reasons that the Court has addressed in regard to the lack of evidence that could create a triable issue of fact for many of the Plaintiffs' claims, there also is not evidence that supports the individual state law claims raised the Amended Complaint. Plaintiff Hartman has alleged violations of the California Legal Remedies Act (Cal. Civ. Code § 1750, *et. seq.*), the California Implied Warranty of Merchantability (Cal. Civ. Code § 1791.1) and the California Express Warranty (Cal. Civ. Code § 1791.2). Plaintiff Jacobson has alleged violations of the Colorado Consumer Protection Act (Col. Rev. Stat. 6-1-101, *et seq.*), the Colorado Implied Warranty of Merchantability (Col. Rev. State § 4-2-314), and the Colorado Express Warranty (Col. Rev. Stat. § 4-2-313). Plaintiff Calise has alleged violations of the Illinois Consumer Fraud and

Deceptive Business Practices Act (815 Ill. Comp. Stat. § 505, *et. seq.*) and Illinois Express Warranty (810 Ill. Comp. Stat. § 5/2-313). Plaintiff Garcia has alleged violations of the Washington Consumer Protection Act (Wash. Rev. Code Ann. 19.86.101, *et. seq.*) and the Washington Express Warranty (Wash. Rev. Code § 62A.2-313).

California, Colorado, Washington, and Illinois have all adopted provisions of the Uniform Commercial Code ("UCC"). Section 2-314 of the UCC requires merchantable goods to be "fit for the ordinary purposes for which such goods are used." Courts have generally found that when a car provides reliable transportation and operates "substantially free from defects," that car is considered to be merchantable as per the requirements of an implied warranty. *See Carlson v. General Motors Corp.*, 883 F.2d 287, 297-298 (4th Cir. 1989) (citing cases on implied warranty from several states, including Illinois). As discussed above, the Plaintiffs have not been able to point to any evidence that their vehicles are unsafe, have some defect, or are otherwise unfit for their intended use. Therefore, there is no evidence that would support a finding that there was a violation of the implied warranty of merchantability.

Generally, an express warranty is created when a seller makes an "affirmation" or "description of the goods" which is part of the bargain between that seller and the purchaser. UCC §2-313. In the Second Amended Complaint, the Plaintiffs have asserted that the same statements, which they allege are fraudulent, are also the statements which created an express warranty for the Plaintiffs' vehicles. For the reasons discussed above, the Plaintiffs have not provided any evidence that these statements were incorrect, untrue, or somehow fraudulent. Therefore, there is no evidence that there was a violation of an express warranty allegedly made by the Plaintiffs.

The Plaintiffs have also advanced claims under several consumer protection acts. *See* Cal. Civ. Code §1770(a)(7) (Prohibits "representing that goods or services are of a particular standard,

quality, or grade, or that goods are of a particular style or model, if they are of another."); Col. Rev. Stat. 6-1-105(1)(g) (prohibits an act that "represents that goods... are of a particular standard, quality, or grade" when they are not); 815 Ill. Comp. Stat. §505/2 (prohibits misrepresentations made in any trade or commerce); Wash. Rev. Code § 19.86.020 (prohibits "deceptive acts or practices in the conduct of any trade or commerce."). To reiterate, there is no evidence that any of the statements alleged to be made by Volkswagen about the quality of the Plaintiffs' vehicles are deceptive, misrepresentative, or inaccurate in such a way that would support a claim under one of the State consumer protection laws. *See Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 992 (N.D. Cal. 2010) (Summary judgment granted on California Legal Remedies Act claims after Plaintiff could not show that their vehicle had a safety issue); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 227 F. supp. 3d 1192, 1204 (D. Colo. 2017) (The Colorado Consumer Protection Act requires a Plaintiff to demonstrate actual injury to bring suit for a violation); *Perona v. Volkswagen of Am., Inc.*, 2014 IL App (1st) 130748 at *39 (Ill. App. Ct. 2014) ("a valid claim must show that the consumer fraud proximately caused the plaintiff's injury.") (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (Ill. 1996)); *Emery v. Nat'l Union Fire Ins. Co.*, 2013 U.S. Dist. LEXIS 145839 at *22-23 (W.D. Wash. October 8, 2013) ("a causal link" between the injury and deceptive act is an element that must be proven under the Washington Consumer Protection Act"). Although there are different standards to prove classical fraud and consumer fraud, in every state a Plaintiff must show an injury to bring a claim for consumer fraud. As discussed below, the Plaintiffs have not been able to demonstrate an actual injury resulting from an alleged misrepresentation or deceptive practice attributable to Volkswagen. Like the claims for fraudulent representation, the Plaintiffs have pointed to no evidence that supports their individual claims for consumer fraud.

There is no genuine dispute to a material issue that would preclude the Court from granting summary judgment for Volkswagen on the Plaintiffs' state law claims.

### 7. Rescission is not a proper remedy

The Plaintiffs have argued that they need not prove damages because rescission would be proper remedy for the harms they have alleged. The Fourth Circuit (applying North Carolina law) has generally explained rescission as follows:

> The remedy of rescission, on the other hand, does not include a notion of damage. It intends to undo the transaction and return the parties to their original status. Because recission is a remedy alternative to and inconsistent with damages... In giving effect to a rescission remedy, the plaintiff returns what he received and the court orders the defendants to restore the amounts paid.

*Winant v. Bostic*, 5 F.3d 767, 776 (4th Cir. 1993) (citations omitted). Rescission can be either an equitable or legal remedy. In the current case the Plaintiffs seek an equitable remedy where the power of the Court is used to undo a contract between the Parties and order proper restoration to achieve a status quo. *See Griggs v. E.I. DuPont de Nemours & Co.*, 385 F.3d 440, 445-446 (4th Cir. 2004) (discussing rescission generally).

Here the Plaintiffs have all refused Volkswagen's offers to purchase the vehicles when they received notice of the proposed recall. In addition, it is undisputed that the Plaintiffs have all continued to use their vehicles to some degree. The Plaintiffs have also all sought to obtain a legal remedy in the form of damages correlated to the supposed diminution in value of their vehicles. These actions are inconsistent with circumstances where a court of equity would find the remedy of rescission proper.[15] *See Eggen v. M. & K. Trailers & Mobile Home Brokers, Inc.*, 29 Colo. App. 177, 183 (Colo. App. 1971) (An offer to return a trailer was valid and timely and made rescission

---

[15] As the Parties did not address whether third-party beneficiary exceptions to privity requirements under the various state laws may apply, the Court does not address Volkswagen's argument that there is a lack of privity preventing the right to rescission for some of the Plaintiffs.

proper); *Elwood Edwards Auto Sales, Inc. v. Kinsey*, 123 Colo. 52, 61 (Colo. 1950) (refusal to return an automobile and continuing to use the vehicle made rescission "inequitable"); *Martin v. Heinold Commodities*, 163 Ill. 2d 33, 58 (Ill. 1994) (plaintiffs could not seek rescission after they "received and used the benefit for which they bargained,…"); *Transact, Inc.v. D'Errico (In re Transact, Inc.)*, 2014 U.S. Dist. LEXIS 109746 at \*26-27 (C.D. Cal. August 6, 2014) (A choice to continue to benefit from a contract precluded the exercise of the right to rescission) (citing 14 Richard A. Lord, *Williston on Contracts §43.5* (4th ed. rev. 2014)); *Coovert v. Ingwersen*, 37 W.n2d 797 (Wash. 1951) (continuing to use property may preclude raising a claim for rescission).

The Plaintiffs argue that reasonable continued use of a vehicle after an assertion of rescission is not generally recognized as a waiver of the equitable remedy. Dkt. 723 at 27 (citing *Ibrahim v. Ford Motor Co.*, 214 Cal.App.2d 878, 898 (1989) (collecting cases)). However, the Plaintiffs in the current case are in a completely factually distinct circumstance from the plaintiff in *Ibrahim*. In *Ibrahim*, the plaintiff had attempted to return her vehicle (with evidence of defects) and had been refused rescission by the car dealership where she purchased her vehicle. 214 Cal.App.2d at 895. In the current case, all the Plaintiffs have refused Volkswagen's offer to buy back their cars. There is also no evidence that the Plaintiffs have performed any actions consistent with the Plaintiffs trying to seek rescission. The Plaintiffs have also not provided any evidence that there is a financial justification that would warrant a finding that the continued use of the vehicles was reasonable. Based on the actions of the Plaintiffs and the lack of evidence supporting a material breach of a contract, the Court finds that the equitable remedy of rescission is unavailable to the Plaintiffs as an alternative to the legal remedy the Plaintiffs already seek.

For the reasons discussed above, the Plaintiffs' state law claims cannot survive Volkswagen's Motion for Summary Judgment.

**8. Plaintiff's Motion to Strike**

The Plaintiffs have moved to strike several affidavits and declarations that were filed by Volkswagen as exhibits to the Reply memorandum in Support of Volkswagen's Motion for Summary Judgment. Dkt. 768. The Court does not need to consider these declarations to decide the present Motion for Summary Judgment. However, it is appropriate for Volkswagen to add these items to the record in response to the new arguments that the Plaintiffs have advanced for the first time in the Opposition to the Motion for Summary Judgment. Because the filing of the affidavits and declarations was timely and proper in response to the Plaintiffs' Opposition memorandum, the Motion to Strike is **DENIED**.

**9. Voluntary Dismissal and Offer of Judgment**

The Plaintiffs Mykhaylo Holovatyuk, Brian Garcia, and Paul Thomson have elected not to pursue their claims any further in this litigation. *See* Dkt. 723 at 2 n. 2. Plaintiff Duane Glover has accepted an Offer of Judgment. *See* Dkt. 788. Therefore, these Plaintiffs will be **DISMISSED** from the present civil action in accordance with Federal Rule of Procedure 41(a)(2). Separate Orders will issue along with this Memorandum Opinion.

**10. Standing**

There is always a continuing duty to evaluate whether there is proper subject matter jurisdiction in a case before the Court. As discovery is complete, the Court finds that it is proper to evaluate the presence of jurisdiction. To demonstrate Article III standing, a Plaintiff must show that they have suffered "concrete harm." *TransUnion LCC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) ("No concrete harm, no standing.") As discussed above, there is no admissible evidence upon which any of the four individual Plaintiffs can properly demonstrate that they have suffered an individual injury that is "traditionally recognized as providing a basis for a lawsuit in American

courts- such as physical harm, monetary harm, or various intangible harms..." *Id.*

Making all inferences and resolving all factual disputes in favor of the Plaintiffs, the Court could assume that the Plaintiffs' vehicles were either the so-called pre-production vehicles, press-fleet vehicles, or had post-production modifications of some sort. But as discussed above, there is no evidence that any of these designations connected to any provable defect, deficiency, or other problem with the individual vehicles at issue in this civil action. There is no admissible or reliable evidence that any of the supposed designations are actually tied to a diminution in the monetary value of the Plaintiffs' vehicles. Therefore, there is no evidence that could show the existence of a concrete harm to one of the individual Plaintiffs. Further, as discussed regarding the Federal Odometer Act claims, a statutory violation does not automatically grant Article III standing to a plaintiff. *Id.* at 2205.

It is necessary for the Plaintiffs to show that they have suffered some concrete harm for the Court to find that there has been a cognizable injury that would confer proper standing to bring suit in a district court. The series of innuendos and implications that the Plaintiffs have continuously attempted to piece together into a coherent theory of liability does not meet this burden and has not demonstrated any actual harm to any of the individual Plaintiffs. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1991) ("In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence, specific facts,..." to establish standing) (internal quotations omitted). Therefore, the Court also finds that the Plaintiffs lack standing to bring this instant civil action. In addition to the reasons for granting the Defendants' Motion for Summary Judgment, the Court also finds that it would be proper to dismiss the instant civil action due to absence of Article III standing.

**Conclusion**

The Plaintiffs have not met their burden to prevail against Volkswagen's Motion for Summary Judgment. There is no evidence that a factfinder could rely on to return a verdict in favor of the Plaintiffs on any of their claims. There is no admissible evidence in the record that any of the Plaintiffs' individual vehicles has any defect. The Plaintiffs never attempted to investigate or appraise their individual vehicles and have produced no evidence that there is any problem, defect, or non-conformity with those individual vehicles. Instead the Plaintiffs pursued voluminous, asymmetric, and time-consuming discovery that resulted in the same admission that was communicated in Volkswagen's original recall notice, that the vehicles may not have proper documentation.

As the Plaintiffs' have not met their burden on summary judgment and cannot demonstrate proper Article III standing, Volkswagen's Motion for Summary Judgment (Dkt. 714) is **GRANTED**. Volkswagen's *Daubert* Motions to Exclude the testimony of Stuart Raskin and Edward Stockton (Dkt. 740, Dkt. 743) are also **GRANTED** as the testimony is not linked to the individual damages alleged in the case and therefore, the proposed opinions are not relevant or reliable. The Plaintiffs' Motion to Strike (Dkt. 768) is **DENIED**. All claims made by Plaintiffs Ricardo Garcia, Paul Jacobson, Gaetano Calise, and David Hartman in this civil action are hereby **DISMISSED**. A separate Order will issue along with this Memorandum Opinion.

July 7, 2022
Alexandria, Virginia

_____
Liam O'Grady
United States District Judge